**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

United States of America

v.

Samuel Carson, Sean Coates,
Jerome Martin, Jr., and William K.
Sweeney,

  Defendants.

Case No. 1:98-cr-329-6-RCL

———————————

**APPENDIX**

in support of Defendants' Supplemental § 2255 Motion

———————————

———————————

# VOLUME 1 OF 9

**Government Disclosures and Counsel's Declaration**

Ex. A – Government Disclosure Letter (April 11, 2025) ..............................................................2

Ex. B – Government Disclosure Letter (April 22, 2025)............................................................20

Ex. C – Government Disclosure Letter (May 7, 2025)..............................................................43

Ex. D –Government Disclosure Letter (March 10, 2026) ..........................................................46

Declaration of Lexi Negin Christ (February 2, 2026)................................................................49

# EXHIBIT A



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

---

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C.  20530*

April 11, 2025

John Longstreth
Jonathan M. Cohen
Tre A. Holloway
K&L GATES LLP
1601 K Street NW
Washington, DC 20006

Mark Lanpher
Allen Overy
Sherman Sterling US LLP
1101 New York Avenue NW
Washington, DC 20005

Katherine Stoller
Allen Overy
Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022

Eric Hans Kirchman
15 West Montgomery Avenue
Suite 205
Rockville, MD 20850

David B. Smith
108 North Alfred Street
Alexandria, VA 22314

Re: *United States v. Sean Coates, William K. Sweeney, Jerome Martin, Jr., and Samuel Carson,*
No. 21-3072 (consolidated with Nos. 21-3073, 21-3078, 22-3016, 23-3015); Cr. No. 98-0329

Dear Counsel:

Pursuant to the government's continuing obligation under *Brady v. Maryland*, 373 U.S. 83
(1963), and in accordance with the protective order issued by the district court on April 11,
2025, I am writing to provide you with further information related to the government's
pretrial representation that it had suspected Andre Chappelle and Anthony Hawkins of
murdering Robert "Butchie" Smith.

**App 2**

As noted in your consolidated brief, the government advised the district court about Chappelle and Hawkins in an "Ex Parte Notice to the Court Regarding Change in Location of Confinement," filed under seal in the district court on April 2, 1999. After an extensive search of the government's files, I recently located a folder containing grand-jury testimony in which a witness identified Chappelle and Hawkins in connection with the shooting.

It is entirely possible that this information was previously disclosed to defense counsel. However, I have been unable to confirm this disclosure because all the closed files in this case have not been located. We are continuing our diligent search. In the meantime, I am attaching the grand jury transcript here.

If you have any questions about the attached material, please do not hesitate to let me know.


Sincerely,


EDWARD R. MARTIN, JR.
United States Attorney


By: /s/_____
Elizabeth Gabriel
Assistant United States Attorney

App 3

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA


- - - - - - - - - - - - - - - x
                              :
                              :
                              :
IN RE: ANDRE CHAPPELLE        :    Grand Jury Original
                              :
- - - - - - - - - - - - - - - x


Grand Jury No. 2
Superior Court of the District
    of Columbia
555 Fourth Street, N.W.
Washington, D.C.   20001

Friday, July 11, 1997


The testimony of CLARENCE GUTRICK was taken in the presence of a full quorum of the Grand Jury, commencing at 2:50 p.m., before:


KENNETH WAINSTEIN
Assistant United States Attorney


Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

App 4

2

P R O C E E D I N G S

Whereupon,

CLARENCE GUTRICK

was called as a witness and, having been first duly sworn by the Foreperson of the Grand Jury, was examined and testified as follows:

EXAMINATION

BY MR. WAINSTEIN:

Q    Okay. Sir, would you start off just by giving us your name, and you better spell your first name and your last name for everybody.

A    Clarence Gutrick, C-l-a-r-e-n-c-e G-u-t-r-i-c-k.

Q    And how old are you sir?

A    Twenty-five.

Q    And where were you born, here in D.C.?.

A    Washington.

Q    Where did you grow up, what part of town?

A    Southeast, 1070 Wahler Place.

Q    And until you got locked up, where were you living?

A    Down Southwest.

Q    Do you hang out in Southwest some?

A    For the last two years, yeah, I was hanging down there.

Q    Now, you're incarcerated over D.C. Jail, is that

3

right?

    A    Yeah.

    Q    And what charge are you incarcerated on?

    A    For escape from the halfway house.

    Q    All right.  So you're facing charges from the escape from the halfway house?

    A    Yeah.

    Q    Now, I'm going to ask you about a shooting that you witnessed back on June 16th of this year, okay.

    A    Yeah.

    Q    And you and I have talked about that, right?

    A    Yes.

    Q    And we also -- I told you about the rights that you have.  Didn't I tell you about that earlier today?

    A    Yes.

    Q    I told you that there would be a court reporter, who's the lady right here next to you, who'll be taking down everything that you say here and everything that I say.  You understand that?

    A    Yeah.

    Q    Okay.  You understand that anything that you say here will be recorded there, by this lady, and if you say anything that incriminates you, it could be used against you in the future.  Do you understand that?

    A    Yeah.

**Diversified Reporting Services, Inc.**
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

App 6

4

Q    And you have the right to refuse to answer any question if the answer to that question would incriminate you.  Do you understand that?

A    Yes.

Q    Okay.  We went over that, and your attorney went over that with you, right?

A    Yeah.

Q    And you understand that your attorney is not here, but if you wished, you could have an attorney waiting outside and you could ask him any questions along the way.  Do you understand that?

A    Yes.

Q    Okay.  And understanding all those rights, are you prepared to testify about what happened that day when you saw that shooting on June 16th?

A    Yes.

Q    Now, let me ask you, in the afternoon, evening of June 16th, where were you hanging out?

A    On Half and O, Southwest.

Q    You have to keep your voice up so everybody can hear you.

A    Half and O, Southwest.

Q    So that's around the intersection of Half Street and O Street, Southwest?

A    Yes.

**Diversified Reporting Services, Inc.**
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C.  20005
(202) 296-2929

5

Q    Is that a place you hang out regularly?

A    Yes.

Q    And who were you with?

A    Me, a couple of friends.

Q    And just generally, what were you all doing?

A    Drinking, smoking blunts.

Q    And where specifically were you hanging out at Half and O?

A    Across the street from the school.

Q    What is it across the street from the school?

A    It's some houses, apartments, I mean, some houses.

Q    Do you know what school that is?

A    No.  It's closed down.

Q    All right.  Well, you're hanging out there with your friends, did there come a time when you saw somebody walking in your general direction?

A    Yes.  A guy named Butchie, just walking towards.

Q    Was he with anybody or was he by himself?

A    By himself.

Q    And, now, this Butchie, is he an associate of yours, a friend of yours?

A    A friend of my friends.

Q    A friend of guys who are your friends?

A    Yeah.  That's it.

Q    And you know him by the name Butchie?

Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C.  20005
(202) 296-2929

6.

A    Yeah.

Q    All right.  And what was he doing when he was walking towards you, anything out of the ordinary?

A    No.  Just walking towards, like he was coming towards us, towards the store.

Q    And there's a store past where you were?

A    Yeah.

Q    All right.  Now, at the time you saw him walking towards you, did you see anybody else approaching?

A    Yes.  Two guys running across the street, towards him.

Q    Where did those guys -- where were they coming from, before they got to the street?

A    From behind the school.

Q    Were they walking or running?

A    Running.

Q    When you saw them, did they have masks on?

A    No.

Q    Did you recognize either of them?

A    First I recognized one of them.

Q    Okay.  And who did you recognize that person to be?

A    Andre Chappelle.

Q    Andre Chappelle?

A    Yeah.

**Diversified Reporting Services, Inc.**
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

App 9

7

Q    And did you know Andre Chappelle?

A    Yes.

Q    How do you know Andre Chappelle?

A    From hanging around Southeast, all through Southeast.

Q    And did you have any relationship at all with him or anybody in his family?

A    Yes.

Q    What was that?

A    His sister.

Q    What about his sister?

A    Me and his sister used to date.

Q    Okay.  So about how long have you known Andre Chappelle?

A    For about eight months.

Q    All right.  So you've known him for about eight months?

A    I've known his sister for about eight months, I know him a little longer, you know, longer.

Q    Okay.  So you dated his sister for about eight months?

A    Right.

Q    Okay.  So you've known him from a long time down in Southeast?

A    Yes.

Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

8

Q    And seen him a lot of times?

A    Yes.

Q    And talked to him a lot of times?

A    Yes.

Q    All right.  So when you see Andre Chappelle, do you see the guy that he's with?

A    Yes.

Q    Did you -- at that point did you know who that was?

A    No.

Q    All right.  So what was Andre doing as he and his friend were running in your direction?

A    Andre pulled out a gun and started shooting.

Q    And do you see where he pulled the gun from?

A    From his waist.

Q    Did you get an idea of what the gun looked like?

A    A black -- I guess it was a black semiautomatic.

Q    That's what it looked like to you?

A    Yes.

Q    All right.  So when he started shooting, did you see where he was shooting?

A    Yeah.  Yes.

Q    Where?

A    Towards Butchie, at Butchie.

Q    All right.  So what did you do once the shots

Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

9

started?

A     When the first shot came, I ran.  Me and the other guys who I was with, we ran into a court.  Then that's when I saw Andre over top of him.

Q     Okay.  So you and your friends started running into the court, but do you then keep your eye on what's going on with Butchie?

A     I saw Butchie get shot.  He fell, and I saw the guy Andre standing over top of him, he finished shooting.

Q     Was it just a couple shots, or was it a lot of shots?

A     About five, I guess about five or more.  I wasn't counting.

Q     All right.  Fair enough.  What about the other guy that was with Andre, what was he doing while Andre was shooting Butchie?

A     Just looking.

Q     Was he standing near Andre?

A     Well, when Andre ran over top of him, he was like behind Andre, looking.  Then after he finished shooting, both of them ran back through the alley, behind the school.

Q     Did you see where they went?

A     No.  After they got behind the school, I don't know where they went.

Q     Okay.  What did you do once they left the scene?

**Diversified Reporting Services, Inc.**
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

App 12

10

A    All us, me, my friends and us, we ran up there towards where Butchie was laying at, looked at him, the old lady, somebody asked to call the police.  They called an ambulance.  The ambulance came.

Q    Okay.  Now, the other guy that was with Andre, at that point, had you ever seen him before that day?

A    No.  That was my first time seeing him.

Q    Now, how are you with faces?

A    I'm good with faces.

Q    Pretty good with faces?

A    Yeah.

Q    Now, did there come a time when you saw that guy -- when you did see that guy again, after the shooting?

A    Yeah.

Q    How did that happen?

A    When he got locked up and came through the jail.

Q    And when you first saw him, what did you think?

A    That was the guy that was with Andre Chappelle.

Q    Any doubt in your mind?

A    No.

Q    Did you talk to him over at the jail?

A    After -- well, not about the shooting, but we have talked, you know.

Q    Has he identified himself -- introduced himself to you?

7/97M

11

A    Yeah.

Q    What's his name?

A    Anthony Hawkins.

Q    And do you know what it is that he's locked up for?

A    He said a gun, a gun charge.

Q    A gun charge of some kind?

A    Yeah.

Q    All right.  Now, even though you and he haven't directly talked about this shooting, did you ever hear him talk to other people about it?

A    Yes.

Q    Where were you when you heard this?

A    In the basketball area of the jail.

Q    Over D.C. Jail?

A    Yeah.

Q    And what did you hear him saying?

A    That my man got -- shot the dude.

Q    When he said "My man," did he say who my man was?

A    No.

Q    All right.  And did he use a name as to who got shot?

A    No, he said, "My man shot" -- you know, shot -- got him, "My man got his," you know, "got his ass."  That's what he said.

12

Q     I mean, you can go ahead and use the exact words, even if they are, you know, off color.  He said, "My man got his ass"?

A     Yeah.

Q     All right.  Now, did you -- did he indicate what he -- the person's ass that he got, his man got, was Butchie?

A     Yeah.  I mean, he ain't say it but once he said it, I knew who they was talking about, because I remember this -- you know, him and Andre's face from that day when it happened.

Q     While he was talking about this, did he say anything more about -- actually, scratch that.  The guys that he was talking to, were they guys from Southwest?

A     I know one of them was from Southwest, I don't know about the other.

Q     Were they -- when those guys were talking to him, to Hawkins, did they talk about Butchie, though?  Did they -- any of them say the name Butchie?

A     Not that I can remember.

Q     Okay.  Now, did you also hear him, this guy Hawkins, at any point talk about any other charges that he's gotten in the past?

A     Yes.

Q     What did he say?

A     A murder charge, another baddie.

13

Q    What did he say about it?

A    He had caught him and another friend was on a murder beat, and his other friend got charged with it, and his got dismissed.

Q    His case got dismissed?

A    Yeah.  I meant, both of them was on it, but he got dismissed of it, and the other one got charged with it.

Q    And did he say who the detective was who'd arrested him for it?

A    Yes.

Q    What name did he use, the detective's name?

A    I just said it -- I forgot his name.  I just said his name, I forgot it.

Q    You just said it when, when you were downstairs talking to the detective?

A    Downstairs, yeah.  Yeah, when we was downstairs.

Q    Was it the name Arrington?

A    Arrington, yeah.  Detective Arrington.

Q    Okay.  All right.  And you just heard him talking about this in regular conversation with other people?

A    Yeah.

MR. WAINSTEIN:  All right.  Okay.  Do you folks have any questions for Mr. Gutrick at this point?  Sir?

A JUROR:  How do you and Andre get along?

THE WITNESS:  I know him from hanging through

14

Southeast, and I used to deal with his sister.

A JUROR:  Right.  But how did you and Andre get along?

THE WITNESS:  Oh, we was all right.  Yeah, we was okay.

BY MR. WAINSTEIN:

Q    You ever have any beefs with Andre?

A    No.

Q    Got any beefs with him now at all?

A    No.

Q    How about this guy Hawkins, you guys beefing at all?

A    No.

MR. WAINSTEIN:  Sir?

A JUROR:  Do you know why Butchie was shot or killed?

THE WITNESS:  No, I do not.

A JUROR:  Do you have any ideas?

THE WITNESS:  No.

MR. WAINSTEIN:  All right.  Okay.  Thank you, sir.

(The witness was excused.)

(Whereupon, at 9:32 a.m., the taking of the testimony in the presence of a full quorum of the Grand Jury was concluded.)

*  *  *  *  *

Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

CERTIFICATE OF REPORTER

I, Amy K. Rose, the reporter for the United States Attorney's Office, do hereby certify that the witness(es) whose testimony appears in the foregoing pages was first duly sworn by the foreperson or the deputy foreperson of the grand jury when there was a full quorum of the grand jury present; that the testimony of said witness(es) was taken by me by stenomask and thereafter reduced to typewritten form; and that the transcript is a true record of the testimony given by said witness(es).

_____
Amy K. Rose
Official Reporter

Diversified Reporting Services, Inc.
1025 VERMONT AVENUE, N.W. SUITE 1250
WASHINGTON, D.C. 20005
(202) 296-2929

App 18

# EXHIBIT B



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C.  20530*

April 22, 2025

John Longstreth
Jonathan M. Cohen
Tre A. Holloway
K&L GATES LLP
1601 K Street NW
Washington, DC 20006

Mark Lanpher
Allen Overy
Sherman Sterling US LLP
1101 New York Avenue NW
Washington, DC 20005

Katherine Stoller
Allen Overy
Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022

Eric Hans Kirchman
15 West Montgomery Avenue
Suite 205
Rockville, MD 20850

David B. Smith
108 North Alfred Street
Alexandria, VA 22314

Re: *United States v. Sean Coates, William K. Sweeney, Jerome Martin, Jr., and Samuel Carson*,
No. 21-3072 (consolidated with Nos. 21-3073, 21-3078, 22-3016, 23-3015); Cr. No. 98-0329

Dear Counsel:

Pursuant to the government's continuing obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and in accordance with the amended protective order issued by the district court on April 21, 2025, I am writing to provide you with additional information related to the identification of Andre Chappelle and Anthony Hawkins as suspects in the murder of Robert "Butchie" Smith. Please find attached the following:

- Superior Court Search Warrant Affidavit

App 20

- Notes of debriefing of Clarence Gutrick
- Debriefing letter concerning Clarence Gutrick
- Notes of Gutrick interview
- Officer notes

Additionally, I am attaching police officer notes mentioning Petey Johnson in relation to the Smith shooting.

As noted previously, we have been unable to locate the entirety of the government's file in this case, and therefore we have not been able to confirm whether the above-referenced material was disclosed to the defense at an earlier date.

If you have any questions about the attached material, please do not hesitate to let me know.

Sincerely,

EDWARD R. MARTIN, JR.
United States Attorney

By:  /s/_____
Elizabeth Gabriel
Assistant United States Attorney

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

PREMISES TO BE SEARCHED; 3188 15th Pl., S.E., Washington, D.C. which is described as a two story red brick row house which has a brown front door and the numerals 3188 are black and affixed to the left of the front door.

In the evening hours of June 16, 1997, Robert Bernard Smith Jr. was standing in the 1300 block of Half St., S.W., Washington, D.C. when a subject armed with a .40 caliber semi-automatic handgun began firing, striking Smith in the body and head. Attempts to revive Smith were unsuccessful and Smith was pronounced dead. The cause of death was gunshot wounds to the head and body and the manner of death was ruled a Homicide.

Investigation into the above Homicide uncovered an eyewitness (W-1) to the event. On July 11, 1997 your affiant met with W-1 at which time W-1 was interviewed and shown a photo spread containing nine MPDC color photographs. As W-1 viewed the array, W-1 came to the photograph in position number four and indicated positively that it was the person W-1 had observed shoot the decedent, Robert Bernard Smith, Jr. The person in the photograph is ANDRE CHAPPELLE, B/M, with a date of birth of 03-22-68 and a P.D.I.D. number of 375-891.

For approximately two years a cooperating individual, who from here on will be referred to as CI, has been providing information to Law Enforcement Officers in the Washington, D.C. area. This CI has provided information which has led to the seizure of substantial amounts of cocaine base and has given truthful testimony which has led to the arrests and convictions of five subjects for narcotics violations.

The CI was interviewed with respect to ANDRE CHAPPELLE at which time the CI told Law Enforcement that at least seven times over the last two weeks the CI has observed CHAPPELLE in possession of a semi-automatic handgun and has observed a handgun in the above described residence. The source also states that CHAPPELLE resides at this location with his girlfriend.

The weapon utilized in the Smith Homicide has not yet been recovered.

Your affiant respectfully requests that a warrant be issued for the location of 3188 15th., Pl., S.E., Washington, D.C.


Subscribed and sworn to me this 23rd day of July 1997


Judge, Superior Court                    Affiant

METROPOLITAN POLICE DEPARTMENT
CRIMINAL INVESTIGATIONS DIVISION


Investigation; Homicide shooting of Federal Witness the night prior to his Grand Jury testimony.

Decedent; Smith, Robert Bernard   HO# 97-705

On July 9, 1997 this writer was contacted by Sgt. Dan Wagner of the Homicide Branch who related that he was contacted by an AUSA who indicated a defendant had expressed an interest in co-operating in a open homicide. Sgt. Wagner determined that the case was the above listed case and contacted this writer, the lead detective.

On the evening of July 9, 1997 this writer, Sgt. Wagner and AUSA Wainstein met at the US Attorneys Office and discussed the preliminary information that Wagner had secured from the defendant/co-operator. The co-operator told Wagner the identities of the gunmen and the circumstances of the shooting of SMITH as observed by said co-operator. The co-operator identified two subjects one as ANDRE' CHAPPELLE and the other as ANTHONY HAWKINS who according to the co-operator, is currently incarcerated with the co-operator. This writer, through jail records and WALES identified both subjects and acquired PDID photos of same.

On the morning of July 11, 1997, this writer and AUSA Wainstein met with the co-operator and his attorney Matthew E. Jaffe. During the interview the co-operator discussed again the details of the homicide and explained the relationship between the gunmen and himself.

After the co-operator explained the circumstances of the homicide this writer showed the co-operator two photo spreads, one which contained HAWKINS and spread two which contained CHAPPELLE. The co-operator made two positive identifications of HAWKINS and CHAPPELLE as the individuals he saw participate in the shooting death of ROBERT SMITH.

Because of the sensitivity of this investigation (murder of a witness) and the ruthlessness of the individuals involved (SW Crew) the decision was made to document the information immediately at which time the co-operator testified in the Grand Jury for AUSA Wainstein.

7/11/97

METROPOLITAN POLICE DEPARTMENT
CRIMINAL INVESTIGATIONS DIVISION

Investigation; Homicide shooting of Federal Witness the night prior to his Grand Jury Investigation.

Decedent; Smith, Robert Bernard   HO# 97-705

Utilizing a FBI informant, information was obtained to acquire a D.C. Superior Court Search Warrant for the home address of the suspect CHAPPELLE based on observations of the informant.

The warrant was based on the suspects possession of a handgun which according to the informant was in the defendants residence located at 3188 15th Pl., S.E. W.D.C.

On 7-30-97, the warrant was executed at the above listed residence only to find that the informant gave the FBI the wrong address and that the correct address was 3186 15th Pl. S.E.

Det Brigidi

7.30.97

7/9/97

Debriefing of Clarence Gutrick, PDID 408-108, on July 7, 1997: Present: Matthew Jaffe, Def co, me, Sgt. Dan Wagner, MPD Homicide (4-D).

W saw two people, Andre Chappelle and Anthony Hawkins, shoot "Butch" in SW at ½ St and O St: Hawkins is from SW, has had gun charges in the past and hangs around Talbot Street, SE. Chappelle is short-5'2" has wavy hair and a mole on his chin. Big time gun seller who sells all over (W bought a gun from Meat awhile ago but gun was stolen from W) and is supplied by a guy named Meat from Condon Terrace-Meat is short w/ light skin and bush (plats?) And was recently shot up and is in a wheelchair.

W was out in street drinking with five people: Andre, Jennifer, Andrea, Bill and Jerome: All are from SW except Andre who is from Md (Southview Apt.).

Bill:5'3", no job, dark, bald-shaves head, 28-29 y.o., hustler but not really a dealer. Bill is closest to Butch. Has a female cousin who is pregnant w/ dark skin and the baby's father is dead. Cousin's name is Shaun Shaun (sp?) And she is 23 yo and lives on 1st and P St., SW at 1500 or 1501 in apt. #21 or #22.

Andre: from Southview, MD, W knows from playing ball, bald, 6'2" to 6' 3", drives a champagne/gold Altima-4dr., 30 yo and works on Capitol Hill

Andrea: lives on first floor of Bill's apt., skinny and on drugs, dark skin, 17 yo, lives with her mom, bro and sister named Tammy.

Jerome: 19 yo, 80 Q St., SW, has a record for selling MJ, 5'5"-big as in thick not fat, lives with his mom-Jackie-who is on drugs.

Jennifer: 1st and O St, SW, in a red brick house next to 1414, brown skin, 18-19 yo and slim, not on drugs but smokes weed.

W saw Chappelle and Hawkins run up and shoot Butch w/ only Chappelle shooting with what W thinks is a 9mm, Hawkins did not appear to have a gun, W heard 3-4 shots fired and took off. Shooting on corner of N and O St, across from school. Shooters came from corner of ½ and O St., SW by South Capital Liquors, and left by running behind the school. W did not see a car.

W is locked up with Hawkins in the same cellblock which is how he learned his name. W recognized Hawkins by face as one of the people out there and W knows Chappelle real well b/c he used to mess with Chappelle's sis, Iris Chappelle, for about 7 months. W used to live on willard Rd. And has hung in SW for two years. Iris used to live at 1822 Summers Rd in Barry Farms. Hawkins has been talking in the cell block but has not confessed crime. W doesn't think Hawkins knows W was out there on scene.

Jeff used to hang with Chappelle and he's locked up as well. Carlos and Joe were the big area dealers but both are locked up now. W has been locked up since 6/24/97.

W doesn't know where on body Butch was shot b/c he ran as shooting started. Butch was into drugs as a coke seller.


TAD

Not a verbatim statement of W but my own record of what he generally told us.
W's current GF is Rosaline Singleterry.

7/2/97

Def co Matthew Jaffe (301-762-8922) called me to tell me that his client has info on a murder of a guy named Butch (no last name) that occurred on ½ St. and O St., SW. Def has the full name of the killer. I called MPD Homicide (727-4347) and spoke with Sgt. Dan Wagner who said that he was aware of the case and would like to talk to def. who is locked up. We arranged a debriefing for 7/7/ at 3:00. Butch was killed a week and a half ago. Wagner said that Phinneas Yong was handling the case but the Safe Streets detail has been disbanded so he's not sure who will be lead detective. Wagner's pager is 539-1941 and he is with 4-D as of Sat. night.

TAD

United States Attorney

**U.S. Department of Justice**

*District of Columbia*

D

J

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

July 7, 1997

Matthew Jaffe, Esquire

Re:    <u>U.S. v. Clarence Gutrick</u>
      F3420-97

Dear Mr. Jaffe:

Your client is charged with escape in the above-referenced cases and it is my understanding that your client is interested in a plea offer. The United States may be willing to make a plea offer to your client on the condition that he agree to participate in a debriefing for the purposes of obtaining information concerning a pending homicide investigation. If, in the sole discretion of the United States Attorney's Office, your client is forthright in this debriefing and provides useful information, that information will be pivotal in determining an appropriate plea offer.

The United States proposes that your client be debriefed by agents of the Metropolitan Police Department or any other law enforcement officers designated by the United States. The United States will agree that any information provided by your client or any statements made by your client during this debriefing will not be directly used against your client in any criminal proceeding, except for in any proceeding involving charges of perjury, false statements, or obstruction of justice. The United States reserves the right to utilize any statement made or information provided by your client for the purposes of impeachment in any criminal proceeding.

Further, the United States reserves the right to make derivative use of any statements made or information provided by your client during the course of the debriefing, and reserves the right to pursue any and all leads based in whole or in part on information provided by your client. Any right which is not explicitly waived by the terms of this letter is reserved.

Nothing in this agreement shall be construed to protect your client

App 28

- 2 -

in any way from prosecution for perjury, false statements or false declarations, obstruction of justice, or any other offenses committed either before or after the date of this agreement.

I look forward to meeting with your client at our offices on July 7, 1997, at 3:00 p.m.  If there are any questions, please call me at (202) 514-7470.

Sincerely,

ERIC H. HOLDER, JR.
United States Attorney

By:  Thomas A. DiBiase
Assistant United States Attorney


I have read this letter and have carefully reviewed each and every part of it with my attorney.  My signature below and my initials on the preceding page indicate that I understand the terms and conditions set forth in this letter and voluntarily agree to them.

_Clarence Dietrick_                    07-07-97
                                      DATE


I am the attorney for the above-referenced defendant.  I have carefully reviewed each and every part of this letter with him and, to the best of my knowledge, he understands its contents and his decision to accept the terms and conditions set forth in this letter is an informed and voluntary one.

_Matthew Jaffe_                        07-07-97
Matthew Jaffe, Esq.                    DATE

w/ Don Wagner
&
Mark Carter

7/7/97    2 people shot Buck

W. out here - drinking beer,

↳ ran from alley - I dude locked up w/ W
↳ Anthony Hawkins - from SW
- gun chase

Andre Chappelle = Tolbot St, SE
w/ girls tsay,
↓
Andre, Donika, Andrea
· Male or dim
Bill Deroppa
- short ~5'2"
↳ Southview + 2nd in SW
- wavy hair
NMB
· sells guns - allower cc W of
meat
Bill down to Buck
- W bought own! Got stolen)

Corner of to School across St.    Supplied
by

Stories came from corner of 1/2 to O.    Beaten
by Corn Cop. Liquor    London
Gotham
left b/h School    Terrace
short, light

1 ~9mm? → Andre Chappelle    skin, bright
no gun on Hawkins    blue, shot up
Hawkins - "talking" in cell block.    recently.
- in wheel-
chair
W. used to live on Willard Rd, unknown Andrea Sr.
Iris Chappelle
Others w/ 2 shooters - Derr - locked up Lorton    1822 Simpson Rd
Carlos, Derr - his shooters - locked up    Berry farm
went w/ Box

W. lockdown since 6/24/97

—doesn't know where we. shot

3-4 shots

Buthaine drugs —coke seller

Bill— 5'3"        , HE
       dark
       bald —shaved
       28-29
       hustler

Cousin— Female street Sharon Sharon —23 yo
                — res.              on 1st + p St, SW
                Mark Skin           1800 or 1501
                —baby's dad dead.   #21 or #22

Tchymary
+ Sro. hs
— lives w/ mom
Andrew — 1st floor of
         Bill's apt.
— skinny — skin
— dark skin
— 17 y.o.

W/ G+ Rosalin Cystkery

Andre —Southview
         —W knows from players b.h.
         — bald
         — 6' 2" → 6'3"
         —drives — champose Altima— 4dr. gold
         — 30 y.o.
         — works C Capitol

Jerome— 19 y.o.
         — 80 Q St. SW
         — record —selling MU
         — 5'3" —Big thick
         — lives w/ mom —Jackie "on it."

Ben.— 1st St, SW
       — 1st + O
"clean" —house— red
Smokes            brick
weed    5, 1414
       — brown
       — 18-19 y.o.
       — slim



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

PREMISES TO BE SEARCHED; 3188 15th Pl., S.E., Washington, D.C. which is described as a two story red brick row house which has a brown front door and the numerals 3188 are black and  affixed to the left of the front door.

In the evening hours of June 16, 1997, Robert Bernard Smith Jr. was standing in the 1300 block of Half St., S.W., Washington, D.C. when a subject armed with a .40 caliber semi-automatic handgun began firing, striking Smith in the body and head. Attempts to revive Smith were unsuccessful and Smith was pronounced dead. The cause of death was gunshot wounds to the head and body and the manner of death was ruled a Homicide.

Investigation into the above Homicide uncovered an eyewitness (W-1) to the event. On July 11, 1997 your affiant met with W-1 at which time W-1 was interviewed and shown a photo spread containing nine MPDC color photographs. As W-1 viewed the array, W-1 came to the photograph in position number four and indicated positively that it was the person W-1 had observed shoot the decedent, Robert Bernard Smith, Jr. The person in the photograph is ANDRE CHAPPELLE, B/M, with a date of birth of 03-22-68 and a P.D.I.D. number of 375-891.

For approximately two years a cooperating individual, who from here on will be referred to as CI, has been providing information to Law Enforcement Officers in the Washington, D.C. area. This CI has provided information which has led to the seizure of substantial amounts of cocaine base and has given truthful testimony which has led to the arrests and convictions of five subjects for narcotics violations.

The CI was interviewed with respect to ANDRE CHAPPELLE at which time the CI told Law Enforcement that at least seven times over the last two weeks the CI has observed CHAPPELLE in possession of a semi-automatic handgun and has observed a handgun in the above described residence. The source also states that CHAPPELLE resides at this location with his girlfriend.

The weapon utilized in the Smith Homicide has not yet been recovered.

Your affiant respectfully requests that a warrant be issued for the location of 3188 15th., Pl., S.E., Washington, D.C.

Subscribed and sworn to me this 23rd day of July 1997

-------------------------
Judge, Superior Court

-------------------------
Affiant

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION-FELONY BRANCH

In Re: Search Warrant for the Premises   :
       at 3188 15th Place, S.E.
                                          :

## APPLICATION TO SEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court enter an Order sealing the Government's Affidavit in Support of the search warrant for the premises at 3188 15th Place, S.E.  The affidavit refers to an ongoing investigation into a murder and also to a source ("the CI") who has provided information to law enforcement officers in this and other ongoing criminal investigations.  The integrity of the murder investigation and the safety of this source would be severely jeopardized by disclosure of this affidavit.  Although the affidavit refers to him/her simply as "the CI," the subject of the affidavit would likely be able to figure out his identity from the information he/she provided to the police.

Therefore, the government respectfully requests that the affidavit in support of the warrant and this instant motion be sealed.

Respectfully submitted,

MARY LOU LEARY
UNITED STATES ATTORNEY

KENNETH L. WAINSTEIN
Assistant United States Attorney
Homicide Section

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION-FELONY BRANCH

In Re: Search Warrant for the Premises   :
       at 3188 15th Place, S.E.
                                         :

ORDER

This matter is before the Court upon the ex parte application by the government for an order sealing its affidavit in support of a search warrant for the premises at 3188 15th Place, S.E.  It is hereby;

ORDERED, that the affidavit in support of a search warrant for the premises at 3188 15th Place, S.E. and the government's ex parte motion to seal be sealed.

_____
JUDGE, SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

App 35

1-166E-WF-200828
1-166E-WF-200828 SUB A
1-166E-WF-179889 SUB A


SOUTHWEST CREW;
ET AL;
ITAR-CRIMES OF VIOLENCE;
OO:WFO


On 7/7/97, the following infromation was provided to SA Vincent B. Lisi by WF-15807-SI-C:

Andre Chappelle has a close asociate named "Tony", but the source does not know his last name.  Within the past month, Andre shot with a shotgun and  killed a young male near Martin Luther King Ave., SE.  "Nate", which is short for Nathaniel, and Mike were witnesses to the murder.  Nate is in his early to mid twenties and is extremely thin was recently released from a drug treatment program..  He hangs in the area where the murder occurred.  Mike also lives in the area and drives an older model Cadillac that is decorated with a lot of chrome  like an old "pimp" car.

Andre lives with his girlfriend at 3188 15TH Place, SE.  He has been driving a grey Suburban that is approximately a 1993 model.  Andre always has a hand gun when he is driving or in the house.   Within the past several weeks, the source has seen Andre with approximately two kilos of crack in his possession.

1354 hrs        7-11-97
Dan Wagner
Matthew E. Jaffe
Clarence Gutrick

Recognize 2

463-402 — From shooting

436-144 — From Jail now

375-891        ANDRE CHAPPELLE
               SAW SHOOT Butchie

458-258        AD From SW Jail now

1358 hrs

METROPOLITAN POLICE DEPARTMENT
CRIMINAL INVESTIGATIONS DIVISION

Investigation; Homicide shooting of Federal Witness the night prior to his Grand Jury testimony.

Decedent; Smith, Robert Bernard   HO# 97-705

On July 9, 1997 this writer was contacted by Sgt. Dan Wagner of the Homicide Branch who related that he was contacted by an AUSA who indicated a defendant had expressed an interest in co-operating in a open homicide. Sgt. Wagner determined that the case was the above listed case and contacted this writer, the lead detective.

On the evening of July 9, 1997 this writer, Sgt. Wagner and AUSA Wainstein met at the US Attorneys Office and discussed the preliminary information that Wagner had secured from the defendant/co-operator. The co-operator told Wagner the identities of the gunmen and the circumstances of the shooting of SMITH as observed by said co-operator. The co-operator identified two subjects one as ANDRE' CHAPPELLE and the other as ANTHONY HAWKINS who according to the co-operator, is currently incarcerated with the co-operator. This writer, through jail records and WALES identified both subjects and acquired PDID photos of same.

On the morning of July 11, 1997, this writer and AUSA Wainstein met with the co-operator and his attorney Matthew E. Jaffe. During the interview the co-operator discussed again the details of the homicide and explained the relationship between the gunmen and himself.

After the co-operator explained the circumstances of the homicide this writer showed the co-operator two photo spreads, one which contained HAWKINS and spread two which contained CHAPPELLE. The co-operator made two positive identifications of HAWKINS and CHAPPELLE as the individuals he saw participate in the shooting death of ROBERT SMITH.

Because of the sensitivity of this investigation (murder of a witness) and the ruthlessness of the individuals involved (SW Crew) the decision was made to document the information immediately at which time the co-operator testified in the Grand Jury for AUSA Wainstein.

METROPOLITAN POLICE DEPARTMENT
CRIMINAL INVESTIGATIONS DIVISION

Investigation; Homicide shooting of Federal Witness the night
prior to his Grand Jury Investigation.

Decedent; Smith, Robert Bernard  HO# 97-705

Utilizing a FBI informant, information was obtained to
acquire a D.C. Superior Court Search Warrant for the home address
of the suspect CHAPPELLE based on observations of the informant.

The warrant was based on the suspects possession of a handgun
which according to the informant was in the defendants residence
located at 3188 15th Pl., S.E. W.D.C.

On 7-30-97, the warrant was executed at the above listed
residence only to find that the informant gave the FBI the wrong
address and that the correct address was 3186 15th Pl. S.E.

(1327. First S OW)

Phinias,

Robbie Saunders of

1-D Detectives called.

He stated that

the caller told

him that the

Dec. was w/

two people all

weekend. Thier

names are Petey

& Sasso Johnson.

The caller thinks

that they might

over

have some involvement in the case.

This "Petey" & Jason Johnson were w/ the Dec all week & weekend until the shoot).

R Jackson

6/16/97

22:11 hrs

# EXHIBIT C



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

---

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C.  20530*

May 7, 2025

John Longstreth
Jonathan M. Cohen
Tre A. Holloway
K&L GATES LLP
1601 K Street NW
Washington, DC 20006

Mark Lanpher
Allen Overy
Sherman Sterling US LLP
1101 New York Avenue NW
Washington, DC 20005

Katherine Stoller
Allen Overy
Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022

Eric Hans Kirchman
15 West Montgomery Avenue
Suite 205
Rockville, MD 20850

David B. Smith
108 North Alfred Street
Alexandria, VA 22314

Re: *United States v. Sean Coates, William K. Sweeney, Jerome Martin, Jr., and Samuel Carson*,
No. 21-3072 (consolidated with Nos. 21-3073, 21-3078, 22-3016, 23-3015); Cr. No. 98-0329

Dear Counsel:

Pursuant to the government's continuing obligation under *Brady v. Maryland*, 373 U.S. 83
(1963), and in accordance with the amended protective order issued by the district court on
April 21, 2025, I am writing to provide you with additional information related to the
identification of Andre Chappelle as a suspect in the murder of Robert "Butchie" Smith.

I recently came across information in the government's file indicating that another witness,
Michael Farrar (DOB: 1/6/59), identified Chappelle as the shooter. Farrar claimed that he

witnessed the shooting from a block away. He initially told law enforcement that he observed two men participate in the shooting, though only one (Chappelle) had a gun. Farrar selected Chappelle's photo from a photo array. Shortly before trial, however, Farrar told prosecutors that the shooter was actually Sam Carson. Farrar explained that he did not initially identify Carson because Carson, with whom Farrar was incarcerated at the D.C. Jail, told Farrar that he "better keep his mouth shut" about what he had seen. It is our information that Farrar died at the D.C. Jail in 2004.

Because we still have not located all of the boxes in the government's case file, I have been unable to ascertain whether this information was previously disclosed to the defense, consistent with the prosecution team's practice of readily disclosing all known potential *Brady* and *Giglio* material to the court and counsel. As with our recent disclosures regarding Clarence Gutrick, I am providing this information in the unlikely event that it was not disclosed at an earlier time.

If you have any questions about this matter, please do not hesitate to let me know.

Sincerely,


EDWARD R. MARTIN, JR.
United States Attorney


By: /s/_____
Elizabeth Gabriel
Assistant United States Attorney

# EXHIBIT D



U.S. Department of Justice

Jeanine F. Pirro
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C.  20530*

March 10, 2026

John Longstreth
Jonathan M. Cohen
Tre A. Holloway
K&L GATES LLP
1601 K Street NW
Washington, DC 20006

Mark Lanpher
Allen Overy
Sherman Sterling US LLP
1101 New York Avenue NW
Washington, DC 20005

Katherine Stoller
Allen Overy
Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022

Eric Hans Kirchman
15 West Montgomery Avenue
Suite 205
Rockville, MD 20850

David B. Smith
108 North Alfred Street
Alexandria, VA 22314

Re: *United States v. Sean Coates, William K. Sweeney, Jerome Martin, Jr., and Samuel Carson*,
No. 21-3072 (consolidated with Nos. 21-3073, 21-3078, 22-3016, 23-3015)

Dear Counsel:

Pursuant to your request and the government's continuing obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), I am writing to provide you with further information related to government witness Michael Farrar. The FBI is currently reviewing its files related to this case. Once FBI has completed their review, I will provide any responsive documents.

The government is providing one 302 related to a May 26, 1998 investigation.

App 46

In addition, the government is providing the following information:

- In a November 29, 2001 letter from Michael Farrar's counsel to the government, Farrar's counsel wrote:

> On December 1, 2000, Farrar and I met with you, Zeidenberg, and Kane. At this meeting, Farrar stated for the first time that Carson murdered Butchie and that Farrar was a witness. Given the reaction of you, Zeidenberg, and Kane, it was obvious that something quite dramatic had occurred. You may recall that I uttered an expletive and asked to meet with Farrar privately. This information concerning Carson, of course, became a hot topic from that point on, and Farrar has not backed off the allegation that Carson killed Butchie. We discussed the issue of Butchie's murder at length during that December 1st meeting. Farrar also repeated information provided previously that Draper committed the triple murder; that Draper provided that information to Butchie (who told Farrar and, it turns out, the FBI); that Butchie told Draper that Butchie told Farrar that Draper committed the murders; that Farrar was then on guard to shoot first given Butchie's warning (Farrar explained that this he why he obtained the gun found (unloaded) in his car on December 20, 1997); and that Sweeney told Farrar that Sweeney ordered Butchie's hit because Butchie was a snitch and to help out Draper. At the end of this meeting, you and Zeidenberg expressed concern over the safety of Farrar and his family.

- In an undated, internal departure request memorandum (for defendant Michael Farrar), AUSA Anjali Chaturvedi wrote:

> Before Farrar could take any preemptive steps in regards to Sweeney, Butchie was murdered in Southwest. Farrar was present, around the corner, when this day-time murder occurred. According to Farrar's initial statements to law enforcement, he observed the shooting of Butchie from about one block away. Farrar told detectives that he observed two men participate in the murder, although only one had a gun. Farrar identified the shooter as being someone named Andre Chappelle. Farrar picked Chappelle's photograph from a photo array. Farrar could not recognize the second man, who basically led the shooter to and from the scene.[1]
>
> Within days of Butchie's murder, Farrar was approached by Sweeney's father, Jim Sweeney. The elder Sweeney made several highly incriminating statements to Farrar. In substance, Jim Sweeney admitted to being responsible for arranging the murder of Butchie. Jim Sweeney told Farrar that he (Sweeney) was sorry that Butchie had to be killed, but that his son (Draper) was not going to go to jail for anybody, and that Butchie had to go because he was snitching. Jim Sweeney said that he was not going to let his son go to jail.

> During a witness conference with Farrar shortly before trial, Farrar threw us a curveball. While telling us about Butchie's murder, he stated that the shooter was not Andre Chappell – as he had maintained all along – but was actually Sam Carson. According to Farrar, he did not initially tell us about Carson because Carson was incarcerated with him at the D.C. Jail and had confronted Farrar around the same time that Kenny Robinson had visited Farrar at the jail. According to Farrar, Carson said that Farrar had better keep his mouth shut about what he had seen.
>
> We never knew quite what to make of Farrar's about-face. While his later version of events was obviously more "helpful" to our case, we had serious doubts as to its veracity. Particularly since another witness (Gutrick) had previously corroborated Farrar when Farrar was pointing the finger at Andre Chappelle. Because of these doubts, and because of the impeachment material we would have had to turn over had we called Farrar as a witness, we decided not to call him at during the trial.

> [1] Farrar's version of events was corroborated by a second witness named Clarence Gutrick. Gutrick also claimed to have witnessed the murder and identified two participants. Gutrick identified the shooter as being Andre Chappelle and identified the second participant as someone named Anthony Hawkins.

- In a December 9, 2001 internal departure request memorandum (for defendant Michael Farrar) written by AUSA Anjali Chaturvedi. She wrote:
  - o In reference to a March 23, 1998 debriefing with Farrar:

> At some point in the month of December, 1997, Sweeney found out that Butchie was cooperating. Butchie was killed in June, 1998. After Butchie was killed, Farrar had a conversation with Sweeney, who told Farrar that "we had to send somebody at him." At that point, Draper was already in jail. Draper had told Sweeney that Butchie was snitching. Draper's friends were out to kill Butchie. Farrar was a witness to the killing of Butchie. There was additional discussion at the meeting concerning the people involved in Butchie's murder.
>
> Regarding the shooting of Butchie, Farrar stated that Jason ran into the house before the shooting. Earlier that day Jason was in the area before Butchie got killed. Jason went over to use the phone. Sabrina, Harold, and Roland were witnesses. Kim Henry also might have been out there. Pinky was around also. Pinky is Kim's buddy. There was a guy out there running covering his face. Mike thought that maybe they were trying to get him as well.

  - o In reference to a December 1, 2000 meeting with Farrar (this appears to be copied from a letter written by Farrar's own attorney):

> On December 1, 2000, Farrar and I met with you, Zeidenberg, and Kane. At this meeting, Farrar stated for the first time that Carson murdered Butchie and that Farrar was a witness. Given the reaction of you, Zeidenberg, and Kane, it was obvious that something quite dramatic had occurred. You may recall that I uttered an expletive and asked to meet with Farrar privately. This information concerning Carson, of course, became a hot topic from that point on, and Farrar has not backed off the allegation that Carson killed Butchie. We discussed the issue of Butchie's murder at length during that December 1st meeting. Farrar also repeated information provided previously that Draper committed the triple murder; that Draper provided that information to Butchie (who told Farrar and, it turns out, the FBI); that Butchie told Draper that Butchie told Farrar that Draper committed the murders; that Farrar was then on guard to shoot first given Butchie's warning (Farrar explained that this he why he obtained the gun found (unloaded) in his car on December 20, 1997); and that Sweeney told Farrar that Sweeney ordered Butchie's hit because Butchie was a snitch and to help out Draper. At the end of this meeting, you and Zeidenberg expressed concern over the safety of Farrar and his family.

If you have any questions about the attached material, please do not hesitate to let me know.

Sincerely,

JEANINE F. PIRRO
United States Attorney

By: /s/ _____
Rachel Forman
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES<br>    *Plaintiff*,<br><br>v.<br><br>SEAN COATES, WILLIAM K. SWEENEY, JEROME MARTIN, JR., AND SAMUEL CARSON,<br>    *Defendants*. | Criminal No. 21-3072 (consolidated with Nos. 21-3073, 21-3078, 22-3016, 22-3016); Cr. No. 98-0329 |

**DECLARATION OF LEXI NEGIN CHRIST**
**IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL § 2255 MOTION**

I, Lexi Negin (formerly Christ), being of majority age and competent mind, declare as follows:

1.    I was trial counsel for Samuel Carson in United States v. Coates, et al., Nos. 98-cr-00329-RCL (D.D.C.). My co-counsel for Mr. Carson was Joseph E. Beshouri.

2.    I am certain that Mr. Beshouri and I never received and never knew about the *Brady* material recently disclosed to the current appellate counsel for defendants-appellants Coates, Sweeney, Martin and Carson by the government's appellate counsel, AUSA Elizabeth Gabriel. I am informed that the new disclosures were made on April 11, April 22, and May 7, 2025.

1

3.      The *Brady* material I am referring to includes the grand jury testimony of Clarence Gutrick, an eyewitness to the murder of Robert ("Butchie") Smith, who told the government that Smith was murdered by Andre Chappelle.  Additionally the *Brady* material includes the fact that Michael Farrar, another eyewitness to the Smith murder, was interviewed by the government.  I understand that the transcripts reflect that Special Agent Lisi testified that he had never interviewed Farrar about Smith's murder when he knew or should have known, as the case agent, that Farrar *was* interviewed by government agents about Smith's murder and that Farrar also told the government that the murder was committed by Chappelle, not by Carson. In other words, Farrar corroborated Gutrick and identified Chappelle as the person who committed the Smith murder. The government presented no evidence that Chappelle was acting at the behest of Carson or any of the defendants.  At the trial, no one testified that Chappelle had committed the murder of Smith.  Apparently the government deliberately suppressed the exculpatory evidence that Chappelle was identified by two eyewitnesses as the murderer, despite multiple and ongoing *Brady* requests by all defense counsel.  Rather, the government's evidence and theory presented at trial, contrary to the facts known to the government at the time, was that Mr. Carson murdered Smith.

4.      I believe that had trial counsel been given the new disclosures, it would have fundamentally altered the trial of Carson and his co-defendants for the reasons stated in appellants' Supplemental § 2255 Motion, which I have read in draft form. In particular, the defense would have been able use the suppressed evidence to cross-examine James Montgomery, the government's "star" witness ---who spent ten days on the witness

2

stand-- about the veracity of his testimony alleging Carson was the person who murdered Smith, further significantly undermining Montgomery's credibility generally.   Defense counsel would have been able to seek to compel Gutrick and Farrar to testify at trial in direct contradiction to Montgomery's testimony.

5.      The ruling that Mr. Carson was responsible for the murder of Smith, then allowed the government to present FBI Special Agent Lisi to testify to extensive hearsay statements by Mr. Smith under Rule 804(b)(6).  The trial court made this critical ruling without the corroborated evidence that it was Chappel, not Carson, who murdered Smith. The 804(b)(6) ruling was made on a faulty premise due to the undisclosed evidence.  But for that ruling that relied on the finding that Mr. Carson murdered Smith,  the jury would not have heard the hearsay statements from Smith (through the well presenting Agent Lisi) implicating the defendants in several of the charged offenses.   I am prepared to testify to these facts and opinions at an evidentiary hearing in the District of Columbia. Further, I can provide testimony in support of Mr. Carson's ineffective assistance of counsel claim as provided in my affidavit in support of that claim that is in the appellants' joint initial brief in the D.C. Circuit.

6.      I, the declarant, am not currently suffering from any infirmities and am competent to testify to the facts set forth herein.


I declare, under penalty of perjury, that the foregoing is true and correct.


Executed on: ___2/2/2026_____
                        (date)

3

*Lexi Negin Christ*

LEXI NEGIN (formerly, CHRIST)

4