**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| United States of America<br><br>v.<br><br>Samuel Carson, Sean Coates,<br>Jerome Martin, Jr., and William K.<br>Sweeney,<br><br>Defendants. | Case No. 1:98-cr-329-6-RCL |

---

# APPENDIX
in support of Defendants' Supplemental § 2255 Motion

---

# VOLUME 4 OF 9

## District Court Docket Entries (Pretrial Motions)

Docket Sheet, *United States v. Coates*, No. 1:98-cr-00329-RCL-6 (D.D.C.). ...........................319

Dkt. 71 – Defendant William K. Sweeney's Motion to Compel Discovery (February 9, 1999) ......
...............................................................................................................................................406

Dkt. 228 – Defendant William K. Sweeney's Motion to Compel Production of Mitigation
Materials (October 28, 1999).........................................................................................433

Dkt. 293 – Defendant William K. Sweeney's Addendum to Motion to Compel Discovery (May
18, 2000) .........................................................................................................................459

Dkt. 321 – Order Denying Defendant Sweeney's Motion to Compel Discovery; Directing Ex
Parte Review of James Montgomery Investigative File (Jackson, J.) (June 16, 2000) .........471

Dkt. 322 – Government's Notice of Submission of Ex Parte Materials to the Court Regarding
James Montgomery (June 30, 2000) ......................................................................473

Dkt. 328 – Defendant Samuel Carson's Motion to Compel Disclosure of Evidence Subject to
Suppression (July 16, 2000) ...........................................................................................479

Dkt. 340 – Defendant William K. Sweeney's Third Motion to Compel Discovery (July 17, 2000)
...............................................................................................................................482

Dkt. 341 – Defendant William K. Sweeney's Response in Opposition to Government's Motion
to Admit Out-of-Court Statements of Murdered Witnesses (July 17, 2000) ........................491

Dkt. 342 – Defendant Samuel Carson's Motion for Leave to Join Sweeney's Third Motion to
Compel Discovery and Related Motions (July 17, 2000) .......................................................504

Dkt. 347 – Defendant Sean Coates' Motion for Leave to Late-File Pretrial Motions (July 24,
2000) ...............................................................................................................................509

Dkt. 350 – Defendant Sean Coates' Motion for Leave to Join Motions Filed by Co-Defendants
(July 24, 2000) ...............................................................................................................512

Dkt. 359 – Defendant Jerome Martin's Motion for Leave to Join Sweeney's Third Motion to
Compel Discovery and Related Motions (August 22, 2000) ...............................................515

Dkt. 360 – Government's Response in Opposition to Defendants' Pretrial Motions (August 18,
2000) ...............................................................................................................................519

APPEAL,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:98−cr−00329−RCL−6

Case title: UNITED STATES OF AMERICA v. HILL et al     Date Filed: 09/18/1998

Related  Case:   1:08−cv−00321−RCL                      Date Terminated: 02/07/2002

Assigned to: Chief Judge Royce C. Lamberth

Appeals court case number: 21−3072

### Defendant (6)

| | | |
|---|---|---|
| **SEAN COATES**<br>*TERMINATED: 02/07/2002*<br>*also known as*<br>BIRDY | represented by | **SEAN COATES**<br>Reg. No. 01181−748<br>CUMBERLAND<br>FEDERAL CORRECTIONAL INSTITUTION<br>Inmate Mail/Parcels<br>P.O. BOX 1000<br>CUMBERLAND, MD 21501<br>PRO SE |

**Frederick D. Jones , III**
LAW OFFICES OF FREDERICK J. JONES
23317 Brewers Tavern Way
Clarksburg, MD 20871
(301) 916−4399
Fax: (301) 916−4399
*TERMINATED: 12/01/2012*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Gabrielle Leeman**
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue, NW
Washington, DC 20005
202−508−8048
Email: gabrielle.leeman@aoshearman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Henry Winchester Asbill**
SCHERTLER ONORATO MEAD & SEARS
555 13th Street NW
Suite 500 West
Washington, DC 20004
202−628−4199
Fax: 202−628−4177
Email: hasbill@schertlerlaw.com
*TERMINATED: 02/07/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Mark David Lanpher**
ALLEN OVERY SHEARMAN STERLING US LLP

App 319

1101 New York Avenue, NW
Washington, DC 20005
202–508–8120
Email: mark.lanpher@aoshearman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Veronice A Holt , I**
Veronice A. Holt, ESQ.
3003 Van Ness NW
Ste W1111
Washington, DC 20008
202–244–2659
Email: VERONICEHOLT@MSN.COM
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 21:846 CONSPIRACY TO DISTRIBUTE NARCOTICS; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances. (1) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 21:846 CONSPIRACY TO DISTRIBUTE NARCOTICS; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substance. (1rrs) | The deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. Imposition of a fine on all other counts is waived. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 21:846; CONSPIRACY TO DISTRIBUTE NARCOTICS; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances. (1rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1962(d) RACKETEERING; Conspiracy to Participate in a Racketeer Influenced Corrupt Organization. (2) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1962(d) RACKETEERING – NARCOTICS; Conspiracy to Participate in Racketeer Influenced Corrput Organization. (2rrs) | The deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. Imposition of a fine on all other counts is waived. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 18:1962(d); RACKETEERING; Conspiracy to Participate in | Oral motion of the govt. to dismiss the remaining counts granted. |

**App 320**

| | |
|---|---|
| Racketeer Influenced Corrupt Organization. (2rs) | |
| 22 D.C.C. 2401 and 3202, 105 MURDER, FIRST DEGREE; First Degree Murder While Armed; Aiding and Abetting. (10rrs) | VERDICT OF NOT GUILTY. |
| 18:1959(a)(3) & (5); 2 RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity; Aiding and Abetting. (11rrs) | The deft. is sentenced to 240 months on counts 11rrs and 24rrs, to run concurrently with each other and all other counts; followed by 3 years supervised release on each count, to run concurrently by the counts and concurrently with the remaining coun ts. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 22 DC Code 105, 2401 and 3202; MURDER, FIRST DEGREE; First–Degree Murder While Armed. (11rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:2 and 1959(a)(3) and (5); RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (12rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1959(a)(3)&(5), 18:2 THREATENING TO COMMIT CRIME OF VIOLENCE; Violent Crime in Aid of Racketeering Activity; Aiding and Abetting. (19) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1959(a)(3) & (5); 2 RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (24rrs) | The deft. is sentenced to 240 months on counts 11rrs and 24rrs, to run concurrently with each other and all other counts; followed by 3 years supervised release on each count, to run concurrently by the counts and concurrently with the remaining coun ts. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 18:1959(a)(1) RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (25rrs) | The deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. Imposition of a fine on all other counts is waived. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 18:1959(a)(1) RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (26rrs) | The deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. Imposition of a fine on all other counts is waived. |

|  |  |
|---|---|
|  | A special assessment of $100.00 is imposed on each count and is due immediately. |
| 18:1959(a)(1) RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (27rrs) | The deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. Imposition of a fine on all other counts is waived. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 22 DC 105, 501 and 3202; AGGRAVATED OR FELONIOUS ASSAULT; Assault with Intent to Kill While Armed. (30rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:2 and 1959(a)(3) and (5); RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crime in Aid of Racketeering Activity. (31rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1959(a)(1); RACKETEERING ACTIVITY, MURDER/KIDNAPPING; Violent Crimes in Aid of Racketeering Activity. (32rs–34rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:924(c); 2 VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm; Aiding and Abetting. (34rrs) | The deft. is sentenced to 240 months imprisonment on each of counts 34rrs, 35rrs, 36rrs and 37rrs, to run consecutively to each other and to counts 1rrs, 2rrs, 25rrs, 26rrs, 27rrs and 28rrs; followed by 5 years supervised release on each count, to run concurrently by the counts. A special assessment of $100.00 is imposed on each count and is due immediately. |
| 22 D.C.C. 501 and 3202, 105 AGGRAVATED OR FELONIOUS ASSAULT; Assault with Intent to Kill While Armed; Aiding and Abetting. (35) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:2 and 924(c); VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm. (35rs–47rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:1959(a)(3)&(5), 18:2 THREATENING TO COMMIT CRIME OF VIOLENCE; Violent Crime in Aid of Racketeering Activity; Aiding and Abetting. (36) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 22 D.C.C. 3204(b); 105 FIREARMS AND WEAPONS – CONCEALED WEAPON; Possession of a Firearm During Crime of Violence or Dangerous Offense; Aiding and Abetting. | VERDICT OF NOT GUILTY. |

(38rrs)

| | |
|---|---|
| 18:924(c)(1), 18:2 VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm; Aiding and Abetting. (40) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 22 DC Code 105 and 3204(b); FIREARMS AND WEAPONS – CONCEALED WEAPON; Possession of Firearm During Crime of Violence or Dangerous Offenses. (48rs–58rs) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:924(c)(1), 18:2 VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm; Aiding and Abetting. (49) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 18:2 and 924(c); VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm. (52s) | Dismissed from retyped indictment. |
| 18:2 and 924(c); VIOLENT CRIME/DRUGS/MACHINE GUN; Use of a Firearm. (59s–60s) | Dismissed from retyped indictment. |
| 22 D.C.C. 3204(b), 105 FIREARMS AND WEAPONS – CONCEALED WEAPON; Possession of a Firearm During a Crime of Violence; Aiding and Abetting. (60) | Oral motion of the govt. to dismiss the remaining counts granted. |
| 22 DC Code 105 and 3204(b); FIREARMS AND WEAPONS – CONCEALED WEAPON; Possession of Firearm During Crime of Violence or Dangerous Offenses. (69s–70s) | Dismissed from retyped indictment. |
| 22 DC Code 105 and 3204(b); FIREARMS AND WEAPONS – CONCEALED WEAPON; Possession of Firearm During Crime of Violence or Dangerous Offenses. (77s) | Dismissed from retyped indictment. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

**UNITED STATES OF AMERICA**                represented by **Angela S. George**
U.S. DEPARTMENT OF JUSTICE
Office of International Affairs
1301 New York Avenue, NW
Suite 835
Washington, DC 20017
(202) 514–4653
Email: angela.george@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Anjali Chaturvedi**
BP
1101 New York Avenue, NW
Suite 700
Washington, DC 20005
(202) 346–8527
Email: achaturvedi@nixonpeabody.com
*TERMINATED: 07/02/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Barry Wiegand**
U.S. ATTORNEY'S OFFICE
Special Proceedings Section
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7723
Fax: (202) 514–8784
Email: william.b.wiegand@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Carolyn Kolben**
AMPLITUDE LEGAL PLLC
Special Proceedings
2200 Pennsylvania Avenue, N.W.
Fourth Floor
East Wing
Washignton, DC 20037
202–819–0172
Email: ckolben@amplitudelegal.com
*TERMINATED: 11/10/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Chrisellen Rebecca Kolb**
DOJ–USAO
601 D Street NW
Room 6–232
Washington, DC 20530
202–252–6833
Email: Chrisellen.R.Kolb@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ethan L. Carroll**

App 324

DOJ–USAO
555 4th Street NW
Washington, DC 20530
202–252–7789
Email: ethan.carroll@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**John Timothy Scannell , Jr.**
DOJ–USAO
US Attorney's Office
601 D Street NW
Washington, DC 20001
202–815–8612
Email: john.scannell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Julia Renee Cosans**
DOJ–USAO
601 D Street
601 D Street
Washington, DC 20530
202–252–2654
Email: julia.cosans@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Kenneth Leonard Wainstein**
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
(202) 962–7141
Fax: (202) 962–7099
Email: ken.wainstein@davispolk.com
*TERMINATED: 07/02/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Margaret J. Chriss**
Special Proceedings Section
950 Pennsylvania Avenue, N.W.
Suite 3243
Washington, DC 20530
202–514–8607
Email: margaret.chriss2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Ann Snow**
U.S. ATTORNEY'S OFFICE
Special Proceedings Section
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7574
Fax: (202) 252–7559
Email: mary.ann.snow@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Pamela Stever Satterfield**
U.S. ATTORNEYS OFFICE FOR THE
DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20530
(202) 252–7578
Email: pamela.satterfield@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Peter Robert Zeidenberg**
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
(202) 857–6139
Fax: (202) 857–6395
Email: peter.zeidenberg@afslaw.com
*TERMINATED: 07/02/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Rachel Forman**
DOJ–USAO
601 D St. NW
Washington, DC 20001
202–252–6916
Email: rachel.forman2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Robert D. Okun**
UNITED STATES ATTORNEY'S
OFFICE
Special Proceedings Division
Judiciary Center Building
555 Fourth Street, NW
Room 10–435
Washington, DC 20530
(202) 252–6603
Fax: (202) 252–7559
Email: robert.okun@usdoj.gov
*TERMINATED: 07/02/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**John Perry Mannarino**
USAO
601 D Street, NW
Suite 6.1531
Washington, DC 20530
202–252–6781
Email: john.mannarino@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/18/1998 | 1 | INDICTMENT filed against VINCNET HILL (1) count(s) 1, 2, 3, JEROME MARTIN (2) count(s) 1, 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, SAMUEL CARSON (3) count(s) 1, 2, 5, 6, 7, WILLIAM KYLE SWEENEY (4) count(s) 1, 2, MAURICE PROCTOR (5) count(s) 1, 2, SEAN COATES (6) count(s) 1, 2, REGINALD |

| | | |
|---|---|---|
| | | DARNELL SWITZER (7) count(s) 1, 2, 4, WILLIAM HILL (8) count(s) 1, 2, PAUL FRANKLIN (9) count(s) 1, 2, DONALD NICHOLS (10) count(s) 1, 2. (erd) (zjpb). (Entered: 10/20/1998) |
| 09/18/1998 | 1 | CONTINUATION OF INDICTMENT entry against VINCNET HILL (1) count(s) 19, JEROME MARTIN (2) count(s) 16, 17, WILLIAM KYLE SWEENEY (4) count(s) 19, MAURICE PROCTOR (5) count(s) 18, 19, SEAN COATES (6) count(s) 19s. (erd) (Entered: 10/20/1998) |
| 09/18/1998 | 1 | CONTINUATION OF INDICTMENT entry against VINCNET HILL (1) count(s) 21, 23, 24, 25, 40, 42–43, 54–55, JEROME MARTIN (2) count(s) 28, 29, 45, 57, SAMUEL CARSON (3) count(s) 20, 21, 31, 32, 33, 34, 35, 36, 41, 47, 48, 49, 53, 58–59, 60, WILLIAM KYLE SWEENEY (4) count(s) 26, 27, 37, 38, 39, 40, 44, 50–52, 56, MAURICE PROCTOR (5) count(s) 40, SEAN COATES (6) count(s) 35, 36, 40, 49, 60, WILLIAM HILL (8) count(s) 30, 46. (erd) (Entered: 10/21/1998) |
| 09/18/1998 | 1 | CONTINUATION OF INDICTMENT entry against VINCNET HILL (1) count(s) 61, 63–64, 65, 66–68, 71, 73, 74–75, 78, 79, 80, 81, 83, JEROME MARTIN (2) count(s) 65, 70, 72, 85, REGINALD DARNELL SWITZER (7) count(s) 84, WILLIAM HILL (8) count(s) 72, 73, 82, PAUL FRANKLIN (9) count(s) 69, 76–77, 79, 81, DONALD NICHOLS (10) count(s) 62, 86–87. (erd) (Entered: 10/21/1998) |
| 09/18/1998 | | CASE ASSIGNED to Judge Thomas P. Jackson as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS. (erd) (Entered: 10/21/1998) |
| 09/22/1998 | 9 | ORDER by Magistrate Judge John M. Facciola as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS : to unseal case (N) (erd) (Entered: 11/24/1998) |
| 09/25/1998 | 27 | WRIT OF HABEAS CORPUS AD PROSEQUENDUM issued to Warden, Prince Georges County Detention Facility, Upper Marlboro, Maryland, for production of Sean Antwan Coates, for hearing on 10/2/98, as to SEAN COATES. Ordered by Judge Thomas P. Jackson. (hsj) (Entered: 11/24/1998) |
| 09/30/1998 | | BENCH WARRANT ISSUED by Magistrate Judge John M. Facciola for SEAN COATES. (erd) (Entered: 12/11/1998) |
| 10/02/1998 | | ARRAIGNMENT held before Judge Thomas P. Jackson as to, VINCNET HILL (1) count(s) 1, 2, 3, 19, 21, 23, 24, 25, 40, 42–43, 54–55, 61, 63–64, 66–68, 71, 74–75, 78, 80, 65, 73, 79, 81, 83, WILLIAM KYLE SWEENEY (4) count(s) 1, 2, 19, 26, 27, 37, 38, 39, 40, 44, 50–52, 56, SEAN COATES (6) count(s) 1, 2, 19, 35, 36, 40, 49, 60 : Attorney appearance for VINCNET HILL, WILLIAM KYLE SWEENEY, SEAN COATES by Christopher Michael Davis, Jeffrey Brian O'Toole, Frederick D. Jones III, respectively. Plea not guilty entered by VINCNET HILL (1) count(s) 1, 2, 3, 19, 21, 23, 24, 25, 40, 42–43, 54–55, 61, 63–64, 66–68, 71, 74–75, 78, 80, 65, 73, 79, 81, 83, WILLIAM KYLE SWEENEY (4) count(s) 1, 2, 19, 26, 27, 37, 38, 39, 40, 44, 50–52, 56, SEAN COATES (6) count(s) 1, 2, 19, 35, 36, 40, 49, 60. Defendants Vincent Hill, William Kyle Sweeney, and Sean Coates referred to Magistrate Judge for detention hearing. Status hearing set for 10:00 1/12/99 for VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, and DONALD NICHOLS. Trial set for 10:00 1/12/99 and 10:00 5/4/99 for VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, and DONALD NICHOLS. Government to file complex case motion promptly; oral motion of John Briley to withdraw as counsel for defendant Maurice Proctor, heard and granted. Referred to Federal Public Defenders Service for appointment of counsel. Defendants Samuel Carson and William Kyle Sweeney referred to Federal Public Defenders Service for appointment of additional capital punishment attorneys; Federal Public Defenders Service called. Defendants committed/commitment issued. Reporter: Phyllis Merana (hsj) (Entered: 11/24/1998) |

| 10/05/1998 | 35 | MOTION filed by USA as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, DONALD NICHOLS exclusion time under the Speedy Trial Act. (hsj) (Entered: 11/24/1998) |
|---|---|---|
| 10/05/1998 | 36 | ORDER by Judge Thomas P. Jackson as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, DONALD NICHOLS : granting motion exclusion time from 10/2/98 until 1/12/99 under the Speedy Trial Act. [35–1] as to VINCNET HILL (1), JEROME MARTIN (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), MAURICE PROCTOR (5), SEAN COATES (6), REGINALD DARNELL SWITZER (7), WILLIAM HILL (8), PAUL FRANKLIN (9), DONALD NICHOLS (10) (N) (xx) (Entered: 11/24/1998) |
| 10/05/1998 | 49 | WARRANT returned executed as to SEAN COATES on 10/5/98. Return on bench warrant issued 9/30/98. (erd) (Entered: 12/11/1998) |
| 10/05/1998 | | DEFENDANT SEAN COATES arrested. (erd) (Entered: 12/11/1998) |
| 10/21/1998 | 2 | MOTION filed by SEAN COATES for order directing the Department of Corrections to allow defendant access to the library at the jail facility (mlp) (zss). (Entered: 10/28/1998) |
| 10/29/1998 | 4 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for expert services of Charles Johnson Voucher #: 0617809, Signed: 10/28/98, Rate: $35.00 HR.,$3,000.00. (erd) (Entered: 10/29/1998) |
| 11/04/1998 | 42 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : denying motion for order directing the Department of Corrections to allow defendant access to the library at the jail facility [2–1] as to SEAN COATES (6) (N) (hsj) Modified on 11/30/1998 (Entered: 11/27/1998) |
| 11/06/1998 | 43 | ORDER by Judge Thomas P. Jackson as to WILLIAM KYLE SWEENEY : granting motion to withdraw as attorney for WILLIAM KYLE SWEENEY [5–1] attorney Jeffrey Brian O'Toole for WILLIAM KYLE SWEENEY as to WILLIAM KYLE SWEENEY (4) (N) (hsj) Modified on 10/12/2000 (Entered: 11/27/1998) |
| 11/14/1998 | 45 | ORDER by Judge Richard W. Roberts as to WILLIAM KYLE SWEENEY : granting motion for Paul DeWolfe to appear pro hac vice [44–1] as to WILLIAM KYLE SWEENEY (4) (N) (hsj) (Entered: 11/30/1998) |
| 01/05/1999 | 56 | ORDER by Judge Thomas P. Jackson as to WILLIAM KYLE SWEENEY : granting motion for leave to submit interim vouchers pursuant to the Criminal Justice Act. [55–1] as to WILLIAM KYLE SWEENEY (4) (N) (hsj) (Entered: 01/12/1999) |
| 01/12/1999 | | STATUS HEARING before Judge Thomas P. Jackson as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS: Status Hearing held: Government to file superseding indictment. Arraignment/ Status hearing set for 9:30 3/19/99 for VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS. Motion of defendant #4, William Kyle Sweeney to vacate trial, heard and granted. Trial date set for 5/4/99 is vacated and to be reset. Defendants to fie submissions to the government in 90 Days re: death penalty. Appearance of Frederick Sullivan as counsel for defendant #5 Maurice Proctor. Defendants committed/commitment issued. Defendant #5, Maurice Proctor not present. Reporter: Phyllis Merana (hsj) (Entered: 01/21/1999) |
| 01/14/1999 | 58 | MOTION filed by USA as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL for exclusion of time under the Speedy Trial Act. (hsj) (Entered: 01/20/1999) |
| 01/14/1999 | 59 | ORDER by Judge Thomas P. Jackson as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL: that in |

| | | |
|---|---|---|
| | | accordance with 18: U.S.C. 3161(h)(8)(A), and (h)(8)(B)(ii), the period of time from 1/12/99 until 3/26/99 shall be excluded from the computation of time within which to commence trial. (N) (hsj) (Entered: 01/20/1999) |
| 01/22/1999 | 63 | MOTION filed by SEAN COATES for monthly interim payments for attorneys and private investigations appointed pursuant to 18 U.S.C. 3006(A). (hsj) (Entered: 01/27/1999) |
| 01/25/1999 | 64 | ORDER by Judge Thomas P. Jackson as to SEAN COATES: granting motion for monthly interim payments for attorneys and private investigations appointed pursuant to 18 U.S.C. 3006(A). [63–1] as to SEAN COATES (6) (N) (hsj) (Entered: 01/28/1999) |
| 01/26/1999 | 65 | ORDER by Judge Thomas P. Jackson as to MAURICE PROCTOR : denying as moot motion Requesting Court Ordered Return of Defendant to the District of Columbia. [52–1] as to MAURICE PROCTOR (5) (N) (hsj) (Entered: 01/28/1999) |
| 02/17/1999 | 75 | ORDER by Judge Thomas P. Jackson as to VINCNET HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS: order regarding interim payment. (N) (hsj) (Entered: 02/25/1999) |
| 02/19/1999 | 74 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel. Voucher No.: 0476662 Signed: 2/16/99 NPT 9/22/98 (hsj) (Entered: 02/24/1999) |
| 03/25/1999 | <u>142</u> | SUPERSEDING INDICTMENT filed against VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS VINCENT HILL (1) count(s) 1s, JEROME MARTIN (2) count(s) 1s, SAMUEL CARSON (3) count(s) 1s, WILLIAM KYLE SWEENEY (4) count(s) 1s, MAURICE PROCTOR (5) count(s) 1s, SEAN COATES (6) count(s) 1s, REGINALD DARNELL SWITZER (7) count(s) 1s, WILLIAM HILL (8) count(s) 1s, ERIK JONES (11) count(s) 1, RAYMOND WASHINGTON (12) count(s) 1, CLIFTON EDWARDS (13) count(s) 1 (hsj) (zjpb). (Entered: 04/08/1999) |
| 03/25/1999 | 142 | CONTINUATION OF INDICTMENT entry against WILLIAM KYLE SWEENEY (4) count(s) 2ss, 22ss, 35ss, 36ss, 48ss–50ss, 51ss–66ss, 67ss–80ss, MAURICE PROCTOR (5) count(s) 2ss, 20ss, 22ss, 27ss, 28ss, 51ss–66ss, 67ss–80ss, SEAN COATES (6) count(s) 2ss, 22ss, 46ss, 47ss, 48ss–50ss, 51ss–66ss, 67ss–80ss, REGINALD DARNELL SWITZER (7) count(s) 2ss, 4ss, 99ss–101ss. (hsj) (Entered: 04/09/1999) |
| 03/25/1999 | 142 | CONTINUATION OF INDICTMENT entry against WILLIAM KYLE SWEENEY (4) count(s) 21ss, SEAN COATES (6) count(s) 21ss. (hsj) (Entered: 04/09/1999) |
| 03/26/1999 | | ARRAIGNMENT held before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1s, 2s, 3s, 22s, 31s, 33s, 32s, 34s, 38s, 51s–66s, 67s–80s, 81s–98s, 99s–101s, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 10s–12s, 14s, 16s, 18s, 13s, 15s, 17s, 19s, 20s, 37s, 51s–66s, 67s–80s, 81s–98s, 99s–101s, SAMUEL CARSON (3) count(s) 1s, 2s, 5s–6s, 7s–8s, 23s, 29s, 30s, 42s, 46s, 43s, 47s, 44s, 45s, 48s, 49s–50s, 51s–66s, 67s–80s, WILLIAM KYLE SWEENEY (4) count(s) 1s, 2s, 22s, 35s, 36s, 48s–50s, 51s–66s, 67s–80s, 21s, MAURICE PROCTOR (5) count(s) 1s, 2s, 20s, 22s, 28s, 27s, 51s–66s, 67s–80s, SEAN COATES (6) count(s) 1s, 2s, 22s, 46s, 47s, 48s–50s, 51s–66s, 67s–80s, 21s, REGINALD DARNELL SWITZER (7) count(s) 1s, 2s, 99s–101s, 4s, WILLIAM HILL (8) count(s) 1s, 2s, 39s, 51s–66s, 81s–98s: Plea not guilty entered by, VINCENT HILL (1) count(s) 1s, 2s, 3s, 22s, 31s, 33s, 32s, 34s, 38s, 51s–66s, 67s–80s, 81s–98s, 99s–101s, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 10s–12s, 14s, 16s, 18s, 13s, 15s, 17s, 19s, 20s, 37s, 51s–66s, 67s–80s, 81s–98s, 99s–101s, SAMUEL CARSON (3) count(s) 1s, 2s, 5s–6s, 7s–8s, 23s, 29s, 30s, 42s, 46s, 43s, 47s, 44s, 45s, 48s, 49s–50s, 51s–66s, 67s–80s, WILLIAM KYLE SWEENEY (4) count(s) 1s, 2s, 22s, 35s, 36s, 48s–50s, 51s–66s, 67s–80s, 21s, MAURICE PROCTOR (5) count(s) 1s, 2s, 20s, 22s, 28s, 27s, 51s–66s, 67s–80s, SEAN COATES (6) count(s) 1s, 2s, 22s, 46s, 47s, 48s–50s, 51s–66s, 67s–80s, 21s, REGINALD DARNELL SWITZER (7) count(s) 1s, 2s, 99s–101s, 4s, |

| | | |
|---|---|---|
| | | WILLIAM HILL (8) count(s) 1s, 2s, 39s, 51s–66s, 81s–98s. Trial set for 5/4/99 is vacated; status hearing set for 9:30 5/21/99 for VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL. Counsel for the government to submit to the Court in camera memoranda on movements of defendants, Vincent Hill (1), Jerome Martin (2), Samuel Carson (3), Willima Kyle Sweeney (4), and Maurice Proctor (5). Government has until 5/27/99 to designate death penalty on defendants #3–#4, #6. Defendants committed/commitment issued. Reporter: Phyllis Merana (hsj) Modified on 04/22/1999 (Entered: 04/21/1999) |
| 03/29/1999 | 140 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL : granting motion for exclusion of time under the Speedy Trial Act. [58–1] as to VINCENT HILL (1), JEROME MARTIN (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), MAURICE PROCTOR (5), SEAN COATES (6), REGINALD DARNELL SWITZER (7), WILLIAM HILL (8). The period of time from 3/26/99 until 5/21/99 shall be excluded from the computation of time within which to commence trial. (N) (hsj) (Entered: 04/06/1999) |
| 03/29/1999 | 143 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL for exclusion of time between 3/26/99 and 5/21/99 under the speedy trial act (bjsp) Modified on 04/15/1999 (Entered: 04/12/1999) |
| 03/30/1999 | 141 | WRIT OF HABEAS CORPUS AD PROSEQUENDUM issued to Warden, FCI Beckley, for production of Erik Jones, for hearing on April 9, 1999, as to VINCENT HILL, JEROME MARTIN JR., CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . Ordered by Judge Thomas P. Jackson . (lkn) (Entered: 04/08/1999) |
| 04/19/1999 | | Prison Registration Number for SEAN COATES : Reg.#: 22389–016. (rew) (Entered: 04/19/1999) |
| 04/22/1999 | 157 | ORDER by Judge Thomas P. Jackson as to SEAN COATES Appointing Barry Coburn as attorney, voucher # D 18347, signed 4/20/99 npt 4/15/99. (erd) (Entered: 04/22/1999) |
| 04/22/1999 | 158 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as counsel, voucher # D17635, signed 4/20/99 npt 9/22/98. (erd) (Entered: 04/22/1999) |
| 04/26/1999 | 160 | NOTICE OF WITHDRAWAL of attorney Kenneth D Auerbach for ERIK JONES. (lkn) (Entered: 04/28/1999) |
| 05/11/1999 | 177 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services of R. Mickell Branham for Death Penalty Proceedings of Sean Coates. Voucher #: D18717, Signed: 6/7/99, Rate: $85.00 HR., 100 HRS., $8,500.00. (hsj) (Entered: 06/14/1999) |
| 05/21/1999 | 166 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS to quash subpoena (tb) (Entered: 05/24/1999) |
| 05/21/1999 | 170 | ORDER by Judge Thomas P. Jackson as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES, ERIK JONES: That the defendants Samuel Carson, William Sweeney, Sean Coates, and Erik Jones shall complete their submissions on mitigation of death penalty eligibility to the United States Attorney for the District of Columbia on or before 8/30/99. Status hearing set for 9:30 9/10/99 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES, for ERIK JONES. (N) (hsj) (Entered: 05/28/1999) |

| | | |
|---|---|---|
| 05/21/1999 | | STATUS HEARING before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS: Status hearing set for 9:30 9/10/99 for VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. Possible death penalty defendants Samuel Carson, William Kyle Sweeney, Sean Coates, and Erik Jones have until 8/30/99 for submissions. Defendant Raymond Washington referred back to Magistrate Judge for detention hearing. Defendants committed/commitment issued. Reporter: Phyllis Merana (hsj) Modified on 05/28/1999 (Entered: 05/28/1999) |
| 05/24/1999 | 168 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS excluding time pursuant to the Speedy Trial Act from 05/21/99 to 09/10/99 (tb) Modified on 05/26/1999 (Entered: 05/26/1999) |
| 05/25/1999 | 171 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : granting motion excluding time pursuant to the Speedy Trial Act from 05/21/99 to 09/10/99 [168–1] as to VINCENT HILL (1), JEROME MARTIN (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), MAURICE PROCTOR (5), SEAN COATES (6), REGINALD DARNELL SWITZER (7), ERIK JONES (11), RAYMOND WASHINGTON (12), (N) (hsj) (Entered: 06/02/1999) |
| 06/30/1999 | 182 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for date of 3/26/99. Reporter: Phyllis Merana (tth) (zss). (Entered: 07/06/1999) |
| 06/30/1999 | 183 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for date of 5/21/99. Reporter: Phyllis Merana (tth) (zss). (Entered: 07/06/1999) |
| 06/30/1999 | 184 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for date of 1/12/99. Reporter: Phyllis Merana (tth) (zss). (Entered: 07/06/1999) |
| 08/06/1999 | 192 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Adele S. Johnson Voucher #: D18719, Signed: 7/28/99, Rate: $50.00 PH. 20 HRS. estimate, $1,000.00. (erd) (Entered: 08/06/1999) |
| 08/10/1999 | 193 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS to quash subpoena duces tecum addresses to medical examiner's office. (hsj) (Entered: 08/12/1999) |
| 08/20/1999 | 199 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Henry Winchester Asbill as CJA counsel for Death Penalty Proceedings. Voucher #: D17514 Signed: 8/17/88 NPT 8/2/99 (hsj) (Entered: 08/31/1999) |
| 09/10/1999 | 204 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, |

| | | |
|---|---|---|
| | | CLIFTON EDWARDS: The Attorney General shall submit her death penalty recommendations to the Department of Justice no later than 10/12/99; and that the United States Attorney shall render her decision on the death penalty recommendations no later than 11/12/99. The defendants' several oral motions respecting certain conditions of their detention at Warsaw, Virginia Jail pending trial are denied. Status hearing set for 9:30 11/30/99 for VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (N) (hsj) (zss). (Entered: 09/29/1999) |
| 09/13/1999 | 202 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for exclusion of time under the Speedy Trial Act (tw) (zss). (Entered: 09/17/1999) |
| 10/18/1999 | 206 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Sean Coates Voucher #: D18719, Signed: 10/15/99, Rate: $50.00 PH., 100 HRS., $5,000. (erd) (zss). (Entered: 10/18/1999) |
| 11/03/1999 | 210 | MOTION filed by SEAN COATES for leave to join in Defendant Sweeney's Motion to Compel Production of Mitigation Materials Prior to Presenting Oral Submission to the Unted States Department of Justice Concerning the Death Penalty. (hsj) (zss). (Entered: 11/09/1999) |
| 11/03/1999 | 211 | RESPONSE by USA to defendant's motion to compel production of mitigation material prior to presenting oral submission to the United States Department of Justice concerning the death penalty. (lkn) (zss). (Entered: 11/10/1999) |
| 11/08/1999 | 218 | RESPONSE in Opposition by USA as to SEAN COATES to motion for leave to join in Defendant Sweeney's Motion to Compel Production of Mitigation Materials Prior to Presenting Oral Submission to the Unted States Department of Justice Concerning the Death Penalty. [210–1] by SEAN COATES . (tb) (zss). (Entered: 11/17/1999) |
| 11/08/1999 | 219 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : granting motion to continue status hearing [209–1] as to VINCENT HILL (1) Status hearing set for 9:30 12/16/99 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . (N) (hsj) (zss). (Entered: 11/17/1999) |
| 11/16/1999 | 225 | SUR–REPLY by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS to defendant's Motion to Compel Production of Mitigation Prior to Presenting Oral Submission to the United States Department of Justice Concerning the Death Penalty. (hsj) (zss). (Entered: 11/23/1999) |
| 11/19/1999 | 227 | ORDER by Judge Thomas P. Jackson as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES, ERIK JONES: Denying Motions to Compel the Production of Certain Mitigation Materials. (N) (hsj) (zss). (Entered: 11/26/1999) |
| 11/30/1999 | 229 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS in limine to exclude time under the Speedy Trial Act (tb) (zss). (Entered: 12/09/1999) |

| | | |
|---|---|---|
| 12/07/1999 | 234 | MOTION filed by SEAN COATES for leave to join in motion for pretrial hearing to determine the admissibility of testimony of each proposed expert to be introduced on behalf of the United States at trial [230–1] (hsj) (zss). (Entered: 12/14/1999) |
| 12/07/1999 | 236 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS: That in accordance with 18 U.S.C. 3161(h)(8)(A), and (h)(8)(B)(ii), the period of time from 11/30/99 until 12/16/99 shall be excluded form the computation of time within which to commence trial under the Speedy Trial Act for the defendants. (N) (hsj) (zss). (Entered: 12/15/1999) |
| 12/09/1999 | 237 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion for leave to join in motion for pretrial hearing to determine the admissibility of testimony of each proposed expert to be introduced on behalf of the United States at trial [230–1] [234–1] as to SEAN COATES (6) (N) (hsj) (zss). (Entered: 12/23/1999) |
| 12/10/1999 | 233 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Donald Jones Voucher #: D018718, Signed: 11/29/99, Rate: $45.00 PH. 20 HRS., $900.00. (erd) (Entered: 12/10/1999) |
| 12/16/1999 | 240 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : Trial set for 10:00 9/5/00; motion hearing set for 10:00 2/25/00; motions due by 1/21/00; response to motion due by 2/18/00; reply to response to motion due by 2/24/00 for VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. The 12/7/99 Order to exclude time under the Speedy Trial Act is extended until 9/5/00. (N) (hsj) (zss). (Entered: 01/04/2000) |
| 12/16/1999 | | STATUS HEARING before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS: Trial set for 10:00 9/5/00; motion hearing set for 10:00 2/25/00; motions due by 1/21/00; response to motion due by 2/18/00 for VINCENT HILL, for JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. Defendants committed/commitment issued. Reporter: Phyllis Merana (hsj) (Entered: 01/04/2000) |
| 01/03/2000 | 249 | MOTION filed by Henry Winchester Asbill, Frederick D. Jones III: to withdraw as counsel for for SEAN COATES (erd) (zss). (Entered: 01/18/2000) |
| 01/04/2000 | 250 | ORDER by Judge Thomas P. Jackson as to SEAN COATES: Granting motion to withdraw as counsel for defendant. The appearance of Henry W. Asbill of Asbill, Junkin & Moffitt, Chtd. is stricken from the case; and that the appearance of Frederick Jones remain in the case. (N) (hsj) (zss). (Entered: 01/19/2000) |
| 01/20/2000 | 255 | JOINT MOTION filed by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for extension of time in which to file motions for severance and misjoinder. (hsj) (zss). (Entered: 02/14/2000) |
| 01/27/2000 | 253 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, |

| | | |
|---|---|---|
| | | SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : That the defendants joint motion is granted for extension of time in which to file motions for severance and misjoinder. The following shall be the revised schedule pertaining to the motions. Filing of joint defense motion due 1/31/00; governments response to be filed 2/24/00; defense reply to be filed 2/24/00; hearing on motion set for 3/8/00 10:00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS. (N) (erd) (zss). (Entered: 02/09/2000) |
| 02/03/2000 | 256 | JOINT MOTION filed by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for additonal extension of time in which to file Motions for severance and misjoinder. (hsj) (zss). (Entered: 02/18/2000) |
| 03/10/2000 | 262 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for expert services of Adelle S. Johnson Voucher #: 0617946, Signed: 3/9/00, Rate: $50.00 HR., @ 40 HRS., $2,000. (erd) (Entered: 03/10/2000) |
| 03/15/2000 | 272 | RESPONSE by USA in opposition to defendants' joint motion to sever counts and defendants as to VINCENT HILL (1), WILLIAM SWEENEY (4), SAMUEL CARSON (3), JEROME MARTIN (2), ERIK JONES (11), SEAN COATES (6), WILLIAM HILL (8). (su) (Entered: 04/03/2000) |
| 03/24/2000 | | STATUS HEARING before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : Motion by Jerome Martin to sever; heard and denied. motion by Samuel Carson to sever; heard and denied. Motion by Sean Coates to sever; heard and denied. Motion by Maurice Proctor to sever; heard and denied. Motion by William Kyle Sweeney to sever; heard and denied. Motion by Erik Jones to sever; heard and denied. Motion by Vincent Hill to sever; heard and denied. Governments motion to quash subpoena issued to Joy Carlson and Custodian of Records, Bureau of Prisons; granted. Motion by Clifton Edwards to sever; granted. Motion by William Kyle Sweeney for bill of particulars, denied. Motion by Samuel Carson for issuance of Rule 17 subpoena for photo of James Montgomery, denied as moot. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) Modified on 06/08/2000 (Entered: 04/12/2000) |
| 03/24/2000 | 278 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : That the joint motion to sever counts and defendants 257 , filed by defendants William Sweeney, Samuel Carson, Jerome Markin, Erik Jones, and Sean Coates, and adopted by counsel for Maurice Proctor 268 and Clifton Edwards 264 , is granted as to Clifton Edwards and denied without prejudice as to all other defendants; that the motion to sever counts and defendants, filed by counsel for Vincent Hill 254 is denied; granting motion to quash subpoena duces tecum [270−1] as to VINCENT HILL (1) granting motion to quash subpoena duces tecum [263−1] as to VINCENT HILL (1) denying motion for bill of particulars [153−1] as to WILLIAM KYLE SWEENEY (4) denying motion for issuance of Rule 17 subpoena to Chief of Police, Metropolitan Police Dept. [186−1] as to SAMUEL CARSON (3); that the motion of the government to quash the subpoena duces tecum issued to Dr. Jonathon Arden, Chief Medical Examiner of the D.C. Coroner's Office 193 is held in abeyance. (N) (erd) (zss). (Entered: 04/12/2000) |

| | | |
|---|---|---|
| 04/03/2000 | 264 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . ( Attachment: Correspondence dated 4/3/00 referencing 13 crime scene photographs that pertain to CPWL of Sam Carson and Maurice Proctor). (su) (zss). (Entered: 04/07/2000) |
| 04/04/2000 | 277 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . ( Attachment: Correspondence Letter dated 4–3–00 to Joanne Hepworth, Esq., confirming receiving videotape evidence.) (jdm) Modified on 04/14/2000 (zss). (Entered: 04/11/2000) |
| 04/11/2000 | 279 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS.( Attachment: Letter dated 4–11–00 by AUSA Peter Zeidenberg to counsel referencing videotape evidence).(jdm) Modified on 04/20/2000 (zss). (Entered: 04/13/2000) |
| 04/13/2000 | 280 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 3/11/91 through 3/15/91. Signed: 4/4/00. Reporter: Rich Whalen (Superior Court J–1644–90. (erd) (Entered: 04/13/2000) |
| 04/14/2000 | 284 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachment: Letter dated 4–14–00, from AUSU, Peter R. Zeidenberg to counsel, referencing finished copying videotapes.) (jdm) Modified on 04/19/2000 (zss). (Entered: 04/17/2000) |
| 04/21/2000 | 287 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS .( Attachment: Letter dated April 21, 2000, from AUSA Peter R. Zeidenberg, to Joanne Hepworth, referencing the financial records of Jerome Martin, bate–stamped 901092–902302). (jdm) (zss). (Entered: 04/24/2000) |
| 04/21/2000 | 286 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for issuance of pretrial subpoena pursuant to FED.R.CR.P. 17 (c) (cas) Modified on 04/26/2000 (zss). (Entered: 04/24/2000) |
| 05/05/2000 | 289 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for an anonymous jury. (jdm) (zss). (Entered: 05/09/2000) |
| 05/30/2000 | 299 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . ( Attachment: letter dated 5/30/00 to all defense counsel from AUSA, Peter Zeidenberg referencing a list of evidence which he disclose pursuant to obligations under Brady). (su) (zss). (Entered: 05/31/2000) |
| 06/02/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, |

| | | |
|---|---|---|
| | | ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : Status hearing set for 6/8/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . before Judge Thomas P. Jackson . (rew) (Entered: 06/02/2000) |
| 06/05/2000 | 319 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : ORDERED that the government's motion to join the indictments (97) is granted; , FURTHER ORDERED that trial of Criminal No. 99–348 is set for 10:00 9/5/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS, in conjunction with the trial of 98–329. (N) (jdm) (zss). (Entered: 06/21/2000) |
| 06/06/2000 | 313 | MOTION filed by SEAN COATES for leave to join in: motion for pretrial hearing to determine the existence of a conspiracy [312–1], motion to determine the admissibility of co–conspirators statements [312–2], motion to identify witnesses with juvenile adjucations [311–1], motion pending juvenile proceedings [311–2], motion to inspect juvenile files pursuant to Davis v. Alaska [311–3], motion for an order directing the government to give notice of its intention to rely upon other crimes evidence regardless of whether the prior bad acts were also uncharged acts in futherance of the conspiracy [310–1], motion for notice of government's intention to use residual hearsay exception under Rule 803(24) [309–1], motion for pretrial production of statements of persons who will not be called as witnesses at trial [308–1], motion to dismiss count(s) as to WILLIAM KYLE SWEENEY (4) count(s) 48s–50s [307–1], motion to strike overt acts [307–2], motion Racketeering Act 70(a)–(g) of count two of the indictment [307–3], motion to strike all references to the triple murder in Temple Hills, Maryland. [307–4], motion for notice of government's intention to use residual hearsat exception under Rule 804(b)(5) [304–1], motion to disclose identities of each confidential informant regardless of whether they will be called at trial. [303–1], motion for pretrial identification and production of Jencks material [302–1], motion for in camera review of Grand Jury testimony to determine the existence of a racketeering enterprise [301–1], motion for a pre–trial hearing to determine the admissibility of video and audio tapes [300–1], motion for an anonymous jury [289–1] (cas) (llk). (Entered: 06/07/2000) |
| 06/06/2000 | 314 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, ERIK JONES, RAYMOND WASHINGTON to admit out of Court statements made by murdered witnesses. (jdm) (Entered: 06/13/2000) |
| 06/08/2000 | | STATUS HEARING in CR 99–348–3 before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial reset for 10:00 11/13/00; motion hearing set for 10:00 9/26/00 defendants motions due by 7/14/00; governments response to motion due 8/18/00; defendants reply to response to motion due by 9/8/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Motions hearing set for 6/16/00 at 10:00 for WILLIAM KYLE SWEENEY. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 06/15/2000) |
| 06/08/2000 | 318 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion for leave to join in: motion for pretrial hearing to determine the existence of a conspiracy [312–1], motion to determine the admissibility of co–conspirators statements [312–2], motion to identify witnesses with juvenile adjucations [311–1], motion pending juvenile proceedings [311–2], motion to inspect juvenile files pursuant to Davis v. Alaska [311–3], motion for an order directing the government to give notice of its intention to rely upon other crimes evidence regardless of whether the prior bad acts were also uncharged acts in futherance of the conspiracy [310–1], motion for |

| | | |
|---|---|---|
| | | notice of government's intention to use residual hearsay exception under Rule 803(24) [309–1], motion for pretrial production of statements of persons who will not be called as witnesses at trial [308–1], motion to dismiss count(s) as to WILLIAM KYLE SWEENEY (4) count(s) 48s–50s [307–1], motion to strike overt acts [307–2], motion Racketeering Act 70(a)–(g) of count two of the indictment [307–3], motion to strike all references to the triple murder in Temple Hills, Maryland. [307–4], motion for notice of government's intention to use residual hearsat exception under Rule 804(b)(5) [304–1], motion to disclose identities of each confidential informant regardless of whether they will be called at trial. [303–1], motion for pretrial identification and production of Jencks material [302–1], motion for in camera review of Grand Jury testimony to determine the existence of a racketeering enterprise [301–1], motion for a pre–trial hearing to determine the admissibility of video and audio tapes [300–1], motion for an anonymous jury [289–1] [313–1] by SEAN COATES (N) (cas) (zss). (Entered: 06/19/2000) |
| 06/08/2000 | 320 | SCHEDULING ORDER by Judge Thomas P. Jackson Trial set for 10:00 11/13/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . Motion hearing set for 10:00 9/26/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . Motions due by 7/14/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . Response to motion due by 8/18/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . Reply to response to motion due by 9/8/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS .The December 16, 1999 Order to exclude time under the Speedy Trial Act extended until 11/13/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES, for REGINALD DARNELL SWITZER, for WILLIAM HILL, for PAUL FRANKLIN, for DONALD NICHOLS, for ERIK JONES, for RAYMOND WASHINGTON, for CLIFTON EDWARDS . Defense shall submit its voir dire no later than 11/1/00, government shall submit its voir dire no later than 11/8/00. A hearing on defendant Sweeney's Motion to Compel Discovery, No. 1 is scheduled for 6/16/00, at 10:00. (N) (jdm) (zss). (Entered: 06/21/2000) |
| 06/16/2000 | 317 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES excluding time pursuant to the Speedy Trial Act from September 5, 2000 until November 13, 2000. (jdm) (zss). (Entered: 06/19/2000) |
| 06/16/2000 | 321 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS: Denying defendant's WILLIAM KYLE SWEENEY's motion to compel discovery without prejuidice, as to his request for information from Assistant United States Attorneys Oscar Mayer and Lynn Liebowitz, and the remainder of the motion is held in abeyance pending this Court's ex parte, in camera review, under seal, of the investigate file on government witness, James Montgomery; and it is Further Ordered, that the government's motion for issuance of a Rule 17 (c) |

| | | |
|---|---|---|
| | | subpoena for medical records 286 is granted; and it is Further Ordered, that counsel's oral request to submit motions on behalf of defendant Maurice Proctor by July 21, 2000 is granted. Motions due by 7/21/00 for MAURICE PROCTOR . (N) (cas) (llk). (Entered: 06/23/2000) |
| 06/30/2000 | 322 | GOVERNMENT'S NOTICE of Submission of EX Parte Materials to the Court Regarding James Montgomery as to VINCENT HILL, JEROME MARTIN, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES. (cas) Modified on 07/21/2000 (llk). (Main Document 322 replaced on 8/22/2024) (zss). (Entered: 07/05/2000) |
| 07/13/2000 | 345 | MEMORANDUM AND ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : Ordered that the defendant Sweeney's motion to compel discovery, number 1, is granted to the extent set forth above and otherwise denied, without prejudice; and it is further ordered that the government retain in its possession, intact, one copy of the compilation of its investigative files examined by the Court in camera for use in connection with any appeal of this case. (N) (aet) (llk). (Entered: 07/21/2000) |
| 07/14/2000 | 338 | MOTION filed by JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES to dismiss count(s) as to , JEROME MARTIN (2) count(s) 1s, 2s, 9s, 16s, 15s, 17s, 19s, 20s, 37s, 51s−66s, 67s−80s, SAMUEL CARSON (3) count(s) 2s, 5s−6s, 7s−8s, 30s, 43s, 47s, 44s, 45s, 48s, 49s−50s, 51s−66s, WILLIAM KYLE SWEENEY (4) count(s) 2s, 22s, 35s, 36s, 48s−50s, 51s−66s, 21s, SEAN COATES (6) count(s) 2s, 22s, 46s, 47s, 48s−50s, 51s−66s, 21s, to strike all racketeering and VCAR counts from the indictment. (jdm) (zss). (Entered: 07/17/2000) |
| 07/16/2000 | 327 | MOTION filed by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for Bill of Particulars (cas) (zss). (Entered: 07/17/2000) |
| 07/24/2000 | 347 | MOTION filed by SEAN COATES for leave to late file pretrial motions, time for filing said motions having expired ; EXHIBITS: Defendant's SEAN COATES' motion for reconsideration of his motion for severance; (2) Opposition to government's motion to admit out of court statements made by murdered witnesses. (cas) Modified on 07/31/2000 (zss). (Entered: 07/24/2000) |
| 07/24/2000 | 350 | MOTION filed by SEAN COATES for leave to join in: motion to suppress identification testimony [344−1], motion to for a pretrial hearing [344−2], motion to compel discovery [340−1], motion request for an oral hearing [340−2], motion to dismiss count(s) as to SAMUEL CARSON (3) count(s) 5s−6s, 7s−8s [329−1], motion to compel disclosure of exculpatory evidence [329−2], motion additional sanctions due to violations of Brady V. Maryland. [329−3], motion to strike all aliases from the indictment [330−1], motion to compel disclosure of evidence subject to suppression under Fed. R. Cim.P.12(b)(3) [328−1], motion for Bill of Particulars [327−1], motion for discovery of statements of codefendants and co−conspirators [326−1], motion for notice of government's intention to use residual hearsay exception under FRE (807) [325−1], motion to dismiss count(s) as to, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 16s, 15s, 17s, 19s, 20s, 37s, 51s−66s, SAMUEL CARSON (3) count(s) 2s, 5s−6s, 7s−8s, 30s, 43s, 47s, 44s, 45s, 48s, 49s−50s, 51s−66s, WILLIAM KYLE SWEENEY (4) count(s) 2s, 22s, 35s, 36s, 48s−50s, 51s−66s, 21s, SEAN COATES (6) count(s) 2s, 22s, 46s, 47s, 48s−50s, 51s−66s, 21s, to strike all racketeering and VCAR counts from the indictment [338−1], motion to dismiss count(s) as to JEROME MARTIN (2) count(s) 9s, 10s−12s, 14s, 16s, 18s, 13s, 15s, 17s, 19s, 20s of the indictment for prejudicial pre−accusatory delay, violations of statutes of limitations and Speedy Trial provisions. [337−1], motion to dismiss count(s) 1s, 2s of the indictment on fifth and sixth amendment grounds [336−1], motion to strike aliases from the indictment [335−1], motion to suppress evidence [334−1], motion to suppress statement(s) [333−1], motion to extend time to file discovery related motions [332−1], motion for pretrial hearing to determine the existence of a conspiracy |

[312–1], motion to determine the admissibility of co–conspirators statements [312–2], motion to identify witnesses with juvenile adjudications [311–1], motion pending juvenile proceedings [311–2], motion to inspect juvenile files pursuant to Davis v. Alaska [311–3], motion for an order directing the government to give notice of its intention to rely upon other crimes evidence regardless of whether the prior bad acts were also uncharged acts in futherance of the conspiracy [310–1], motion for notice of government's intention to use residual hearsay exception under Rule 803(24) [309–1], motion for pretrial production of statements of persons who will not be called as witnesses at trial [308–1], motion to dismiss count(s) as to WILLIAM KYLE SWEENEY (4) count(s) 48s–50s [307–1], motion to strike overt acts [307–2], motion Racketeering Act 70(a)–(g) of count two of the indictment [307–3], motion to strike all references to the triple murder in Temple Hills, Maryland [307–4], motion for notice of government's intention to use residual hearsay exception under Rule 804(b)(5) [304–1], motion to disclose identities of each confidential informant regardless of whether they will be called at trial [303–1], motion for pretrial identification and production of Jencks material [302–1], motion for in camera review of Grand Jury testimony to determine the existence of a racketeering enterprise [301–1], motion for a pre–trial hearing to determine the admissibility of video and audio tapes [300–1], motion to suppress physical evidence [306–1], motion request for an oral hearing [306–2], motion to suppress custodial statement(s) [305–1], motion request for evidentiary hearing; [305–2], motion to change location of confinement pending trial [296–1], motion to compel discovery [293–1], motion for the appointment of a second investigator [294–1], motion for order granting leave to serve subpoenas upon two Assistant United States Attorneys [291–1], motion to compel their testimony at trial [291–2], motion for disclosure of exculpatory evidence [114–1], motion notice to the government of exculpatory evidence requested concerning government's use of informants, operatives and cooperating individuals [114–2], motion for discovery and inspection concerning government's use of informants, operatives and cooperating individuals [113–1], motion for interim investigator payments [66–1], motion to continue trial date [53–1], motion for appointment of expert services (investigator) [8–1] (erd) (zss). (Entered: 07/25/2000)

| | | |
|---|---|---|
| 08/17/2000 | 355 | REPLY by USA as to VINCENT HILL, JEROME MARTIN JR., SEAN COATES, WILLIAM KYLE SWEENEY, SAMUEL CARSON, MAURICE PROCTOR to defendant's SWEENEY'S and defendant COATES' Opposition to Admit Out of Court Statements Made by Murdered Witnesses. (cas) (zss). (Entered: 08/18/2000) |
| 08/18/2000 | 360 | RESPONSE by USA in opposition to defendant's pretrial motions. Attachments (3) (cas) (znne). (Entered: 08/23/2000) |
| 08/21/2000 | 357 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM ordered by Judge Thomas P. Jackson and issued to Warden, Peumandsend Creek Regional Jail for production of Denise M. Harris to testify on August 28, 2000, as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . (jdm) (zss). (Entered: 08/22/2000) |
| 08/28/2000 | 365 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion for leave to late file pretrial motions, time for filing said motions having expired [347–1] as to SEAN COATES (6) (N) (cas) (zss). (Entered: 08/31/2000) |
| 08/28/2000 | 366 | MOTION filed by SEAN COATES for reconsideration of his motion for severance (cas) (zss). (Entered: 08/31/2000) |
| 08/28/2000 | 367 | RESPONSE by SEAN COATES in opposition to motion to admit out of Court statements made by murdered witnesses [314–1] by USA. (cas) (zss). (Entered: 08/31/2000) |
| 08/28/2000 | 371 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion for leave to join in: motion to suppress identification testimony [344–1], motion to for a pretrial hearing [344–2], motion to compel discovery [340–1], motion request for an oral hearing [340–2], motion to dismiss count(s) as to SAMUEL CARSON (3) count(s) 5s–6s, 7s–8s [329–1], motion to compel disclosure of exculpatory evidence [329–2], motion additional sanctions due to violations of Brady V. Maryland. [329–3], motion to strike all aliases from the indictment [330–1], motion to compel |

disclosure of evidence subject to suppression under Fed. R. Cim.P.12(b)(3) [328–1], motion for Bill of Particulars [327–1], motion for discovery of statements of codefendants and co–conspirators [326–1], motion for notice of government's intention to use residual hearsay exception under FRE (807) [325–1], motion to dismiss count(s) as to, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 16s, 15s, 17s, 19s, 20s, 37s, 51s–66s, 67s–80s, SAMUEL CARSON (3) count(s) 2s, 5s–6s, 7s–8s, 30s, 43s, 47s, 44s, 45s, 48s, 49s–50s, 51s–66s, WILLIAM KYLE SWEENEY (4) count(s) 2s, 22s, 35s, 36s, 48s–50s, 51s–66s, 21s, SEAN COATES (6) count(s) 2s, 22s, 46s, 47s, 48s–50s, 51s–66s, 21s, to strike all racketeering and VCAR counts from the indictment [338–1], motion to dismiss count(s) as to JEROME MARTIN (2) count(s) 9s, 10s–12s, 14s, 16s, 18s, 13s, 15s, 17s, 19s, 20s of the indictment for prejudicial pre–accusatory delay, violations of statutes of limitations and Speedy Trial provisions. [337–1], motion to dismiss count(s) 1s, 2s of the indictment on fifth and sixth amendment grounds [336–1], motion to strike aliases from the indictment [335–1], motion to suppress evidence [334–1], motion to suppress statement(s) [333–1], motion to extend time to file discovery related motions [332–1], motion for pretrial hearing to determine the existence of a conspiracy [312–1], motion to determine the admissibility of co–conspirators statements [312–2], motion to identify witnesses with juvenile adjudications [311–1], motion pending juvenile proceedings [311–2], motion to inspect juvenile files pursuant to Davis v. Alaska [311–3], motion for an order directing the government to give notice of its intention to rely upon other crimes evidence regardless of whether the prior bad acts were also uncharged acts in futherance of the conspiracy [310–1], motion for notice of government's intention to use residual hearsay exception under Rule 803(24) [309–1], motion for pretrial production of statements of persons who will not be called as witnesses at trial [308–1], motion to dismiss count(s) as to WILLIAM KYLE SWEENEY (4) count(s) 48s–50s [307–1], motion to strike overt acts [307–2], motion Racketeering Act 70(a)–(g) of count two of the indictment [307–3], motion to strike all references to the triple murder in Temple Hills, Maryland [307–4], motion for notice of government's intention to use residual hearsay exception under Rule 804(b)(5) [304–1], motion to disclose identities of each confidential informant regardless of whether they will be called at trial [303–1], motion for pretrial identification and production of Jencks material [302–1], motion for in camera review of Grand Jury testimony to determine the existence of a racketeering enterprise [301–1], motion for a pre–trial hearing to determine the admissibility of video and audio tapes [300–1], motion to suppress physical evidence [306–1], motion request for an oral hearing [306–2], motion to suppress custodial statement(s) [305–1], motion request for evidentiary hearing; [305–2], motion to change location of confinement pending trial [296–1], motion to compel discovery [293–1], motion for the appointment of a second investigator [294–1], motion for order granting leave to serve subpoenas upon two Assistant United States Attorneys [291–1], motion to compel their testimony at trial [291–2], motion for disclosure of exculpatory evidence [114–1], motion notice to the government of exculpatory evidence requested concerning government's use of informants, operatives and cooperating individuals [114–2], motion for discovery and inspection concerning government's use of informants, operatives and cooperating individuals [113–1], motion for interim investigator payments [66–1], motion to continue trial date [53–1], motion for appointment of expert services (investigator) [8–1] [350–1] as to SEAN COATES (6) (N) (aet) (zss). (Entered: 09/05/2000)

| 08/28/2000 | 371 | MOTION JOINDER by SEAN COATES joining in motion to suppress identification testimony [344–1], joining in motion to request for a pretrial hearing. [344–2], joining in motion request for an oral hearing. [340–2], joining in motion to dismiss count(s) as to SAMUEL CARSON (3) count(s) 5s–6s, 7s–8s [329–1], joining in motion to compel disclosure of exculpatory evidence [329–2], joining in motion additional sanctions due to violations of Brady V. Maryland. [329–3], joining in motion to strike all aliases from the indictment [330–1], joining in motion to compel disclosure of evidence subject to suppression under Fed. R. Cim.P.12(b)(3) [328–1], joining in motion for Bill of Particulars [327–1], joining in motion for discovery of statements of codefendants and co–conspirators [326–1], joining in motion for notice of government's intention to use residual hearsay exception under FRE (807). [325–1], joining in motion to dismiss count(s) as to , JEROME MARTIN (2) count(s) 1s, 2s, 9s, 16s, 15s, 17s, 19s, 20s, 37s, 51s–66s, 67s–80s, SAMUEL CARSON (3) count(s) 2s, 5s–6s, 7s–8s, 30s, 43s, 47s, 44s, 45s, 48s, 49s–50s, 51s–66s, WILLIAM KYLE SWEENEY (4) count(s) 2s, 22s, 35s, 36s, 48s–50s, 51s–66s, 21s, SEAN COATES (6) count(s) 2s, 22s, 46s, 47s, 48s–50s, 51s–66s, 21s, to strike all racketeering and |

| | | |
|---|---|---|
| | | VCAR counts from the indictment. [338−1], joining in motion to dismiss count(s) as to JEROME MARTIN (2) count(s) 9s, 10s−12s, 14s, 16s, 18s, 13s, 15s, 17s, 19s, 20s of the indictment for prejudicial pre−accusatory delay, violations of statutes of limitations and Speedy Trial provisions. [337−1], joining in motion to dismiss count(s) 1s, 2s of the indictment on fifth and sixth amendment grounds. [336−1], joining in motion to strike aliases from the indictment. [335−1], joining in motion to suppress evidence [334−1], joining in motion to suppress statement(s) [333−1], joining in motion for pretrial hearing to determine the existence of a conspiracy [312−1], joining in motion to determine the admissibility of co−conspirators statements. [312−2], joining in motion to identify witnesses with juvenile adjudications [311−1], joining in motion pending juvenile proceedings [311−2], joining in motion to inspect juvenile files pursuant to Davis v. Alaska. [311−3], joining in motion for an order directing the government to give notice of its intention to rely upon other crimes evidence regardless of whether the prior bad acts were also uncharged acts in futherance of the conspiracy. [310−1], joining in motion for notice of government's intention to use residual hearsay exception under Rule 803(24). [309−1], joining in motion for pretrial production of statements of persons who will not be called as witnesses at trial. [308−1], joining in motion to dismiss count(s) as to WILLIAM KYLE SWEENEY (4) count(s) 48s−50s [307−1], joining in motion to strike overt acts [307−2], joining in motion Racketeering Act 70(a)−(g) of count two of the indictiment [307−3], joining in motion to strike all references to the triple murder in Temple Hills, Maryland. [307−4], joining in motion for notice of government's intention to use residual hearsay exception under Rule 804(b)(5). [304−1], joining in motion to disclose identities of each confidential informant regardless of whether they will be called at trial. [303−1], joining in motion for pretrial identification and production of Jencks material. [302−1], joining in motion for in camera review of Grand Jury testimony to determine the existence of a racketeering enterprise. [301−1], joining in motion for a pre−trial hearing to determine the admissibility of video and audio tapes. [300−1], joining in motion to suppress physical evidence [306−1], joining in motion request for an oral hearing. [306−2], joining in motion to suppress custodial statement(s) [305−1], joining in motion request for evidentiary hearing; [305−2], joining in motion to change location of confinement pending trial. [296−1], joining in motion to compel discovery [293−1], joining in motion for the appointment of a second investigator [294−1], joining in motion for order granting leave to serve subpoenas upon two Assistant United States Attorneys [291−1], joining in motion to compel their testimony at trial [291−2], joining in motion to quash subpoena duces tecum issued to the Acting Chief of Human Resources at the U.S. Dept. of Agriculture [197−1], joining in motion for disclosure of exculpatory evidence [114−1], joining in motion notice to the government of exculpatory evidence requested concerning government's use of informants, operatives and cooperating individuals. [114−2], joining in motion for discovery and inspection concerning government's use of informants, operatives and cooperating individuals. [113−1], joining in motion for interim investigator payments [66−1], joining in motion to continue trial date. [53−1], joining in motion for appointment of expert services (investigator) [8−1] (erd) (Entered: 09/28/2000) |
| 08/31/2000 | | Text not available. (Entered: 08/31/2000) |
| 09/11/2000 | 379 | RESPONSE by USA in opposition to motion for reconsideration of his motion for severance [366−1] by SEAN COATES . (cas) (zss). (Entered: 09/11/2000) |
| 09/11/2000 | 390 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick D. Jones as CJA counsel for Death Penalty Proceedings. Signed: 9/11/00 NPT 9/22/98 (erd) (zss). (Entered: 09/13/2000) |
| 09/21/2000 | 407 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM ordered by Judge Thomas P. Jackson and issued to Warden, FCI Butner (Low) for production of CHARLES WYNN or CHRISTOPHER WYNN to testify on October 10, 2000, as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS . (jdm) (zss). (Entered: 09/22/2000) |

| | | |
|---|---|---|
| 09/26/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Motion hearing set for 10:00 9/27/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 09/26/2000) |
| 09/27/2000 | | MOTION HEARING before Judge Thomas P. Jackson as to SEAN COATES : Motion (joint) filed by Jerome Martin Jr., Samuel Carson, William Jerome Martin, Sean Coates to dismiss counts denied without prejudice as to Jerome Martin Jr., count(s) 20s, 37s, 51s–66s, 67s–80s, Samuel Carson count(s) 2s, 5s–6s, 7s–8s, 30s, 43s, 47s, 44s, 48s, 49s–50s, 51s–66s, William Kyle Sweeney count(s) 2s, 22s, 35s, 36s, 48s–50s, 51s–66s, 21s, Sean Coates count(s) 2s, 22s, 46s, 47s, 48s–50s, 51s–66s, 21s, to strike all racketeering and VCAR counts from the indictment. Wil Governments motion to quash subpoena duces tecum address to medical examiner's office; denied as moot as to Vincent Hill, Jerome Martin, Jr., Samuel Carson, William Kyle Sweeney, Maurice Proctor, Sean Coates, Reginald darnell Switzer, William Hill, Paul Franklin, Donald Nichols, Erik Jones, Raymond Washington, Clifton Edwards 193 ; granted motion to admit out of Court statements made my murdered witnesses as to Robert Smith and Kevin Hart 314 as to Vincent Hill (1), Jerome Martin (2), Samuel Carson (3), William Kyle Sweeney (4), Maurice Proctor (5), Sean Coates (6), Erik Jones (11), Raymond Washington (12); granted motion for an anonymous jury 289 as to Vincent Hill (1), Jerome Martin (2), Samuel Carson (3), William Kyle Sweeney (4), Maurice Proctor (5), Sean Coates (6), Reginald Darnell Switzer (7), William Hill (8), Paul Franklin (9), Donald Nichols (10), Erik Jones (11), Raymond Washington (12), Clifton Edwards (13); denied motion for reconsideration of his motion for severance [366–1] as to SEAN COATES (6) Counsel to submit suggested jury questions by 11/1/00 for SEAN COATES. Motions hearing continued to 9/27/00 at 10:00. Defendant committed/commitment issued. Reporter: Phyllis Merana (erd) Modified on 10/12/2000 (Entered: 10/11/2000) |
| 09/28/2000 | 435 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : that proposed juror questionnaires and special instructions to the jury venire regarding the questionnaires are due by November 1, 2000. (N) (jdm) (zss). (Entered: 10/30/2000) |
| 09/28/2000 | 451 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : denying motion for bill of particulars of unindicted crimes which the government intends to prove at trial [414–1] as to SAMUEL CARSON (3), denying motion to compel disclosure of exculpatory evidence [412–1] as to SAMUEL CARSON (3), denying motion to request for a pretrial hearing. [344–2] as to WILLIAM KYLE SWEENEY (4), denying motion to compel disclosure of exculpatory evidence [329–2] as to SAMUEL CARSON (3), denying motion to quash subpoena duces tecum issued to the Acting Chief of Human Resources at the U.S. Dept. of Agriculture [197–1] as to SAMUEL CARSON (3) (N) (aet) (llk). (Entered: 11/06/2000) |
| 09/29/2000 | 415 | Government's Submission Regarding KEVIN HART and ROBERT B. SMITH as to VINCENT HILL, JEROME MARTIN JR., SEAN COATES, WILLIAM KYLE SWEENEY, SAMUEL CARSON, MAURICE PROCTOR . (cas) (zss). (Entered: 10/02/2000) |
| 10/01/2000 | 445 | SUPPLEMENTAL Submission Regarding Shooting of ROBERT SMITH at Hope Village; attachments (7) by USA to (cas) (zss). (Entered: 11/02/2000) |
| 10/03/2000 | 416 | SUPPLEMENTAL MEMORANDUM in support of it's motion for anonymous jury by USA. (cas) (zss). (Entered: 10/04/2000) |
| 10/23/2000 | 432 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Sean Coates, Signed: 10/23/00, Rate: $1,000 or $45.00 PH., estimate 20 HRS.. (erd) Modified on |

| | | 10/27/2000 (Entered: 10/27/2000) |
|---|---|---|
| 10/25/2000 | 437 | SUPPLEMENTAL MEMORANDUM by USA as to VINCENT HILL, JEROME MARTIN, SEAN COATES, WILLIAM SWEENEY, SAM CARSON and MAURICE PROCTOR. (cas) (zss). (Entered: 10/31/2000) |
| 10/25/2000 | 441 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel for Death Penalty Proceedings. Signed: 10/25/00 (erd) (Entered: 11/01/2000) |
| 11/01/2000 | 446 | JURY INSTRUCTIONS by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, GARY PRICE. (cas) (zjpb). (Entered: 11/02/2000) |
| 11/01/2000 | 447 | PROPOSED CONFIDENTIAL JUROR QUESTIONNAIRE by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, GARY PRICE. (cas) (zss). (Entered: 11/02/2000) |
| 11/01/2000 | 448 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 9/26/00. Reporter: Phyllis Merana (cas) (zss). (Entered: 11/02/2000) |
| 11/01/2000 | 449 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 9/27/00. Reporter: Phyllis Merana (cas) (Entered: 11/02/2000) |
| 11/14/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/15/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/14/2000) |
| 11/14/2000 | 460 | PROPOSED ADDITIONAL VOIR DIRE by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS (jdm) (zss). (Entered: 11/15/2000) |
| 11/15/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/20/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/15/2000) |
| 11/15/2000 | | VOIR DIRE begun as to, VINCENT HILL (1) count(s) 1s, 2s, 3s, 22s, 31s, 33s, 32s, 34s, 38s, 51s−66s, 67s−80s, 81s−98s, 99s−101s, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 17s, 20s, 37s, 51s−66s, 67s−80s, 81s−98s, 99s−101s, SAMUEL CARSON (3) count(s) 1s, 2s, 5s−6s, 7s−8s, 23s, 29s, 30s, 42s, 46s, 43s, 47s, 44s, 45s, 48s, 49s−50s, 51s−66s, 67s−80s, WILLIAM KYLE SWEENEY (4) count(s) 1s, 2s, 22s, 35s, 36s, 48s−50s, 51s−66s, 67s−80s, 21s, MAURICE PROCTOR (5) count(s) 1s, 2s, 20s, 22s, 28s, 27s, 51s−66s, 67s−80s, SEAN COATES (6) count(s) 1s, 2s, 22s, 46s, 47s, 48s−50s, 51s−66s, 67s−80s, 21s. Defendants Vincent Hill, Jerome Martin, Samuel Carson and William Kyle Sweeney appearance waived during jury filling out questionnaire. Defendants Maurice Proctor and Sean Coates elect to be present during jury filling out questionnaire. (erd) Modified on 01/29/2001 (Entered: 01/10/2001) |
| 11/17/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/27/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/17/2000) |
| 11/17/2000 | 471 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES: denying motion for order that United States Marshal Service provide suitable housing for defendant within 30 mile radius of District of Columbia [468−1] as to VINCENT HILL (1), denying motion modification of conditions of |

| | | |
|---|---|---|
| | | detention [468–2] as to VINCENT HILL (1) (N) (hsj) (zss). (Entered: 11/22/2000) |
| 11/17/2000 | 477 | MOTION filed by SEAN COATES to adopt and join motion by defendant's HILL, PROCTOR, and MARTIN for an order l that United States Marshall Service provide suitable housing for defendant within 30 mile radius of District Court during trial [461–1] (cas) (zss). (Entered: 11/28/2000) |
| 11/17/2000 | 482 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motionto adopt and join motion by defendant's HILL, PROCTOR, and MARTIN for an order l that United States Marshall Service provide suitable housing for defendant within 30 mile radius of District Court during trial [461–1] [477–1] by SEAN COATES (N) (cas) (zss). (Entered: 11/28/2000) |
| 11/17/2000 | 487 | DUPLICATE ORDER DOCKETED AS NUMBER (471) (cas) Modified on 12/07/2000 (zss). (Entered: 11/29/2000) |
| 11/17/2000 | | MOTION HEARING before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Defendants SAMUEL CARSON and SEAN COATES appearance waived for this motion hearing. Heard and denied motion for order that United States Marshall Service provide suitable housing for defendant within 30 mile radius of District Court during trial and joined by defendants JEROME HILL, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR and SEAN COATES [461–1] as to VINCENT HILL, JEROME MARTIN, WILLIAM KYLE SWEENEY and MAURICE PROCTOR. Defendants committed/commitment issued. Reporter: Beverly Byrne (erd) (Entered: 01/30/2001) |
| 11/20/2000 | 480 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion nunc pro tunc to 11/17/00 to adopt and join motion by defendant's HILL, PROCTOR, and MARTIN for an order l that United States Marshall Service provide suitable housing for defendant within 30 mile radius of District Court during trial [461–1] [477–1] by SEAN COATES (N) (cas) (zss). (Entered: 11/28/2000) |
| 11/27/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/28/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/27/2000) |
| 11/27/2000 | | VOIR DIRE before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : resumed and continued to 11/28/00 at 10:00. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 01/30/2001) |
| 11/28/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/29/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/28/2000) |
| 11/28/2000 | | VOIR DIRE before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : resumed and continued to 11/29/00 at 10:00. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/30/2001) |
| 11/29/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 11/30/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/29/2000) |
| 11/29/2000 | 505 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Sean Coates Voucher #: D018719, Signed: 11/29/00, Rate: $2866.42. (erd) (zss). (Entered: 12/20/2000) |

| | | |
|---|---|---|
| 11/29/2000 | | VOIR DIRE before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : resumed and continued to 11/30/00 at 10:00. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/30/2001) |
| 11/30/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 12/4/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 11/30/2000) |
| 12/05/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 12/6/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 12/05/2000) |
| 12/06/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 12/11/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 12/06/2000) |
| 12/11/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 12/12/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 12/11/2000) |
| 12/11/2000 | | VOIR DIRE before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : resumed and continued to 12/12/00 at 10:00. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/30/2001) |
| 12/12/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 12/13/00 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 12/12/2000) |
| 12/13/2000 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/4/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 12/13/2000) |
| 12/13/2000 | | VOIRD DIRE resumed and completed JURY SELECTION before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1s, 2s, 3s, 22s, 31s, 33s, 32s, 34s, 38s, 51s−66s, 67s−80s, 81s−98s, 99s−101s, JEROME MARTIN (2) count(s) 1s, 2s, 9s, 17s, 20s, 37s, 51s−66s, 67s−80s, 81s−98s, 99s−101s, SAMUEL CARSON (3) count(s) 1s, 2s, 5s−6s, 7s−8s, 23s, 29s, 30s, 42s, 46s, 43s, 47s, 44s, 45s, 48s, 49s−50s, 51s−66s, 67s−80s, WILLIAM KYLE SWEENEY (4) count(s) 1s, 2s, 22s, 35s, 36s, 48s−50s, 51s−66s, 67s−80s, 21s, MAURICE PROCTOR (5) count(s) 1s, 2s, 20s, 22s, 28s, 27s, 51s−66s, 67s−80s, SEAN COATES (6) count(s) 1s, 2s, 22s, 46s, 47s, 48s−50s, 51s−66s, 67s−80s, 21s : Jury selection begun and continued to 10:00 1/4/01. Defendants committed/commitment issued. reporter Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/30/2001) |
| 12/14/2000 | 501 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel for Death Penalty Proceedings. Signed: 12/14/00 (erd) (Entered: 12/14/2000) |
| 12/14/2000 | 506 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 6/8/00. Reporter: Phyllis Merana, 6816 U.S. Courthouse 3rd & Constitution Ave, N.W. (cas) (zss). (Entered: 12/21/2000) |

| 01/04/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/8/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/04/2001) |
|---|---|---|
| 01/04/2001 | <u>517</u> | RETYPED INDICTMENT filed for VINCENT HILL (1): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 3s is now count 3rs. Former count 22s is now count 12rs. Former count 31s is now count 18rs. Former count 32s is now count 19rs. Former count 33s is now count 20rs. Former count 34s is now count 21rs. Former count 38s is now count 26rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. Former count 81s is now count 59rs. Former count 82s is now count 60rs. Former count 83s is now count 61rs. Former count 84s is now count 62rs. Former count 85s is now count 63rs. Former count 86s is now count 64rs. Former count 87s is now count 65rs. Former count 88s is now count 66rs. Former count 89s is now count 67rs. Former count 90s is now count 68rs. Former count 91s is now count 69rs. Former count 92s is now count 70rs. Former count 93s is now count 71rs. Former count 94s is now count 72rs. Former count 95s is now count 73rs. Former count 96s is now count 74rs. Former count 97s is now count 75rs. Former count 99s is now count 76rs. Former count 101s is now count 77rs. JEROME MARTIN (2): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 9s is now count 8rs. Former count 17s is now count 9rs. Former count 20s is now count 10rs. Former count 37s is now count 24rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. Former count 81s is now count 59rs. Former count 82s is now count 60rs. Former count 83s is now count 61rs. Former count 84s is now count 62rs. Former count 85s is now count 63rs. Former count 86s is now count 64rs. Former count 87s is now count 65rs. Former count 88s is now count 66rs. Former count 89s is now count 67rs. Former count 90s is now count 68rs. Former count 91s is now count 69rs. Former count 92s is now count 70rs. Former count 93s is now count 71rs. Former count 94s is now count 72rs. Former count 95s is now count 73rs. Former count 96s is now count 74rs. Former count 97s is now count 75rs. Former count 99s is now count 76rs. Former count 101s is now count 77rs. . (erd) (zjpb). (Additional attachment(s) added on 6/4/2024: # <u>1</u> Attachment) (zss). (Entered: 01/30/2001) |
| 01/04/2001 | 517 | RETYPED INDICTMENT filed for SAMUEL CARSON (3): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 5s is now count 4rs. Former count 6s is now count 5rs. Former count 7s is now count 6rs. Former count 8s is now count 7rs. Former count 23s is now count 13rs. Former count 29s is now count 16rs. Former count 30s is now count 17rs. Former count 42s is now count 26rs. Former count 43s is now count 27rs. Former count 44s is now count 28rs. Former count 45s is now count 29rs. Former count 46s is now count 30rs. Former count 47s is now count 31rs. Former count 48s is now count 32rs. Former count 49s is now count 33rs. Former count 50s is now count 34rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former |

count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. WILLIAM KYLE SWEENEY (4): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 21s is now count 11rs. Former count 22s is now count 12rs. Former count 35s is now count 22rs. Former count 36s is now count 23rs. Former count 48s is now count 32rs. Former count 49s is now count 33rs. Former count 50s is now count 34rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. MAURICE PROCTOR (5): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 20s is now count 10rs. Former count 22s is now count 12rs. Former count 27s is now count 14rs. Former count 28s is now count 15rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. SEAN COATES (6): Former count 1s is now count 1rs. Former count 2s is now count 2rs. Former count 21s is now count 11rs. Former count 22s is now count 12rs. Former count 46s is now count 30rs. Former count 47s is now count 31rs. Former count 48s is now count 32rs. Former count 49s is now count 33rs. Former count 50s is now count 34rs. Former count 51s is now count 35rs. Former count 53s is now count 36rs. Former count 54s is now count 37rs. Former count 55s is now count 38rs. Former count 56s is now count 39rs. Former count 57s is now count 40rs. Former count 58s is now count 41rs. Former count 61s is now count 42rs. Former count 62s is now count 43rs. Former count 63s is now count 44rs. Former count 64s is now count 45rs. Former count 65s is now count 46rs. Former count 66s is now count 47rs. Former count 67s is now count 48rs. Former count 68s is now count 49rs. Former count 71s is now count 50rs. Former count 72s is now count 51rs. Former count 73s is now count 52rs. Former count 74s is now count 53rs. Former count 75s is now count 54rs. Former count 76s is now count 55rs. Former count 78s is now count 56rs. Former count 79s is now count 57rs. Former count 80s is now count 58rs. (erd) Modified on 01/30/2001 (Entered: 01/30/2001)

| 01/04/2001 | | JURY SELECTION before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs−5rs, 6rs−7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs−34rs, 35rs−47rs, 48rs−58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs−34rs, 35rs−47rs, 48rs−58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs−47rs, 48rs−58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs : Jury selection begun and concluded; 20 jurors selected, but not sworn. Trial set for 10:00 1/8/01. Defendants |

| | | |
|---|---|---|
| | | committed/commitment issued. reporter Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/04/2001 | | STATUS HEARING (USED TO ADMINISTRATIVELY CLOSE COUNTS OMITTED FROM RETYNED INDICTMENT) before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : to dismiss count(s) as to, VINCENT HILL (1) count(s) 52s, 59s−60s, 69s−70s, 77s, 98s, 100s, JEROME MARTIN (2) count(s) 52s, 59s−60s, 69s−70s, 77s, 98s, 100s, SAMUEL CARSON (3) count(s) 52s, 59s−60s, 69s−70s, 77s, WILLIAM KYLE SWEENEY (4) count(s) 52s, 59s−60s, 69s−70s, 77s, MAURICE PROCTOR (5) count(s) 52s, 59s−60s, 69s−70s, 77s, SEAN COATES (6) count(s) 52s, 59s−60s, 69s−70s, 77s . Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/08/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/08/2001) |
| 01/08/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs−5rs, 6rs−7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs−34rs, 35rs−47rs, 48rs−58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs−34rs, 35rs−47rs, 48rs−58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs−47rs, 48rs−58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs−34rs, 35rs−47rs, 48rs−58rs : Same jury of 20, juror number 18 excused. Jury sworn; trial begun and continued to 10:00 1/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) Modified on 01/30/2001 (Entered: 01/30/2001) |
| 01/09/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/09/2001) |
| 01/09/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs−5rs, 6rs−7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs−34rs, 35rs−47rs, 48rs−58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs−34rs, 35rs−47rs, 48rs−58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs−47rs, 48rs−58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs−34rs, 35rs−47rs, 48rs−58rs : Same jury of 19. Trial resumed and continued to 10:00 1/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/30/2001) |
| 01/10/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/10/2001) |
| 01/10/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs−47rs, 48rs−58rs, 59rs−75rs, 76rs−77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs−5rs, |

| | | |
|---|---|---|
| | | 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 19, juror number 11 excused. Trial resumed and continued to 10:00 1/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Merana a.m., Phyllis Merana p.m. (erd) (Entered: 01/31/2001) |
| 01/11/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/16/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/11/2001) |
| 01/11/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, 52s, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18. Trial resumed and continued to 10:00 1/16/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/16/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/22/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/16/2001) |
| 01/22/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/22/2001) |
| 01/22/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18. Trial resumed and continued to 10:00 1/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/23/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/24/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/23/2001) |
| 01/23/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, |

| | | |
|---|---|---|
| | | 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18. Trial resumed and continued to 10:00 1/24/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/24/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/24/2001) |
| 01/24/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18. Trial resumed and continued to 10:00 1/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/25/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/25/2001) |
| 01/25/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18. Trial resumed and continued to 10:00 1/29/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/26/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/29/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/26/2001) |
| 01/29/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/29/2001) |
| 01/29/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, |

| | | |
|---|---|---|
| | | 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 18; juror number 15 excused. Trial resumed and continued to 10:00 1/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) Modified on 01/31/2001 (Entered: 01/31/2001) |
| 01/30/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 1/31/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/30/2001) |
| 01/30/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 1/31/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 01/31/2001) |
| 01/31/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury; juror number 6 not present, trial continued. Trial resumed and continued to 10:00 2/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/02/2001) |
| 02/01/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/01/2001) |
| 02/01/2001 | 523 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Adele Johnson Voucher #: D018719–004, Signed: 2/1/01, Rate: $2247.28. (erd) (zss). (Entered: 02/01/2001) |
| 02/01/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed |

| | | |
|---|---|---|
| | | and continued to 10:00 2/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/14/2001) |
| 02/05/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/6/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/05/2001) |
| 02/05/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/6/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/14/2001) |
| 02/06/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/7/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/06/2001) |
| 02/06/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/7/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/14/2001) |
| 02/07/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/8/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/07/2001) |
| 02/07/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/8/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/14/2001) |

| 02/08/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/08/2001) |
|---|---|---|
| 02/08/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/14/2001) |
| 02/12/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/13/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/12/2001) |
| 02/12/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/13/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 02/26/2001) |
| 02/13/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/14/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/13/2001) |
| 02/13/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/14/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/26/2001) |
| 02/14/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/15/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/14/2001) |

| 02/14/2001 | 537 | RESPONSE by USA in opposition to motion for mistrial [527–1] by SAMUEL CARSON, motion and severance regarding testimony of witness THERODORE WATSON [527–2] by SAMUEL CARSON; Appendix (cas) (zss). (Entered: 02/22/2001) |
|---|---|---|
| 02/14/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/15/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/26/2001) |
| 02/15/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/15/2001) |
| 02/15/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 02/26/2001) |
| 02/21/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/22/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/21/2001) |
| 02/22/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/22/2001) |
| 02/22/2001 | 539 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel for Death Penalty Proceedings. Signed: 2/22/01 (erd) (zss). (Entered: 02/26/2001) |
| 02/22/2001 | 548 | JOINT REQUEST by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for order allowing food from cafeteria to be provided to defendant's for lunch (cas) (zss). (Entered: 03/06/2001) |
| 02/26/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/27/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/26/2001) |

| | | |
|---|---|---|
| 02/26/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/27/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) Modified on 03/06/2001 (Entered: 03/06/2001) |
| 02/27/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 2/28/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/27/2001) |
| 02/27/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 2/28/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/06/2001) |
| 02/28/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 3/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 02/28/2001) |
| 02/28/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury & of 17. Trial resumed and continued to 10:00 3/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Beverly Byrne p.m. (erd) (Entered: 03/06/2001) |
| 03/01/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 3/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/01/2001) |
| 03/01/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, |

| | | |
|---|---|---|
| | | 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 3/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) Modified on 03/06/2001 (Entered: 03/06/2001) |
| 03/05/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES : Trial set for 10:00 3/6/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/05/2001) |
| 03/05/2001 | 549 | MEMORANDUM of LAW by USA regarding admissibilty of plea transcripts. (jdm) (zss). (Entered: 03/08/2001) |
| 03/05/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury 17. Trial resumed and continued to 10:00 3/6/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/19/2001) |
| 03/06/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/7/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/06/2001) |
| 03/06/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : ATTORNEY FOR DEFENDANT MAURICE PROCTOR (5) NOT PRESENT. DEFENDANT MAURICE PROCTOR SEVERED FROM CASE. Same jury of 17. Trial resumed and continued to 10:00 3/7/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/03/2001) |
| 03/07/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/07/2001) |
| 03/07/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, |

| | | |
|---|---|---|
| | | 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 3/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/19/2001) |
| 03/08/2001 | 551 | NOTICE OF FILING by VINCENT HILL, JEROME MARTIN JR., SEAN COATES, WILLIAM KYLE SWEENEY, SAMUEL CARSON . ( Attachment: Letter concerning FBI 302S). (cas) (zss). (Entered: 03/09/2001) |
| 03/12/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/13/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/12/2001) |
| 03/12/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 3/13/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/19/2001) |
| 03/13/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/14/01 before Judge Thomas P. Jackson (bh) (Entered: 03/13/2001) |
| 03/13/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 3/14/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/26/2001) |
| 03/14/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/15/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/14/2001) |
| 03/14/2001 | 563 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, GARY PRICE : denying joint motion for order allowing food from cafeteria to be provided to defendant's for lunch [548–1] by defendants (N) (cas) (zss). (Entered: 03/23/2001) |
| 03/14/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, MAURICE PROCTOR (5) count(s) 1rs, 2rs, 10rs, |

| | | |
|---|---|---|
| | | 12rs, 14rs, 15rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17. Trial resumed and continued to 10:00 3/15/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for MAURICE PROCTOR, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 03/26/2001) |
| 03/15/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/15/2001) |
| 03/19/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/20/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/19/2001) |
| 03/19/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 17; juror number 5 excused. Trial resumed and continued to 10:00 3/20/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) Modified on 05/02/2001 (Entered: 04/17/2001) |
| 03/20/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/20/2001) |
| 03/20/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury & of 16. Trial resumed and continued to 10:00 3/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 03/21/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 3/22/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/21/2001) |
| 03/21/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of of 16. Trial resumed and continued to 10:00 3/22/01 for VINCENT HILL, for JEROME MARTIN JR., for |

| | | |
|---|---|---|
| | | SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 03/22/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 03/22/2001) |
| 03/22/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/02/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/3/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/02/2001) |
| 04/02/2001 | 567 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick D. Jones as CJA counsel for Death Penalty Proceedings. Signed: 4/2/01 (erd) (Entered: 04/03/2001) |
| 04/02/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/3/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/03/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/4/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/03/2001) |
| 04/03/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/4/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |

| | | |
|---|---|---|
| 04/04/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/04/2001) |
| 04/04/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 56, 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/05/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/05/2001) |
| 04/05/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/09/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/09/2001) |
| 04/09/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/10/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 2:00 4/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/10/2001) |
| 04/10/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, |

| | | |
|---|---|---|
| | | 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 2:00 4/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/11/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/11/2001) |
| 04/11/2001 | <u>584</u> | WRIT OF HABEAS CORPUS AD TESTIFICANDUM ordered by Judge Thomas P. Jackson and issued to Warden, Federal Correctional Institution, Otisville New York for production of James Brian Rochester to testify on 4/30/01, as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (erd) (zss). (Entered: 04/23/2001) |
| 04/11/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16. Trial resumed and continued to 10:00 4/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (erd) (Entered: 05/02/2001) |
| 04/12/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/17/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/12/2001) |
| 04/17/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/18/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/17/2001) |
| 04/17/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/18/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 05/03/2001 (Entered: 05/02/2001) |
| 04/18/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. |

| | | |
|---|---|---|
| | | Jackson . (rew) (Entered: 04/18/2001) |
| 04/18/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16 Trial resumed and continued to 10:00 4/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne. (rew) Modified on 05/03/2001 (Entered: 05/02/2001) |
| 04/19/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/19/2001) |
| 04/19/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 05/03/2001 (Entered: 05/03/2001) |
| 04/23/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/24/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/23/2001) |
| 04/23/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/24/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 04/24/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/24/2001) |
| 04/24/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, |

| | | |
|---|---|---|
| | | 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 04/25/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/25/2001) |
| 04/25/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 05/03/2001 (Entered: 05/02/2001) |
| 04/26/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 4/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/26/2001) |
| 04/26/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 4/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 04/30/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 5/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 04/30/2001) |
| 04/30/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 05/01/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 5/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, |

| | | |
|---|---|---|
| | | for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 05/01/2001) |
| 05/01/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 05/02/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 5/3/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 05/02/2001) |
| 05/02/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/3/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 05/03/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/7/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/03/2001) |
| 05/07/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/8/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/07/2001) |
| 05/08/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, |

| | | |
|---|---|---|
| | | 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 16, Trial resumed and continued to 10:00 5/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly By (rew) (Entered: 05/08/2001) |
| 05/08/2001 | 587 | EX–PARTE MOTION filed by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for joint meeting of all defendants and their attorneys (cas) (zss). (Entered: 05/09/2001) |
| 05/09/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : juror 14 not present, Trial continued to 10:00 5/14/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . . Defendants committed/commitments issued. Reporter: Phyllis Merana (rew) (Entered: 05/09/2001) |
| 05/14/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : juror#14 not present and excused; Trial resumed and continued to 10:00 5/15/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m. Beverly Byrne p.m. (rew) (Entered: 05/14/2001) |
| 05/15/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/16/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/15/2001) |
| 05/16/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/17/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/16/2001) |

| | | |
|---|---|---|
| 05/17/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/17/2001) |
| 05/21/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/22/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/21/2001) |
| 05/22/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 05/22/2001 (Entered: 05/22/2001) |
| 05/22/2001 | 599 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS : That the government's motion for issuance of a pretrial subpoena is granted. The government may subpoena the medical records of Popa Mark Phillip in order to obtain evidence of injuries suffered in the course of assaults allegedly committed by the defendant in the instant case. The subpoena shall be made returnable for 5/23/01 in order to permit the government to provide to all defense counsel discovery of any and all medical records it intends to introduce at trial. (N) (erd) (zss). (Entered: 05/23/2001) |
| 05/23/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and concluded . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/23/2001) |
| 05/24/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, |

| | | |
|---|---|---|
| | | 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/29/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/24/2001) |
| 05/25/2001 | 601 | RESPONSE by plaintiff USA in opposition to motion for mistriali or alternatively for an evidentiary hearing [586–1] by VINCENT HILL . (cas) (zss). (Entered: 05/29/2001) |
| 05/25/2001 | 602 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES to quash subpoena directed to custodian of records at the general counsel's officer for the United States Department of Justice ; attachment's (cas) (zss). (Entered: 05/29/2001) |
| 05/29/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 5/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/29/2001) |
| 05/30/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and the Government rests and continued to 10:30 6/4/01 for defendant's motions to dismiss for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 05/30/2001) |
| 06/04/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to , VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : jury not present, Trial resumed on defendant's motions to dismiss heard and taken under advisement and trial continued to 10:00 6/6/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/04/2001) |
| 06/05/2001 | 604 | RESPONSE by USA in opposition to defendant's motions for judgment of acquittal (cas) (zss). (Entered: 06/06/2001) |
| 06/06/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, |

| | | |
|---|---|---|
| | | 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 6/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 06/07/2001 (Entered: 06/06/2001) |
| 06/07/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 10:00 6/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 06/07/2001) |
| 06/11/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 2:00 6/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/11/2001) |
| 06/12/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 10:00 6/13/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/12/2001) |
| 06/12/2001 | 613 | GOVENRMENT'S NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS ; attachment's (final jury instructions) (cas) (bj). (Entered: 06/15/2001) |
| 06/13/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, Trial resumed and continued to 2:00 6/14/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES, Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrney p.m. (rew) (Entered: 06/13/2001) |
| 06/14/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, |

| | | |
|---|---|---|
| | | 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 15, juror #2 excused, Trial resumed and continued to 10:00 6/18/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 06/14/2001 (Entered: 06/14/2001) |
| 06/14/2001 | 614 | NOTICE OF FILING by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachment: Government's proposed verdict). (erd) (zss). (Entered: 06/19/2001) |
| 06/14/2001 | 618 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick D. Jones as CJA counsel for Death Penalty Proceedings. Signed: 6/14/01 (erd) (Entered: 06/26/2001) |
| 06/15/2001 | 615 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES to modify trial schedule (erd) (zss). (Entered: 06/25/2001) |
| 06/18/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed and continued to 10:00 6/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/18/2001) |
| 06/19/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed and continued to 10:00 6/20/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/19/2001) |
| 06/20/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed and continued to 10:00 6/21/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/20/2001) |
| 06/20/2001 | 622 | ORDER by Judge Thomas P. Jackson appointing attorney Bravitt C. Manley, Jr. for material witness Lawrence Davis. Signed: 6/20/01 (erd) (zss). (Entered: 07/02/2001) |

| 06/20/2001 | 625 | FINANCIAL Affidavit filed as to Lawrence A. Davis (material witness). (erd) (zss). (Entered: 07/10/2001) |
|---|---|---|
| 06/21/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed and continued to 10:00 6/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/21/2001) |
| 06/25/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed and all defendants rest and defendants 1,2,3,6 voluntarily absent themselves from the trial, trial continued to 9:00 6/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 06/25/2001 (Entered: 06/25/2001) |
| 06/25/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 9:00 6/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 06/25/2001) |
| 06/25/2001 | 621 | PROPOSED ADDITIONAL JURY INSTRUCTIONS by defendant VINCENT HILL, defendant JEROME MARTIN JR., defendant SAMUEL CARSON, defendant WILLIAM KYLE SWEENEY, defendant SEAN COATES as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES (cas) (bj). (Entered: 06/26/2001) |
| 06/26/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed, Government's closing argument begun and continued to 1:00 6/27/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) Modified on 06/27/2001 (Entered: 06/26/2001) |
| 06/27/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed, government's closing argument resumed and concluded, defendant's closing arguments begun and continued to 10:00 6/28/01 for VINCENT HILL, for JEROME |

| | | |
|---|---|---|
| | | MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/27/2001) |
| 06/27/2001 | 624 | ORDER by Magistrate Judge John M. Facciola appointing Bravitt C. Manley, Jr. as CJA counsel for Lawrence A. Davis (Material Witness). Voucher No.: Signed: 6/27/01 NPT 6/20/01 (xx) (Entered: 07/09/2001) |
| 06/28/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rs, 2rs, 3rs, 12rs, 18rs, 19rs, 20rs, 21rs, 26rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, JEROME MARTIN (2) count(s) 1rs, 2rs, 8rs, 9rs, 10rs, 24rs, 35rs–47rs, 48rs–58rs, 59rs–75rs, 76rs–77rs, SAMUEL CARSON (3) count(s) 1rs, 2rs, 4rs–5rs, 6rs–7rs, 13rs, 16rs, 17rs, 26rs, 27rs, 28rs, 29rs, 30rs, 31rs, 32rs, 33rs–34rs, 35rs–47rs, 48rs–58rs, WILLIAM KYLE SWEENEY (4) count(s) 1rs, 2rs, 11rs, 12rs, 22rs, 23rs, 32rs–34rs, 35rs–47rs, 48rs–58rs, SEAN COATES (6) count(s) 1rs, 2rs, 11rs, 12rs, 30rs, 31rs, 32rs–34rs, 35rs–47rs, 48rs–58rs : Same jury of 14, Trial resumed, a.m. jury instructions, p.m. defendant's closing arguments resumed and continued to 10:00 7/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . Defendants committed/commitments issued. Reporter: Phyllis Merana a.m./Beverly Byrne p.m. (rew) (Entered: 06/28/2001) |
| 07/02/2001 | 760 | RETYPED INDICTMENT filed against VINCENT HILL (1) count(s) 1rr, 2rr, 3rr, 11rr, JEROME MARTIN (2) count(s) 1rr, 2rr, 8rr, 9rr, 17rr, 18rr, SAMUEL CARSON (3) count(s) 1rr, 2rr, 4rr, 5rr, 6rr, 7rr, 8rr, 12rr, 13rr, 14rr, 19rr, 20rr, 21rr, WILLIAM KYLE SWEENEY (4) count(s) 1rr, 2rr, 10rr, 11rr, 15rr, 16rr, SEAN COATES (6) count(s) 1rr, 2rr, 10rr, 11rr. (erd) Modified on 11/08/2001 (zjpb). (Entered: 10/03/2001) |
| 07/02/2001 | 760 | CONTINUATION OF REYPTED INDICTMENT entry against VINCENT HILL (1) count(s) 28rr, JEROME MARTIN (2) count(s) 31rr, 42rr, SAMUEL CARSON (3) count(s) 22rr, 23rr, 24rr, 25rr, 26rr, 27rr, 29rr, 32rr, 33rr, 34rr, 35rr, 36rr, 37rr, 39rr, 40rr, 43rr, 44rr, 45rr, WILLIAM KYLE SWEENEY (4) count(s) 25rr, 26rr, 27rr, 28rr, 30rr, 35rr, 36rr, 37rr, 38rr, 41rr, SEAN COATES (6) count(s) 24rr, 25rr, 26rr, 27rr, 34rr, 38rr.(erd) Modified on 11/08/2001 (Entered: 10/29/2001) |
| 07/02/2001 | 760 | CONTINUATION OF RETYPED INDICTMENT entry against VINCENT HILL (1) count(s) 46rr, 47rr 48rr, 49rr, 50rr, 51rr, 52rr, 54rr, 56rr, 57rr, 58rr, 59rr, 60rr, 61rr, 62rr, 63rr, JEROME MARTIN (2) count(s) 49rr, 53rr, 55rr, 64rr. (erd) (Entered: 11/08/2001) |
| 07/02/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 14. Trial resumed and continued to 9:30 7/3/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Miller Reporting Co., Pam Briggle p.m. (erd) (Entered: 11/19/2001) |
| 07/03/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 9:30 7/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/03/2001) |
| 07/03/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, |

| | | |
|---|---|---|
| | | 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 23rrs, 28rrs, 35rrs–37rrs, 45rrs : Same jury of 14. Defendants closing resumed and concluded. Government closing rebuttal begun and continued to 10:00 7/5/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m., Miller Reporting Co., Chris Bisko p.m. (xx) (Entered: 07/24/2002) |
| 07/05/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 14. Trial resumed and continued to 10:00 7/9/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Miller Reporting Co., Chris Bisko p.m. (erd) (Entered: 11/19/2001) |
| 07/09/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial set for 9:30 7/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/09/2001) |
| 07/09/2001 | 630 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : that the adjudication of contempt of Christopher M. Davis, Esq. of June 21, 2001, is hereby vacated, and the fine imposed remitted. (N) (erd) (zss). (Entered: 07/16/2001) |
| 07/09/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 14. Trial resumed and concluded; alternate jurors excused. Jury deliberations begun and continued to 9:30 7/10/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana a.m./Miller Reporting Co., Chris Bitsko p.m. (erd) Modified on 11/19/2001 (Entered: 11/19/2001) |
| 07/10/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Jury deliberations resumed and continued to 9:30 7/11/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: |

| | | |
|---|---|---|
| | | 11/19/2001) |
| 07/11/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Jury deliberations resumed and continued to 9:30 7/12/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/12/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Trial,jury deliberations, set for 9:30 7/16/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/12/2001) |
| 07/12/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Jury deliberations resumed and continued to 9:30 7/16/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) Modified on 11/19/2001 (Entered: 11/19/2001) |
| 07/13/2001 | 738 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES: That the adjudications of contempt of Jonathan Zucker, Esquire of 2//6/01 and 5/21/01 are hereby vacated, and the fines imposed are remitted. (N) (hsj) (zss). (Entered: 07/20/2001) |
| 07/16/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 7/17/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/16/2001) |
| 07/16/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Trial resumed and continued to 9:30 7/17/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/17/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations |

| | | |
|---|---|---|
| | | resumed and continued to 9:30 7/18/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/17/2001) |
| 07/17/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Jury deliberations resumed and continued to 9:30 7/18/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/18/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 7/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/18/2001) |
| 07/18/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 12. Jury deliberations resumed and continued to 9:30 7/19/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/19/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Juror #3 not present, jury deliberations continued to 7–23–01 at 9:30 am for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/19/2001) |
| 07/19/2001 | 639 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/13/00. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 640 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/15/00 Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (Entered: 07/20/2001) |
| 07/19/2001 | 641 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/27/00. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 642 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/28/00. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |

| 07/19/2001 | 643 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/29/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 644 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 11/30/00. Reporter: (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 645 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/4/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 646 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/5/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 647 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/6/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 648 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/11/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 649 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/12/00. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 650 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 12/13/00. Reporter: Phyllis Merana (erd) (zss). (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 651 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/4/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 652 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/8/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 653 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/9/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 654 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/10/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 655 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/11/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 656 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/22/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 657 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/23/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 658 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/24/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 659 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/25/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |

| 07/19/2001 | 660 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/29/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 661 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/30/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 662 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 1/31/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 663 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/28/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 664 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/27/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 665 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/26/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 666 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/15/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 667 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/14/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 668 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/13/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 669 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/12/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 670 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/8/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 671 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/7/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 672 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/6/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 673 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/5/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 674 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 2/1/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 675 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 3/1/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 676 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 3/5/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |

| 07/19/2001 | 677 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 3/6/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 678 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/7/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 679 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/12/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 680 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/13/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 681 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/14/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 682 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/15/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 683 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/19/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 684 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/20/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 685 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/21/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 686 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 3/22/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 687 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/2/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 688 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/3/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 689 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/4/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 690 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/9/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 691 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/10/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 692 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/17/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 693 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/18/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |

| 07/19/2001 | 694 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/23/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 695 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/24/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 696 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/25/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 697 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/26/01. Reporter: Phyllis Merana (erd) (zss). (Main Document 697 replaced on 7/10/2023) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 698 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 4/30/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 699 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 5/1/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 700 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/2/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 701 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of Phyllis Merana. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 702 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/7/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 703 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/8/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 704 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/9/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 705 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/14/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 706 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/15/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 707 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/16/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 708 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/17/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 709 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/21/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 710 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/22/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |

| 07/19/2001 | 711 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/23/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 712 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/29/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 713 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 5/30/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 714 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/4/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 715 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/6/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 716 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/11/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 717 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/13/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 718 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/18/01. Reporter: Phyllis Merana (erd) Modified on 07/20/2001 (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 719 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/19/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 720 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/20/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 721 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/21/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 722 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/25/01. Reporter: Phyllis Merana (erd) (zjpb). (Entered: 07/20/2001) |
| 07/19/2001 | 723 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/26/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 724 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/27/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 725 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 6/28/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 726 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 7/2/01 (AM). Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 727 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/2/01 (PM). Reporter: Miller Reporting Co., Pamela Briggle (erd) (zjpb). (Entered: 07/20/2001) |

| 07/19/2001 | 728 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/3/01 (AM). Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
|---|---|---|
| 07/19/2001 | 729 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/3/01 (PM). Reporter: Miller Reporting Co., Thomas Bitsko (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 731 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/5/01 (PM). Reporter: Miller Reporting Co., Thomas Bitsko (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 732 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/9/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 733 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/10/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 734 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/11/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 735 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/12/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 736 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/16/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | 737 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/19/01. Reporter: Phyllis Merana (erd) (zss). (Entered: 07/20/2001) |
| 07/19/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury; jurur number three (3) not present. Jury deliberations resumed and continued to 9:30 7/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/23/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 7/24/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/23/2001) |
| 07/23/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury. Jury deliberations resumed and continued to 9:30 7/23/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL |

| | | |
|---|---|---|
| | | CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/24/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES :jury deliberations resumed and continued 9:30 7/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/24/2001) |
| 07/24/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury. Jury deliberations resumed and continued to 9:30 7/25/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/25/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and respited to 9:30 7/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/25/2001) |
| 07/25/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury; juror number three (3) excused pursuant to Rule 23(b). Jury deliberations resumed and continued to 9:30 7/26/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 07/26/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 7/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/26/2001) |
| 07/26/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 1rrs, 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 7/30/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. PARTIAL VERDICT of guilty rendered as to, VINCENT HILL (1) count(s) 1rrs, JEROME MARTIN (2) count(s) 1rrs, WILLIAM KYLE SWEENEY (4) count(s) 1rrs. Defendant committed/commitment issued. Reporter: Miller Reporting Co., Judy Brown (erd) (Entered: 11/19/2001) |

| | | |
|---|---|---|
| 07/30/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 7/31/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/30/2001) |
| 07/30/2001 | 744 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/26/01. Reporter: Judy Brown, Miller Reporting Company. (hsj) (zjpb). (Entered: 07/31/2001) |
| 07/30/2001 | 745 | PROPOSED FINDINGS OF FACT and CONCLUSIONS OF LAW by VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES . (hsj) (zss). (Entered: 08/01/2001) |
| 07/30/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 7/31/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Miller Reporting Co., Judy Brown (erd) (Entered: 11/19/2001) |
| 07/31/2001 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 8/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 07/31/2001) |
| 07/31/2001 | 751 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/24/01. Reporter: Phyllis Merana (hsj) (zss). (Entered: 08/02/2001) |
| 07/31/2001 | 752 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/25/01. Reporter: Phyllis Merana (hsj) (zss). (Entered: 08/02/2001) |
| 07/31/2001 | 753 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 7/30/01. Reporter: Judy Brown, Miller Reporting Company (hsj) (zss). (Entered: 08/02/2001) |
| 07/31/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to VINCENT HILL (1) count(s) 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) Modified on 02/22/2002 (Entered: 11/19/2001) |
| 08/01/2001 | 747 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick D. Jones as CJA counsel for Death Penalty Proceedings. Signed: 8/1/01 (erd) (Entered: 08/01/2001) |

| | | |
|---|---|---|
| 08/01/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, VINCENT HILL (1) count(s) 2rrs, 3rrs, 11rrs, 28rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs, JEROME MARTIN (2) count(s) 100s, 1rrs, 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/2/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Jury polled. VERDICT of guilty rendered as to, VINCENT HILL (1) count(s) 2rrs, 3rrs, 46rrs, 47rrs, 48rrs, 49rrs, 50rrs, 51rrs, 52rrs, 54rrs, 56rrs, 57rrs, 58rrs, 59rrs, 60rrs, 61rrs, 62rrs, 63rrs. Sentence set for 9:30 10/12/01 for VINCENT HILL. VINCENT HILL referred for pre–sentence investigation report . VERDICT of not guilty rendered as to, VINCENT HILL (1) count(s) 11rrs, 28rrs. Defendants committed/commitment issued. Reporter: Miller Reporting Co., Judy Brown (erd) Modified on 02/22/2002 (Entered: 11/19/2001) |
| 08/02/2001 | | SCHEDULING NOTICE as to JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 8/6/01 for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 08/02/2001) |
| 08/02/2001 | <u>755</u> | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 8/1/01. Reporter: Phyllis Merana (hsj) (zss). (Entered: 08/03/2001) |
| 08/02/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/6/01 for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) Modified on 02/22/2002 (Entered: 11/19/2001) |
| 08/06/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Trial resumed and continued to 9:30 8/7/01 for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 08/07/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/8/01 for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. PARTIAL VERDICT of guilty rendered as to, JEROME MARTIN (2) count(s) 2rrs, 8rrs, 9rrs, 17rrs, 18rrs, 31rrs, 42rrs, 49rrs, 53rrs, 55rrs, 64rrs. Sentence set for 9:30 10/29/01 for JEROME MARTIN JR. . |

| | | |
|---|---|---|
| | | Presentence set for 9:30 10/22/01 for JEROME MARTIN JR. JEROME MARTIN JR. referred for pre–sentence investigation report . Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 08/08/2001 | <u>759</u> | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 8/7/01. Reporter: Thomas C. Bitsko, Miller Reporting Company. (hsj) (zss). (Entered: 08/09/2001) |
| 08/08/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/9/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 08/09/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/13/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendant VINCENT HILL present for deliberations only. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 08/13/2001 | | SCHEDULING NOTICE as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 8/14/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 08/13/2001) |
| 08/13/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/14/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Phyllis Merana (erd) (Entered: 11/19/2001) |
| 08/14/2001 | | SCHEDULING NOTICE as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : jury deliberations resumed and continued to 9:30 8/15/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 08/14/2001) |
| 08/14/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 12rrs, 13rrs, 14rrs, 19rrs, 20rrs, 21rrs, 22rrs, 23rrs, 24rrs, 25rrs, 26rrs, 27rrs, 29rrs, 32rrs, 33rrs, 34rrs, 35rrs, 36rrs, 37rrs, 39rrs, 40rrs, 43rrs, 44rrs, 45rrs, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/15/01 for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendant VINCENT HILL present for jury verdict only. VERDICT of guilty rendered as to, SAMUEL CARSON (3) count(s) 1rrs, 2rrs, 4rrs, 5rrs, 6rrs, 7rrs, 8rrs, 13rrs, 14rrs, 21rrs, 22rrs, 25rrs, 26rrs, 27rrs, 29rrs, 33rrs, 35rrs, 36rrs, 37rrs, 40rrs, 44rrs. Sentence set for 9:30 11/9/01 for SAMUEL CARSON. SAMUEL CARSON referred for pre–sentence investigation report . VERDICT of not guilty rendered as to, SAMUEL CARSON (3) count(s) 12rrs, 19rrs, 23rrs, 24rrs, 32rrs, |

| | | |
|---|---|---|
| | | 34rrs, 39rrs, 43rrs, 45rrs. Defendants committed/commitment issued. Reporter: Miller Reporting Co., Jon Hundley (erd) (Entered: 11/19/2001) |
| 08/15/2001 | | SCHEDULING NOTICE as to SEAN COATES : jury deliberations continued to 9:30 8/16/01 for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 08/15/2001) |
| 08/15/2001 | 765 | TRANSCRIPT filed as to VINCENT HILL, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 8/14/01. Reporter: Jon Hundley, Miller Reporting Company. (hsj) (zss). (Entered: 08/17/2001) |
| 08/15/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, WILLIAM KYLE SWEENEY (4) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 38rrs, 41rrs, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs : Same jury of 11. Jury deliberations resumed and continued to 9:30 8/16/01 for WILLIAM KYLE SWEENEY, for SEAN COATES. VERDICT of guilty rendered as to, WILLIAM KYLE SWEENEY (4) count(s) 2rrs, 11rrs, 15rrs, 16rrs, 25rrs, 26rrs, 27rrs, 28rrs, 30rrs, 35rrs, 36rrs, 37rrs, 41rrs. Sentence set for 9:30 11/20/01 for WILLIAM KYLE SWEENEY. WILLIAM KYLE SWEENEY referred for pre−sentence investigation report . VERDICT of not guilty rendered as to, WILLIAM KYLE SWEENEY (4) count(s) 10rrs, 38rrs. Defendant SAMUEL CARSON present for deliberations and verdicts only. Defendants committed/commitment issued. Reporter: Miller Reporting Co., Jon Hundley (erd) (Entered: 11/19/2001) |
| 08/15/2001 | | STATUS HEARING before Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Motions for new trial due by 11/1/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. Defendants committed/commitment issued. Reporter: Miller Reporting Co., Jon Hundley (erd) (Entered: 11/19/2001) |
| 08/16/2001 | 766 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 8/15/01. Reporter: Jon Hundley, Miller Reporting Company. (hsj) (zss). (Entered: 08/17/2001) |
| 08/16/2001 | 779 | MEMORANDUM AND ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : That defendants' motions for a mistrial are denied. (N) (erd) (zss). (Entered: 09/24/2001) |
| 08/16/2001 | | JURY TRIAL before Judge Thomas P. Jackson as to, SEAN COATES (6) count(s) 1rrs, 2rrs, 10rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 38rrs, 23rrs, 28rrs, 35rrs−37rrs, 45rrs : Same juryof 11. Jury deliberations resumed and concluded; jury polled, and discharged. VERDICT of guilty rendered as to, SEAN COATES (6) count(s) 1rrs, 2rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 23rrs, 28rrs, 34rrs, 35rrs−37rrs, 45rrs. Sentence set for 9:30 11/29/01 for SEAN COATES. SEAN COATES referred for pre−sentence investigation report . VERDICT of not guilty rendered as to, SEAN COATES (6) count(s) 10rrs, 38rrs. Defendants VINCENT HILL, SAMUEL CARSON and WILLIAM KYLE SWEENEY present for deliberations and verdict only. Defendant committed/commitment issued. Reporter: Miller Reporting Co. Jon Hundley (erd) (Entered: 11/19/2001) |
| 08/16/2001 | 810 | VERDICT FORM as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES (erd) (zjpb). (Entered: 11/20/2001) |
| 08/20/2001 | 767 | TRANSCRIPT filed as to VINCENT HILL, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 8/16/01. Reporter: Miller Reporting Co., Inc− Jon Hundley (aet) (zss). (Entered: 08/27/2001) |
| 08/30/2001 | | SCHEDULING NOTICE as to SEAN COATES : Presentence/Sentence set for 9:30 11/29/01 for SEAN COATES before Judge Thomas P. Jackson . (rew) (Entered: 08/30/2001) |
| 09/17/2001 | | SCHEDULING NOTICE as to SEAN COATES : Sentence reset for 9:30 2/7/01 for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 09/17/2001) |

| 10/01/2001 | 786 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : granting in part, all defendants shall file motions for a new trial [780–1] as to WILLIAM KYLE SWEENEY (4) Motions due by 11/8/01 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. (N) (erd) Modified on 10/10/2001 (zss). (Entered: 10/10/2001) |
|---|---|---|
| 10/15/2001 | 790 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of SEAN COATES Voucher #: D018719–D05, Signed: 10/15/01, Rate: $1,388.02. (erd) (Entered: 10/18/2001) |
| 11/13/2001 | 806 | MOTION filed by SEAN COATES for leave to late–file motion to adopt all post–trial motions for new trial, arguments and objections filed by co–defendants (aet) (zss). (Entered: 11/15/2001) |
| 11/19/2001 | 813 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : granting motion for leave to late–file motion to adopt all post–trial motions for new trial, arguments and objections filed by co–defendants [806–1] as to SEAN COATES (6) (N) (erd) (zss). (Entered: 11/28/2001) |
| 11/21/2001 | 811 | MOTION filed by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES to extend time to 1/7/02 to file its opposition to defendants' motion for new trial. (hsj) (zss). (Entered: 11/23/2001) |
| 11/21/2001 | 821 | ORDER by Judge Thomas P. Jackson as to SEAN COATES : Granting defendants motion to adopt and join all post trial motions for new trial, argments and objections filed by co–defendants. (N) (erd) (zss). (Entered: 12/13/2001) |
| 11/27/2001 | 822 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : granting motion to extend time to 1/7/02 to file its opposition to defendants' motion for new trial [811–1] as to VINCENT HILL (1), JEROME MARTIN (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6) Governments response to motion due by 1/7/02 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES. (N) (erd) (zss). (Entered: 12/18/2001) |
| 01/09/2002 | 826 | PROPOSED FINDINGS OF FACTS and by USA as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (hsj) Modified on 01/10/2002 (zss). (Entered: 01/10/2002) |
| 01/09/2002 | 827 | RESPONSE (OMNIBUS) by USA in opposition to motion for new trial [805–1] by JEROME MARTIN JR., motion for new trial [803–1] by WILLIAM KYLE SWEENEY, motion for new trial [802–1] by SAMUEL CARSON, motion for leave to join in codefendants'motion for new trial. [756–1] by VINCENT HILL. (hsj) Modified on 01/10/2002 (zss). (Entered: 01/10/2002) |
| 01/15/2002 | | SCHEDULING NOTICE as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : Motion hearing set for 1:30 1/29/02 for VINCENT HILL, for JEROME MARTIN JR., for SAMUEL CARSON, for WILLIAM KYLE SWEENEY, for SEAN COATES . before Judge Thomas P. Jackson . (rew) (Entered: 01/15/2002) |
| 01/29/2002 | 844 | ORDER by Judge Thomas P. Jackson as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES : denying motion for new trial [805–1] as to JEROME MARTIN (2), denying motion for new trial [803–1] as to WILLIAM KYLE SWEENEY (4), denying motion for new trial [802–1] as to SAMUEL CARSON (3); denying motion for new trial as to VINCENT HILL, SEAN COATES. (N) (erd) (zss). (Entered: 02/11/2002) |
| 02/03/2002 | 913 | JUDGMENT and Commitment, with Statement of Reasons, issued by Judge Thomas P. Jackson as to SEAN COATES. (erd) (llk). (Main Document 913 replaced on 2/20/2024) (zss). (Additional attachment(s) added on 2/20/2024: # 1 SOR) (zss). (Entered: 09/30/2002) |
| 02/05/2002 | 842 | MEMORANDUM in Aid of Sentencing filed by USA as to SEAN COATES.; attachments (aet) (zss). (Entered: 02/06/2002) |

| | | |
|---|---|---|
| 02/06/2002 | | SCHEDULING NOTICE as to SEAN COATES : Presentence/Sentence set for 2:00 2/7/02 for SEAN COATES before Judge Thomas P. Jackson . (rew) (Entered: 02/06/2002) |
| 02/07/2002 | | PRESENTENCE HEARING held before Judge Thomas P. Jackson as to SEAN COATES. Reporter: Gordon Slodysko (mlp) (Entered: 08/01/2002) |
| 02/07/2002 | | SENTENCING by Judge Thomas P. Jackson for SEAN COATES (6) counts 1rrs, 2rrs, 25rrs, 26rrs, 27rrs: the deft. is sentenced to Life imprisonment on each of counts 1rrs, 2rrs, 25rrs, 26rrs and 27rrs, to run concurrently with each other; followed by 5 years supervised release on each count, to run concurrently by the counts. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately; to be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. The Imposition of a fine on all counts is waived. A special assessment of $100.00 is imposed on each count and is due immediately. On counts 11rrs and 24rrs: the deft. is sentenced to 240 months on counts 11rrs and 24rrs, to run concurrently with each other and all other counts; followed by 3 years supervised release on each count, to run concurrently by the counts and concurrently with the remaining counts. A special assessment of $100.00 is imposed on each count and is due immediately. On count 28rrs: the deft. is sentenced to 60 months imprisonment on count 28rrs to run consecutively to counts 1rrs, 2rrs, 25rrs, 26rrs, and 27rrs; followed by 5 years supervised release to run concurrently with all other counts. A special assessment of $100.00 is imposed and is due immediately. On counts 34rrs, 35rrs −37rrs: the deft. is sentenced to 240 months imprisonment on each of counts 34rrs, 35rrs, 36rrs and 37rrs, to run consecutively to each other and to counts 1rrs, 2rrs, 25rrs, 26rrs, 27rrs and 28rrs; followed by 5 years supervised release on each count, to run concurrently by the counts. A special assessment of $100.00 is imposed on each count and is due immediately. Oral motion of the govt. to vacate convictions on counts 23rrs and 45rrs, granted. Counts 23rrs merged with count 24rrs and count 45rrs merged with count 34rrs. Oral motion of the govt. to dismiss the remaining counts granted. Defendant committed/commitment issued. Court Reporter: Susan Tyner (mlp) Modified on 10/11/2023 (zsmc). (Entered: 08/01/2002) |
| 02/11/2002 | 914 | NOTICE OF APPEAL filed by SEAN COATES from Court's oral sentence imposed on 2/13/02 and entered on 8/1/02. Appeal references SEAN COATES (6) count(s) 1rrs, 2rrs, 11rrs, 24rrs, 25rrs, 26rrs, 27rrs, 34rrs, 28rrs, 35rrs−37rrs. Counsel and defendant(s) notified. Docketing statement: received. NO FEE: CJA (erd) (zss). (Entered: 09/30/2002) |
| 02/11/2002 | 915 | TRANSMITTED PRELIMINARY RECORD on appeal [914−1] by SEAN COATES to U.S. Court of Appeals and Counsel, as to SEAN COATES. Docketing Statement received. (erd) (zss). (Entered: 09/30/2002) |
| 02/21/2002 | 847 | ORDER by Judge Thomas P. Jackson appointing Joanne Hepworth as CJA counsel. Voucher No.: 0476689 Signed: 2/21/02 (erd) (Entered: 02/22/2002) |
| 03/11/2002 | 858 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for date of 1/29/02. Reporter: Miller Reporting Company, Jon Hundley (hsj) (zss). (Entered: 03/13/2002) |
| 03/13/2002 | 859 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel for Death Penalty Proceedings. Signed: 3/13/02 (erd) (Entered: 03/14/2002) |
| 04/18/2002 | 864 | ORDER by Judge Thomas P. Jackson as to SEAN COATES appointing Frederick Jones as CJA counsel for Death Penalty Proceedings. Signed: 4/18/02 (erd) (Entered: 04/25/2002) |
| 04/18/2002 | 865 | ORDER by Judge Thomas P. Jackson as to SEAN COATES for Ex Parte request for expert and other services for Death Penalty Proceedings of Sean Coates, Signed: 4/18/02, Rate: $3,586.36. (erd) (Entered: 04/25/2002) |
| 07/03/2002 | 879 | TRANSCRIPT filed as to WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for date of 6/16/00. Reporter: Phyllis Merana (hsj) (zss). (Entered: 07/05/2002) |
| 07/03/2002 | 880 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, |

| | | |
|---|---|---|
| | | ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS for date of 3/24/00. Reporter: Phyllis Merana (hsj) (zss). (Entered: 07/05/2002) |
| 07/11/2002 | 881 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 11/19/00, 11/8/01, 1/11/01, 2/1/01, 2/14/01, 2/26/01, 2/26/01, 2/28/01, 5/1/01, 3/5/01, 3/6/01, 3/20/01, 6/13/01 all p.m. sessions. Signed: 7/11/02. Reporter: Beverly Byrne. (erd) (Entered: 07/16/2002) |
| 07/11/2002 | 882 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 11/29/00, 1/8/01, 1/10/01, 1/11/01, 2/1/01, 2/14/01, 2/26/01, 2/27/01, 2/28/01, 3/1/01, 3/6/01, 6/13/01, 6/14/01 a.m. sessions. Signed: 7/11/02. Reporter: Phyllis Merana. (erd) (Entered: 07/16/2002) |
| 07/11/2002 | 883 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 6/27/01, 6/28/01, 7/2/01, 7/17/01, 7/23/01, 7/31/01, 8/2/01, 8/6/01, 8/7/01, 8/8/01, 8/12/01, 8/13/01. Signed: 7/11/02. Reporter: Phyllis Merana. (erd) (Entered: 07/16/2002) |
| 07/11/2002 | 884 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 6/27/01, 6/28/01 p.m.. Signed: 7/11/02. Reporter: Beverly Byrne. (erd) (Entered: 07/16/2002) |
| 07/16/2002 | 885 | TRANSMITTED supplemental record on as to SEAN COATES consisting of: Copies (4) of CJA 24 voucher ordering transcript on appeal. (erd) (zss). (Entered: 07/16/2002) |
| 07/16/2002 | 886 | RECEIPT and Acknowledgment of Copies (4) of CJA 24 Voucher ordering transcript on appeal by U. S. Court of Appeals as to SEAN COATES. USCA No.: 02–3046 (hsj) (zss). (Entered: 07/17/2002) |
| 07/30/2002 | 894 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 7/2/01, 7/9/01, 7/26/01, 8/1/01, 8/6/01, 8/7/01, 8/8/01, 8/9/01, 8/13/01. Signed: 7/30/02. Reporter: Miller Reporting Co.,. (erd) (Entered: 07/31/2002) |
| 07/31/2002 | 895 | TRANSMITTED supplemental record on as to SEAN COATES consisting of: Copy of CJA 24 voucher ordering transcript on appeal. (erd) (zss). (Entered: 07/31/2002) |
| 07/31/2002 | 898 | RECEIPT and Acknowledgment of Copy of CJA 24 Voucher ordering transcripts on appeal by U. S. Court of Appeals as to SEAN COATES. USCA No.: 02–3046 (hsj) (zss). (Entered: 08/05/2002) |
| 08/29/2002 | 899 | TRANSCRIPT filed as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for jury deliberations before Judge Thomas Hogan for date of 8/7/01. Reporter: Thomas C. Bitsko, Miller Reporting Co. (mlp) (zss). (Entered: 08/30/2002) |
| 09/03/2002 | 900 | ORDER by Judge Thomas P. Jackson as to SEAN COATES authorizing transcript of proceeding held on 6/7/02. Signed: 9/3/02. Reporter: Susan Tyner. (erd) (Entered: 09/09/2002) |
| 09/09/2002 | 901 | TRANSMITTED supplemental record on as to SEAN COATES consisting of: Copy of CJA 24 voucher ordering transcript on appeal. (erd) (Entered: 09/09/2002) |
| 09/10/2002 | 902 | RECEIPT and Acknowledgment of Copy of CJA 24 Voucher Ordering Transcript on Appeal by U. S. Court of Appeals as to SEAN COATES. USCA No.: 02–3046 (hsj) (zss). (Entered: 09/12/2002) |
| 10/02/2002 | 925 | TRANSMITTED supplemental record on as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES consisting of: Updated Docket Sheet. (erd) (zss). (Entered: 10/02/2002) |
| 10/21/2002 | 928 | TRANSCRIPT filed as to SEAN COATES for date of 2/7/02. Reporter: Susan Page Tyner (hsj) (zbj). (Entered: 10/23/2002) |
| 03/11/2003 | 929 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 11/27/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |

| 03/11/2003 | 930 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 11/28/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
|---|---|---|
| 03/11/2003 | 931 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 11/30/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 932 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 12/4/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 933 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 12/5/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 934 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 12/11/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 935 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 12/12/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 936 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 12/13/00. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 937 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/4/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 938 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/9/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 939 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/22/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 940 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/23/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 941 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/24/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 942 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/25/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 943 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/29/01. Reporter: |

| | | |
|---|---|---|
| | | Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 944 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 1/30/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 945 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/5/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 946 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 2/6/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 947 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/7/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 948 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/8/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 949 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/12/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 950 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/13/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 951 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 2/15/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 952 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 3/5/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 953 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 3/7/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 954 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 3/12/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 955 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 3/13/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 956 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 3/14/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |

| 03/11/2003 | 957 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 3/15/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
|---|---|---|
| 03/11/2003 | 958 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 3/19/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 959 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 3/22/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 960 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/2/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 961 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/3/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 962 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/5/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 963 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/9/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 964 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/10/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 965 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/11/01. Reporter: Beverly J. Byrne (mlp) Modified on 03/12/2003 (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 966 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/17/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 967 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/18/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 968 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/19/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 969 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/23/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 970 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/24/01. Reporter: Beverly J. Byrne (mlp) |

| | | |
|---|---|---|
| | | (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 971 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/25/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 972 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/23/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 973 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/24/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 974 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/29/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 975 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/4/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 976 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/6/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 977 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/11/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 978 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/14/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 979 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/18/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 980 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 6/20/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 981 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/21/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 982 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/25/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 983 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 6/26/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |

| 03/11/2003 | 984 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 4/30/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
|---|---|---|
| 03/11/2003 | 985 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/1/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 986 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/2/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 987 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/3/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 988 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/7/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 989 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/8/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 990 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session for jury trial before Judge Jackson for date of 5/14/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 991 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/15/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 03/11/2003 | 992 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/16/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 993 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/17/01. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 994 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/21/03. Reporter: Beverly J. Byrne (mlp) (zss). (Entered: 03/12/2003) |
| 03/11/2003 | 995 | TRANSCRIPT filed as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES for afternoon session of jury trial before Judge Jackson for date of 5/22/01. Reporter: Beverly J. Byrne (mlp) (zjpb). (Entered: 03/12/2003) |
| 08/29/2003 | 999 | CERTIFIED COPY of Order filed in USCA, dated 8/28/03, referencing as to VINCENT HILL, JEROME MARTIN JR., SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES denying appellants' motion to allow counsel to review specific sealeld portions of the trial record. USCA # 02–3015 (hsj) (llk). (Entered: 09/02/2003) |
| 07/21/2006 | 1007 | USCA OPINION as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. Argued on 12/12/05 and |

| | | |
|---|---|---|
| | | Decided on 7/21/06. USCA Nos. 02–3015, 02–3016, 02–3017, 02–3018, 02–3019, 02–3046. (hsj, ) (Entered: 07/25/2006) |
| 11/24/2006 | 1008 | JUDGMENT of USCA (certified copy) affirming the judgment of the District Court as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES re 914 Notice of Appeal – Final Judgment, 908 Notice of Appeal – Final Judgment, 903 Notice of Appeal – Final Judgment, 904 Notice of Appeal – Final Judgment, 905 Notice of Appeal – Final Judgment, 918 Notice of Appeal – Final Judgment. (Attachment: # 1 Opinion)(mlp) (Entered: 11/28/2006) |
| 02/19/2008 | | Attorney update in case as to SEAN COATES. Attorney Veronice Annette Holt for SEAN COATES added. (mlp) (Entered: 02/20/2008) |
| 02/19/2008 | 1020 | MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE by SEAN COATES. (mlp) Civil case 1:08–cv–321 opened. (Entered: 02/25/2008) |
| 02/25/2008 | | Case as to SEAN COATES Reassigned to Chief Judge Thomas F. Hogan. Judge Thomas Penfield Jackson no longer assigned to the case. (jeb, ) (Entered: 02/25/2008) |
| 03/27/2008 | 1026 | TRANSCRIPT of Proceedings as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, WILLIAM HILL, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS before Judge Thomas Penfield Jackson held on 12/16/99. Page Numbers: (1–33). Court Reporter: Phyllis Merana. The public may view the document in the Clerk's Office between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday. (hsj, ) (zjpb). (Entered: 03/28/2008) |
| 03/27/2008 | 1027 | TRANSCRIPT of Proceedings as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, DONALD NICHOLS before Judge Thomas Penfield Jackson held on 10/2/98. Page Numbers: (1–21). Court Reporter: Phyllis Merana. The public may view the document in the Clerk's Office between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday. (hsj, ) (zss). (Entered: 03/28/2008) |
| 06/11/2008 | 1030 | MOTION to remove Separation Orders by SEAN COATES, pro se. (hsj, ) Modified on 6/18/2008 (mlp) (Entered: 06/17/2008) |
| 07/30/2008 | 1031 | ORDER; denying 1030 Motion To remove Separation Orders as to SEAN COATES (6), Signed by Judge Thomas F. Hogan on 7/28/08. (hs) (Entered: 07/30/2008) |
| 04/28/2009 | | Case as to JEROME MARTIN, JR, WILLIAM KYLE SWEENEY, SEAN COATES Reassigned to Chief Judge Royce C. Lamberth. Judge Thomas F. Hogan no longer assigned to the case. (jeb, ) (Entered: 04/28/2009) |
| 03/05/2010 | 1043 | ORDER as to SEAN COATES, Government's Response to 1020 Defendant's MOTION to Vacate under 28 U.S.C. 2255 due no later than 30 days from this date. Signed by Chief Judge Royce C. Lamberth on 3/5/2010. (tr) (Entered: 03/09/2010) |
| 04/05/2010 | 1047 | NOTICE OF ATTORNEY APPEARANCE Mary Ann Snow appearing for USA. (Snow, Mary) (Entered: 04/05/2010) |
| 04/05/2010 | 1048 | Unopposed MOTION for Extension of Time to File Response/Reply as to 1020 MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE by UNITED STATES OF AMERICA as to SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Snow, Mary) (Entered: 04/05/2010) |
| 04/07/2010 | | MINUTE ORDER granting 1048 Motion for Extension of Time to File Response/Reply as to SEAN COATES (6). Signed by Chief Judge Royce C. Lamberth on April 7, 2010. (lcrcl3) (Entered: 04/07/2010) |
| 07/02/2010 | 1052 | NOTICE OF SUBSTITUTION OF COUNSEL as to UNITED STATES OF AMERICA. Attorney Chriss, Margaret J. added. Substituting for attorney Robert D. Okun, Anjali Chaturvedi, Kenneth L. Wainstein, and Peter R. Zeidenberg (Chriss, |

| | | |
|---|---|---|
| | | Margaret) (Entered: 07/02/2010) |
| 07/02/2010 | 1053 | MOTION for Extension of Time to File Response/Reply as to 1020 MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE by UNITED STATES OF AMERICA as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Chriss, Margaret) (Entered: 07/02/2010) |
| 09/03/2010 | 1057 | ORDER granting 1053 Motion for Extension of Time to File Response/Reply as to SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Chief Judge Royce C. Lamberth on 9/3/10. (rje) (Entered: 09/07/2010) |
| 11/10/2010 | 1061 | NOTICE *TO WITHDRAWAL* by UNITED STATES OF AMERICA as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS (Kolben, Carolyn) (Entered: 11/10/2010) |
| 11/23/2010 | 1064 | ORDER granting 1019 1062 Motion for Extension of Time to File as to SAMUEL CARSON (3),WILLIAM KYLE SWEENEY (4)& SEAN COATES (6) . Signed by Chief Judge Royce C. Lamberth on 11/23/10. (rje, ) . (Entered: 11/24/2010) |
| 04/11/2011 | 1067 | Joint MOTION for Extension of Time to *File Supplements to Motions to Vacate (Unopposed)* by SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES as to SAMUEL CARSON. (Attachments: # 1 Text of Proposed Order Order)(West, Kira) (Entered: 04/11/2011) |
| 05/27/2011 | 1072 | MOTION for Joinder by SEAN COATES. (Holt, Veronice) (Entered: 05/27/2011) |
| 05/31/2011 | 1073 | ORDER granting 1067 Motion for Extension of Time to File Supplements to Motions to Vacate (Unopposed) as to SEAN COATES (6). Defendants Supplements due by 11/30/2011 and United States Response due by 2/28/2012. Signed by Chief Judge Royce C. Lamberth on 5/27/11. (rje) (Entered: 05/31/2011) |
| 05/31/2011 | 1075 | ORDER granting 1072 Motion for Joinder. as to SEAN COATES (6). Defendants Carson and Sweeney Supplements due by 11/30/2011 and United States Response due by 2/28/2012. Signed by Chief Judge Royce C. Lamberth on 5/27/11. (rje) (Entered: 05/31/2011) |
| 11/27/2011 | 1080 | Consent MOTION for Extension of Time to *FILE SUPPLEMENT TO MOTION TO VACATE* by SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Wicks, Jenifer) (Entered: 11/27/2011) |
| 12/06/2011 | 1081 | ORDER granting 1080 Motion for Extension of Time to File Supplement to Motion to Vacate as to SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Supplement to Motion to Vacate due by 7/30/2012. United States Response due by 1/30/2013. Signed by Chief Judge Royce C. Lamberth on 12/5/11. (rje) (Entered: 12/06/2011) |
| 12/06/2011 | | Set/Reset Deadlines as to SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES: Defendants' Supplement due by 7/30/2012. United States Responses due by 1/30/2013. (rje) (Entered: 12/06/2011) |
| 06/14/2012 | 1093 | MOTION to remove separation order by SEAN COATES. (erd) (Entered: 06/19/2012) |
| 07/17/2012 | 1095 | ORDER denying 1093 Motion to remove separation order as to SEAN COATES without prejudice to appropriate judicial review following exhaustion of administrative remedies (6). Signed by Chief Judge Royce C. Lamberth on 7/13/12. (rje) (Entered: 07/18/2012) |
| 12/03/2012 | 1104 | MOTION (Request) for judicial review by SEAN COATES. (Attachments: # 1 Exhibits)(erd) (Entered: 12/06/2012) |
| 12/06/2012 | | NOTICE OF HEARING as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATESStatus Conference set for 12/20/2012 at 10:00 AM in Courtroom 22A before Chief Judge Royce C. Lamberth. (rje) |

| | | |
|---|---|---|
| | | (Entered: 12/06/2012) |
| 12/07/2012 | | MINUTE ORDER granting 1102 Motion to set a Status Conference as to JEROME MARTIN (2), SAMUEL CARSON (3), WILLIAM K. SWEENEY, and SEAN COATS (6). Status Conference is set for December 20, 2012, at 10 a.m. in Courtroom 22A. Counsel must inform the Court by December 10, 2012, if they do not wish to waive appearance by their clients. Signed by Chief Judge Royce C. Lamberth on December 7, 2012. (lcrcl2) (Entered: 12/07/2012) |
| 12/12/2012 | 1106 | ORDERED that status conference is hereby Vacated as to SEAN COATES. Signed by Chief Judge Royce C. Lamberth on 12/11/12. (rje) (Entered: 12/12/2012) |
| 05/17/2013 | | ENTERED IN ERROR.....Minute Entry for proceedings held before Chief Judge Royce C. Lamberth:Status Conference as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES held on 5/17/2013. Defendants appearance waived. Hearing re Revocation of Supervised Release set for 7/23/2013 at 10:00 AM in Courtroom 22A before Chief Judge Royce C. Lamberth. Bond Status of Defendant: Defendants remains committed; Court Reporter: Theresa Sorensen Defense Attorney:Grendolyn Waters, Kira West, Eric Kirchman, Shana Madigan, Veronice Holt; US Attorney: Margaret Chriss; Prob Officer: Renee Parenti. (rje) Modified on 7/1/2013 (zhsj, ). (Entered: 05/17/2013) |
| 05/17/2013 | | NOTICE OF CORRECTED DOCKET ENTRY: as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES re Minute Entry for Status Conference on 5/17/2013. Minute entry was entered in error in the wrong case. Clerk's office will re–enter minute entry in the correct case. (hsj, ) (Entered: 07/01/2013) |
| 06/04/2013 | | Set/Reset Hearings as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES:Status Conference reset for 8/29/2013 10:00 AM in Courtroom 22A before Chief Judge Royce C. Lamberth. (mpt, ) (Entered: 06/04/2013) |
| 06/19/2013 | 1119 | NOTICE OF ATTORNEY APPEARANCE Angela S. George appearing for USA. (George, Angela) (Entered: 06/19/2013) |
| 08/23/2013 | | Set/Reset Hearings as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES:Status Conference reset for 8/29/2013 at 03:00 PM in Courtroom 22A before Judge Royce C. Lamberth. (mpt, ) (Entered: 08/23/2013) |
| 08/29/2013 | | Minute Entry for proceedings held before Judge Royce C. Lamberth:Status Conference as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6) held on 8/29/2013. Defendants Appearance Waived for this Hearing. Defendants Continued on Personal Recognizance. Court Reporter: Bryan Wayne Defense Attorney: Waters (2), West (3), Kirchman/Madigan (4), Holt (6); US Attorney: Margaret Chriss; (mpt, ) (Entered: 08/29/2013) |
| 09/03/2013 | 1122 | ORDER as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, and SEAN COATES, granting defendants' oral motion for an extension of nine months to file the supplements to their pending 2255 motions. It is FURTHER ORDERED that the defendants shall file the supplements to their pending 2255 motions by 5/29/2014. Signed by Judge Royce C. Lamberth on 8/30/2013. (tg, ) (Entered: 09/03/2013) |
| 05/29/2014 | 1128 | ORDER Granting 1127 Motion for Extension of Time to File Memorandum of Law in Support of Motion to Vacate Sentence as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE (4), SWEENEY & SEAN COATES (6) with 6 months of this Order. Signed by Judge Royce C. Lamberth on 5/28/14. (mpt) (Entered: 05/30/2014) |
| 12/01/2014 | 1149 | ORDERED that the Motion to File a Memoarandum of Law in Support of Motion to Vacate Sentence as to WILLIAM KYLE SWEENEY, SEAN COATES is GRANTED. Due no later than February 25, 2015. Signed by Judge Royce C. Lamberth on 11/26/14. (mpt, ) (Entered: 12/03/2014) |

| 02/24/2015 | 1166 | SUPPLEMENTAL CLAIM IN RELATION to Original 1020 MOTION to Vacate under 28 U.S.C. 2255 by SEAN COATES. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(mlp) (Entered: 02/26/2015) |
|---|---|---|
| 02/25/2015 | 1158 | Consent MOTION for Extension of Time to File *Memorandum of Law in Support of Motion to Vacate Sentence* by JEROME MARTIN, JR as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Lawlor, Michael) (Entered: 02/25/2015) |
| 03/12/2015 | 1167 | SUPPLEMENT to motion re 1158 Consent MOTION for Extension of Time to File *Memorandum of Law in Support of Motion to Vacate Sentence* by SAMUEL CARSON as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (West, Kira) Modified on 3/12/2015 (erd). Modified on 10/11/2022 (zstd). (Entered: 03/12/2015) |
| 06/27/2016 | 1184 | MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE by SEAN COATES. (Holt, Veronice) (Entered: 06/27/2016) |
| 06/27/2016 | 1185 | MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE by SEAN COATES. (Attachments: # 1 Supplement)(Holt, Veronice) (Entered: 06/27/2016) |
| 01/13/2017 | 1186 | First MOTION briefing schedule and/or status conference by SAMUEL CARSON as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachments: # 1 Text of Proposed Order)(West, Kira) Modified on 6/20/2017 (zhsj). (Entered: 01/13/2017) |
| 04/07/2017 | 1188 | ORDER granting 1186 Motion for a Briefing Schedule. It is hereby ORDERED that Defendants shall file any supplements to their motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 within thirty (30) days from the date of entry of this Order. The United States shall file its response to the defendants' § 2255 motions and supplements thereto within sixty (60) days thereafter as to WILLIAM SWEENEY (4), JEROME MARTIN, JR. (2), SAMUEL CARSON (3), and SEAN COATES (6). Signed by Judge Royce C. Lamberth on 4/6/17. (lsj) (Entered: 04/10/2017) |
| 06/12/2017 | 1191 | ENTERED IN ERROR..... MOTION supplement 2255 re 1188 Order on Motion for Miscellaneous Relief,, by SAMUEL CARSON as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachments: # 1 Text of Proposed Order)(West, Kira) Modified on 6/13/2017 (znmw). Modified on 10/11/2022 (zstd). (Entered: 06/12/2017) |
| 06/16/2017 | 1193 | ORDERED that the Defendants' motions for leave to file under seal 1140 , 1156 , 1157 , 1157 , 1159 , 1160 , 1161 , 1162 , 1163 , 1164 and 1180 as to Defendants WILLIAM KYLE SWEENEY (4), JEROME MARTIN, JR. (2), SAMUEL CARSON (3), and SEAN COATES (6) are hereby GRANTED. Signed by Judge Royce C. Lamberth on 6/14/17. (lsj) Modified to add text on 6/19/2017 (znmw). (Entered: 06/16/2017) |
| 06/19/2017 | 1194 | ORDER granting 1024 Motion to Join the Petitions filed by his Co–Defendants as to SAMUEL CARSON (3) and granting 1185 Motion to Join Defendant Carson's Supplemental Motion and to File Under Seal and to Late File as to SEAN COATES (6). Signed by Judge Royce C. Lamberth on 6/14/17. (lsj) (Entered: 06/19/2017) |
| 06/19/2017 | 1195 | ORDER denying Motion 1158 for Extension of Time to File, 1165 Motion for Leave to File, and Supplement Motion 1167 for Extension of Time to File as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and |

| | | |
|---|---|---|
| | | SEAN COATES (6) as moot motions. Signed by Judge Royce C. Lamberth on 6/14/17. (lsj) (Entered: 06/19/2017) |
| 07/06/2017 | 1201 | NOTICE OF ATTORNEY APPEARANCE Pamela Stever Satterfield appearing for USA. (Satterfield, Pamela) (Entered: 07/06/2017) |
| 07/07/2017 | 1202 | Unopposed MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 07/07/2017) |
| 08/08/2017 | 1204 | ORDER granting Motion 1202 for Extension of Time to File Response/Reply as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and SEAN COATES (6). It is hereby ORDERED that the United States shall file its Responses by 10/10/2017. Signed by Judge Royce C. Lamberth on 8/8/17. (lsj) (Entered: 08/08/2017) |
| 10/06/2017 | 1208 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) Modified on 10/11/2022 (zstd). (Entered: 10/06/2017) |
| 12/28/2017 | 1211 | ORDER granting 1208 Motion for Extension of Time to File Response/Reply as to SEAN COATES. Signed by Judge Royce C. Lamberth on 12/28/17. (nbn) (Entered: 01/03/2018) |
| 01/04/2018 | 1213 | TRANSCRIPT OF 8/29/13 STATUS HEARING in case as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES before Judge Royce C. Lamberth held on August 29, 2013; Page Numbers: 1–6. Date of Issuance: January 4, 2018. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public termi nal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/25/2018. Redacted Transcript Deadline set for 2/4/2018. Release of Transcript Restriction set for 4/4/2018.(Wayne, Bryan) (Entered: 01/04/2018) |
| 01/04/2018 | 1214 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 01/04/2018) |
| 01/05/2018 | 1215 | Amended MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 01/05/2018) |
| 04/12/2018 | 1216 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 04/12/2018) |

| | | |
|---|---|---|
| 04/12/2018 | 1217 | MOTION for Extension of Time to File Response to Supplemental Filings by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (See Docket Entry 1216 to View Document). (hsj) (Entered: 04/13/2018) |
| 05/18/2018 | 1219 | TRANSCRIPT OF PROCEEDINGS in case as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES before Judge Royce C. Lamberth held on May 17, 2013; Page Numbers: 1–22. Date of Issuance: May 18, 2013. Court Reporter/Transcriber Transcribed by Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/8/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/16/2018.(Dickman, Janice) (Main Document 1219 replaced on 6/20/2018) (zvt). Modified hearing and issuance date on 6/20/2018 (zvt). (Entered: 05/18/2018) |
| 10/09/2018 | 1225 | SCHEDULING ORDER as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6): Defendants' Supplemental § 2255 Motions due by 10/31/2018. Government's Response due by 2/28/2019. Defendants' Replies due by 4/29/2019. Signed by Judge Royce C. Lamberth on 10/5/18. (lsj) (Entered: 10/09/2018) |
| 10/30/2018 | 1228 | MOTION for Leave to Join 1230 Samuel Carson's Unopposed Supplement to Prior Supplemental Motion to Vacate by SEAN COATES. (Holt, Veronice) Modified Event on 11/1/2018 (hsj). (Entered: 10/30/2018) |
| 03/13/2019 | 1234 | Unopposed MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 03/13/2019) |
| 03/25/2019 | 1235 | ORDER granting 1234 Motion for Extension of Time to File Response/Reply as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Judge Royce C. Lamberth on 03/25/2019. (lcrcl3) (Entered: 03/25/2019) |
| 03/26/2019 | | Set/Reset Deadlines as to JEROME MARTIN, JR, (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6): Government's omnibus response due by 6/21/2019 (lsj) (Entered: 03/26/2019) |
| 06/17/2019 | 1238 | MOTION for Extension of Time to File Response/Reply *to Section 2255 Motions and Supplements* by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 06/17/2019) |
| 06/19/2019 | 1239 | ORDER granting 1238 Motion for Extension of Time to File Response/Reply as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Judge Royce C. Lamberth on 06/18/2019. (lcrcl3) (Entered: 06/19/2019) |
| 06/19/2019 | | Set/Reset Deadlines as to JEROME MARTIN, JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6): Government's Response due by 9/19/2019. (lsj) (Entered: 06/19/2019) |

| 09/18/2019 | 1240 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 09/18/2019) |
|---|---|---|
| 09/19/2019 | 1241 | ORDER granting 1240 Motion for Extension of Time to File Response as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). The United States shall file its omnibus report no later than 11/18/2019. Signed by Judge Royce C. Lamberth on 09/19/2019. (lcrcl3) (Entered: 09/19/2019) |
| 09/19/2019 |  | Set/Reset Deadlines as to JEROME MARTIN, JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6): Responses due by 11/18/2019 (lsj) (Entered: 09/19/2019) |
| 11/15/2019 | 1245 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 11/15/2019) |
| 11/18/2019 | 1246 | ORDER GRANTING 1245 Motion for Extension of Time to File Response as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and SEAN COATES (6). Signed by Judge Royce C. Lamberth on 11/18/2019. (lcrcl3) (Entered: 11/18/2019) |
| 11/19/2019 |  | Set/Reset Deadlines as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6): Government's Response due by 1/17/2020 (lsj) (Entered: 11/19/2019) |
| 01/16/2020 | 1247 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 01/16/2020) |
| 03/04/2020 | 1252 | ORDER granting 1247 Motion for Extension of Time to File Response as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and SEAN COATES (6). The United States shall file its response no later than 03/18/2020. This date will not be further extended. Signed by Judge Royce C. Lamberth on 03/04/2020. (lcrcl3) (Entered: 03/04/2020) |
| 03/16/2020 | 1253 | MOTION for Leave to File *Opposition Under Seal* by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 03/16/2020) |
| 03/18/2020 | 1255 | MEMORANDUM IN OPPOSITION filed by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (This document is SEALED and only available to authorized persons.) (zed, ) (Entered: 03/19/2020) |
| 03/19/2020 | 1256 | ORDER as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. Signed by Judge Royce C. Lamberth on 3/19/2020. (lcrcl1) (Entered: 03/19/2020) |
| 03/19/2020 | 1257 | ORDER TO SHOW CAUSE as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. Signed by Judge Royce C. Lamberth on 3/19/2020. (lcrcl1) (Entered: 03/19/2020) |
| 03/20/2020 |  | Set/Reset Deadlines as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES: Show Cause Response due by 4/20/2020. (lsj) (Entered: 03/20/2020) |
| 04/20/2020 | 1258 | MOTION for Extension of Time to File Response/Reply *to Court's March 19, 2020 Order* by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 04/20/2020) |

| | | |
|---|---|---|
| 04/22/2020 | 1259 | ORDER granting 1258 Motion for Extension of Time to File Response/Reply as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Judge Royce C. Lamberth on 4/22/2020. (lcrcl1) (Entered: 04/22/2020) |
| 04/22/2020 | | Set/Reset Deadlines as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and SEAN COATES (6): Omnibus Response due by 5/4/2020. (nbn) (Entered: 04/22/2020) |
| 05/01/2020 | 1260 | NOTICE *to Court Concerning Unsealing of Certain Materials in this Case* by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES (Attachments: # 1 Text of Proposed Order)(Satterfield, Pamela) (Entered: 05/01/2020) |
| 05/15/2020 | 1263 | ENTERED IN ERROR.....Unopposed MOTION for Extension of Time to *file answer to show cause order* by SAMUEL CARSON as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (West, Kira) Modified on 5/17/2020 (zhsj). (Entered: 05/15/2020) |
| 05/15/2020 | 1264 | Order to Unseal Case as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. Signed by Judge Royce C. Lamberth on 5/15/20. (lcrcl1) (Entered: 05/15/2020) |
| 05/15/2020 | | NOTICE OF CORRECTED DOCKET ENTRY: as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS re 1263 Unopposed MOTION for Extension of Time to *file answer to show cause order* was entered in error and the clerk's office refiled said pleading due to document being linked to wrong defendant. Docket Entry 1266 is the correct document lined to Defendant Samuel Carson. (zhsj) (Entered: 05/18/2020) |
| 06/08/2020 | | MINUTE ORDER: Per the 5/15/20 unsealing of this case, the Government's 1253 Motion for Leave to File Under Seal as to JEROME MARTIN JR. (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6) is DENIED. The Government shall file its brief in opposition on the public docket.. Signed by Judge Royce C. Lamberth on 6/8/20. (lcrcl1) (Entered: 06/08/2020) |
| 06/11/2020 | | Case unsealed as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), and SEAN COATES (6). (ztnr) (Entered: 06/11/2020) |
| 06/11/2020 | 1268 | Memorandum in Opposition by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES re 1185 MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE, 1184 MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE, 1020 MOTION to Vacate under 28 U.S.C. 2255. NO DOCUMENTS ARE TO BE FILED IN THE CIVIL 2255 ACTION. ALL DOCUMENTS ARE TO BE FILED IN THIS CRIMINAL CASE (Satterfield, Pamela) (Entered: 06/11/2020) |
| 07/01/2020 | 1272 | ENTERED IN ERROR.....First MOTION Davis supplemental motion *to vacate 924c counts* by SAMUEL CARSON as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(West, Kira) Modified on 7/6/2020 (zhsj). (Entered: 07/01/2020) |
| 07/01/2020 | | NOTICE OF CORRECTED DOCKET ENTRY: as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND |

| | | |
|---|---|---|
| | | WASHINGTON, CLIFTON EDWARDS re 1272 First MOTION Davis supplemental motion *to vacate 924c counts* was entered in error and the Clerk's Office will refile said pleading. (zhsj) (Entered: 07/06/2020) |
| 07/14/2020 | 1276 | ENTERED IN ERROR.....Unopposed MOTION for Extension of Time to File Response/Reply *to Government's response to 2255* by SAMUEL CARSON as to JEROME MARTIN, JR, SAMUEL CARSON, SEAN COATES. (Attachments: # 1 Text of Proposed Order)(West, Kira) Modified on 7/15/2020 (znmw). (Entered: 07/14/2020) |
| 10/27/2021 | 1283 | MEMORANDUM OPINION as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6) re Defendants' Motions 1017 , 1020 , 1021 , 1023 , 1170 , 1182 , 1183 , 1184 , 1185 , 1191 , 1197 , 1198 and 1229 .. Signed by Judge Royce C. Lamberth on 10/26/21. (lsj) (Entered: 10/27/2021) |
| 10/27/2021 | 1284 | ORDER as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6). SEE ORDER FOR DETAILS. Signed by Judge Royce C. Lamberth on 10/26/21. (lsj) (Entered: 10/27/2021) |
| 11/02/2021 | 1287 | NOTICE OF APPEAL – Final Judgment by SEAN COATES re 1284 Order. Filing fee $ 505. Fee Status: No Fee Paid. Parties have been notified. (bb) (Entered: 11/04/2021) |
| 11/04/2021 | 1288 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or motion to proceed In Forma Pauperis has been decided as to SEAN COATES re 1287 Notice of Appeal – Final Judgment. (bb) (Entered: 11/04/2021) |
| 11/09/2021 | | USCA Case Number as to SEAN COATES 21–3072 for 1287 Notice of Appeal – Final Judgment filed by SEAN COATES. (bb) (Entered: 11/09/2021) |
| 11/09/2021 | 1296 | ORDER of USCA (certified copy) as to SEAN COATES re 1287 Notice of Appeal – Final Judgment ORDERED that the determination whether a certificate of appealability is warranted in this case be referred to the district court for resolution in the first instance. FURTHER ORDERED that this case be held in abeyance pending further orderof the court. USCA Case Number 21–3072. (bb) (Entered: 01/06/2022) |
| 12/03/2021 | 1294 | Application to Proceed IFP as to SEAN COATES (bb) (Entered: 12/03/2021) |
| 04/25/2022 | 1302 | TRANSCRIPT OF 8/29/13 STATUS HEARING in case as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES before Judge Royce C. Lamberth held on August 29, 2013; Page Numbers: 1–6. Date of Issuance: 4/25/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a pu blic terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/16/2022. Redacted Transcript Deadline set for 5/26/2022. Release of Transcript Restriction set for 7/24/2022.(Wayne, Bryan) (Entered: 04/25/2022) |
| 05/23/2022 | 1305 | MEMORANDUM OPINION as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Judge Royce C. Lamberth on 05/23/2022. (lcrcl1) (Entered: 05/23/2022) |

| 05/23/2022 | 1306 | ORDER denying Certificate of Appealability as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Signed by Judge Royce C. Lamberth on 05/23/2022. (lcrcl1) (Entered: 05/23/2022) |
| --- | --- | --- |
| 05/23/2022 | 1307 | ORDER granting motion 1294 to proceed in forma pauperis as to SEAN COATES (6). Signed by Judge Royce C. Lamberth on 05/23/2022. (lcrcl1) (Entered: 05/23/2022) |
| 06/02/2022 | 1314 | Transmitted Supplemental Record on Appeal and Docket Sheet to USCA as to SEAN COATES re 1287 Notice of Appeal – Final Judgment.USCA Case Number 21–3072. (zstd) (Entered: 06/02/2022) |
| 06/02/2022 | 1315 | Transmitted Supplemental Record on Appeal and Docket Sheet to USCA as to SEAN COATES re 1287 Notice of Appeal – Final Judgment.USCA Case Number 21–3072. (zstd) (Entered: 06/02/2022) |
| 08/21/2023 | 1338 | MOTION pursuant to Rule 36 to Correct a Clerical Error by SEAN COATES. "Let this be filed. U.S. Attorney to respond in 30 days." Royce C. Lamberth U.S.D.J. 8/21/2023. (zstd) (Entered: 08/22/2023) |
| 09/19/2023 | 1340 | NOTICE OF ATTORNEY APPEARANCE John Timothy Scannell, Jr appearing for USA. (Scannell, John) (Entered: 09/19/2023) |
| 09/19/2023 | 1341 | RESPONSE by UNITED STATES OF AMERICA as to SEAN COATES re 1338 MOTION pursuant to Rule 36 to Correct a Clerical Error (Attachments: # 1 Exhibit Sentencing Transcript, # 2 Exhibit Proposed Order)(Scannell, John) (Entered: 09/19/2023) |
| 10/06/2023 | 1342 | ORDER granting Motion 1338 pursuant to Rule 36 to Correct Clerical Error as to SEAN COATES (6). Signed by Judge Royce C. Lamberth on 10/06/2023. (lcrcl1) (Entered: 10/06/2023) |
| 02/28/2024 | 1343 | LETTER by SEAN COATES. "Let this be filed" by Royce C. Lamberth U.S.D.J. on 2/28/2024. (zstd) (Entered: 02/28/2024) |
| 02/28/2024 | 1344 | MOTION for Issuance of Order to Show Cause by SEAN COATES. "Let this be filed". U.S. Attorney shall respond within 30 days by Royce C. Lamberth U.S.D.J., on 2/28/2024. (Attachments: # 1 Exhibits, # 2 Envelope)(zstd) (Entered: 02/28/2024) |
| 03/26/2024 | 1345 | Mail Returned as Undeliverable as to SEAN COATES (6): Type of Document Returned: 1342 Order. Resent to New Address: Unknown. (smc) (Entered: 03/26/2024) |
| 03/29/2024 | 1346 | NOTICE OF ATTORNEY APPEARANCE Julia Renee Cosans appearing for USA. (Cosans, Julia) (Entered: 03/29/2024) |
| 03/29/2024 | 1347 | MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to SEAN COATES. (Cosans, Julia) (Entered: 03/29/2024) |
| 04/02/2024 | 1348 | ORDER granting Motion 1347 for Extension of Time to File Response/Reply as to SEAN COATES (6). The United States shall file its response no later than 04/19/2024. Signed by Judge Royce C. Lamberth on 04/02/2024. (lcrcl1) (Entered: 04/02/2024) |
| 04/19/2024 | 1349 | Second MOTION for Extension of Time to File Response/Reply by UNITED STATES OF AMERICA as to SEAN COATES. (Cosans, Julia) (Entered: 04/19/2024) |
| 04/30/2024 | 1350 | RESPONSE by UNITED STATES OF AMERICA as to SEAN COATES re 1344 MOTION for Order to Show Cause (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Cosans, Julia) (Entered: 04/30/2024) |
| 05/31/2024 | 1351 | RESPONSE by UNITED STATES OF AMERICA as to SEAN COATES re 1344 MOTION for Order to Show Cause (Attachments: # 1 Errata A)(Cosans, Julia) (Entered: 05/31/2024) |
| 07/12/2024 | 1352 | LETTER by SEAN COATES (6) 1344 MOTION for Order to Show Cause filed by SEAN COATES. "Let this be filed". US shall respond within 20 days by Royce C. Lamberth U.S.D.J. on 7/12/2024 (Attachments: # 1 Envelope)(zstd) (Entered: 07/15/2024) |

| 03/18/2025 | 1353 | MOTION for Order to Disclose Grand Jury Testimony by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY and SEAN COATES. (Kolb, Chrisellen) Modified event type and text on 3/18/2025 (zstd). (Entered: 03/18/2025) |
|---|---|---|
| 03/25/2025 | 1354 | MOTION for an Order to Disclose Grand Jury Testimony by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY and SEAN COATES. (Attachments: # 1 Proposed Search & Seizure Warrant)(Kolb, Chrisellen) Modified event type, text and to remove incorrect linked defendants on 3/25/2025 (zstd). (Entered: 03/25/2025) |
| 04/01/2025 | 1355 | ENTERED IN ERROR.....MOTION for Order Authorizing Disclosure of Information by UNITED STATES OF AMERICA as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS. (Kolb, Chrisellen) Modified on 4/1/2025 (ztnr). (Entered: 04/01/2025) |
| 04/01/2025 | | NOTICE OF ERROR as to VINCENT HILL, JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, MAURICE PROCTOR, SEAN COATES, REGINALD DARNELL SWITZER, WILLIAM HILL, PAUL FRANKLIN, DONALD NICHOLS, ERIK JONES, RAYMOND WASHINGTON, CLIFTON EDWARDS regarding 1355 MOTION for Order Authorizing Disclosure of Information . The following error(s) need correction: Invalid attorney signature– signature on document must match PACER login. Please refile.When refiling, ONLY link the entry to the defendants to whom the filing pertains. (ztnr) (Entered: 04/01/2025) |
| 04/02/2025 | 1356 | MOTION for Order Authorizing Disclosure of Information by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Kolb, Chrisellen) Modified event type on 4/4/2025 (zstd). (Entered: 04/02/2025) |
| 04/04/2025 | 1357 | Memorandum in Opposition by JEROME MARTIN, JR, WILLIAM KYLE SWEENEY, SEAN COATES as to JEROME MARTIN, JR, WILLIAM KYLE SWEENEY, SEAN COATES re 1358 Motion for Protective Order (Kirchman, Eric) Modified to remove incorrect linked defendant and remove and add correct link on 4/6/2025 (zstd). (Entered: 04/04/2025) |
| 04/04/2025 | 1358 | Amended MOTION for Disclosure , Amended MOTION for Protective Order by UNITED STATES OF AMERICA as to JEROME MARTIN, JR, SAMUEL CARSON, WILLIAM KYLE SWEENEY, SEAN COATES. (Mannarino, John) (Entered: 04/04/2025) |
| 04/11/2025 | 1360 | ORDER as to SEAN COATES (6). Signed by Judge Royce C. Lamberth on 04.11.2025. (lcrcl1) (Entered: 04/11/2025) |
| 04/21/2025 | 1361 | AMENDED PROTECTIVE ORDER as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4) and SEAN COATES (6): re 1358 Amended MOTION for Disclosure Amended MOTION for Protective Order filed by UNITED STATES OF AMERICA.Signed by Judge Royce C. Lamberth on 04.21.2025. (lcrcl1) Modified on 4/22/2025 (zsmc). (Entered: 04/21/2025) |
| 07/30/2025 | 1366 | ORDER of USCA as to SEAN COATES (6) re 1287 Notice of Appeal – Final Judgment. In accordance with the Order filed on July 30, 2025, upon consideration of the unopposed motion to remand the record, it is ORDERED that the motion be granted and the record be remanded so appellants can present to the district court in the first instance arguments about the supplemental Brady disclosures made in April and May 2025 and for the district court to make factual findings concerning those disclosures. It is FURTHER ORDERED that these consolidated cases be held in abeyance pending further order of the court. The parties are directed to file motions to govern future proceedings within 30 days after resolution of the proceedings on remand. USCA Case Number 21–3072. (zstd) (Entered: 08/01/2025) |
| 11/21/2025 | 1367 | ORDER as to SEAN COATES (6): The parties are ORDERED to submit a proposed schedule within 30 days for further proceedings herein to address the supplemental Brady disclosures made in April and May 2025, per the D.C. Circuit's 1366 |

| | | |
|---|---|---|
| | | instructions. Signed by Judge Royce C. Lamberth on 11.21.2025. (lcrcl3) (Entered: 11/21/2025) |
| 11/24/2025 | 1368 | NOTICE OF ATTORNEY APPEARANCE Rachel Forman appearing for USA. (Forman, Rachel) (Entered: 11/24/2025) |
| 12/17/2025 | 1369 | NOTICE OF ATTORNEY APPEARANCE: Mark David Lanpher appearing for SEAN COATES (Lanpher, Mark) (Entered: 12/17/2025) |
| 12/17/2025 | 1370 | NOTICE OF ATTORNEY APPEARANCE: Gabrielle Leeman appearing for SEAN COATES (Leeman, Gabrielle) (Entered: 12/17/2025) |
| 12/17/2025 | 1371 | Consent Scheduling Motion on behalf of Defendants Samuel Carson, Sean Coates, Jerome Martin, Jr., and William K. Sweeney re 1367 Order, by SEAN COATES. (Attachments: # 1 Text of Proposed Order)(Lanpher, Mark) Modified text on 12/19/2025 (zstd). (Entered: 12/17/2025) |
| 12/17/2025 | 1372 | ORDER granting 1371 Motion as to JEROME MARTIN, JR (2), SAMUEL CARSON (3), WILLIAM KYLE SWEENEY (4), SEAN COATES (6). Supplemental 2255 Briefs due by 4/3/2026; Responses due by 7/2/2026; Replies due by 8/31/2026. Signed by Judge Royce C. Lamberth on 12.17.2025. (lcrcl3) (Entered: 12/17/2025) |

Case Case 1:98-cr-00329-RCL Document 1375-6 Filed 02/09/26 Page 90 of 382

RECEIVED

FEB 9  12 01 PM '99

N. MAYER-WHITTINGTON
CLERK
DISTRICT OF COLUMBIA

RECEIVED

FEB 9  12 01 PM '99

N. MAYER-WHITTINGTON
CLERK
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
)
)
V. )
) Criminal No. 98-329
) (TPJ)
WILLIAM SWEENEY )

### MOTION TO COMPEL DISCOVERY
### NUMBER 1

FILED

FEB 0 9 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Defendant, William Sweeney, by and through undersigned counsel, respectfully sets forth to this Honorable Court as follows:

## I) OVERVIEW

1.) This case is a multiple count, multiple party indictment alleging criminal activity spanning a period of time in excess of ten years.

2.) The United States has announced that it may seek the death penalty against William Sweeney. Counsel for Mr. Sweeney will meet with the death penalty review committee of the United States Attorney's Office prior to April 12, 1999 to discuss issues related to the death penalty.

3.) A principle component of the government's case relates to a triple homicide which is alleged to have occurred in Prince George's County, Maryland on November 17, 1996. The triple homicide is identified in paragraph 79 of the indictment and alleges that William Sweeney killed Alonzo Gaskins, Darnell Mack and Melody Anderson. The allegations against Mr. Sweeney with respect to the triple homicide are among the primary bases for the following counts against him in this indictment:

Narcotics conspiracy and Rico conspiracy. In addition, the allegations pertaining to the triple homicide in Maryland are the subject of **Racketeering Act 65 (a)-(g)** of the Rico count of the indictment.

4.) The events surrounding the triple homicide in Maryland were the subject of an exhaustive investigation by members of law enforcement in Prince George's County, Maryland.

5.) The events surrounding the triple homicide were the subject of an indictment in Prince George's County, Maryland in which William Sweeney was named as a defendant. That indictment in Maryland has been dismissed by the State's Attorney's Office as it is now a subject of this indictment.

6.) Upon information and belief, an individual by the name James Montgomery was taken into custody and spoken to by both the Metropolitan Police Department and the Prince George's County Police Department as a suspect in the Maryland triple homicide.

7.) Upon information and belief, James Montgomery was not charged with the triple homicide. Rather, in return for a benefit, or a promise of benefit, James Montgomery has become a witness against William Sweeney and it is expected that James Montgomery will either testify at trial against Mr. Sweeney or will provide information that will be used in attempt to incriminate Mr. Sweeney.

## II.) <u>SPECIFIC BRADY REQUEST</u>

The request which is the subject of this motion to the United States was made pursuant to <u>**Brady**</u> v. <u>**Maryland,**</u> **373 U.S. 83 (1963)**. The specific request is for any

and all information pertaining to why James Montgomery was investigated and/or charged with the triple homicide in Maryland which occurred on November 17, 1996. The request related to any and all information in the possession of Mr. Wainstein, the possession of any member of the Office of the United States Attorney for the District of Columbia, the possession of any law enforcement agency in any jurisdiction, and in the possession of the Maryland State's Attorney's Office.

In response to this specific request for exculpatory information, Mr. Wainstein represented to counsel that he has reviewed the investigative file and there is no information therein that would exculpate Mr. Sweeney.

For the reasons discussed later herein, the response of Mr. Wainstein is inadequate and does not satisfy the obligations of the United States pursuant to **Brady v. Maryland**

### III.) CHRONOLOGY OF REQUESTS

On November 17, 1998, counsel served upon Kenneth Wainstein and Nancy Jackson a nine page letter detailing numerous discovery requests pursuant to Rule 16 and controlling legal precedent. On page seven of the letter, under the category **Brady Disclosures at part (d)**, defendant made the following request for information:

> **Any information which has come or may come to the attention of the government from any source indicating that persons other than the defendant may have caused or have been responsible for any of the offenses alleged in the indictment.**

A copy of the discovery letter is attached hereto and identified as Defendant's

Exhibit #1.

On January 19, 1999, counsel for Mr. Sweeney sent a letter to Mr. Wainstein making the specific Brady demand related to James Montgomery which is the subject of this motion (Defendant's Exhibit #2).

On January 29, 1999, counsel for William Sweeney sent a letter to Mr. Wainstein reiterating their need to obtain the requested information pertaining to James Montgomery (Defendant's Exhibit #3).

On February 1, 1999, counsel for William Sweeney and Mr. Wainstein spoke directly to address, among other issues, the investigative materials as they related to James Montgomery.  It was at that time that Mr. Wainstein represented to counsel that he had seen the investigative file and there was not any information that would exculpate Mr. Sweeney.  Mr. Wainstein declined to make available to counsel the investigative files.

On February 1, 1999, counsel memorialized the subject of the telephone conversation identified in the preceding paragraph in a letter to Mr. Wainstein (Defendant's Exhibit #4).

## IV.) LEGAL BASIS FOR REQUEST

In **Brady v. Maryland, 373 U.S. 83 (1963)**, the United States Supreme Court required the government to disclose in criminal cases, upon request, evidence in its

possession that is material and favorable to a charged defendant. The duty of disclosure arises from the Due Process Clause of the Fifth Amendment to the United States Constitution.

In **United States** v. **Bagley**, the Supreme Court held that favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. **473 U.S. 667 at 682 (1985).**

The Supreme Court in **Kyles v. Whitney** elaborated on the definition of materiality in the context of a Brady demand.

> **[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.... Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."**

**115 S.Ct. 1555 at 1566 (1995).**

The request of defendant for any and all information in the possession of any and all law enforcement agencies or prosecutor's offices that investigated the matter is consistent with the law of this jurisdiction which extends the prosecutor's Brady

obligations to files in possessions of agencies other than the individual prosecutor's offices. See **United States** v. **Brooks, 966 F.2d 1500, 296 U.S. App. D.C. 219 (1992)**, appeal after remand **55 F.3d 684, 312 U.S. App. D.C. 119**, rehearing and suggestion for rehearing denied; **United States** v. **Caldwell, 543 F.2d 1333, 178 U.S. App. D.C. 20 (1974)**, cert. denied, **96 S.Ct. 877**.

It may be an argument of the defense that persons other than William Sweeney had both the motivation and opportunity to commit the triple homicide in Maryland. The right to suggest, through the introduction of testimony, evidence that someone other than the defendant committed a charged offense is guaranteed by the Due Process Clause and has been recognized as such by the District of Columbia Court of Appeals. See **Brown** v. **United States, 409 A.2d 1093, 1097 (D.C. App. 1979).**

In **Winfield** v. **United States, 676 A.2d 1 (D.C. App. 1996)**, the Court analyzed the standard of admissibility of evidence proffered by a defendant that another person or persons committed the crime alleged. In so ruling, the Court adopted the "reasonable probability" formulation first announced in **Johnson** v. **United States, 552 A.2d 513 (D.C. App. 1989).**

The importance and practical application of the "reasonable probability" standard of admissibility as it relates to the facts herein was predicted in Johnson.

> **There is no requirement that proffered evidence must prove or even raise a strong probability that someone other than the defendant committed the offense. Rather, the evidence need only** tend **to create a reasonable doubt that the defendant committed the offense. In this regard, our focus is on the effect the evidence has upon the defendant's culpability, and** not **the third party's culpability.**

**Id. at 517,** citations omitted.

With respect to the facts herein, any and all information pertaining to the investigation and/or arrest of James Montgomery for the triple homicide undoubtedly creates a reasonable probability that someone other Mr. Sweeney committed the triple homicide.

There had to have been paperwork generated as a result of Mr. Montgomery being a suspect in this event.  Defense counsel must have the opportunity to review this paperwork in order to properly investigate this massive indictment.

Mr. Wainstein's position that there was nothing produced in the investigation of James Montgomery that would exculpate Mr. Sweeney is entirely inconsistent with the law of this jurisdiction.

There simply can be no reasonable dispute that the products of an investigation focusing upon someone other than the defendant are material and fall within the disclosure mandate set forth in **Brady** v. **Maryland** and guaranteed by the United States Constitution.

As part of defendant's defense, he will also be challenging the bias and credibility of James Montgomery.  Any promise, or benefit of promise, will have to be made available to the defense.  See **Giglio** v. **United States, 405 U.S. 150 (1972)**. However, in order to fully explore the scope of Mr. Montgomery's bias arising from his agreement with the United States, it is absolutely imperative that counsel be provided with the basis for his inclusion in the case as a suspect or as a detainee.

The jury can only evaluate the bias and credibility of this essential Government witness if it learns how close Mr. Montgomery came to being indicted for the triple

homicide.

Counsel can only learn about Mr. Montgomery's involvement and conduct an appropriate investigation if the investigate file is made available.

## V. <u>CONCLUSION</u>

It is only the attorneys who are representing Mr. Sweeney that can make tactical decisions regarding what use to make of evidence. Mr. Wainstein is no position to substitute his judgment for that of defense counsel by representing that he has reviewed Montgomery's investigative file and it does not contain exculpatory information related to William Sweeney.

Counsel for Mr. Sweeney must have access to this information as it is clearly the type of information contemplated by <u>Brady</u> and is essential to the preparation of the defense.

**WHEREFORE,** defendant prays this Honorable Court for an Order requiring the United States to produce to counsel any and all information pertaining to the investigation and/or arrest of James Montgomery for the triple homicide in Maryland.

Respectfully Submitted,

Steven R. Kiersh #323329
1825 K Street, NW
Suite 901
Washington, D.C. 20006
(202) 347-0200

/s/ SRK

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

App 414

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |

## CERTIFICATE OF COUNSEL

Undersigned counsel do hereby certify that they have made a bona fide attempt

to secure the necessary relief from the prosecutor on a voluntary basis and that the

prosecutor has not complied with such request.

Respectfully Submitted,

Steven R. Kiersh #323329
1825 K Street, NW
Suite 901
Washington, D.C. 20006
(202) 347-0200

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| V. | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **Motion To Compel**

**Discovery Number 1** was mailed postage pre-paid, on this 9th day of February, 1999

to:


Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
555 4th St, NW
Fourth Floor
Washington, D.C.  20001

Joanne Roney Hepworth, Esquire
305 H Street, NW
Washington, D.C. 20001

Gerald Fisher, Esquire
Joseph Beshouri, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Frederick Sullivan, Esquire
12427 Sadler Lane
Bowie, Maryland 20715

App 417

Christopher M. Davis, Esquire
601 Indiana Avenue, NW
Washington, D.C. 20004

Frederick D. Jones, III, Esquire
901 6th Street, S.W.
Suite 409
Washington, D.C. 20024

Pleasant S. Brodnax, III, Esquire
2861 Duke Street
Alexandria, Virginia 22314

Patrick Donahue, Esquire
18 West Street
Annapolis, Maryland 21401

Steven R. Kiersh



# STEVEN R. KIERSH
**ATTORNEY AT LAW**
1825 K STREET, N.W.
SUITE 901
WASHINGTON, D.C. 20006
TEL. (202) 347-0200
FAX. (202) 835-1543

STEVEN R. KIERSH (DC)

NICHOLAS G. KARAMBELAS (DC, NY)
OF COUNSEL

November 17, 1998

TELEFAX AND REGULAR MAIL

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant United States Attorneys
555 4th Street, NW
Fourth Floor
Washington, D.C. 20001

Re | *United States v William Sweeney*
98-CR-329 (TPJ)

Dear Ms. Jackson & Mr. Wainstein:

In accordance with Rule 16 of the Federal Rules of Criminal Procedure, we are writing to request discovery and disclosure of the items which are enumerated below and to permit the defendant to inspect and copy or photograph all items which are in the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to you and which are material to the preparation of the defense, *viz:*

## STATEMENTS OF WILLIAM SWEENEY/ CO-CONSPIRATORS

### Defendant's Statements:

1. Any and all written and recorded statements made by William Sweeney, or copies of those writings and recordings, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence should or may become known, to the attorney for the government. Defendant specifically requests that government counsel inquire of all law enfocement personnel whom they know to have been connected with this case as well as any and all potential government witnesses or other people who have supplied information to the government whether they are aware of any written or recorded statements of the defendants, and if so, to make those statements available for inspection.

2. The substance of any and all oral statements made by any defendant which government intends to offer in evidence at the trial.

3. Any oral or written statement which any defendant has made in any jurisdiction.

**FILED**

dR 98-329

**FEB 0 9 1999**

NANCY MAYER WHITTIN
U.S. DISTRICT C

STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
98-329 (TPJ)
November 17, 1998
Page 2 of 9

4.      Any and all or written or oral statement made by any defendant which you contend was made in furtherance of the conspiracy.

5.      With regard to any statements claimed to have been made by any co-conspirator during the course of or in furtherance of the alleged conspiracy, William Sweeney requests disclosure of:

a.      The date of the alleged statement;

b.      The names, addresses and present whereabouts of all persons present when the statements were made;

c       The substance of each statement;

d.      Whether the statement was memorialized in any manner, including rough notes, reports or tape recordings; and

e.      Copies of all memorializations or any explanations of their absence.

6.      Any oral, written or recorded statement made by any other person which the government intends to introduce at trial or which evidences, reflects or relates in any way to the conspiracy charged in the indictment. This request includes, but is not limited to, any statement by an informant to the government.

## WITNESS LISTS

7.      A list of the names and addresses of each and every person whom the government intends to call as a witness in the presentation of its case in chief;

8.      A list of the names and addresses of each and every person who was interviewed by the government as a prospective, possible, or potential witness for the trial of this matter.

9.      The names, addresses and phone numbers of, or access to, all witnesses who have material and relevant information and will not be called by the government.

10.      The names, addresses and phone numbers of each expert witness the government intends to call at trial including, but not limited to, government agents whether federal, state or local agents, along with any reports, studies or other data upon which the expert will rely in giving his/her testimony.

11.      A list of the names of any witnesses or prospective witnesses or prospective witnesses to enter the Witness Protection Program.

12.      Any and all reports of the Federal Bureau of Investigation or any other governmental agency which reveal the arrest, conviction or prior criminal record of any co-conspirator or any prospective government witness.

STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
98-329 (TPJ)
Discovery Letter
November 17, 1998
Page 3 of 9

13.     Any and all statements, notes, recordings or any other form of transcription of statements made by any and all prospective government witnesses.

14.     Any and all reports, documents or written notes or, if not in writing, the substance of any agreement between the government and any prospective government witness concerning leniency or favorable treatment he or she might receive at the hands of the government.

15.     Any and all promises, representations, offers or any other statements made to any witness in this case involving either grants of immunity or representations that the witness would not be prosecuted for either the conduct which is the subject of this indictment or any other misconduct that the prosecutor knows of.

16.     State whether any witness or prospective witness was subjected to polygraph examinations. If so, provide the identity of the witnesses and examiners and copies of any reports or tapes.

17.     Set forth all judicial proceedings in any criminal case involving any person who is a potential government witness at the trial in this action.

## DISCLOSURE OF INFORMANTS AND REQUEST FOR INTERVIEW

18.     The identity of any informant from whom the government has obtained information, regardless of whether the government actually intends to call that informant at trial.

19.     Defendant also requests access to all informants for the purpose of interviewing them and that the government neither bar access nor instruct the informants to deny any request for an interview.

20.     The Defendant requests that the government disclose whether any informers were acting as agents of the prosecution in obtaining information concerning the alleged offenses and supplying it to the government; whether those informers were paid or unpaid, or received any consideration and whether they were federal or state employees.

## AGENTS DISCLOSURE

21.     Defendant requests disclosure of the names and places of work of all the agents and law enforcement officials that participated in the investigation of this case.

## STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
98-329 (TPJ)
Discovery Letter
November 17, 1998
Page 4 of 9

## DOCUMENTS AND TANGIBLE OBJECTS

22.    In accordance with Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure. all books. papers, documents, photographs, tangible objects, buildings or places, or pictures or copies of portions thereof which:

a.    Are material to the preparation of the defense, including those obtained from third parties to this indictment;

b.    Are intended for use by the government as evidence in its case in chief at trial; or

c.    Were obtained from or belong to any defendants.  This request includes, but is not limited to, any books, papers, documents, photographs or other tangible objects, or copies. which came into the possession, custody or control of the prosecution by subpoena, seizure or request directed to:

a.    Any person whom the prosecution intends to call as a witness at trial; and

b.    Any corporation, partnership, employee, organization, pension fund, financial institution, enterprise or other association where a person whom the prosecution intends to call as a witness at trial was an officer, employee, agent, member, trustee, associate, partner or had and interest therein.

23.    Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, any and all results or reports of physical or mental examinations and of scientific tests, eg, fingerprint, ballistic, handwriting, etc. or experiment, or copies thereof.

24.    State whether any inks, dyes or other markings were used by government agents on any tangible items to be offered into evidence.  If so, identify the item and describe the nature of the marking.

## SEARCHES, MAIL COVER, PEN REGISTERS, TELEPHONE TOLL RECORDS, VIDEO, TELESCOPIC OR PHYSICAL SURVEILLANCE

25.    Any and all records or other documents which reflect telephone calls or toll call records or telephone charges over any instrument in which any defendant or co-conspirator maintained a possessory interest or over which the government knew or believed any defendant utilized.

26.    Any and all applications. affidavits. testimony, inventories and/or orders seeking, granting or denying judicial permission to conduct a physical search of any person or premisses which relate to this case.

App 421

# STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
98-329 (TPJ)
Discovry Letter
November 17, 1998
Page 5 of 9

27. Any and all documents, objects or other tangible things which were obtained by virtue of any physical search and/or seizure of any person or place, with or without prior judicial authorization.

28. Any and all pre-trial identification procedures used, including, but not limited to photographic displays, lineups, show-up identifications, etc. State the nature and circumstances of any identification procedure as well as the time, date and place of the identification State whether any witnesses were unable to identify any defendant, made a mistaken identification or were uncertain in making an identification.

29. Any and all information, documents. reports, orders. affidavits, etc., which relate in any way to any "mail cover" operations of the examination of the mail of any individuals involved in this case.

30. Any and all information, documents, reports, orders, affidavits, etc., which relate in any way to any "pen register" operations or to the affixing of any instruments to record the telephone number of any incoming or outgoing telephone calls which were utilized in the investigation of this case, and which are within the possession, custody or control of the government, the existence of which is known or through the exercise of due diligence may become known to counsel for the government.

31. Any and all photographs, video recordings or motion pictures which were made in conjunction with this case, or which relate in any manner to this case.

32. Any and all applications, affidavits, orders or other documents which relate to any telescopically-enhanced surveillance which was conducted in conjunction with the investigation underlying this case.

33. Any and all forms, affidavits, or other documents which purport to grant consent to search any individuals, persons or premises which relate in any manner to this case.

34. Any and all notes, memoranda, reports or other writings made by officers or agents of any law enforcement agency during physical surveillance of any defendant or alleged co-conspirator in this case.

## WIRETAPPING, EAVESDROPPING AND CONSENSUAL RECORDINGS

35 Any and all documents, applications, affidavits, supplemental affidavits, exhibits, transcripts, testimony, memoranda, warrants, orders, etc. which relate to this case and which pertain to the use of mechanical or electronic interception devices which were made written or issued by any representative of federal, state or city government.

STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
Discovery Letter
November 17, 1998
Page 6 of 9

36.    Any and all statements of defendants, co-conspirators, or other individuals, whether oral, recorded or written which were seized by electronic or mechanical means.

37.    Any and all mechanical or electronic recordings and/or tapes that contain any defendant's or co-conspirator's conversations or which emanated from any premises or over any instrument in which any defendant possessed a proprietary interest or which were made in connection with a court ordered eavesdropping warrant in which a defendant was named as a party to be intercepted or was a person who was in fact intercepted.

38.    Any and all memoranda, logs, reports, notes, summaries, transcripts, periodic reports to the court or other written communications whatsoever which were made by any public\c servant and which are germane to this case and relate in any way to wiretapping or eavesdropping conducted by government agents.

## GRAND JURY INFORMATION

39.    The names, present addresses and telephone numbers of each and every witness appearing before the Grand Jury in connection with the return of the indictment.

40.    The names, present addresses and telephone numbers of each and every persons whose testimony was given to the Grand Jury by or through someone else in connection with the return of said indictment.

41.    Copies of all documents and exhibits presented to the Grand Jury.

42.    Transcripts of the testimony of all witnesses appearing before the Grand Jury. If no transcript or minutes exits, a summary of the testimony.

43.    Summaries and copies of the statements of witnesses which were not presented or conveyed to Grand Jury.

44.    Copies of all documents in possession of the government potentially relevant to the charges in the indictment and which the government did not present to the Grand Jury at the time this case was presented for Grand Jury consideration.

45.    A copy of the charge of the Court to the Grand Jury that returned this indictment.

46.    A list of the names and titles of each government employee who was present in the Grand Jury room during the taking of any testimony in the course of the investigations of this case. or who was present during any other portion of the Grand Jury proceedings.

STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
Discovery Letter
November 17, 1998
Page 7 of 9

47.    A list of the names and titles of each government employee who, prior to the return of the indictment, examined outside of he grand jury's presence any document or other items obtained by means of any Grand Jury subpoena issued in the course of the investigation of this case.

48.    A copy of any letter or other document authorizing the examination of Grand Jury materials by each of the government employees.

49.    A list of all Grand Jury subpoenas issued for documents and/or testimony in this case.

## BRADY DISCLOSURES

50.    The defendant requests that the Government disclose and produce any evidence in its possession favorable to the accused, regardless of whether the evidence is deemed to be admissible at trial. The disclosure and production should include, but not be limited to, the following:

a.    Any written or stenographic, mechanical, electrical or other recording of statements made by any witness, non-witness or co-conspirator, which may be exculpatory in nature or favorable to the accused or which may be used for impeachment of government witnesses and which are within the possession, custody or control of the government, the existence of which is known or through the exercise of due diligence may become known to counsel for the government.

b.    All information which illustrates that the acts, conduct and efforts of each defendant or others at his or her direction were done without criminal intent and evidence that could or may arguably be used by defense counsel in support of the defendant's contention that he lacked any criminal knowledge or criminal intent and that he did not act knowingly with knowledge of the existence of any conspiracy to participate in a conspiracy to distribute controlled substance.

c.    All evidence arguably helpful to he defendant's claim that he was not involved or connected with or had no part in activities or statements made by the co-defendants or of other persons which the government contends were co-conspirators but who have not been named as defendants.

d.    Any information which has come or may come to the attention of the government from any source indication that persons other than the defendant may caused or have been responsible for any of the offenses alleged in the indictment.

# STEVEN R. KIERSH

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v . William Sweeney
98-329 (TPJ)
Discovery Letter
November 17, 1998
Page 8 of 9

   e. Any and all criminal records of any witnesses whom the government intends to use in any way, or any other information demonstrating that commission on their part, or participation in any illegal activity, or any so-called "bad acts" or other instances of immoral or criminal conduct or conduct bearing on veracity.

   f. Any and all statements that any individual may have given or other information tending to reflect in any way inconsistent statements concerning and relevant to the charges against Mr. Sweeney.

   g. The criminal record and any list or summary reflecting the criminal record of any and all persons the government intends to call as witnesses at the trial of each defendant, including, but not limited to, the FBI arrest and conviction records.

   h. Any evidence of the existence of, and the substance of, any promises, agreements, understandings and arrangements, either verbal or written, between the government and any person the government intends to call as a witness, in which the government agreed, either expressly or impliedly, not to prosecute the witness for any crime or crimes, not to prosecute a third party for informal assurance that the government would not prosecute the witness in connection with any testimony he or she might give.

   i. Any evidence of the existence of, and the substance of, any promises, agreements, understandings and arrangements, either verbal or written, between the government and any person the government intends to call as a witness, in which the government agreed, either expressly or impliedly, to recommend leniency in sentencing or to recommend a certain sentence for any crime or crimes for which the witness has been, is, or will be convicted, or to advise the court of any cooperation with the government.

   j. Any evidence of the existence of, and the substance of, any promises, agreements, understandings and arrangements, either verbal or written, between the government and any person the government intends to call as a witness, in which the government agreed, either expressly or impliedly, to provide favorable treatment or payment of monies in return for the witness' cooperation and testimony.

   k. Any evidence of any and all actions, promises or efforts on the part of the government to aid, assist or obtain benefits of nay kind for any person whom the government considers a potential witness at trial, or a member of the immediate family of the witness, or friends of the witness.

**STEVEN R. KIERSH**

Nancy Jackson, Esquire
Kenneth Wainstein, Esquire
Assistant U.S. Attorneys
Re: United States v. William Sweeney
98-329 (TPJ)
Discovery Letter
November 17, 1998
Page 9 of 9


l.    Any evidence of the existence of, and substance of, any promises, agreements, understandings and arrangements, either verbal or written, between the government and any person the government intends to call as a witness, in which government agreed, either expressly or impliedly, to removal or destruction of the criminal record of any witness or to cause any change of identity of the witness.

m.    Any evidence of threats made to the witness or any member of his or her family y any law enforcement officer or agent of the government.

n.    Any and all personnel files for the witness and the existence and identity of all government files for the witness.

o.    Any and all records and/or information relating to witnesses and non-witness declarant which could arguably be useful to the defense for impeachment purposes.

p.    Any and all evidence of mental examinations of the witnesses, whether psychiatric or psychological, including, but not limited to, any tests conducted during those examinations.

q.    Any evidence of polygraph examinations given to any witness, including the tapes, reports and identities of witnesses and examiners.

r.    Any and all evidence of the use of illegal drugs of narcotics or prescription drugs which have a mind or sensory altering effect, by any witness from one week before through the date of testifying under oath in any proceeding, including any sworn testimony provided to any Grand Jury, and at any time since commencing his or her cooperation with the government.


Thank you for your earliest attention to this letter.

Very truly yours,

Steven R. Kiersh

Paul DeWolfe

SRK:ps
cc: Court jacket

EXHIBIT
B

# STEVEN R. KIERSH

ATTORNEY AT LAW
1825 K STREET, N.W.
SUITE 901
WASHINGTON, D.C. 20006
TEL. (202) 347-0200
FAX. (202) 835-1543

STEVEN R. KIERSH (DC)

NICHOLAS G. KARAMBELAS (DC, NY)
OF COUNSEL

January 19, 1999

TELEFAX (202) 307-2022 AND REGULAR MAIL

Kenneth L. Wainstein, Esquire
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C.  20001

Re: United States v. William Sweeney
Cr. 98-329

Dear Mr. Wainstein:

This letter is in regard to government witness James Montgomery.

It is our position that Mr. Montgomery, and the police investigation of his conduct, can provide information which will exculpate Mr. Sweeney of some of the overt acts and charges for which he has been indicted. Accordingly, pursuant to Brady v. Maryland, this letter is a request for the following specific information pertaining to Mr. Montgomery:

1. We are requesting the precise location of Mr. Montgomery. Mr. DeWolfe and I have not been able to locate Mr. Montgomery. If he is in the Witness Protection Program, please immediately so advise us so that we can make arrangements to interview him at a time and location which will not jeopardize his security concerns.

2. Please provide us with all information pertaining to why James montgomery was investigated and/or charged with the triple homicide in Maryland which occurred on November 17, 1996. This request relates to any and all information in your possession, the possession of any member of the Office of the United States Attorney for the District of Columbia, the possession of any law enforcement agency in any jurisdiction, and the possession of the Maryland State's Attorney's office.

3. Pursuant to Giglio v. United States, please provide us with the full terms of any agreement reached between James Montgomery and any prosecutor's office which in any manner relates to his anticipated testimony in the above-referenced matter. If an agreement has been reduced to writing, please provide us with a copy of the written agreement.

**FILED**

CR 98-329

FEB 0 9 1999

NANCY MAYER WHIT...
U.S. DISTRICT C... App 427

STEVEN R. KIERSH

Kenneth L. Wainstein, Esquire
Page Two
January 19, 1999

Re: United States v. William Sweeney

Please advise Mr. DeWolfe and myself of your position regarding these requests no later than January 26, 1999 so that we will learn whether it will be necessary to litigate these requests.

Thank you for your attention to this letter.

Very truly yours,

Steven R. Kiersh
Paul DeWolfe

SRK:le



EXHIBIT

# STEVEN R. KIERSH

ATTORNEY AT LAW
1825 K STREET, N.W.
SUITE 901
WASHINGTON, D.C. 20006
TEL. (202) 347-0200
FAX. (202) 835-1543

STEVEN R. KIERSH (DC)

NICHOLAS G. KARAMBELAS (DC, NY)
OF COUNSEL

January 29, 1999

TELEFAX AND REGULAR MAIL

Kenneth L. Wainstein, Esquire
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001

Re: United States v. William Sweeney
Cr. 98-329

Dear Mr. Wainstein:

On January 4, 1999 and on two separate occasions on January 19, 1999, Paul Dewolfe and I, on behalf of William Sweeney, made three very specific Brady requests.

I want to reiterate that the Brady requests we made are for information absolutely essential to our ability to investigate the charges against our client.

We have not received any response from you to our Brady demands and we had previously requested that you respond to our requests by January 26, 1999.

Please immediately advise me whether you will provide us with the requested information. We need to have your response by February 1, 1999. If we do not hear from you by that date, we will assume that you have chosen to deny our requests and we will have no alternative but to move to compel disclosure of the information.

Thank you for your attention to this letter.

Very truly yours,

Steven R. Kiersh

FILED

FEB 0 9 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CR 98-329

SRK:le



EXHIBIT
D

# STEVEN R. KIERSH

ATTORNEY AT LAW
1825 K STREET, N.W.
SUITE 901
WASHINGTON, D.C. 20006
TEL. (202) 347-0200
FAX. (202) 835-1543

STEVEN R. KIERSH (DC)

NICHOLAS G. KARAMBELAS (DC, NY)
OF COUNSEL

February 1, 1999

TELEFAX AND REGULAR MAIL

Kenneth L. Wainstein, Esquire
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20001

Re: United States v. William Sweeney
Cr. 98-329

Dear Mr. Wainstein:

This letter will memorialize my understanding of the substance of our telephone conversation this afternoon related to defendant's outstanding discovery requests made pursuant to Brady v. Maryland.

1. James Montgomery: You would not reveal his whereabouts and referred me to his attorney Alan Dale regarding availability for a statement. With respect to my request for information linking Mr. Montgomery to the triple homicide in Maryland, you stated that there was nothing you have seen in that investigation that would tend to exculpate Mr. Sweeney.

Our position regarding the investigation of Mr. Montgomery for the triple homicide is that the mere fact that he was considered a suspect is in and of itself Brady. Any information developed by any law enforcement agency or any prosecutor's office that in any manner related to Mr. Montgomery as a suspect, in the defense view, should immediately be turned over.

I am confident as a matter of fact that Mr. Montgomery was investigated as a suspect for the triple murder. We feel that any person involved in the investigation and any product of the investigation is Brady.

We obviously disagree on this issue and I will file a motion to litigate the issue.

You did state that you will look into the investigation of Mr. Montgomery in Maryland and advise me if your views change after looking into the matter.

FILED

CR 98-329

FEB 0 9 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

App 430

## STEVEN R. KIERSH

Kenneth L. Wainstein, Esquire
Page Two
February 1, 1999

Re: United States v. William Sweeney

2. Dennis Green: You stated that AUSA Peter Zeidenberg is investigating this matter and will advise me in two weeks whether there was an arrest of Dennis Green.

Our position on Dennis Green is that any and all information related to any investigation of him as a suspect in the case is Brady regardless of whether he was arrested.

I will follow up on this in two weeks. If we can not reach agreement on disclosure of this information, we will file the appropriate pleading.

3. Pinckney & Owens: We are reiterating our request for any and all information regarding the whereabouts of these exculpatory witnesses regarding the triple murder in Maryland. They have been interviewed by the State's Attorney in Maryland and I requested that you contact that prosecutor for any and all information regarding their whereabouts. We agreed to wait two weeks while you investigate this information and will so advise me.

4. Sprint telephone records. You agreed to check whether these records are in the possession of the State's attorney in Maryland and will advise me in two weeks of their availability.

Please let me know if the representations in this letter do not comport with your understanding of our conversation.

Very truly yours,

Steven R. Kiersh

SRK:le

App 431

[ RECEIVED ]

FEB 9  12 02 PM '99

N. MAYER-WHITTINGTON
CLERK
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

App 432



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**OCT 2 8 1999**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|   |   |   |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |
| | ) | |

## MOTION TO COMPEL PRODUCTION OF MITIGATION MATERIALS PRIOR TO PRESENTING ORAL SUBMISSION TO THE UNITED STATES DEPARTMENT OF JUSTICE CONCERNING THE DEATH PENALTY

Defendant, by and through undersigned counsel, Steven R. Kiersh and Paul DeWolfe, respectfully sets forth to this Honorable Court as follows:

1.) The United States has announced that it may seek to impose the death penalty against William Sweeney should he be convicted of certain crimes in the pending indictment which occurred in the state of Maryland and the District of Columbia.

2.) Counsel for Mr. Sweeney have provided a written submission to United States Attorney Wilma Lewis concerning why the death penalty should not be pursued in this matter. On September 23, 1999, counsel made an oral presentation to Ms. Lewis and twenty-one Assistant United States Attorneys regarding the death penalty and its application herein.

3.) On November 29, 1999, counsel are scheduled to appear before the United States Department of Justice to present mitigating factors on behalf of William Sweeney which might tend to suggest the inappropriateness of a death sentence.

App 433

4.) The Department of Justice Manual which addresses the policies and procedures for such presentations imposes certain obligations upon prosecutors prior to the submissions of defense counsel.  Section 9-10.040 provides that prior to deciding whether to request of the Attorney General permission to seek the death penalty, the government "should give counsel for the defendant a reasonable opportunity to present any facts, including any mitigation factors, to the United States Attorney for consideration" (emphasis supplied).

5.) United States Attorney's Manual Section 9-10.000, which relates to federal prosecutions in which the death penalty is sought, mandates that the local United States Attorney's office submit the following information to the Department of Justice for review prior to the return of a final determination regarding death penalty authorization.

> **In all cases in which the United States Attorney intends to charge a defendant with an offense subject to the death penalty, whether or not the United States Attorney recommends the filing of a notice to seek the death penalty, the United States Attorney shall prepare a "Death Penalty Evaluation" form and a prosecution memorandum. Following (i) an introduction, the prosecution memorandum should include a comprehensive discussion of (ii) the theory of liability, (iii) the facts and evidence, including evidence relating to any aggravating or mitigating factors, (iv) the defendant's background and criminal history, (v) the basis for federal prosecution (see Section F, infra), and (vi) any other relevant information.**

The information described above includes mitigation evidence.  The local United States Attorney, Wilma A. Lewis, could not have fulfilled her obligation to the Department of Justice concerning mitigation evidence unless the defense had the opportunity to present all such evidence.  Prior to the oral submission of September 23, 1999, defendant had requested to be provided with the relevant mitigation evidence in the exclusive possession of the United States which undoubtedly could be found in

<u>Jencks</u>, <u>Brady</u> and <u>Giglio</u> materials. However, requests for this information were declined.

7.) Defendant seeks an Order from this Court requiring diclosure of all requested <u>Jencks</u>, <u>Brady</u> and <u>Giglio</u> materials two weeks prior to appearing before the death penalty review committee. These materials will certainly contain statutory, and non-statutory, mitigating factors that should be brought to the attention of the United States Department of Justice. The disclosures should be made to defendant in the interests of due process and to fulfill the obligations imposed by Attorney General Reno. (A copy of Attorney General Reno's Memorandum is attached hereto and identified as Exhibit 1).

8.) Defendant requests this Court exercise its inherent supervisory powers and mandate the disclosure of the materials identified in the attached request for specific materials potentially containing factors in mitigation of the death penalty.

**WHEREFORE**, for the reasons set forth herein, and for those set forth in the attached Memorandum of Points and Authorities, defendant prays this Honorable Court Order the United States to provide the materials requested herein two weeks prior to counsel making their oral submission to the United States Department of Justice concerning the death penalty.

Respectfully submitted,

Steven R. Kiersh #323329
717 D Street, NW
Suite 400
Washington, D.C. 20004
(202)347-0200

/s/ SRC

Paul DeWolfe
20 Courthouse Square
Suite 214
Rockville, Maryland 20850



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF MITIGATION MATERIALS PRIOR TO PRESENTING ORAL SUBMISSION TO THE UNITED STATES DEPARTMENT OF JUSTICE CONCERNING THE DEATH PENALTY

Death penalty cases are different, not because the defendant claims so, but because every member of the current and recently past United States Supreme Court has so declared: "[E]very member of this Court has written or joined at least one opinion endorsing the proposition that because of its severity and irrevocability, the death penalty is quantitatively different from any punishment, and hence must be accompanied by unique safeguards..." **Woodson v. North Carolina**, 428 U.S. 280, 304-05 (1976).

Discovery is broader in death penalty cases. See 18 U.S.C. § 3432 (1988) (disclosure of witness list in a capital case at least three days prior to trial). Capital punishment is qualitatively different in form than any other form of criminal penalty we may impose. With it, we deny the defendant any possibility of rehabilitation and order instead the most irrevocable of sanctions. **Gregg v. Georgia**, 428 U.S. 153, 187

1

App 437

(1976).  Its severity demands a heightened need for reliability in the determination that death is the appropriate punishment in a specific case.  **Caldwell v. Mississippi**, 472 U.S. 320, 323 (1985).  We must be, therefore, particularly sensitive to insure that unique safeguards are in place that comport with the requirements of the Eighth Amendment.  **Gregg**, 428 U.S. at 187.

On January 27, 1995, in response to Congress' statutory directive in the Federal Death Penalty Act of 1994 that the government give notice before it seeks the death penalty against a federal criminal defendant -- directive that itself implements a constitutional command, see **Lankford v. Idaho**, 500 U.S. 110 (1991) (notice of possibility that death sentence will be imposed a constitutional requirement) -- the Attorney General promulgated § 9-10.000 of the United States Attorneys' Manual (the "Death Penalty Prorocol" or "Protocol").  By its terms, the procedural requirements of the Death Penalty Protocol -- opportunity for defense presentation, consideration and weighing of aggravating and mitigating circumstances, review, recommendation and final decision -- are made mandatory in all potential capital cases.

The careful weighing and review required by the Protocol are intended to assure that prior to deciding to seek the death penalty against a defendant, the Attorney General and her subordinates will, to the extent possible, "treat[] the defendant as a 'uniquely individual human bein[g]' and . . . ma[k]e a reliable determination that death is the appropriate sentence" to seek against that particular individual.  **Penry v. Lynaugh**, 492 U.S. 302, 319 (1989) (characterizing the task of the capital sentencer under the 8th Amendment).  Moreover, the Protocol is a public document; it is available to all,

2

purports to reassure the public, the judiciary and Congress that this most important of government decisions will not be made in an arbitrary and capricious manner. Capital defense counsel are requested to reveal their mitigation strategy and evidence to the government in reliance on the promise that these procedures are taken seriously. In the shadow of the Eighth Amendment, the Death Penalty Protocol imposes on the United States the obligation to weigh with the utmost care every appropriate consideration, including the individual characteristics of the defendant, prior to making the ultimate governmental decision to attempt to take the life of one of its citizens.

Defendant seeks production of **Jencks**, **Brady** and **Giglio** materials at this stage of this proceeding because information contained in those documents unquestionably includes relevant evidence in mitigation of the death penalty. The only means of obtaining the necessary and relevant evidence pertaining to these areas of mitigation is for the United States to be compelled to produce these documents.

Defendant has absolutely no idea why there is an overriding need to prosecute the murders charged herein in this United States District Court as opposed to bringing the charges in the Circuit Court for Prince George's County, Maryland and the Superior Court of the District of Columbia where they were originally respectively filed.[1] It appears that the only reason for electing to proceed in this Court is to be able to seek the death penalty (The State of Maryland declined to seek the death penalty when the

---

[1] The death penalty eligible offenses related to William Sweeney are as follows: A triple murder in <u>Maryland</u> involving residents of the state of Maryland which was investigated by Maryland law enforcement; a single homicide in the District of Columbia which had originally been prosecuted in the Superior Court of the District of Columbia

3

matters related to Mr. Sweeney were pending in that jurisdiction). This is in direct contradiction to Section 9-10.000(f) of the United States Attorneys Manual which states: **"In states where the death penalty is not authorized by law, the fact that the maximum penalty of death is insufficient, standing alone , to show a more substantial interest in federal prosecution."**

Defendant has requested information pertaining to why this matter is being pursued in this United States District Court in an effort to present a rebuttal position at the oral submission. Unless the United States is compelled to explain its reasons for choosing federal prosecution, defendant will be deprived of his ability to make a meaningful presentation.

Each of the requests addressed herein are relevant and material. Without this information, defendant cannot proceed in this phase in a manner designed to generate a substantive discussion regarding the applicability of the death penalty.

In **United States v. Rosado-Rosario**, U.S. District Court of Puerto Rico (Cr. No. 97-049), the parties agreed to disclosure of **Jencks**, **Brady**, **Giglio** and **Agurs** material prior to death penalty authorization. As part of the agreement, the United States was permitted to establish and implement protective measures regarding witness safety and evidence preservation. Defendant has no objection to implementation of the same protective measures herein if there is a genuine need for such protection.

In **Rosado-Rosario**, the government provided the agreed upon materials except that certain identifying information was redacted from most of the materials. The Court

4



rejected the redactions recognizing that it hampered the defense's investigation. The Court ordered the government to produce unredacted documents or desist from requesting authorization to seek the death penalty.

The identical process can be adopted herein. This procedure will satisfy the government's safety concerns and afford the defendant a reasonable opportunity to present mitigation evidence. ( A copy of the **Rosado-Rosario** opinion is attached hereto and identified as Exhibit # 2).

## Conclusion

Defendant urges this Court to follow the procedure adopted in **Rosado-Rosario** as it serves to assure receipt of necessary information which will allow for a meaningful presentation on the subject of the applicability of the death penalty. Factual issues related to mitigation and the purported substantial federal interest are recognized relevant topics of discssion before the United States Department of Justice Death Penalty Review Committee and information pertaining to these subjects can only be ascertained by defendant through disclosure by the United States prior to the oral presentation presently scheduled for November 29, 1999.

Steven R. Kiersh

/s/ SRK

Paul DeWolfe

5

App 441



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES )
)
)
)
v. ) **Criminal No. 98-329**
) **(TPJ)**
WILLIAM SWEENEY )
)

## SPECIFIC MATERIALS REQUESTED

1.) All investigative, **Jencks**, **Brady** and **Giglio** information pertaining to James Montgomery.

---

It is well known that James Montgomery is a primary witness who has provided law enforcement with substantial information that was used to investigate and indict William Sweeney on death penalty eligible crimes in the indictment.

Pursuant to 18 U.S.C. § 3592(4), a factor in mitigation of a death sentence includes: **"Equally culpable defendants. - Another defendant or defendants , equally culpable in the crime, will not be punished by death."**

While James Montgomery has not been charged in this indictment, he was charged in Maryland as a perpetrator of the triple homicide for which William Sweeny is now facing prosecution as a potential death-eligible offense. It is believed that James Montgomery was present at the scene of the triple homicide and participated in the triple slaying. Notwithstanding Montgomery's involvement in the death penalty eligible offense, not only is he not charged for this offense, he is presently avoiding incarceration in return for his testimony at trial.

James Montgomery clearly falls within the category of information contemplated

App 442

by 18 U.S.C. § 3592(4). Therefore, defendant seeks the following specific information pertaining to James Montgomery.

**a.) All Jencks material including Montgomery's grand jury testimony;**
**b.) All agreements executed between the United States and James Montgomery concerning his testimony in this indictment;**
**c.) A listing of all arrests of James Montgomery since he became a witness for the United States and an accounting of how each arrest was disposed of;**
**d.) All information tending to show that Montgomery and others, not including William Sweeney, committed the triple homicide.**
**e.) An accounting of all financial incentives paid to James Montgomery as a result of his becoming a government witness.**

2.) All investigative, **Jencks** And **Brady** information pertaining to Alonzo Gaskins, Darnell Mack and Melody Anderson.

---

Alonzo Gaskins, Darnell Mack and Melody Anderson were the three people killed in Maryland whose murders are a part of this indictment. It is known through defendant's investigation that Alonzo Gaskins and Darnell Mack were engaged in narcotics trafficking and illegal gambling in the District of Columbia, Maryland and other jurisdictions.

Pursuant to 18 U.S.C. § 3592(7), a factor in mitigation of a death sentence includes: **"victim's consent - the victim consented to the criminal conduct that resulted in the victim's death."**

It is a theory of the defense that it was well known that Mack and Gaskins maintained significant amounts of cash which were acquired through their illegal activities. The murders of those two individuals were probably a consequence of the substantial amounts of cash which they aquired through their very open involvement with narcotics and gambling. Therefore, as their deaths were a result of voluntary

App 443

involvement in conduct which precipitated the shootings, any information known to the United States about such conduct falls within, 18 U.S.C. § 3592(7). Accordingly, defendant seeks as follows:

> **a.) All Jencks materials, including grand jury transcripts, evidencing that Alonzo Gaskins, Darnell Mack and/or Melody Anderson were engaged in narcotics trafficking or gambling activities;**
> **b.) All police reports evidencing criminal activity on the part of Alonzo Gaskins, Darnell Mack and/or Melody Anderson (this request falls with <u>Brady v. Maryland</u>).**

Respectfully submitted,

Steven R. Kiersh #323329
717 D Street, NW
Suite 400
Washington, D.C. 20004
(202)347-0200

/s/ SRK

Paul DeWolfe
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify true and correct copy of Motion to Compel Production of

Mitigation Materials Prior to Presenting Oral Submission to the United States

Department of Justice Concerning the Death Penalty and Points and Authorities was

mailed, postage prepaid, on this 28th day of October, 1999 to:

Anjali Chaturvedi, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20001

Peter Zeidenberg, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20001

Christopher M. Davis, Esquire
601 Indiana Avenue, NW #910
Washington, D.C. 20004

Joanne Hepworth, Esquire
305 H Street, NW
2nd Floor
Washington, D.C. 20001

App 445



App 446

Joseph Beshouri, Esquire
307 G Street, NW
Washington, D.C. 20001

Gerald Fisher, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Frederick Sullivan, Esquire
12427 Sadler Lane
Bowie, MD 20715

Frederick Jones, Esquire
901 6th Street, SW #409
Washington, D.C. 20024

Henry Asbill, Esquire
1615 New Hampshire Avenue, NW
Washington, D.C. 20009

Pleasant Broadnax, Esquire
2861 Duke Street
Alexandria, VA 22314

Nathan Silver, Esquire
P.O. Box 5757
Bethesda, MD 20814

James Savage, Esquire
200 A Monroe Street
Suite 225
Rockville, MD 20850

Steven R. Kiersh

1

FILED

OCT 2 8 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

OFFICE OF THE ATTORNEY GENERAL
WASHINGTON, D.C. 20530

January 27, 1995

TO:        Holders of United States Attorneys' Manual,
           Title 9

FROM:      Janet Reno  /S/
           Attorney General

RE:        Federal Prosecutions in Which the Death Penalty
           May Be Sought

NOTE:      1.    This is issued pursuant to USAM 1-1.550.
           2.    Distribute to all Holders of Title 9.
           3.    Insert in front of affected section.

AFFECTS:   USAM 9-10.000

PURPOSE:   This bluesheet sets forth policy and procedures to
           be followed in all federal cases in which a
           defendant is charged with an offense subject to
           the death penalty, regardless of whether the
           United States Attorney intends to request
           authorization to seek the death penalty.

---

The following section replaces 9-10.000 in your United States
Attorneys' Manual:

9-10.000   Federal Prosecutions in Which the Death Penalty May Be
           Sought

## A. AUTHORIZATION TO SEEK THE DEATH PENALTY

The death penalty shall not be sought without the prior
written authorization of the Attorney General.

## B. NOTICE OF INTENTION TO SEEK THE DEATH PENALTY

At the time an indictment charging a defendant with an
offense subject to the death penalty is filed or unsealed, or
before the United States Attorney's Office decides to request
approval to seek the death penalty, whichever comes first, the
United States Attorney should give counsel for the defendant a
reasonable opportunity to present any facts, including any
mitigating factors, to the United States Attorney for
consideration. If the United States Attorney decides to request

App 448



approval to seek the death penalty, the United States Attorney's Office should inform counsel for the defendant.

## C. SUBMISSIONS TO THE DEPARTMENT OF JUSTICE

In all cases in which the United States Attorney intends to charge a defendant with an offense subject to the death penalty, whether or not the United States Attorney recommends the filing of a notice to seek the death penalty, the United States Attorney shall prepare a "Death Penalty Evaluation" form and a prosecution memorandum. Following (i) an introduction, the prosecution memorandum should include a comprehensive discussion of (ii) the theory of liability, (iii) the facts and evidence, including evidence relating to any aggravating or mitigating factors, (iv) the defendant's background and criminal history, (v) the basis for federal prosecution (see Section F, infra), and (vi) any other relevant information. A copy of the Death Penalty Evaluation form is included as Appendix A.

The United States Attorney shall send the above-described documents, a copy of the indictment,[1] and any written material submitted by counsel for the defendant in opposition to the death penalty being imposed on the defendant to the Assistant Attorney General for the Criminal Division. Whenever possible these materials should be submitted prior to the return of an indictment containing a charge for which the death penalty could be sought. In no event should these documents be received by the Criminal Division later than 30 days prior to the date on which the Government is required, by an order of the court or otherwise, to file notice that it intends to seek the death penalty.

## D. DEPARTMENT OF JUSTICE REVIEW

Each of the documents described above shall be reviewed by a Committee appointed by the Attorney General, including the Deputy Attorney General or designee and the Assistant Attorney General of the Criminal Division or designee. Counsel for the defendant shall be provided an opportunity to present to the Committee, orally or in writing, the reasons why the death penalty should not be sought. The Committee will consider all information presented to it, including any evidence of racial bias against the defendant or evidence that the Department has engaged in a pattern or practice of racial discrimination in the administration of the federal death penalty. The Committee should give the Attorney General its recommendation in writing

---

[1] The request should include copies of all existing, proposed, and superseding indictments.

From : DAVIS & DAVIS        PHONE No. : 202 686 0391        Oct.18 1999  4:29PM P10



within fifteen days of receiving all documents required by Section C, supra. The Attorney General will conduct a review and make the final decision whether the Government should file a "Notice of Intention to Seek the Death Penalty."

Subsequent to the initial Department of Justice review, the United States Attorney and the Attorney General's Committee shall review any submission defense counsel chooses to make. After considering the information submitted, the Committee will make a recommendation to the Attorney General concerning the application of the death penalty to the case.

## E. NOTICE TO FAMILY OF VICTIM

The United States Attorney shall notify the family of the victim of all final decisions regarding the death penalty.

## F. SUBSTANTIAL FEDERAL INTEREST

Where concurrent jurisdiction exists with a state or local government, it is anticipated that a federal indictment for an offense subject to the death penalty will be obtained only when the federal interest in the prosecution is more substantial than the interests of the state or local authorities. See Principles of Federal Prosecution, USAM 9-27.000, et seq. In states where the imposition of the death penalty is not authorized by law, the fact that the maximum federal penalty is death is insufficient, standing alone, to show a more substantial interest in federal prosecution.

The following factors, which are not intended to be an exhaustive list, may be considered in deciding whether there is a more substantial interest in federal as opposed to state prosecution of the offense:

(1) The relative strength of the state's interest in prosecution. The federal and state characteristics of the criminal conduct should be considered. One of the jurisdictions may have a particularly strong interest because of the nature of the offense; the identity of the offender or victim; the fact that the investigation was conducted primarily by its investigators or through its informants or cooperators; or the possibility that prosecution will lead to disclosure of violations which are peculiarly within the jurisdiction of either the federal or state authorities or which will assist an ongoing investigation being conducted by one of them.

(2) The extent to which the criminal activity reached beyond the local jurisdiction. The extent to which the criminal activity reached beyond the boundaries of a single local prosecutorial jurisdiction should be considered. The nature, extent, and impact of the criminal activity upon the

Oct. 18 1999 4:29PM P11   PHONE NO. : 202 686 0391   From : UNITED STATES DAVIS   App.450



jurisdiction, the number and location of any murders, and the need to procure evidence from other jurisdictions, in particular other states or foreign countries, are all relevant to this analysis.

(3) <u>The relative ability and willingness of the state to prosecute effectively.</u> The relative likelihood of effective prosecution in the state and federal jurisdictions should be considered, including the ability and willingness of the authorities in each jurisdiction; the prosecutorial and judicial resources necessary to undertake prosecution promptly and effectively; legal or evidentiary problems that might attend prosecution; conditions, attitudes, relationships or other circumstances that enhance the ability to prosecute effectively, or alternatively, that cast doubt on the likelihood of a thorough and successful prosecution.

## G. <u>STANDARDS FOR DETERMINATION</u>

In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General shall consider any legitimate law enforcement or prosecutorial reason which weighs for or against seeking the death penalty.

In determining whether or not the Government should seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General must determine whether the statutory aggravating factors applicable to the offense and any non-statutory aggravating factors sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. To qualify for consideration in this analysis, an aggravating factor must be found to exist beyond a reasonable doubt. Recognizing that there may be little or no evidence of mitigating factors available for consideration at the time of this determination, any mitigating factor reasonably raised by the evidence should be considered in the light most favorable to the defendant. The analysis employed in weighing the aggravating and mitigating factors that are found to exist should be qualitative, not quantitative. Finally, there must be sufficient admissible evidence of the aggravating factors to obtain a death sentence and to sustain it on appeal.

The authorization process is designed to promote consistency and fairness. As is the case in all other actions taken in the course of federal prosecutions, bias for or against an individual based upon characteristics such as race or ethnic origin may play no role in the decision whether to seek the death penalty.

App 451



## H. WITHDRAWAL OF NOTICE OF INTENTION TO SEEK THE DEATH PENALTY

Once the Attorney General has authorized the United States Attorney to seek the death penalty, a notice of intention to seek the death penalty filed with the court shall not be withdrawn unless authorized by the Attorney General or as a condition of a plea agreement approved by the United States Attorney. If the United States Attorney wishes to withdraw the notice and proceed to trial, the United States Attorney shall advise the Assistant Attorney General for the Criminal Division of the reasons for that request, including any changes in facts or circumstances.

Any request to withdraw a notice shall be reviewed by the Committee appointed by the Attorney General, which will make a recommendation to the Attorney General. The Attorney General shall make the final decision.

## I. PLEA AGREEMENTS

The death penalty may not be sought, and no attorney for the Government may threaten to seek it, for the purpose of obtaining a more desirable negotiating position. No plea agreement shall be negotiated until an evaluation in accordance with this Bluesheet has been conducted by the United States Attorney. After an evaluation has been completed by the United States Attorney regarding whether or not to recommend the seeking of the death penalty, the United States Attorney can approve any plea agreement. There is no need for the United States Attorney to obtain prior authority from the Attorney General to approve a plea agreement.

Should a plea be entered in any death penalty case, the United States Attorney shall advise the Assistant Attorney General for the Criminal Division in writing of the plea agreement and the reasons for it.

App 453

FILED

OCT 2 8 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,                    *

        Plaintiff,                           *        Criminal No. 97-049 (JAF)

                                             *

        v.                                   *

                                             *

JAIME ROSADO-ROSARIO (01),                   *
a/k/a "La Mosca";                            *
MODESTO ROBERTO MOLINA (02),                 *
a/k/a "El Viejo", a/k/a "El Tío";            *
LUIS SUAREZ-ASENCIO (03),                    *
a/k/a "La Momia";                            *
FRANK ORTIZ-FLORES (04),                     *
a/k/a "Pistón";                              *
RICARDO GARAYUA-DIAZ (05),                   *
a/k/a "Ricky";                               *
EDGARDO I. MEJIAS-VILLALBA (06),             *
a/k/a "Niní";                                *
JESUS MIRANDA-GONZALEZ (07),                 *
a/k/a "Pito Corozal";                        *
EDWIN MORENO (08), and                       *
REINALDO NARVAEZ-MAISONET (09),              *
a/k/a "Chacho",                              *

                                             *

        Defendants.                          *

                                             *

------------------------------------*

## OPINION AND ORDER

At a status conference held on May 23, 1997, the parties agreed that the government would provide early disclosure of Jencks, Brady, Giglio, and Agurs material by June 23, 1997. In exchange for the early disclosure, the government requested and was granted thirty days to establish and implement protective measures regarding the safety of witnesses and the preservation of evidence. On or about the compliance date, the government filed a motion for extension of

AO 72
(Rev 8/82)

Criminal No. 97-049 (JAF)                                        -2-

time due to certain delays in arranging for the safety of its witnesses. The court granted the requested relief. On June 30, 1997, the government provided the material as ordered, except that the names, locations, and other identifying information were redacted from virtually all the documents. Counsel for defendants object to the redactions, arguing that the redacted information is necessary in order to argue against certification of the death penalty in this case before the Attorney General of the United States. See LOCAL RULE 428. The government contends that the redactions were warranted because there have been threats against government witnesses. The prosecution, however, has not made sufficient and precise references as to when and where these threats were allegedly made nor as to who made or received the threats, or whether these statements have been confirmed or corroborated.

Because in this case the government seeks to obtain from the Attorney General a death penalty certification, we have expansively defined defendants' right to discovery so that the defense may argue against the death penalty certification before the Attorney General. We have examined the discovery package furnished by the government to the defense and find the discovery insufficient for the defense to adequately prepare an argument against death penalty certification before the Attorney General.

AO 72
Rev 8/82)

Criminal No. 97-049 (JAF)                                                -3-

Discovery is broader in death penalty cases. <u>See</u> 18 U.S.C. § 3432 (1988) (disclosure of witness list in a capital case at least three days prior to trial). Capital punishment is qualitatively different from any other form of criminal penalty we may impose. <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976). With it, we deny the convict any possibility of rehabilitation and order instead the most irrevocable of sanctions. <u>Gregg v. Georgia</u>, 428 U.S. 153, 187 (1976). Its severity demands a "heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 323 (1985), <u>citing</u> <u>Woodson</u>, 428 U.S. at 305. We must be, therefore, particularly sensitive to insure that unique safeguards are in place that comport with the requirements of the Eighth Amendment. <u>Gregg</u>, 428 U.S. at 187.

These safeguards begin at the stage when the government informs the defense that it intends to seek the death penalty. <u>See</u> LOCAL RULE 428. In requesting for authorization to seek the death penalty, the government must provide the Attorney General with a

> [c]omprehensive discussion of the expected testimony of all key witnesses (including relationship to each proposed capital defendant and offense), plea agreements of cooperating witnesses, eyewitness identifications, investigative evidence, surveillance, physical

AO 72
(Rev 8/82)

App 456

Criminal No. 97-049 (JAF)                                    -4-

              evidence, forensics, ballistics, finger-
              prints, etc.

See United States Department of Justice, Narcotic and Dangerous Section, Memorandum of December 9, 1994, from Joseph S. Uberman, Trial Attorney, Information and Procedures for Requesting Authorization to Seek the Death Penalty, and proposed Outlines. In order for defense counsel to counter this "comprehensive discussion" effectively, the government must comply with the discovery disclosure previously ordered by this court. Particularly in the instant case, the facts and circumstances require the disclosure of witness information and impeachment materials. A substantial number of the government's expected witnesses are convicted felons who are serving lengthy sentences and have been relocated. Many of them have or hope to reach agreements with the government in exchange for their testimony. This situation hampers the defense's investigation. If the government does not provide this information to the defense, there is no meaningful way for the defense to highlight any relative weakness in the government's case or unlikelihood of securing a death verdict. On the other hand, we are aware of the government's legitimate concern for the safety of its incarcerated witnesses. Needless to say, if subsequent events place a witness' safety or life

AO 72
(Rev 8/82)

App 457

Criminal No. 97-049 (JAF)                                          -5-

in jeopardy, the government can then request a specific protective order.

In light of the foregoing, our initial discovery order was a proper exercise of judicial discretion and should have been complied with in its entirety. The government's proof in this case and its potential for perjury combine to create a situation where full and complete disclosure is the only way to safeguard defendants' Eighth Amendment rights in the context of a potential death penalty certification by the Attorney General.

Accordingly, we **ORDER** the government to produce unredacted statements and transcripts or, alternatively, to desist from requesting authorization to seek the death penalty. **Seven (7) calendar days granted to comply**. If the government chooses the second alternative, we find that the discovery package produced is sufficient to proceed with a non-capital case. This Order disposes of Docket Documents Nos. 92 & 96.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this _1st_ day of August, 1997.

JOSE ANTONIO FUSTE
U. S. District Judge

p/co:
ICMS counsel (11)
8/5/97

AO 72
(Rev 8/82)

App 458

FILED

MAY 1 8 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| **WILLIAM SWEENEY** | ) | |
| | ) | |

## ADDENDUM TO MOTION TO
## COMPEL DISCOVERY

Defendant, by and through undersigned counsel, Steven R. Kiersh and Paul

DeWolfe, respectfully sets forth as follows:

1.) On February 9, 1999 defendant filed a Motion to Compel Discovery.  On

March 4, 1999 the United States filed its response to defendant's Motion to Compel

Discovery.  On May 4, 2000, defendant filed his Reply to the Response of the United

States to his Motion to Compel Discovery.

2.) Defendant adds additional matters identified herein to his Motion to Compel

Discovery.  These matters are material, relevant and potentially exculpatory.  The

United States has been advised of these requests and has declined to voluntarily

disclose the requested information.

### 1.) Information in the possession of Assistant United States
### Attorneys Oscar Mayer, Jr. and Lynn C. Leibovitz

a.) Oscar S. Mayer, Jr.: Mr. Mayer was the lead prosecutor in D.C. Superior

Court Criminal Case No. F-13463-91.  That case was a prosecution of James

Montgomery for armed robbery, armed kidnaping and other serious felonies.  As has

1

previously been brought to the attention of this Court, James Montgomery is the foundation upon which the United States seeks to base its theory of prosecution of the triple murder in Temple Hills, Maryland against William Sweeney.

James Montgomery is a career criminal with a reputation for dishonesty, lack of credibility and bizarre behavior. It is obvious that the defense will spend considerable time at trial demonstrating to the jury that Montgomery is an unreliable individual and thus his testimony should be evaluated with a great deal of skepticism.

In 1991 James Montgomery was arrested and charged in the Superior Court of the District of Columbia with Armed Robbery. On January 27, 1992, Montgomery was indicted for Armed Robbery, Armed Kidnaping and Possession of a Firearm During a Crime of Violence. Montgomery's case number was F-13463-91.

At the time of Montgomery's arrest for the charges identified in the preceding paragraph, he was on escape status having walked away from a halfway house. That act resulted in Montgomery's indictment for Prison Breach in Superior Court Case No. F-1765-92.

In Criminal Case No. F-13463-91, Montgomery sought to modify his conditions of release pending trial. The United States opposed the motion. The Assistant United States Attorney prosecuting the matter was Oscar S. Mayers, Jr. In his pleading to the Honorable Frederick Weisberg, Mr. Mayers wrote in relevant part as follows: **"Moreover, the totality of the circumstances indicates that the defendant (James Montgomery) is unreliable and that there is a substantial likelihood of flight".**

There is absolutely nothing to suggest that Montgomery has become a more

2

App 460

reliable person since 1991. Indeed, the evidence suggests that since 1991 Montgomery has become even less reliable and has continued this practice of engaging in very serious and violent criminal activity.

In a 1991 pleading the United States announced that Montgomery was an unreliable individual. This characterization <u>must</u> be brought to the attention of the jury considering the indictment herein as it is material and relevant to William Sweeney's defense. In addition, the pronouncement of Montgomery's unreliability by the United States unquestionably exculpates William Sweeney from involvement with the triple homicide.

Defendant submits that <u>any</u> information in the possession of the United States which tends to establish or corroborate the unreliability of James Montgomery is exculpatory and must be immediately disclosed for review and investigation.

The purpose of disclosing the evidence of James Montgomery's unreliability is to impeach his credibility at trial. The Supreme Court has held that **"impeachment evidence . . . as well as exculpatory evidence, falls within the <u>Brady</u> rule." United States v. Bagley**, 473 U.S. 667, 676 (1985) (quoting **Giglio v. United States**, 405 U.S. 150, 154 (1972)). More recently, the Supreme Court held that the **Brady** rule includes evidence **"known to police investigators and not only to the prosecutor." Kyles v. Whitley**, 514 U.S. 419, 438 (1995). Thus, in order to comply with **Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police"** Id. At

3

437.

b.) <u>Lynn C. Leibovitz</u>: William Sweeney is charged herein with the murder of Donnell Whitfield. This act was previously prosecuted in the Superior Court of the District of Columbia. The case was handled by Assistant United States Attorney Lynn C. Leibovitz.

It is the government's present theory of prosecution that William Sweeney is the actual shooter of Mr. Whitfield. However, when the case was prosecuted in Superior Court it was the government's theory of prosecution that someone other than William Sweeney was the shooter of Donnell Whitfield. In fact, Ms. Leibovitz presented testimony to the grand jury that someone other than William Sweeney actually shot Donnell Whitfield.

William Sweeney must present to the jury hearing this case <u>all</u> of the evidence in the possession of the United States that someone other than he shot and killed Donnell Whitfield. For very obvious reasons, the evidence is material, relevant and certainly exculpatory.

The only means for William Sweeney to fully inform the jury of the existence of this fully exculpatory evidence is through the disclosure of all information presented to the grand jury which suggests that someone other than William Sweeney was the actual shooter of Donnell Whitfield.

The right to suggest, through the introduction of testimony, evidence tending to show that a person other than the defendant committed the charged offense is guaranteed by the Due Process Clause. See **Brown v. United States**, 409 A.2d 1093,

4



1097 (D.C. App. 1979). However, in this context, the evidence is only relevant at trial if it **"tend[s] to indicate some reasonable possibility that a person other than the defendant committed the charged offense."** Johnson v. United States, 552 A.2d 513, 516 (D.C. 1989), adopted by the en banc court in **Winfield v. United States**, 676 A.2d 1,5 (D.C. App. 1996) (emphasis added in **Winfield**).  **"The focus of the standard is not on the third party's guilt or innocence, but on the effect the evidence has upon the defendant's culpability, and in this regard it need only tend to create a reasonable doubt that the defendant committed the offense."** Winfield, 676 A.2d at 4 (citation and internal quotations omitted); see **Freeland v. United States**, 631 A.2d 1186, 1189 (D.C. 1993) (**"The focus is properly on the reasonable possibility that someone else might have committed the crime for which the defendant stands charged and not on whether the defendant can produce proof beyond a reasonable doubt that a third person is guilty."**) Finally, to substantiate a third-party perpetrator defense, an accused must "proffer some evidence, either circumstantial or direct, of a third-party's actions, motives, opportunity, statements [or] declarations against penal interest." **Boykin v. United States**, 1999 D.C. App. LEXIS 219, at *18 (Sept. 23, 1999).

It may be an argument of the defense that persons other than William Sweeney had both the motive and opportunity to commit the Whitfield murder. However, as stated above, in order to suggest evidence through testimony that someone else had such motivation, the defendant must have evidence that **"tends to indicate some**

5

App 463

**reasonable possibility that a person other than the defendant committed the charged offense."** **Whitfield v. United States**, 676 A.2d at 5.

The only means for defendant to pursue his defense that someone else actually shot Donnell Whitfield , William Sweeney must have all such evidence known by the government immediately disclosed to him.

### III.) All investigative files pertaining to other suspects in the commission of the triple homicide in Temple Hills, Maryland

It is beyond dispute that numerous individuals other than William Sweeney were the subject of investigation on behalf of law enforcement pertaining to the commission of the triple homicide which is a prominent aspect of this indictment.

The United States has declined to provide the defense with information contained in the investigative files of those persons investigated as suspects with respect to the triple murder in Temple Hills, Maryland.

It will be an argument of the defense that law enforcement actively investigated persons other than William Sweeney for the Maryland triple murder.  To substantiate this third-party defense, Mr. Sweeney plans to introduce evidence at trial that individuals have provided law enforcement with evidence that contradicts the government's theory.  The defense further desires to introduce evidence that law enforcement actively investigated persons other than William Sweeney as having committed the triple murders.

Disclosure of this information would allow the defense to conduct its own

6

investigation to develop further evidence and effectively present Mr. Sweeney's third-party defense. See **United States v. Frank**, 11 F.Supp. 2d 322, 325 (S.D.N.Y. 1998). While **Brady "does not create a right to information concerning all possible suspects, particularly if the number of such suspects is large and evidence of their involvement is slight,"** United States v. Whitehorn, 710 F.Supp. 803, 827 (D.D.C.), rev'd on other grounds, **United States v. Rosenberg**, 888 F.2d 1406 (D.C. Cir. 1989), disclosure of this limited information concerning all individuals who have been investigated for the triple homicide would hardly include a very large number of suspects. Moreover, **"any evidence of their involvement"** cannot be **"slight"** since such evidence would corroborate the theory of the defense that others had the motives and means to commit the triple murders. Thus, this evidence would be relevant and admissible or would lead to discovery of admissible evidence, and thus would be material under **Brady**. See **Bartholomew**, 516 U.S. at 6-7; **Lewis**, 408 A.2 at 308.

The information requested herein will also be used to cast reasonable doubt upon the government's theory of prosecution of the Temple Hills, Maryland triple murder. This entirely proper use of evidence can only be accomplished if the information is immediately made available to counsel.

### a.) Disclosure should be compelled immediately to ensure that the defense has a significant opportunity to put the exculpatory information to use

The defense seeks the Court compel the government to disclose the information contained in the requests herein immediately. As a general matter, a defendant has no constitutional right to receive either Brady or Giglio material prior to trial. See **Kyles**,

7



514 U.S. at 437. Exculpatory material must be discovered, however, **"at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case."** <u>United States v. Pollack</u>, 543 F.2d 964, 973 (D.C. Cir.), **cert. denied**, 429 U.S. 924 (1976); <u>See</u> also **Frank**, 11 F.Supp.2d 964, 973 (D.C. Cir.), **cert. denied**, 429 U.S. 924 (1976); <u>See</u> also **Frank**, 11 F.Supp.2d at 324 (citing **Grant v. Alldredge**, 498 F.2d 376, 382-83 & n.7 (2nd Cir. 1974)). In an immensely complex case such as Mr. Sweeney's, the need for exhaustive investigation and thorough trial preparation by the defense is of paramount importance, given the potential consequences of the litigation. Every effort must be made to disclose exculpatory information at a sufficiently early point in the proceedings to afford the defense a meaningful opportunity to investigate it and evaluate its application to its strategy at trial, or the fundamental fairness required by due process may be lacking. See **McVeigh**, 923 F.Supp. At 1315; <u>see</u> <u>also</u> **Dean v. United States**, 55 F.3d 640, 663 (D.C. Cir. 1995) (finding due process satisfied so long as the ultimate disclosure is made at a sufficiently early point so that defendant may make use of any benefits of the evidence).

Therefore, with trial only three months away, the defense must have the information sought herein immediately so that it may have a meaningful opportunity to conduct its own investigation and to put the exculpatory information effectively to use in Mr. Sweeney's defense. Postponing disclosure of such information puts the strategic planning of the defense in the hands of the government to the same extent as a total failure to disclose, making the government the architect of the defense's case, a circumstance that does not comport with the minimal standards of justice. See **Brady**,

8

373 U.S. at 88. Furthermore, any speculative danger might deprive Mr. Sweeney of effective use of the material and right to a fair trial. See **Pollack**, 534 F.2d at 973. Thus, the Court should compel the immediate disclosure of the materials identified herein.

Respectfully submitted,

Steven R. Kiersh #323329
717 D Street, NW
Suite 400
Washington, D.C. 20004
(202)347-0200

Paul DeWolfe
20 Courthouse Square
Suite 214
Rockville Maryland, 20850

9

App 467



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| WILLIAM SWEENEY | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of defendant's Addendum to Motion to Compel Discovery was mailed, postage prepaid, on this the 18th day of May, 2000 to:

Anjali Chaturvedi, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20001

Peter Zeidenberg, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20001

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

Christopher Davis, Esquire
601 Indiana Avenue, NW
#910
Washington, D.C. 20004

Joanne Hepworth, Esquire
305 H Street, NW 2nd Floor
Washington, D.C. 20001

App 468

Joseph Beshouri, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Gerald Fisher, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Frederick Sullivan, Esquire
12427 Sadler Lane
Bowie, Maryland 20715

Frederick Jones, Esquire
901 6th Street, SW
#409
Washington, D.C. 20024

John Carney, Esquire
601 Pennsylvania Avenue, NW
#900
South Building
Washington, D.C. 20004

Joseph Conte, Esquire
601 Pennsylvania Avenue, NW
#400
Washington, D.C. 20004


Steven R. Kiersh

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

'00 MAY 18 PM 2: 38

NANCY M.
MAYER-WHITTINGTON
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 98-329 (TPJ) |
| | ) | |
| VINCENT HILL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 99-348 (TPJ) |
| | ) | |
| GARY PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**

JUN 1 6 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ORDER

In accordance with the proceedings in open court at the motions hearing of June 16, 2000,

and upon consideration of the arguments set forth by counsel in their written motions and oral

argument, it is this 16th day of June, 2000,

ORDERED, that defendant Sweeney's Motion to Compel Discovery, No. 1 [71] is

denied, without prejudice, as to his request for information from Assistant United States

Attorneys Oscar Mayer and Lynn Liebowitz, and the remainder of the motion is held in abeyance

pending this Court's ex parte, in camera review, under seal, of the investigative file on

government witness, James Montgomery; and it is

App 471

FURTHER ORDERED, that the government's motion for issuance of a Rule 17 (c) subpoena for medical records [286] is granted; and it is

FURTHER ORDERED, that counsel's oral request to submit motions on behalf of defendant Maurice Proctor by July 21, 2000 is granted.



Thomas Penfield Jackson
U.S. District Judge

**FILED**

JUN 3 0 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | |
| **Vincent Hill, a/k/a "Vito"** | : | **Criminal No. 98-329-01-06 (TPJ)** |
| **Jerome Martin, a/k/a "Pimp"** | : | |
| **Samuel Carson, a/k/a "Chin"** | : | |
| **William Kyle Sweeney,** | : | |
| **a/k/a "Draper"** | : | |
| **Maurice Proctor,** | : | |
| **a/k/a "PooPoo"** | : | |
| **Sean Coates, a/k/a "Birdy"** | : | |

| | | |
|---|---|---|
| **Gary Price, a/k/a "Harry O"** | : | |
| | : | **Criminal No. 99-348-01 (TPJ)** |
| **Defendants.** | : | |

### Government's Notice of Submission of Ex Parte Materials to the Court Regarding James Montgomery

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully submits that it has provided to the Court <u>ex parte</u> a copy of the

government's "investigative files" pertaining to witness James Montgomery. In conjunction with

the materials provided, the government submits the following:

On Friday, June 16, 2000, counsel for defendant Sweeney requested that the investigative

files pertaining to James Montgomery be provided to the defense to allow for further

investigation. Without any legal basis, defendant Sweeney argued that the materials within the

files constitute <u>Brady</u> material and must be provided to the defense pretrial.[1] Specifically,

defendant Sweeney argued that he was entitled to all inconsistent statements of Montgomery

---

[1] <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).

App 473

pretrial. The government opposed the request, stating that it was aware of its Brady obligations and that the materials in the government files which constituted impeachment information will be provided, as is the case with all of the government witnesses, in advance of cross-examination at a time when the defense will have a sufficient opportunity to assess the information for use at trial. The Court ordered that the files be provided to the Court ex parte for its review.

Having complied with the Court's order to submit the materials to the Court, the government submits that all of the materials provided to the Court should not be provided to the defense in advance of trial.

<center>Argument</center>

A.   The general duty to disclose.

It is well-settled that suppression by the prosecution of evidence favorable to the accused, that has been requested, violates due process where the evidence is material to either guilt or punishment. Brady, supra, 373 U.S. at 87. Evidence is material if its suppression undermines confidence in the outcome of the trial. Bagley v. United States, 473 U.S. 667, 678 (1985) (plurality opinion). Or, viewed retrospectively, evidence is material where there is a reasonable probability that, had the information been disclosed to the defense, the result of the proceeding would have been different. Id. at 682.

The government agrees that evidence which may impeach a witness constitutes Brady information which must be provided to the defense. The only disputed point is the timing of the disclosure.

B.   The timing of disclosures.

In United States v. Tarantino, 846 F.2d 1384, 1416 (D.C. Cir. 1988),the United States

<center>2</center>

App 474

Court of Appeals for the District of Columbia rejected a defendant's argument that he was entitled to impeachment information prior to trial. The Court held that such an "argument strikes us as an attempt to convert Brady into a broad rule of discovery in criminal cases. Appellants' argument necessarily suggests that all relevant material held by the government must be produced prior to trial, for relevant material will always be at least marginally useful at every stage of the trial." The Court further stated that "Appellant's attempt to use the Sixth Amendment as a constitutional rule of discovery, over and above the Federal Rules of Criminal Procedure and the Jencks Act, is barred by the plurality opinion in Pennsylvania v. Ritchie, 480 U.S. 39 (1987)." Id. at 1415.[2] In Pennsylvania v. Ritchie, the Court made clear that

> the right of confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination . . . The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally, the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. In short, the Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'

Id. at 52 (citation omitted).

---

[2] In recognizing the tension between the constitutional claims made by defendants regarding pretrial disclosure and the rules of evidence which allow for disclosure of witness statements after a witness has testified at trial, the Court stated that what also much be considered in this balancing are "legitimate state interests, . . . [such as] concern[s] for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process." Id. at 1414.

3

App 475

Thus, while the government recognizes that it must provide the defense with inconsistent statements made by witnesses prior to trial, the government believes that it should not be required to provide such statements until the commencement of trial.

Respectfully submitted,

WILMA A. LEWIS
United States Attorney

PETER R. ZEIDENBERG
Assistant United States Attorney
Bar No. 440-803
(202) 353-8831
555 4th Street, N.W.
Washington, D.C. 20001

ANJALI CHATURVEDI
Assistant United States Attorney
Bar No. 446-177
(202) 353-8827
555 4th Street, N.W.
Washington, D.C. 20001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Notice were mailed on the 30th day of June, 2000 to counsel for the defendants as follows:

Steven R. Kiersh, Esq.
717 D Street, N.W.
Suite 400
Washington, D.C. 20004

Paul DeWolfe, Esq.
20 Courthouse Square
Suite 214
Rockville, MD 20850

4

App 476

Christopher M. Davis, Esq.
601 Indiana Avenue, N.W. #910
Washington, D.C. 20004

Joanne Hepworth, Esq.
305 H Street, N.W., 2nd Floor
Washington, D.C. 20001

Joseph Beshouri, Esq.
419 7th Street, N.W.
Suite 201
Washington, D.C. 20004

Gerald Fisher, Esq.
419 7th Street, N.W.
Suite 201
Washington, D.C. 20004

Howard Bramson, Esq.
400 7th Street, N.W. #700
Washington, D.C. 20004

Frederick Jones, Esq.
901 6th Street, S.W., #409
Washington, D.C. 20024

Jonathan Zucker, Esq.
601 Indiana Avenue, N.W.
Suite 910
Washington, D.C. 20004

ANJALI CHATURVEDI
Assistant United States Attorney

5



RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

JUN 30  PM 3: 21

NANCY M.
MAYER-WHITTINGTON
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FILED

JUL 1 6 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 98-329 (TPJ) |
| | : | |
| v. | : | |
| | : | |
| SAMUEL CARSON | : | |

## DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF EVIDENCE
## SUBJECT TO SUPPRESSION UNDER FED. R. CRIM. P. 12(b)(3)

Samuel Carson, by and through undersigned counsel, moves for an order compelling the

government to notify the defendant concerning any evidence it intends to introduce at trial that

may be subject to a motion to suppress under FED. R. CRIM. P. 12(b)(3). *See* FED. R. CRIM.

P. 12(d)(2).

Respectfully submitted,

Gerald I. Fisher
FISHER & HANSEN, P.C.
419 Seventh St., N.W., Suite 201
Washington, D.C.  20004
(202) 638-6700


Joseph E. Beshouri
419 Seventh St., N.W., Suite 201
Washington, D.C.  20004
(202) 842-0420

Counsel for Samuel Carson

1

App 479

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of July, 2000, I have served copies of the foregoing

pleading upon:

Peter R. Zeidenberg, Esq.
Anjali Chaturvedi
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

Joanne Roney Hepworth, Esq.
305 H. Street, N.W.
Washington, D.C. 20001

Steven R. Kiersh, Esq.
717 D Street, N.W.
Washington, D.C. 20004

Paul DeWolfe, Esq.
20 Courthouse Square
Suite 214
Rockville, MD 20850

Christopher M. Davis, Esq.
601 Indiana Ave., N.W.
Washington, D.C. 20004

Frederick D. Jones, III, Esq.
901 6th Street, S.W.
Suite 409
Washington, D.C. 20024

Howard Bramson, Esq.
400 Seventh St., N.W., Suite 700
Washington, D.C. 20004

Jonathan Zucker, Esq.
601 Indiana Avenue, N.W., Suite 910
Washington, D.C. 20004

Gerald I. Fisher

2

App 480

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2000 JUL 16 PM 11: 03

NANCY M.
MAYER-WHITTINGTON
CLERK

FILED

JUL 1 7 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
)
)
V. ) Criminal No. 98-329
) (TPJ)
WILLIAM SWEENEY )
)

## THIRD MOTION TO COMPEL DISCOVERY

Defendant, by and through undersigned counsel, Steven R. Kiersh and Paul DeWolfe, respectfully sets forth to this Honorable Court as follows:

Defendant incorporates by reference all previous legal arguments pertaining to his need to investigate this complex case and to establish that persons other than William Sweeney had the motive, means and opportunity to commit the crimes alleged in this indictment.

### I.) Information Pertaining to Robert Smith

The United States has charged Mr. Sweeney with conspiracy to murder Robert Smith. Of greater significance is that is that the United States is seeking admission of hearsay statements of Robert Smith in an effort to prove other allegations of criminal activity as set forth in the indictment against William Sweeney.

Defendant submits that Robert Smith was an unreliable individual with a lengthy criminal history. Smith was engaged in narcotics trafficking in the District of Columbia and Maryland. At the time of his death, Smith was working as an F.B.I. informant providing information related to criminal activity of many people other than William

1

Sweeney. It is believed that many persons involved in criminal activity had the motive to kill Smith.

In order to both rebut the substantive count of conspiracy to murder Robert Smith, and to argue against the admissibility of Smith's out of court hearsay statements, defendant seeks an Order form the Court compelling the United States to provide the following information.

### a.) **All statements of Robert Smith made to law enforcement**

The United States had provided versions of F.B.I. 302 forms pertaining to Smith. It is known that Smith has provided other statements to law enforcement. All of Smith's statements need to be evaluated by the defense in order to effectively assess his credibility and reliability.

### b.) **The name and address of each individual who was the subject of information privided to law enforcement by Robert Smith**

Every person whose criminal conduct was being investigated as a result of information offered by Robert Smith had a motive to commit his murder. It is essential that the defense obtain the identities of each such individual in advance of trial to establish whether a third party had a motive to kill Smith and whether they acted on such motive.

### c.) **All information pertaining to a prior shooting of Robert Smith**

Upon information and belief, Robert Smith was shot multiple times in the early 1990's. William Sweeney was never investigated for this shooting and there is

2

App 483

absolutely nothing to suggest that he was involved with this shooting.

Defendant seeks all information in the possession of law enforcement pertaining to the prior shooting of Robert Smith for the obvious reason of firmly establishing the motives of others to harm Mr. Smith.

### d.) All benefits received or promised to Robert Smith in return for information provided to law enforcement

For reasons discussed herein and addressed in other pleadings, the credibility of each civilian government witness will be at the heart of Mr. Sweeney's defense. Accordingly, if hearsay statements of Smith are to be introduced for the jury to consider, all benefits or promises of benefits that Smith received in return for his statements must be brought to the attention of the jury in order to adequately assess bias and credibility.

### II.) Information Pertaining to James Montgomery

As this Court is well aware, the United States is placing extraordinary reliance on the testimony of James Montgomery in its effort to prosecute William Sweeney for the crimes in the indictment. Montgomery is a career criminal who apparently has implicated himself in the triple murder in Temple Hills, Maryland which is a part of this indictment. Montgomery has a history of mental difficulties and has in the past been characterized by the United States as "unreliable".

It is imperative that the defense be able to fully explore all aspects of Montgomery's mental disease and unreliability in order to effectively argue to the jury

3

App 484

that he lacks adequate credibility. In order to fully investigate this essential information and to enable Mr. Sweeney to present a complete defense, an Order compelling the United States to disclose the following information is requested.

### a.) Notes of Special Agent Yow concerning conversations with James Montgomery

It is known that James Montgomery accused an individual by the name Wayne Perry of two of the murders alleged in this indictment. He made these false allegations to Special Agent Yow. Defendant seeks all notes taken by Yow, or any other member of law enforcement, pertaining to this false allegation or any other false or exaggerated representations.

The purpose of this request is to fully investigate the lack of credibility of James Montgomery. Defendant seeks to educate the jury about Montgomery's penchant for falsely accusing people of murder. The fact that Montgomery falsely accused Wayne Perry of two murders is clearly relevant to whether his accusations against William Sweeney are credible.

### b.) Medical records of James Montgomery

The institutional files of James Montgomery reveal an enormous amount information which the defendant prefers to address under seal.

Counsel is prepared to make further representations under seal concerning Mr. Montgomery's health history. Counsel seeks to make these representations under seal so as to avoid an unnecessary invasion of Mr. Montgomery's privacy.

A photograph of James Montgomery depicts a scar that appears to be from a craniotomy. It appears that Mr. Montgomery has had brain surgery which could have an effect on his competency to testify.

Defendant seeks to have all of the medical records of James Montgomery evaluated by a defense expert in an entirely confidential manner. If, after expert review, counsel believe that there is a medical basis for further evaluation of Mr. Montgomery to assess his competency to testify, this information will be brought to the attention of the Court. The Court can then consider whether to permit further assessment in the form of an independant medical examination to determine the competency of this witness to testify.

District of Columbia Code Section 14-307 creates a statutory doctor-patient privilege in the District of Columbia. Notwithstanding the creation of the privilege, there are legislatively created exceptions, one of which being directly applicable to this case. D.C. Code Section 14-307(b)(1) states as follows:

**This section does not apply to: criminal cases where the accused is charged with causing the death of, or inflicting injuries upon, human being, and the disclosure is required in the interests of public justice . . .**

Section(b)(1) of the relevant portion of the District of Columbia Code clearly recognizes that a defendant's right of confrontation can tale priority over the privacy interests of another individual provided that the interests of the public are served. With respect to the facts herein, the public's interest in securing the rights of an individual pursuant to the Confrontation Clause is certainly a very strong consideration in

5

suggesting that disclosure should be made. This is particularly true in light of defendant's suggestion that disclosure be made pursuant to a Protective Order. This method would have allowed review of the records without violating the privacy interests of the witness. The records would only have been part of the public record if the contents suggested a lack of competence on the part of the witness.

The interests of public justice mandates that William Sweeney be afforded due process of law. The interests that he has as a person charged with first degree murder in simply evaluating the records in a confidential manner with strict conditions as imposed by a Protective Order far outweigh the privacy interests of the witness.

In **United States v. Wright**, 114 D.W.L.R. 1205, Judge Rufus King addressed the issue of disclosure of psychiatric records. Therein, the defendant was charged with robbery. The sole witness was the complainant who had been a resident of the District of Columbia's institution for the mentally retarded. At the time of the incident the complainant was in a community program and not residing on the grounds of the institution.

The defense sought to review psychiatric records of the complainant and served a subpoena for their production. The District of Columbia sought to quash the subpoena.

Judge King analyzed a number of factually analogous cases from courts in other jurisdictions and ultimately ruled as follows:

**The right to cross-examination in the area of mental capacity of the complaint means the right to effective and informed cross-examination.**

6

App 487

**Other trial courts have concluded on facts similar to those here that a defendant clearly is entitled to discovery and inspection of the psychiatric, psychological and medical records of a complaining witness which contain information which may have some bearing on the witness' credibility and ability to perceive events in issue. 114 D.W.L.R. at 121, citations omitted.**

Procedurally, in an effort to protect the privacy interests of the complainant, the Trial Court ordered that all of the records were to be made available to all counsel and then each party was to file motions seeking admission on the relevant portions.

It is exactly the procedure suggested by Judge King that defendant seeks to be employed in this case. An evaluation of the medical records in a confidential manner by a competent psychiatric expert would have either revealed that there was no basis to challenge the mental competency of Mr. Montgomery or would have identified the relevant portions of the records which could have formed the basis for an adequate inquiry.

### III.) Information pertaining to Reginald Switzer

William Sweeney is charged with the murder of Donnell Whitfield. The United States has informed counsel that Donnell Whitfield had in the pat been shot by Reginald Switzer (Mr. Switzer is a former co-defendant herein and it is expected that he will be called at trial to testify against Mr Sweeney). It was also revealed that Mr. Whitfield believed that Switzer had taken out a contract on his life.

Defendant seeks the name and address of each person who has knowledge about the violent animosity which had existed between Donnell Whitfield and Reginald Switzer. This information is needed immediately in order to conduct an investigation to

7

demonstrate that a person other than William Sweeney had reason to kill Mr. Whitfield

and to probe the bias and motive to fabricate testimony on the part of Reginald Switzer.

**WHEREFORE**, for the reasons stated herein, for those reasons outlined in prior

pleadings, and for those reasons to be articulated at an oral hearing, defendant prays

this Honorable Court to require the government to provide the documentation outlined

herein.

Respectfully submitted,

Steven R. Kiersh #323329
717 D Street, NW
Suite 400
Washington, D.C. 20004
(202)347-0200

Paul DeWolfe
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | **Criminal No. 98-329** |
| | ) | **(TPJ)** |
| WILLIAM SWEENEY | ) | |
| | ) | |

### CERTIFICATION OF COUNSEL

We, Steven R. Kiersh and Paul DeWolfe, counsel for William Sweeney, do hereby certify that we have informally requested to United States to provide the information identified herein. The United States has informed counsel that it will not provide the information without an Order from the Court.

Steven R. Kiersh

Paul DeWolfe

**FILED**

JUL 1 7 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 98-329(TPJ) |
| WILLIAM SWEENEY | ) | |
| | ) | |

## OPPOSITION TO GOVERNMENT'S MOTION
## TO ADMIT OUT OF COURT STATEMENTS MADE
## BY MURDERED WITNESSES

William Sweeney, by and through undersigned counsel, Steven R. Kiersh and Paul DeWolfe , respectfully asks this Court to deny the government's motion to admit out of court statements purportedly made by three murdered witnesses, Kevin Hart, Chrishauna Gladden, and Robert "Butchie" Smith.

In its motion, the government asserts the theory that the so-called K Street Crew made efforts to "obstruct prosecution of their criminal activities by intimidation and the occasional execution of potential witnesses" (Government's Motion at 2). Based upon this hypothesis, the government seeks to admit statements made to law enforcement by three deceased witnesses whom the government believes were murdered by the defendant and/or his co-defendants. In support of his opposition, the defendant provides the following points and authorities.

1



## ARGUMENT AND AUTHORITY

### A. The Government Cannot Substantiate its Argument for Constitutional Waiver

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." See **United States v. White**, 116 F.3d 903, 911 (D.C. Cir. 1997) (quoting **California v. Green**, 399 U.S. 149, 158 (1970)). The right of cross-examination is more than just a procedural rule, it assures the "accuracy of the truth-determining process." See **United States v. Thevis**, 665 F.2d 616, 630 (5th Cir. 1982) (quoting **Chambers v. Mississippi**, 410 U.S. 284 (1984)).

However, it is well-established that where a defendant wrongfully procures the absence of a witness or potential witness through misconduct, he may not assert confrontation rights as to that witness. See e.g., **United States v. White**, 116 F.3d at 911. Where misconduct leads to the loss of confrontation rights, the D.C. Circuit has followed the most common approach among the circuits in holding that this necessarily causes the defendant to forfeit hearsay objections. See **United States v. White**, 116 F.3d at 912 (citing **United States v. Hoilihan**, 92 F.3d 1271, 1278-82 (1st Cir. 1996); **United States v. Mastrangelo**, 693 F.2d 269, 272 (2nd Cir. 1982); **United States v. Thevis**, 665 F.2d at 632-33; **United States v. Balano**, 618 F.2d 624, 626 (8th Cir. 1976)).

The D.C. Circuit has indicated that the burden of proof for the government's showing of defendant responsibility for the murder of a potential witness is preponderance of the evidence. See **United States v. White**, 116 F.3d at 911-12. In

2

App 492

its analysis of this issue, the **White** court carefully reviewed the Fifth Circuit **Thevis** case in considering the "risk of conviction by unreliable evidence." **United States v. White**, 116 F.3d at 912. Indeed, when dealing with cases that present significant confrontation rights issues, it is useful to recall the caution expressed by the **Thevis** court: "Because of the intimate association between the right to confrontation and the accuracy of the fact-finding process, however, we also reject the government's suggestion that the 'preponderance' standard . . . is adequate to protect confrontation rights." See **United States v. Thevis**, 665 F.2d at 630 (citations omitted).

Even under the lowest burden of proof, the factual proffers made by the government in its motion do not come anywhere close to meeting the required standard. In regard to the murder of Kevin Hart, the government cryptically states that eyewitnesses have identified Carson, Proctor, and Martin as "having participated" in Hart's murder (Motion at 4). No context for these eyewitness accounts is provided; there is no information as to what evidence the witnesses will provide. Only the location of the murder is offered. Clearly, this is not enough evidence to constitute a preponderance.

Similarly with the murder of Chrishauna Gladden, the government's factual background is weak and unsubstantiated. The government provides lengthy descriptions of accusations made by unidentified co-conspirators having no direct relation to the murder of Ms. Gladden (Motion at 4-5). Describing the murder of Ms. Gladden, the government does present more factual information than in the case of Kevin Hart, but there is no indication of the source of this information (Motion at 6-7).

3

There is no mention of eyewitnesses or anything more than crime scene reconstruction theories put forth by the government.

Again in the murder of Robert Smith, the government provides only a scant evidentiary picture of what happened and who was involved. The government does not explain its basis for the belief William Sweeney knew Robert Smith was cooperating with law enforcement or that he told co-defendant Sam Carson about his knowledge (Motion at 8). Mention is made of two unnamed co-conspirators, but neither is explicitly described as an eyewitness to the murder (Motion at 8-9). The government does not provide any context for the statements about Carson's use of a "car belonging to an individual from Southwest" (Motion at 8-9). It is completely unclear who heard Carson allegedly say they were "alright" (Motion at 9). Carson's supposed "confession" to a co-conspirator is similarly unsubstantiated on any reliable grounds.

Much of the government's proffer surrounding these murders, and the entire case for William Sweeney's involvement in the murder of Robert Smith, is based on hearsay evidence from those who are most probably unreliable, self-interested parties. Significantly, the D.C. Circuit has not resolved the issue of whether confrontation rights can validly be waived solely on the basis of hearsay evidence. See **United States v. White**, 116 F.3d at 914 ("We leave for another day the issue of whether a forfeiture finding could rest *solely* on hearsay"). This Court should take heed of the **White** court's hesitation, and rule against the government's motion as not meeting the burden of proof on whether the defendant waived his constitutional right to confrontation.

4

## B. <u>Federal Rule 804(b)(6) is Not Applicable to this Case</u>

Federal Rule of Evidence 804(b)(6) allows a hearsay exception for a "statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The government cites the Eighth Circuit case of **United States v. Emery**, 186 F.3d 921 (8th Cir. 1999), <u>cert.</u> <u>denied</u>, 120 S. Ct. 968 (2000), for the proposition that a defendant may not benefit from his or her efforts to prevent the future testimony of a witness (Motion at 15).

While it is true that **Emery** supports this general rule, that case can be factually distinguished from the instant case. In **Emery**, the government offered "extensive testimony" about the specifics of Emery's murder of a key government witness. **Emery**, 186 F.3d at 927. The evidence presented included the defendant's recruitment of others, plans for disposing the body, and details of the actual murder and aftermath. See <u>id.</u> In the case at hand, the government does not offer any specific examples of testimony it will offer as proof of the defendant's involvement in the murder of Robert Smith. Indeed, this record is entirely devoid of factual context concerning the murders rendering **Emery** entirely inapplicable as precedent for the drastic action that the United States seeks to employ.

The government also cites the recent case, **United States v. Cherry**, 211 F.3d 575 (10th Cir. 2000), for admitting Rule 804(b)(6) statements against both the individuals who actually committed the murder, and those who were co-conspirators (Motion at 16). The government discusses the facts of **Cherry** at great length (Motion

5

App 495

at 16-18). However, because of the great factual distinctions between **Cherry** and the instant case, the government is unable to analogize the facts of the two cases in any meaningful way. In **Cherry**, the government offered specific eyewitness testimony linking one of the defendants to the crime scene (both a physical description and license plate number of the defendant's car at the murder scene were given), and DNA evidence from the victim was discovered on the defendant's shoes. 211 F.3d at 577. Even though there was direct testimony that the voice of another of the defendants could be heard in the background during a phone call right before the murder, the **Cherry** court refused to admit statements against that defendant on insufficient evidentiary grounds. 211 F.3d at 577. This Court should read **Cherry** as requiring a high evidentiary threshold be met before the doctrine of waiver by misconduct is applied, especially under a **Pinkerton** liability theory. See **Pinkerton v. United States**, 328 U.S. 640 (1946).

The application of **Pinkerton** principles to Rule 804(b)(6) waiver of confrontation and hearsay objections has not been considered in this Circuit. In the absence of binding precedent, this Court should be guided by the D.C. district court case in **United States v. White**, 838 F. Supp. 618 (D.D.C. 1993). Therein, the court admitted statements only against those defendants whom the government could show directly participated in the planning or execution of the murder. See id. at 623. The broad definition of imputed waiver of confrontation rights as articulated in **United States v. Mastrangelo**, 693 F.2d at 273-74, was rejected by the D.C. district court as "too broad." See id.

6

The government's efforts to show that murdering witnesses was in furtherance of, within the scope of, or reasonably foreseeable to the K Street Crew's ongoing drug conspiracy is simply an effort to circumvent the defendants' constitutional rights. As the district court in **White** recognized, conspiratorial liability cannot be extended to the point where it becomes a prosecutorial sword for abrogating constitutional protections.

As a demonstration of how far the government hopes this Court will go in extending co-conspirator liability, it cites **United States v. Sampol**, 636 F.2d 621 (D.C. Cir. 1980). The government does not note that **Sampol** was sharply criticized in a later case. In **United States v. Powell**, 929 F.2d 724, 726 (D.C. 1991), the D.C. Circuit mildly chastises **Sampol's** "sweeping use of 'natural and probable consequences'" and its "vague" mentions of liability for acts in furtherance of the common design or plan to commit a felony. The court goes on to explain that the logical underpinning of **Sampol** was not vicarious liability, but an explicit reliance on the "doctrine of 'transferred intent.'" **Powell**, 929 F.2d at 727 (quoting **Sampol** at 676). **Sampol** has more to do with the individual culpability of a given co-defendant than any notion of furthering a conspiracy.

**C. If the Court Does Determine Defendant Waived his Confrontation and Hearsay Objections, a Full Hearing or Trial Must be Held Prior to Introducing the Statements to Resolve the Defendants' Guilt**

Although the D.C. Circuit allows trial judges the discretion to admit hearsay statements under forfeiture through misconduct subject to connection through proof of a an adequate procurement showing, the Court has stated that "the better practice" is

7

to secure proof of the misconduct prior to receiving the hearsay.  See **United States v. White**, 116 F.3d at 915 (explaining the "subject to connection" grant in terms of the co-conspirator hearsay context).  If the connection is not proved, the court must either strike the testimony and instruct the jury to disregard it, or, if that is not enough protection, must grant a mistrial.  See **United States v. Jackson**, 627 F.2d 1198, 1218 (D.C. Cir. 1980).  Given the number and nature of the out of court statements the government seeks to introduce, a jury instruction would not suffice to protect the defendants if the government was unable to connect up its misconduct theories.  This Court could be compelled to declare a mistrial thereby taxing judicial resources in the extreme.  Even if the government was able to connect only some of the defendants to the misconduct, a mistrial would have to be declared given the unfair prejudice to the uninvolved co-defendants.  Clearly, the best option in the interests of judicial economy is to air the government's evidence in a pretrial setting.

The defendant asks that a full pretrial hearing on the three murders be held before introduction of the hearsay statements.  In **White**, the Court noted there "happened to be a solution that might have been desirable – full trial of the murder issue before the jury, which would have concomitantly given the judge the evidence on the forfeiture issue."  116 F.3d at 915.  However, the defendants did not propose that option and so the court does not develop this line of analysis.  In the instant case, the defense does request a full pretrial hearing on the three murders prior to admission of the hearsay statements.  This best possible solution would protect the constitutional

8

rights at stake, as well as prevent the possibility of a mistrial as a result of improperly putting severely prejudicial hearsay evidence before the jury.

## D. Admission of the Statements Would Unduly Prejudice and Confuse the Jury in Violation of Due Process

Federal Rule of Evidence 403 requires that the probative value of evidence substantially outweigh any unfair prejudice or confusion. In **United States v. Emery**, the court determined that statements about the charged drug trafficking offenses and fears of retaliation could be admitted because they were highly probative, especially as to motive. 186 F.3d at 927. On the other hand, the statements of Robert Smith, for example, are unfairly prejudicial, especially as to the statements involving uncharged crimes.

## E. Conclusion

The drastic course of conduct proposed by the United States unquestionably will violate and interfere with William Sweeney's rights of due process. Robert Smith was a career criminal who was never considered to be a reliable or responsible person in any context. The government seeks to prove the elements of this indictment through the untested, unreliable and entirely biased testimony of Robert Smith. Such a method of proof runs contrary to protections guaranteed to William Sweeney by both the Fifth and Sixth Amendments to the Constitution. The only mens of attempting to adequately test this testimony is through a full pretrial hearing to assess the reliability of the statements.

9

Respectfully submitted,

Steven R. Kiersh #323329
717 D Street, NW
Suite 400
Washington, D.C. 20004
(202)347-0200

/s/SRK

Paul DeWolfe
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

10

App 500



FILED

JUL 1 7 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 98-329(TPJ)** |
| **WILLIAM SWEENEY** | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of defendant's Opposition to

Government's Motion To Admit Out of Court Statements Made By Murdered Witnesses

was mailed, postage prepaid, on this the __17th__ day of July, 2000 to:


Anjali Chaturvedi, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington D.C. 20001

Peter Zeidenberg, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20001

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

Christopher Davis, Esquire
601 Indiana Avenue, NW
#910
Washington, D.C. 20004

Joanne Hepworth, Esquire
305 H Street, NW 2nd Floor
Washington, D.C. 20001

1

App 501

Joseph Beshouri, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Gerald Fisher, Esquire
419 7th Street, NW
Suite 201
Washington, D.C. 20004

Frederick Jones, Esquire
901 6th Street, SW
#409
Washington, D.C. 20024

Jonathan S. Zucker, Esquire
601 Indiana Avenue, NW
Suite 910
Washington, D.C. 20004

Howard Bramson, Esquire
400 7th Street, NW
Washington, D.C. 20004

Steven R. Kiersh

2

App 502

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2000 JUL 17 PM 12: 59

NANCY M.
MAYER-WHITTINGTON
CLERK

RECEIVED

JUL 1 7 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Criminal Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 98-329 (TPJ) |
| | ) | |
| | ) | |
| SAM CARSON | ) | |

**FILED**

**JUL 1 7 2000**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## DEFENDANT CARSON'S MOTION TO ADOPT AND JOIN

The defendant, Sam Carson, by and through undersigned counsel, respectfully moves this

Court to grant him leave to adopt, join and conform to the following motions filed by his co-

defendant, William Sweeney:

(1) Motion For Change In Location Of Confinement Pending Trial;

(2) Defendant William Sweeney's Opposition To Government's Motion For Anonymous Jury;

(3) Motion To Dismiss Counts Forty-Eight, Forty-Nine, Fifty And To Strike Overt Acts And Racketeering Act 70 (a)-(g) Of Count Two Of The Indictment And To Strike All References To The Triple Murder In Temple Hills, Maryland;

(4) Motion For Pretrial Hearing To Determine The Existence Of A Conspiracy And To Determine The Admissibility Of Co-conspirator's Statements;

(5) Motion To Identify Witnesses With Juvenile Adjudications And Pending Juvenile Proceedings And To Inspect Juvenile Files Pursuant To Davis v. Alaska;

(6) Motion For An Order Directing The Government To Give Notice Of Its Intention To Rely Upon Other Crimes Evidence Regardless Of Whether The Prior Bad Acts Were Also Uncharged Acts In Furtherance Of The Conspiracy;

(7) Motion For A Pretrial Hearing To Determine The Admissibility Of Video And Audio Tapes;

(8) Motion For In Camera Review Of Grand Jury Testimony To Determine The Existence

App 504

Of A Racketeering Enterprise;

(9) Motion For Pretrial Identification And Production Of Jencks Material;

(10) Motion To Disclose Identities Of Each Confidential Informant Regardless Of Whether They Will Be Called At Trial;

(11) Motion For Notice Of Government's Intention To Use Residual Hearsay Exception Under Rule 804(b)(5) And Incorporated Memorandum;

(12) Motion For Notice Of Government's Intention To Use Residual Hearsay Exception Under Rule 803(24) And Incorporated Memorandum;

(13) Motion For Pretrial production Of Statements Of Persons Who Will Not Be Called As Witnesses At Trial;

(14) Opposition To Government's Motion To Admit Out of Court Statements By Murdered Witnesses.

(15) Motion To Compel[1]

The facts set forth in these fifteen motions are equally applicable to Mr. Carson, and the legal arguments and authorities set forth by Mr. Sweeney's counsel are those which would have been advanced on Mr. Carson's behalf.

WHEREFORE, for the foregoing reasons and such other reasons that may appear just and proper, defendant Carson respectfully requests that this Motion to Adopt be granted.

Respectfully submitted,

JOSEPH BESHOURI
419 - 7th Street, N.W.
Suite 201
Washington, D.C. 20004
Counsel for Sam Carson

---

[1] Sweeney's Motion To Compel relating the investigative documents and materials attending the investigation and subsequent debriefing of Robert "Butchie" Smith.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Criminal Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 98-329 (TPJ) |
| | ) | |
| | ) | |
| SAM CARSON | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was mailed, postage prepaid, on this 14th day of July, 2000, to:

Anjali Chaturvedi, Esquire
Assistant U.S. Attorney
555 - 4th Street, N.W.
Washington, D.C. 20001

Peter Zeidenberg, Esquire
Assistant U.S. Attorney
555 - 4th Street, N.W.
Washington, D.C. 20001

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

Steve Kiersh, Esquire
717 D Street, N.W.
Suite 400
Washington, D.C. 20004

Frederick Jones, Esquire
901 - 6th Street, S.W.
Suite 409
Washington, D.C. 20024

John Carney, Esquire
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Joseph Conte, Esquire
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

John Zucker, Esquire
601 Indiana venue, N.W.
Suite 910
Washington, .C. 20004

Christopher Davis, Esquire
601 Indiana venue, N.W.
Suite 910
Washington, .C. 20004

Joanne Hepworth, Esquire
305 H Street, N.W.
2nd Floor
Washington, D.C. 20001

JOSEPH BESHOURI

Paul DeWolfe, Esquire
20 Courthouse Square
Suite 214
Rockville, Maryland 20850

Steve Kiersh, Esquire
717 D Street, N.W.
Suite 400
Washington, D.C. 20004

Frederick Jones, Esquire
901 - 6th Street, S.W.
Suite 409
Washington, D.C. 20024

John Carney, Esquire
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Joseph Conte, Esquire
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

John Zucker, Esquire
601 Indiana venue, N.W.
Suite 910
Washington, .C. 20004

Christopher Davis, Esquire
601 Indiana venue, N.W.
Suite 910
Washington, .C. 20004

Joanne Hepworth, Esquire
305 H Street, N.W.
2nd Floor
Washington, D.C. 20001

FILED

JUL 2 4 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | " | |
| | " | |
| | " | **CRIMINAL # 98-329-6(TPJ)** |
| | " | |
| **V.** | " | |
| | " | |
| | " | |
| **SEAN COATES** | " | |

## MOTION FOR LEAVE TO LATE FILE PRETRIAL MOTIONS, TIME FOR FILING SAID MOTIONS HAVING EXPIRED

COMES NOW, undersigned counsel for defendant, Sean Coates, and moves this Honorable Court for leave to late file the attached pretrial motions. As reasons for this request, counsel states as follows:

1. The Court set July 14, 2000, as the date upon which all defense motions must be filed in this matter.

2. Counsel had prepared motions for filling prior to July 14,2000 and stored said motions in his computer for print-out and filing on or before the required date. Unfortunately on July 13, 2000, counsel attempted to print-out the stored motions only to have his computer go blank . My computer skills are limited to using the machine as a word processor only. I am computer illiterate as this past week clearly revealed. After many futile attempts at recovering the materials, I had to give up all hope of salvaging the many hours of materials stored and redo the motions from start. This unfortunate turn of events prevented me from submitting pretrial motions in a timely fashion.

3. The government has yet to file responses to any motions and is not scheduled to do so until August 18, 2000.

4. The government will not be prejudiced by the late filing of these motions..

WHEREFORE, the above stated reasons, counsel for defendant, Sean Coates, respectfully request this Honorable Court to grant counsel leave to late file pretrial motions.

347

App 509

Respectfully submitted,

Frederick D. Jones, III
Counsel for defendant, Sean Coates
901 6th Street, S.W. Suite 409
Washington, D.C. 20024
(202) 484-8172 Phone & Fax
Bar # 175224

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was mailed, postage prepaid and faxed on this _23rd_ day of _July_ ,2000, to the following :

Peter Zeidenberg, Esq.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20001

Anjali Chaturvedi, Esq.
Assistant U.S. Attorney
555 4th street, N.W.
Washington, D.C. 20001

Steven R. Kiersh, Esq.
717 D. Street, N.W. Suite 400
Washington, D.C. 20004

Paul DeWolfe, Esq.
20 Courthouse Square, Ste. 214
Rockville, MD. 20850

Christopher Davis, Esq.
601 Indiana Ave. N.W.
Washington, D.C. 20004

Joseph Beshouri, Esq.
419 7th Street, N.W. Ste. 201
Washington, D.C. 20004

Gerald Fisher, Esq.
419 7th Street, N.W. Ste. 201
Washington, D.C. 20004

Howard Bramson, Esq.
400 7th Street, N.W. Ste. 700
Washington, D.C. 20004

Jonathan Zucker, Esq.
601 Indiana Ave. N.W. Ste. 910
Washington, D.C. 20004

Joanne R. Hepworth, Esq.
305 H Street, N.W.
Washington, D.C. 20001

John Carney, esq.
601 Indiana Ave. N.W. Ste.900
Washington, D.C. 20004

Joseph Conte, Esq.
601 Indiana Ave. N.W. Ste 900
Washington, D.C. 20004

Frederick D. Jones, III

App 511

FILED

JUL 2 4 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | " | |
| | " | |
| | " | CRIMINAL # 98-329-6(TPJ) |
| v. | " | |
| | " | |
| | " | |
| SEAN COATES | " | |

### DEFENDANT COATES' MOTION TO ADOPT, JOIN AND CONFORM

The defendant, Sean Coates, by and through his undersigned counsel, respectfully moves this Honorable court for leave to adopt, join, and conform to each and every co-defendant s pre-trial motion, objection, petition, filed on their behalf in this case, as they may relate to him , with the exception of motions for continuance and waivers of speedy trial rights, and with the exception of any motions objections, petitions which Mr. Coates, through his counsel, expressly declines to join or adopt.

WHEREFORE, the foregoing reasons and such other reasons as may appear just and proper, defendant Coates respectfully request that his motion to adopt be granted.

Respectfully submitted,

Frederick D. Jones, III
Bar # 175224
901 6th Street, S.W. Suite 409
Washington, D.C. 20024
(202) 484-8172 Phone & Fax
Counsel for Sean Coates

App 512 350

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | " | |
| | " | |
| | " | **CRIMINAL # 98-329-6 (TPJ)** |
| **V** | " | |
| | " | |
| | " | |
| **SEAN COATES** | " | |

## ORDER

This matter having come before the Court on defendant, Sean Coates' Motion To adopt And Join Motions Filed By Co-defendants. Upon full consideration of this matter and the record herein, it is this _____ day of _____ 2000, hereby

**ORDERED,** that the defendant's motion To Adopt And Join is granted.

_____
Thomas Penfield Jackson
United States District Court Judge

App 513

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was mailed, postage prepaid and faxed on this _23rd_ day of _July_____ ,2000, to the following :

Peter Zeidenberg, Esq.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20001

Joanne R. Hepworth, Esq.
305 H Street, N.W.
Washington, D.C. 20001

Anjali Chaturvedi, Esq.
Assistant U.S. Attorney
555 4th street, N.W.
Washington, D.C. 20001

John Carney, esq.
601 Indiana Ave. N.W. Ste.900
Washington, D.C. 20004

Steven R. Kiersh, Esq.
717 D. Street, N.W. Suite 400
Washington, D.C. 20004

Joseph Conte, Esq.
601 Indiana Ave. N.W. Ste 900
Washington, D.C. 20004

Paul DeWolfe, Esq.
20 Courthouse Square, Ste. 214
Rockville, MD. 20850

Christopher Davis, Esq.
601 Indiana Ave. N.W.
Washington, D.C. 20004

Joseph Beshouri, Esq.
419 7th Street, N.W. Ste. 201
Washington, D.C. 20004

Gerald Fisher, Esq.
419 7th Street, N.W. Ste. 201
Washington, D.C. 20004

Howard Bramson, Esq.
400 7th Street, N.W. Ste. 700
Washington, D.C. 20004

Jonathan Zucker, Esq.
601 Indiana Ave. N.W. Ste. 910
Washington, D.C. 20004

Frederick D. Jones, III

App 514

FILED

AUG 2 2 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    *

       *

       *

v.          *    **CR. NO. 98-329(TPJ)**

       *

       *

JEROME MARTIN        *

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### DEFENDANT MARTIN'S MOTION
### TO ADOPT MOTIONS FILED BY CO-DEFENDANTS

Comes now Defendant Jerome Martin, by and through his attorney, Joanne Roney Hepworth, and respectfully moves this Court to order that he be allowed to adopt each and every motion, objection, petition and/or appeal filed on behalf of his co-defendants, in Criminal No. **98-329**, as they may favorably relate to him, with the exception of motions for continuance and waivers of speedy trial. Mr. Martin further moves the Court to order that all objections, exceptions, motions and other applications for relief made during the trial in Criminal No. **98-329** where appropriate inure to his benefit and be treated as if Mr. Martin, through counsel, had made them.

Specifically, Defendant Martin, moves to adopt and join the following motions filed by Codefendant Sweeney:

- **MOTION FOR PRETRIAL HEARING TO DETERMINE THE EXISTENCE OF A CONSPIRACY AND TO DETERMINE THE ADMISSIBILITY OF CO-CONSPIRATORS STATEMENTS.**

- **MOTION FOR IN CAMERA REVIEW OF GRAND JURY TESTIMONY TO DETERMINE THE EXISTENCE OF A RACKETEERING ENTERPRISE.**

- **MOTION FOR PRETRIAL PRODUCTION OF STATEMENTS OF PERSONS WHO WILL NOT BE CALLED AS WITNESSES AT TRIAL.**

- **MOTION FOR A PRETRIAL HEARING TO DETERMINE THE ADMISSIBILITY OF VIDEO AND AUDIO TAPES.**

- **MOTION TO DISCLOSE IDENTITIES OF EACH CONFIDENTIAL INFORMANT**

App 5359



REGARDLESS OF WHETHER THEY WILL BE CALLED AT TRIAL.

- **MOTION FOR PRETRIAL IDENTIFICATION AND PRODUCTION OF JENKS MATERIAL.**

- **MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO GIVE NOTICE OF ITS INTENTION TO RELY UPON OTHER CRIMES EVIDENCE REGARDLESS OF WHETHER THE PRIOR BAD ACTS WERE ALSO UNCHARGED ACTS IN FURTHERANCE OF THE CONSPIRACY.**

- **MOTION FOR NOTICE OF GOVERNMENT'S INTENTION TO USE RESIDUAL HEARSAY EXCEPTION UNDER RULE 803(24) AND INCORPORATED MEMORANDUM.**

- **MOTION FOR NOTICE OF GOVERNMENT'S INTENTION TO USE RESIDUAL HEARSAY EXCEPTION UNDER RULE 804(B)(5) AND INCORPORATED MEMORANDUM.**

- **MOTION TO IDENTIFY WITNESSES WITH JUVENILE ADJUDICATION'S AND PENDING JUVENILE PROCEEDINGS AND TO INSPECT JUVENILE FILES PURSUANT TO DAVIS V. ALASKA.**

- **MOTION TO DISMISS COUNTS FORTY-EIGHT, FORTY-NINE, FIFTY AND TO STRIKE OVERT ACTS AND RACKETEERING ACT 70 (A)-(G) OF COUNT TWO OF THE INDICTMENT AND TO STRIKE ALL REFERENCES TO THE TRIPLE MURDER IN TEMPLE HILLS, MARYLAND.**

- **MOTION FOR CHANGE IN LOCATION OF CONFINEMENT PENDING TRIAL.**

- **THIRD MOTION TO COMPEL DISCOVERY**

  Defendant Martin, moves to adopt and join the following motions filed by Codefendant Carson:

- **DEFENDANT'S MOTION FOR NOTICE OF GOVERNMENT'S INTENTION TO USE RESIDUAL HEARSAY EXCEPTION UNDER FRE 807.**

- **DEFENDANT'S MOTION FOR DISCOVERY OF STATEMENTS OF CODEFENDANTS CAN CO-CONSPIRATORS AND MEMORANDUM IN SUPPORT.**

- **DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF EVIDENCE SUBJECT TO SUPPRESSION UNDER FED. R. CRIM. P. 12(b)(3).**

- **MOTION FOR DISMISSAL OF COUNTS, TO COMPEL DISCLOSURE OF**

EXCULPATORY EVIDENCE, AND FOR ADDITIONAL SANCTIONS DUE TO VIOLATIONS OF *BRADY v. MARYLAND*.

- **SAMUEL CARSON'S MOTION FOR BILL OF PARTICULARS AND MEMORANDUM IN SUPPORT THEREOF.**

Further, Defendant Martin, moves to adopt and join the following motion filed by Codefendant Vincent Hill:

- **DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION CONCERNING GOVERNMENT'S USE OF INFORMANTS, OPERATIVES AND COOPERATING INDIVIDUALS AND MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE AND NOTICE TO THE GOVERNMENT OF EXCULPATORY EVIDENCE REQUESTED CONCERNING GOVERNMENT'S USE OF INFORMANTS, OPERATIVES AND COOPERATING INDIVIDUALS.**

**WHEREFORE,** Defendant, Jerome Martin, prays that, where appropriate, this Court treat these and other motions filed by his co-defendants to be equally applicable to him.

Respectfully Submitted,

Joanne Roney Hepworth
305 H Street, NW
Washington, D.C. 20001
(202)789-0037
Bar #339-226

## CERTIFICATE OF SERVICE

I, hereby, certify that a copy of the foregoing motion was mailed, postage prepaid, on this the 22nd day of August, 2000 to:

Anjali Chaturvedi, Esquire
Assistant U.S. Attorney
555 4th Street, NW
Washington, DC 20001

Peter Zeidenberg, Esquire
Assistant U.S. Attorney
555 4th Street, NW

App 517

Washington, DC 20001

Steven R. Kiersh, Esquire
717 D Street, NW
Suite 400
Washington, D.C. 20004

Paul DeWolfe, Esquire
20 Courthouse Square
Ste. 214
Rockville, MD 20850

Christopher Davis, Esquire
601 Indiana Ave., NW
Washington, DC 20004

Joseph Beshouri, Esquire
419 7th Street, NW
Ste. 201
Washington, DC 20004

Gerald Fisher, Esquire
419 7th Street, NW
Ste. 201
Washington, DC 20004

Frederick Jones, Esquire
901 6th Street, SW
Ste. 409
Washington, DC 20024

Howard Bramson, Esquire
400 7th Street, NW #700
Washington, DC 20004

Jonathan Zucker, Esquire
601 Indiana Avenue, NW
Suite 910
Washington, DC 20004

Joanne R. Hepworth

FILED

AUG 1 8 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA     :
                   :
        v.            :
                   :       Criminal No. 98-329-01-06 (TPJ)

VINCENT HILL            :
WILLIAM SWEENEY     :
SAMUEL CARSON       :
JEROME MARTIN       :
SEAN COATES          :
MAURICE PROCTOR      :
                   :
      Defendants.       :

## GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

WILMA A. LEWIS
United States Attorney

PETER R. ZEIDENBERG
ANJALI CHATURVEDI
Assistant United States Attorneys

360

Defendants have filed numerous motions which challenge the indictment and the government's case in a variety of ways. This Omnibus Opposition will address these motions in seriatim. For purposes of this Opposition, the motions have been placed in four general categories, which will be discussed in the following order: (1) challenges to the RICO conspiracy counts; (2) motions to dismiss various counts; (3) discovery motions; and (4) motions to suppress.

ii

App 520

# TABLE OF CONTENTS

Page

I. The Government's Proffer of Evidence ........................................................................... 2

II. Defendants' Challenges to RICO and RICO Conspiracy ................................................ 5

    A. The Indictment Properly Alleges the Existence of an Enterprise ........................... 5

        The RICO Statue ................................................................................................... 5

    B. The Indictment Properly Alleges that the Enterprise Interfered with Interstate Commerce ............................................................................................................. 13

    C. Defendants' Objections to Specific Racketeering Acts Are Unfounded ............... 17

    D. The Violent Crimes in Aid of Racketeering Statute is Constitutional ................... 20

        The Rico Statute is Not Unconstitutionally Vague .............................................. 27

    E. Defendant Sweeney's Motion to Dismiss Counts 48, 49 & 50 and to Strike Overt Acts and Racketeering Act 70 (A) - (G) of Count Two of the Indictment and to Strike All References to the Triple Murder in Temple Hills, Md ............................ 29

III. Defendants' Motions to Dismiss .................................................................................... 31

    A. Defendant Martin's Motion to Dismiss Indictment for Prejudicial Pre-Accusatory Delay, Violations of Statutes of Limitations and Speedy Trial Provisions ........... 31

        The Shooting at 60th and East Capitol Streets, S.E. ............................................ 32

        There was No Prejudicial Pre-Indictment Delay ................................................. 37

        The Tony Fortune Murder .................................................................................... 45

        There was No Prejudicial Pre-Indictment Delay ................................................. 46

        There was No Violation of the Speedy Trial Act ................................................. 47

    B. Defendant Martin's Motion to Dismiss Counts One and Two for Vagueness ...... 47

    C. Defendant Carson's Motion for Dismissal for Alleged Brady Violations ............. 54

App 521

D. Defendant Carson's and Martin's Motion to Strike All Aliases in the Indictment ........... 55

IV Defendants' Motion for Discovery ........... 56

A. Defendants' Motion Requesting Identification of Witnesses with Juvenile Adjudications or Cases ........... 56

B. Defendants' Motion Requesting Disclosure of Confidential Informants ........... 57

C. Defendants' Motion for Early Production of <u>Jencks</u> Material ........... 59

D. Defendants' Motion for Pre-trial Production of Statements of Persons Who Will Not Be Called as Witnesses at Trial ........... 60

E. Defendants' Motion for Discovery of Statements of Co-Defendants and Co-Conspirators ........... 61

F. Defendants' Motion Requesting Notice of Government's Intention to Introduce "Other Crimes Evidence" at Trial ........... 62

G. Defendants' Motion Requesting Notice of Government's Intention to Introduce Statements at Trial Under the Residual Hearsay Rule ........... 65

H. Defendants' Motion for a Pre-trial Hearing to Determine Admissibility of Each Proposed Expert ........... 65

I. Defendants' Motion for Pre-trial determination of Existence of the RICO Enterprise Conspiracy ........... 67

J. Defendants' Motion Requesting Itemization of Evidence that is Arguably Subject to Suppression ........... 69

K. Defendant Carson's Motion for a Bill of Particulars ........... 69

L. Defendant Carson's Request for Impeachment Evidence Prior to Trial ........... 71

M. Defendant Carson's Other <u>Brady</u> Demands ........... 72

N. Defendant Sweeney's Third Motion to Compel Discovery ........... 72

Information Pertaining to Robert Smith ........... 73

App 522

Information Pertaining to James Montgomery .................................................. 76

Information Pertaining to Reginald Switzer .................................................. 78

O.    Defendants' Motion for Pretrial Determination of Admissibility of Video and
Audio Tapes .................................................................................. 78

III.    Defendants' Motion to Suppress Evidence, Identification, and Statements .................... 80

A.    Defendant Martin's Motion to Suppress Evidence from Minivan ........................ 80

B.    Defendant Sweeney's Motion to Suppress Physical Evidence ........................... 90

C.    Defendant Sweeney's Motion to Suppress Identification Testimony ................... 92

The Photo Identification Procedure Was Not Suggestive .................................. 94

Reliability of the Identifications Will be Established at Trial ............................... 95

D.    Defendant Sweeney's Motion to Suppress Statements ................................ 96

Defendant Sweeney Waived his Miranda Rights ........................................ 99

The Miranda Waivers were Voluntary ................................................ 101

The Defendant's Statements Were Not the Product of Coercion ....................... 102

The Miranda Waivers were Knowing and Intelligent ................................. 103

E.    Defendant Martin's Motion to Suppress Statements ................................. 106

Defendant Martin's August 7, 1991 Statement and January 24, 1992 Statement to
the Police Were Voluntary ........................................................ 106

Defendant Martin's Statement of September 16, 1997 was Not Given in Violation
of Miranda ...................................................................... 107

Defendant Martin's Pre-Miranda Statements to Detective Brigidini and Agent
Reilly Were Not in Violation of Miranda ............................................ 110

The Post-Miranda Statements to Agent Reilly were not in Violation of
Miranda ........................................................................ 112

V.    Conclusion ........................................................................... 113

App 523

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : Criminal No. 98-329-01-06 (TPJ) |
| VINCENT HILL | : |
| WILLIAM SWEENEY | : |
| SAMUEL CARSON | : |
| JEROME MARTIN | : |
| SEAN COATES | : |
| MAURICE PROCTOR | : |
| | : |
| Defendants. | : |

## GOVERNMENT'S OMNIBUS OPPOSITION TO
## DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Omnibus Opposition to the pretrial motions filed by the above-captioned defendants. As grounds for this Opposition, the government relies on the following points and authorities.

On September 18, 1998, the defendants were charged by indictment with violations of the federal racketeering laws and related charges. All defendants were ordered detained pretrial after detention hearings before Magistrate Judge John Facciola. Arraignment for the defendants took place before this Court on September 22, 1998. A superseding indictment was handed up on March 25, 1999. The defendants were arraigned on the superseding indictment on March 26, 1999. A motions schedule was subsequently set, and the trial has been scheduled for November 13, 2000.

Defendant Sweeney has now filed a total of 17 pretrial motions seeking various forms of relief from the Court. All of the defendants moved to adopt Sweeney's motions. In addition, defendant Carson has filed an additional six motions of his own. Defendant Martin has filed five additional motions. In order to decide these motions, it is important that the Court have an overview of the

App 524

evidence that the government anticipates presenting at trial. It should be noted that this proffer merely summarizes this evidence and does not purport to describe the full extent of the evidence to be presented at trial. The government expects that its case at trial will present both greater detail about this evidence as well as evidence and facts that are not included in this proffer.

## I. THE GOVERNMENT'S PROFFER OF EVIDENCE

The government's investigation into this organization's activities began with a large-scale, federal investigation into the various activities of Wayne Perry, a notorious killer from the same Southwest neighborhood as these defendants.[1]  Perry was an original member of this criminal organization. Defendant Vincent Hill, the oldest among these defendants, was a very close friend, associate and drug-dealing partner of Perry's. Under the tutelage of Perry and Hill, defendants Carson, Sweeney, Coates, Proctors, and other coconspirators entered the drug trade and soon began committing other crimes of violence, including shootings, kidnappings, and murders.

The government will present evidence that the defendants are all life-long friends who grew up together in the Greenleaf Gardens neighborhood in Southwest, D.C. Beginning in the late 1980s, these defendants began selling drugs together in their neighborhood. Over the ensuing years, the drug operation, as well as the drugs sold, spread out and diversified. Initially, the defendants sold PCP, or marijuana laced with PCP (known as "loveboat") in the area around the Greenleaf Gardens housing complex, including the 200 block of N Street. Over time, the defendants began selling crack cocaine primarily in and around the 200 block of K Street, S.W., as well as the areas of 1st and P Streets, S.W. and 2d and P Streets, S.W. Eventually, starting in approximately late 1994 and early 1995, the defendants began selling large quantities of marijuana. The area surrounding the 200 block of K

---

[1] In 1993, Wayne Perry pled guilty to committing five homicides. He is presently serving a life sentence for these murders.

2

App 525

Street became known throughout the Washington Metropolitan area as the place to go to buy marijuana. Customers came from as far away as southern Virginia and the distant suburbs of Maryland – as well as from other parts of the district – to buy marijuana. On many nights, the would-be buyers were so numerous and the traffic so heavy that cars would literally be lined up for blocks waiting to purchase marijuana. The defendants typically would sell approximately one to two pounds of marijuana per day, netting each seller approximately $1000 to $2000 profit per day.

The defendants regarded their distribution spots to be their own turf, and no one else was permitted to sell in that area without the permission of defendant Hill. On occasion, defendant Hill resorted to beating potential competitors – including women – with sticks or bats when they did not follow his orders to leave the area. Defendant Hill also used firearms to settle disputes between himself and his co-conspirators and rival drug dealers.

This crew's activities were not confined to Southwest, D.C. Defendant Martin, who was originally from the Greenleaf Garden neighborhood, eventually moved his base of operations to the area of 37th Place, S.E. in the early 1990s. In short order, defendant Martin became the largest crack supplier in that neighborhood while still maintaining his ties to Southwest. Defendant Martin's drug business provided him with enough profits to purchase several luxury automobiles, as well as to live in a $1300 a month apartment in Alexandria, all without ever having any legitimate employment.

This organization's criminal activities were not confined to drug distribution. This crew was extremely territorial and would react violently to any perceived threat from any other neighborhood. Thus, "beefs" between this crew and individuals from 58th Street, Condon Terrace and Kentucky Courts, among others, involved frequent ride-by shootings by members of this crew. Participation in these ride-bys by the defendants was obligatory. There was no question that any perceived slight had to be responded to with organized deadly violence.

App 526

Not satisfied with simply making money by selling drugs, this crew branched out and began committing armed robberies and kidnappings in order to enrich itself. These "moves" were committed while heavily armed and against individuals that for one reason or another were perceived as easy targets. The defendants, in various combinations, would gather and discuss their plans to rob and kidnap and how the plans would be carried out. Weapons would be distributed. Necessary accessories such as duct-tape (to bind the intended victim) and gloves (to hide fingerprints) were often used. On some occasions, a police scanner was employed to keep the crew informed of police activity in order to help them escape detection. After the commission of most of these crimes of violence, the crew would dispose of their weapons in the Potomac River. The monies earned by these "capers" was to be used to pay for, among other things, drugs, guns, attorney's fees, and bail money for fellow crew members. The proceeds were also used to pay for expensive gambling junkets to Atlantic City and Las Vegas; vacation trips to Ocean City; clothes; jewelry; vehicles; and women.

Finally, this crew would not hesitate to kill anyone it believed was either a potential witness against any member or their organization. At the first indication that someone was cooperating with law enforcement -- and was therefore a threat to the organization -- the other crew members would take any and all steps necessary to silence the potential witness. On numerous occasions, a jailed member of the organization would contact one of his coconspirators that was at liberty and explain which witness needed to be murdered in order free the detained defendant. These "requests" were carried out with chilling efficiency. While in custody awaiting trial in a first-degree murder case, defendant Martin indicated that he needed several witnesses killed and defendant Carson told the others that this was a task that needed to be approached "like a job." This pattern of murdering -- or attempting to murder -- potential witnesses was repeated over and over, and was engaged in by all of these defendants.

4

App 527

## II. DEFENDANT'S CHALLENGES TO RICO AND RICO CONSPIRACY

### A.    The Indictment Properly Alleges the Existence of an Enterprise

Defendants have moved this Court to dismiss all racketeering and VCAR[2] counts from the indictment.   Defendants raises a host of reasons why the Court should grant his motion.   As demonstrated below, all of defendants' arguments are groundless. Defendants claim that the indictment fails "to allege the existence of a structure distinct from that inherent in the commission of the predicate acts or to allege that the enterprise had any ongoing vitality other than for the possible commission of the predicate offenses."  Joint Motion of Defendants Sweeney, Martin, Carson and Coates to Strike All Racketeering And VCAR Counts from the Indictment (hereinafter "Defendants' Motion Regarding VCAR" at 5).  In addition, defendants claim that the "racketeering allegations must fail as the government has established no factual basis for suggesting the existence of a racketeering enterprise separate and distinct from the predicate acts and purported members of the organization" and that the government, in its indictment, "[m]erely str[ung] together a disparate set of violent acts and packag[ed] them together in a RICO Indictment with an undefined and nonexistent structure" in violation of "the intent of Congress" and the defendants' due process rights. Defendants' Motion Regarding VCAR at 6. The government will respond to defendants' arguments by summarizing the essential elements of the RICO statute and then applying that analysis to superseding indictment.

The RICO Statute

Title 18, United States Code, Section 1962(c) provides in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or

---

[2]Violence Committed in Aid of Racketeering.

5

App 528

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...

In order to convict the defendants under the RICO statute, the government must prove beyond a reasonable doubt each of the following elements: "(1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant 'associated with' the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and, (4) that the participation was through a pattern of racketeering activity, i.e., by committing at least two acts of racketeering activity as defined by 18 U.S.C. §1961(1) [within a ten-year period]." United States v. Hoyle, 122 F.3d 48, 50 (D.C. Cir. 1997) (quoting United States v. Phillips, 664 F.2d 971, 1011 (5th Cir. 1981)), cert. denied, 457 U.S. 1136 (1998).

In the Motion to Dismiss Indictment for Failure to Allege RICO Enterprise Separate and Distinct from the Purported Individual Members, defendants cite case law for the proposition that a racketeering charge requires the showing of an enterprise with structure and organization beyond that which is inherent in the commission of the racketeering acts. Defendants argue that there is no evidence of structure, hierarchy, organization or coordination among the defendants beyond the fact that they joined together for episodic criminal ventures. According to the defendants, the "[I]ndictment is nothing but an aggregation of events which have no commonality of purpose and which are not connected by organizational structure. The acts were oftentimes performed by individuals acting on their own in an utterly chaotic manner." Defendant's Motion Regarding VCAR at 2. Without any evidence that the defendants operated with any appreciable level of organization, defendants contend, the government cannot properly charge them as an "enterprise" within the

6

statutory meaning of that word.[3]

Defendants' argument misapprehends the meaning of the term, "enterprise." For purposes of this statute, the term "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." In this case, the alleged enterprise is an "association-in-fact" enterprise that was dedicated to enrichment through drug-dealing, kidnapping, armed robbery and murder. To prove the existence of such an enterprise, the government must show an "ongoing organization,

---

[3]In arguing that this criminal enterprise lacked organization, defendant's motion states that "there is a complete failure to allege the existence of a structure distinct from that inherent in the commission of the predicate acts or to allege that the enterprise had any ongoing vitality other than for the possible commission of the predicate offenses." Defendants' Motion Regarding VCAR at 5. The government agrees that it cannot prove a RICO enterprise merely by demonstrating that two or more persons committed two or more racketeering acts within a ten-year period. Obviously, more is required to demonstrate the existence of an ongoing enterprise. However, it should be noted that this Circuit has clearly held that the necessary element of "organization" can be demonstrated by the direct proof of the predicate acts.

> To the extent [other] courts have held that the enterprise is not
> equivalent to the pattern of racketeering, we are in accord. The
> same group of individuals who repeatedly commit predicate
> offenses do not necessarily comprise an enterprise. An extra
> ingredient is required: organization. To the extent, however, these
> cases suggest that the organization cannot be inferred from the
> pattern (or even more, that the organization cannot exist unless it
> does something other than commit predicate acts), we cannot
> agree. Turkette specifically recognizes that the proof of the
> enterprise may "coalesce" with the proof of the pattern, i.e., that the
> different conclusions may be inferred from proof of the same
> predicate acts. 452 U.S. at 583, 101 S. Ct. at 2529.

United States v. Perholtz, 842 F.2d 343, 363 (D.C. Cir.), cert. denied, 488 U.S. 821 (1988). See also United States v. White, 116 F.3d 903, 924 (D.C. Cir.) ("the existence of the enterprise may be inferred from proof of the pattern"), cert. denied, 522 U.S. 960 (1997).

It is clear, therefore, that the government's showing of organization can be drawn--partly or fully--from evidence surrounding the predicate acts. In this case, however, this is a moot point. As the proffer demonstrates, there is abundant evidence--beyond the proof of the charged racketeering acts--that the defendants operated an organized enterprise.

App 530

formal or informal, whose associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 581-83, 591 (1981).

This "organization" need not be a strictly structured unit. In fact, it can be as simple as an "amoeba-like infra-structure that controls a secret criminal network." United States v. Elliott, 571 F.2d 880, 898 (5th Cir.), cert. denied, 439 U.S. 953 (1978). In Elliott, for example, the defendants charged in the RICO count were two brothers who were involved with about five people in committing a variety of criminal activities, including arson, car theft, the fencing of stolen goods, murder and narcotics distribution. Besides the fact that one of the brothers was perceived as a leader among the members, there was no additional structure to the enterprise. Nonetheless, the Fifth Circuit clearly held that this "informal, de facto association" fell within the definition of a RICO enterprise. Citing the statutory definition of "enterprise," the appellate panel explained that the statute is satisfied by "'any . . . group of individuals' whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes." The critical factor, the court said, was that the "thread tying all of these . . . activities and individuals together was the desire to make money." Id.

This reasoning was echoed by the D.C. Circuit in United States v. Perholtz, 842 F.2d at 362, one of the seminal RICO cases out of this Circuit. In that case, several corporations and individuals-- including three current or former employees of the Postal Service--were convicted of participation in a RICO enterprise which engaged in bribery and mail fraud in the procurement of Postal Service and Small Business Administration contracts. The defendants challenged the conviction, in part, on the ground that this group of participants did not constitute a proper "association-in-fact" enterprise. Citing Congress' admonition that the RICO statute "shall be liberally construed to effectuate its remedial purposes," Pub.L. No. 91-452, §904(a), 84 Stat. 922, 947 (1970) (reprinted in note

8

following 18 U.S.C. §1961), quoted in United States v. Turkette, 452 U.S. at 587, the appellate court found that this collection of persons and corporations was an enterprise within the meaning of the statute. Although there was no strict hierarchy among its members and the people and entities involved in the enterprise varied during its duration, the court found that "the existence of a continuing core of personnel motivated by a common interest [was] sufficient to constitute the association-in-fact enterprise." Perholtz, 842 F.2d at 355. See also United States v. Keltner, 147 F.3d 662, 668-69 (8th Cir.) (evidence demonstrated RICO enterprise where defendant led three-person "crime ring" which, over course of seven months, committed handful of robberies and kidnappings), cert. denied, 525 U.S. 1032 (1998); United States v. Davidson, 122 F.3d 531, 534-35 (8th Cir. 1997) (evidence demonstrated RICO enterprise where defendant led three-person "local criminal organization" centered around auto body shop which specialized in disassembling stolen autos and where defendant's "foot soldiers" committed arson and murder to punish leader's enemies), cert. denied, 522 U.S. 1034 (1997); United States v. Korando, 29 F.3d 1114, 1117-19 (7th Cir. 1994) (small arson-for-profit ring constituted RICO enterprise, albeit a "loose band of associates"), cert. denied, 513 U.S. 993 (1994); United States v. Aleman, 609 F.2d 298, 305 (7th Cir. 1979) (three-person burglary ring--an illegitimate "small business"--constituted RICO enterprise despite committing only three burglaries over 13 months), cert. denied, 445 U.S. 946 (1980).

This evidence of organized and concerted action places the defendants' crew well within the Turkette definition of "enterprise" as "an ongoing organization, formal or informal, [whose] associates function[ed] as a continuing unit." Turkette, 452 U.S. at 583. Numerous courts have applied the Turkette definition to other similarly "informal" criminal groups and found them to be sufficiently "organized" within the meaning of the RICO statute. In Perholtz, for example, there was no firm structure to the group of persons who participated in the government contract fraud schemes.

9

Defendant Perholtz generally played the leadership role and was the creative force behind the fraudulent activity. Beyond that, there was no hierarchy among the participants. Nonetheless, the D.C. Circuit found that this group constituted an "association-in-fact enterprise."

In United States v. Aleman, 609 F.2d 298 (7th Cir. 1979), cert. denied, 445 U.S. 946 (1980), the Seventh Circuit considered a RICO charge against three men who had jointly committed three burglaries within a year. There was no evidence that these men had engaged in joint criminal undertakings beyond these three crimes or that they had ties to traditional "organized crime." The Seventh Circuit still found that they were an enterprise, based on their joint commission of the three burglaries. Reiterating the oft-stated rule that RICO was not designed only for those involved in traditional organized crime, the court concluded that this "home robbery business" fit the statutory definition. Although this group of burglars did not have the trappings of a sophisticated criminal venture, it nonetheless was a racketeering enterprise. As the court explained, "[p]erhaps given more time, [the defendants'] business would have successfully grown into a conglomerate at the expense of their victims, but fortunately for the public the defendants were put out of business." Id. at 305.

In United States v. Errico, 635 F.2d 152 (2d Cir. 1980), cert. denied, 453 U.S. 911 (1981), the defendant was convicted on a RICO charge for his part in a scheme whereby he rigged horse races for "clients" who placed bets on them. He bribed the jockeys to allow certain horses to win, and his clients would reap the profits of betting on the designated winners. The defendant was charged and convicted of being a member of an enterprise that included himself, the bettors and the jockeys. Although there was no apparent "structure" to this enterprise--aside from the different roles that each person played--the Second Circuit found that the government's evidence of a "community of interest [in profiting from the fraud] and continuing core of personnel" was enough to demonstrate an association-in-fact. Id. at 156.

10

App 533

In United States v. Masters, 924 F.2d 1362 (7th Cir.), cert. denied, 502 U.S. 823 (1991), the Seventh Circuit considered a charged enterprise comprised of one lawyer and his law firm, and two police officers and their respective police departments. The alleged pattern was based on a series of schemes in which the lawyer paid the officers to perform a variety of disparate acts for his benefit, ranging from the referral of arrested persons to his law firm to a murder-for-hire scheme designed to kill the lawyer's wife. Recognizing that this group had no definable structure or organization, the court still found that it constituted an enterprise--that it had an existence apart from its racketeering acts. That existence could be seen, the court explained, in the fact that these people were able to "plan[] and carry[] out a detection-proof crime that would have been beyond the capacities of the individual defendants acting either singly or without the aid of their organizations."

If there were any doubt that these defendants constitute the legal definition of "enterprise," it is dispelled via an analysis of the D.C. Circuit's recent decision in United States v. Richardson, 167 F.3d 621 (D.C. Cir.), cert. denied, 120 S. Ct. 225 (1999). In that case, the government charged three men with RICO crimes for their participation in a robbery and murder spree that lasted approximately four months. Defendant Richardson challenged his conviction on the grounds that the government failed to prove that he and his confederates were an "enterprise" under the RICO statute.

In rejecting the appeal, the Circuit found that the three defining characteristics of an enterprise--common purpose, organization and continuity--had all been satisfied. The defendants' common purpose to obtain money by robbery was clearly demonstrated by their repeated robberies. The organization and continuity was evident, the court held, in the evidence that the defendants organized themselves hierarchically and planned their activities. Id. at 625. The hierarchy was simply that one of the defendants served as the leader and gave orders to the others during the robberies. The planning could be seen in the defendants' pattern of using borrowed and rented cars during their

11

robberies to prevent the police from identifying them by their getaway car; the fact that they committed acts of violence and retaliation to protect themselves and promote their armed robbery enterprise; and the evidence that the defendants used guns stolen in earlier robberies to commit later crimes. The enterprise element was further confirmed by evidence that the defendants had social ties independent of their joint criminal undertakings. Id.

All of these factual indicia will be shown to be present in this case. The facts that will be elicited at trial will clearly demonstrate that the defendants' enterprise had a consistent structure, hierarchy and method of operation that denotes a level of "organization" above and beyond that which was simply required to commit each of the individual racketeering acts. As such, they will demonstrate the fallacy of defendant's argument that the undefined and nonexistent structure of defendants' alleged enterprise undermines the validity of the racketeering charge in this case.[4]

---

[4]Defendants' claim that the indictment "*fail[s] to allege* the existence of a structure distinct from that inherent in the commission of the predicate acts" (Defendants' brief, p. 5, emphasis added) is simply not true. The indictment alleges exactly that:

> From in or about sometime in 1988, up through and including in or about March 1999, [defendants Hill, Sweeney, Carson, Martin, Coates and Proctor] were members and associates of a drug trafficking organization which was based in the District of Columbia and elsewhere and which operated in various locations including, but not limited to, areas within the Greenleaf Gardens housing complex in Southwest Washington, D.C. – including, but not limited to, the 200 block of K Street, S.W., the 900 and 1000 blocks of Delaware Avenue, S.W., and the 900 block of 3rd Street, S.W. – the 1500 block of Canal Street, S.W., the 200 blocks of 37th Street, and 37th Place, S.E. The organization constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.

Indictment at pp. 24-25. The indictment goes on to describe the goals of the organization and the precise roles of each defendant within the enterprise. See pp. 26 - 31 of Indictment. Thus, the government's indictment fully and properly alleges all of the necessary facts, which, if proved, would establish a violation of the RICO statute.

12

App 535

**B.     The Indictment Properly Alleges That the Enterprise Interfered with Interstate Commerce**

Defendants' argue that "[u]nder the guise of the Commerce Clause, the government is seeking to federalize what are essentially localized crimes . . . and force them to defend in one trial what are disparate and unrelated crimes" and claims that recent Supreme Court decisions require this Court to dismiss the RICO charge.   Defendants' Motion Regarding VCAR at 10-11.

Defendants' argument misconstrues the requirement imposed on the government.  As the statute clearly provides, the government need not show that each racketeering act affected commerce. Rather, it need only show that the enterprise had such an effect.

It is well-established that even a slight effect on interstate commerce satisfies this RICO element.  United States v. Doherty, 867 F.2d 47, 68 (1st Cir.) ("RICO requires no more than a slight effect upon interstate commerce"), cert. denied, 492 U.S. 918 (1989); United States v. DiGregorio, 605 F.2d 1184, 1190 (1st Cir.) (the required showing of impact on commerce is "not onerous"), cert. denied, 444 U.S. 937 (1979); United States v. Stratton, 649 F.2d 1066, 1075 n.12 (5th Cir. 1981); Musick v. Burke, 913 F.2d 1390, 1398 (9th Cir. 1990) ("minimal" nexus required); United States v. Rone, 598 F.2d 564, 573 (9th Cir. 1979) (same), cert. denied, 445 U.S. 946 (1980); R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350, 1353 (5th Cir. 1985) (same); see also N.L.R.B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 226 (1963) (the statutory term "affecting commerce" has been said to invoke "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause"); United States v. Barone, 71 F.3d 1442, 1446 n.8 (9th Cir. 1995) ("RICO is given a far broader sweep than almost any other criminal statute").

The fact patterns of the cases applying this standard testify to the extent of Congress' jurisdiction in this area.  In United States v. Altomare, 625 F.2d 5, 8 (4th Cir. 1980), for example,

13

App 536

the Fourth Circuit found that a West Virginia prosecutor's office--of which the defendant was a member--was an enterprise that sufficiently affected interstate commerce because (1) interstate calls were placed therefrom, (2) it purchased supplies and materials that had their origins outside West Virginia and (3) it participated in litigation that involved persons from outside that state. In United States v. Allen, 656 F.2d 964 (4th Cir. 1981), RICO jurisdiction was found because the charged bookmaking enterprise had purchased supplies that originated out-of-state. In Doherty, 867 F.2d at 68, a case involving the theft of police exams, the effect on interstate commerce was shown by evidence that an out-of-state consultant had developed and graded some of the exams. See also United States v. Norton, 867 F.2d 1354 (11th Cir.) (interstate travel in furtherance of RICO conspiracy sufficient to satisfy this element), cert. denied, 491 U.S. 907 (1989); United States v. Conn, 769 F.2d 420, 423-24 (7th Cir. 1985) (clerk of court's acceptance of bribes as part of pattern of racketeering activity found to "affect interstate commerce" because the court purchased equipment and office supplies from companies located outside that state); United States v. Robinson, 763 F.2d 778, 781 (6th Cir. 1985) ("minimal impact" on commerce established in alcohol sold by defendants made out of state); United States v. Nerone, 563 F.2d 836, 850-51 (7th Cir. 1977) (gambling operation run out of mobile home park had sufficient nexus to interstate commerce because provision of mobile home rental spaces fosters interstate sales of mobile homes), cert. denied, 435 U.S. 951 (1978).

Despite the fact that established RICO jurisprudence has required only a de minimus effect on interstate commerce, defendants press this argument in reliance upon the Supreme Court's opinion in United States v. Lopez, 514 U.S. 549 (1995), which struck down the Gun-Free School Zones Act, 18 U.S.C. §922(q), as violative of the limits of Congressional authority under the Commerce Clause. In that case, the Court found that Congress had exceeded its Commerce Clause power in passing 18

14

App 537

U.S.C. §922(q), which made it a crime for "any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." The Court's decision to strike the statute rested on two primary grounds: (1) that the possession of a gun in a local school zone was not an economic activity that might have a "substantial effect" on interstate commerce; and (2) that the statute lacked a jurisdictional element which would ensure, through a case-by-case inquiry, that the firearms possession in question had the requisite nexus with interstate commerce. The statute omitted the jurisdictional basis that is found in other federal firearms statutes, i.e. that the subject firearm had traveled in interstate commerce. The defendants argue that the government is guilty of the same "unconstitutional overreaching" that led to the Supreme Court's opinion in Lopez.

The fact that the Lopez Court struck down that particular firearms statute has no bearing on the application of the RICO statute to this case. The Supreme Court made clear that its decision was based on the absence of an explicit jurisdictional element in the statute (i.e. a required finding that the firearm had traveled in interstate commerce) that could differentiate those firearm cases exhibiting appropriate federal concerns from those that do not. Lopez, 514 U.S. at 561-62, 567. Unlike that statute, RICO clearly states a jurisdictional requirement--that the enterprise be "engaged in or [its] activities affect interstate commerce"--that prevents its application in an unconstitutional manner.

Moreover, that jurisdictional requirement is easily met by the facts of this case. The evidence at trial will demonstrate that the conduct of the defendants' enterprise affected interstate commerce in a number of ways. First, there will be significant evidence that the defendants possessed numerous firearms, all of which were manufactured outside Washington, D.C., and frequently carried those guns across state lines.

Second, there will be evidence that the defendants sold illegal drugs, including PCP, marijuana and cocaine, none of which originated in the District of Columbia. Rather, all were transported into

15

App 538

this jurisdiction from other states and /or foreign countries. In addition, there will be evidence that customers from both Maryland and Virginia traveled into and then out of the District of Columbia to purchase the defendants' illegal drugs.

Third, there will be evidence that the defendants repeatedly traveled from the District of Columbia into both Maryland and Virginia to commit criminal acts in furtherance of the enterprise. For instance, on April 7, 1992, defendants Carson and Proctor traveled into Prince George's County, Maryland, armed with handguns, in an attempt to kidnap and rob an individual (RA[5] 53). On October 22, 1993, defendants Hill, Sweeney, Proctor, Coates and Carson armed themselves with handguns and went to Oxon Hill, Md. and kidnapped and attempted to kill an individual in a botched robbery attempt (RA 30). In 1996 and 1997, defendants Sweeney, Carson and Coates armed themselves with guns and traveled into Virginia in an effort to hunt down and kill Kenny Adams, a former associate whom the defendants believed was cooperating with the police (RA 66). And on November 17, 1996, defendants Carson, Sweeney and Coates, while armed with a pistol, traveled from the District of Columbia to Temple Hills, Maryland to commit an armed robbery of Alonzo Gaskins. It was during this would-be robbery that Gaskins, Darnell Mack, and Melody Anderson were murdered. (RA 70) This fact of interstate travel is compelling evidence of an interstate nexus. See United States v. Norton, 867 F.2d at 1359 (fact that members of enterprise traveled between states to discuss conspiratorial matters was "sufficient evidence of an interstate commerce connection").[6]

Fourth, there will be evidence that the defendants used the telephone to make interstate calls

---

[5]"RA" denotes Racketeering Act; "OA" denotes Overt Act.

[6]In fact, the Supreme Court highlighted this element in its Lopez opinion. In finding that there had not been a particularized showing of an interstate nexus in the defendant's possession of a gun in a school zone, the Court pointed out that "there is no indication that he had recently moved in interstate commerce." Lopez, 514 U.S. at 567.

16

App 539

(between D.C. and Maryland) to each other and to others in order to arrange and commit various racketeering acts. See Altomare, 625 F.2d 5 (interstate telephone calls by enterprise are an interstate nexus); United States v. Malatesta, 583 F.2d 748, 754 (5th Cir. 1978), cert. denied, 440 U.S. 962 (1979).

### C.    Defendants' Objections to Specific Racketeering Acts Are Unfounded

Defendants next object to the inclusion in the indictment of specific racketeering acts. Defendants claim that each of these racketeering acts should be dismissed because "the government has provided no information which suggests that these crimes were perpetrated as the result of some structured racketeering 'enterprise,'"and because each racketeering act, when viewed individually, had no effect on interstate commerce. Defendants' Motion at p. 12.

Defendants' arguments are flawed for two reasons. First, the government is not required to provide to the defense, pretrial, evidence or "information" which convinces the defendants that the racketeering acts were perpetrated as the "result of a structured racketeering enterprise." Second, there is no legal requirement that the government prove that each individual racketeering act affected interstate commerce; the government need only show that the activities of the enterprise, taken together, affected interstate commerce, and that the defendants themselves participated in two or more of the predicate racketeering acts.

The indictment in this case contains a sufficient allegation that the racketeering acts in question were committed to further the interests of the enterprise. In particular, the indictment tracks the RICO statute by alleging that the enterprise was engaged in, and that its activities affected, interstate commerce (Superseding Indictment at p. 33) and that the "pattern or racketeering activity through which the defendants conspired to conduct and participate in the conduct of the affairs of the enterprise consisted of the racketeering acts" (Superseding Indictment at p. 34). The case law has

17

consistently held that no more is required; that the simple pleading of the RICO statutory elements--including that the activities of the enterprise affected interstate commerce--is sufficient to satisfy the pleading requirements under Federal Rule of Criminal Procedure 7(c). See Malatesta, 583 F.2d at 754 (failure to mention in indictment that interstate nexus would be demonstrated through defendants' interstate telephone calls did not invalidate indictment); United States v. Boffa, 513 F.Supp. 444, 467 (D.Del. 1980) (sufficient to plead the RICO statutory language that enterprise was "engaged in, and the activities of which affected, interstate and foreign commerce" without stating how that element was to be demonstrated); see also United States v. Muskovsky, 863 F.2d 1319, 1326-27 (7th Cir. 1988) (in considering challenge to Travel Act charge in which elements were pled without factual specification, court held that "'an indictment is sufficient if it sets forth the offense in the statutory language, provided that the statute sets out the necessary elements of the offense,'" quoting United States v. Cerone, 830 F.2d 938, 951 (8th Cir. 1987), cert. denied, 486 U.S. 1006 (1988)), cert. denied, 489 U.S. 1067 (1989).

Notwithstanding these specific allegations which are detailed in the indictment, defendants' motion optimistically assumes that the facts offered at trial will fail to prove that the enterprise sufficiently affected or engaged in commerce or that they were committed in furtherance of the enterprise. This question – whether the facts are sufficient to satisfy an element – can only be answered after those facts have been elicited at trial. Cf. United States v. Levin, 973 F.2d 463, 467 (6th Cir. 1992) (deciding legal issue of equitable estoppel pretrial; noting that Rule 12 encourages district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination "without trial of the general issues," and may make "preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact"). In a criminal case, unlike a

18

civil one, there is no such thing as summary judgment. Defendants seem not to recognize that a grand jury has found that the racketeering acts in question were committed in furtherance of the enterprise. Nothing further need be proved or shown at this time. Defendants have presented no authority for the proposition they now suggest: that the government must somehow adduce or provide evidence pretrial to satisfy the defense that the racketeering acts in question were indeed committed in furtherance of the enterprise. If the government is unable to provide this evidence at trial, then defendants will be entitled to a motion for judgment of acquittal, or other appropriate relief, at the conclusion of the government's case-in-chief.[7]

---

[7]Defendants list each individual racketeering act and challenge the government to demonstrate what effect the particular racketeering act had upon interstate commerce. Defendants' argument is not only premature, it misses the point: the government need only prove that the **enterprise** (not the particular racketeering act) had a *de minimus* effect on interstate commerce. See United States v. Miller, 116 F.3d 641, 673-74 (2d Cir. 1997); United States v. Maloney, 71 F.3d 645, 663 (7th Cir. 1995) (applying plain error standard); United States v. Frega, 179 F.3d 793, 800 (9th Cir. 1999); White, 116 F.3d at 925-26. The racketeering acts themselves need not affect interstate commerce. See, e.g., United States v. Qauod, 777 F.2d 1105, 1116 (6th Cir. 1985), cert. denied, 475 U.S. 1098 (1986). Thus, a defendant who commits two predicate acts (such as the state offense of murder, see 18 U.S.C. § 1961(1)(A)), even though neither by itself has an interstate commerce nexus, may be prosecuted under RICO if he is in some way associated with an entity whose activities affect interstate commerce and he commits the crimes as part of his participation in the conduct of that enterprise's affairs.

19

App 542

**D.** **The Violent Crimes in Aid of Racketeering Statute, 18 U.S.C. § 1959, is Constitutional**

Defendants seek the dismissal of all of the Violent Crimes in Aid of Racketeering counts because, they claim, they are unconstitutional. According to the defendants, the statute offends the constitution because "unless the murders themselves take place in or affect interstate commerce, Congress cannot federalize the crimes and the interstate commerce language alone cannot save the statute." Defendants' Motion Regarding VCAR at 31.

This argument, that the charged racketeering acts must have their own interstate nexus, has been uniformly rejected by the courts. As noted , it is the enterprise, and not each of the individual predicate acts, which must have the nexus to interstate commerce. See Qaoud, 777 F.2d at 1116 (under both RICO and VCAR the issue is whether the operation of the enterprise as a whole has the requisite connection to interstate commerce, not whether the defendant's particular acts do); United States v. Martino, 648 F.2d 367, 381 (5th Cir. 1981) (in rejecting argument that RICO intrudes upon state sovereignty by failing to require that the individual acts of racketeering per se affect interstate commerce, court reminds that "the essence of RICO . . . proscribes the furthering of the enterprise, not the predicate acts"); see also Altomare, 625 F.2d at 8 n.8; Rone, 598 F.2d at 573; Boffa, 513 at 471.[8]

---

[8]Even where the enterprise in question does not "engage in" interstate commerce, but instead engages in activities that "affect" interstate commerce, see 18 U.S.C. § 1959(b)(2), there is no requirement of a case-by-case substantial effect. In fact, Congress may regulate purely intrastate conduct if that conduct, when aggregated with other conduct falling within the scope of the same statute, has a substantial effect on interstate or foreign commerce. See, e.g., United States v. Tucker, 90 F.3d 1135, 1140-41 (6th Cir. 1996) (intrastate drug dealing); United States v. Chesney, 86 F.3d 564, 570-72 (6th Cir. 1996) (felon in possession of firearms); see also Lopez, 514 U.S. at 558 (quoting Maryland v. Wirtz, 392 U.S. 183, 197 n. 27, for the proposition that "where a general regulatory statute bears a substantial relation to commerce, the de minimus character of individual instances arising under that statute is of no consequence" (emphasis from Lopez omitted)).

20

Defendants submit that the recent Supreme Court decisions in Morrison[9] and Jones[10] require a different outcome, because they change the constitutional inquiry. They rely on language in those opinions about the line between state and federal authority with respect to violent crime.[11] The first step in understanding why this argument is mistaken is to focus on what the Supreme Court was asked to decide, and what it did decide, in those two cases. A careful examination reveals that those decisions deal with different types of statutes, and that the holdings in those cases do not extend to the instant case.

Morrison required the Supreme Court to determine the constitutionality of a civil remedy provision in the Violence Against Women Act. That provision enabled a person to seek damages and

---

Congress has determined that the organized criminal enterprises covered by the RICO statute have a substantial and negative effect on commerce. See Congressional Statement and Findings of Purpose, Organized Crime Control Act, Pub. L. No. 91-452, 84 Stat. 922, 922-23 (1970). And in enacting section 1959 (formerly section 1952B) Congress targeted violent crimes committed "as an integral aspect of membership in an enterprise engaged in racketeering." S. Rep. 98-225, 1984 U.S. Code Cong. & Admin. News 3182, 3483. Furthermore, Congress has required proof of an effect on commerce in each application of the statute. Thus, if the government satisfies the statutory requirements as written, there is no commerce clause violation. See, e.g., United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999) (applying *de minimus* standard to commerce element of Hobbs Act prosecution, because the statute regulates activity that, "through repetition, in aggregate has a substantial effect on interstate commerce"), cert. denied, 120 S.Ct. 2201 (2000).

[9] United States v. Morrison, 120 S.Ct. 1740 (2000).

[10] United States v. Jones, 120 S.Ct. 1904 (2000).

[11]For example, in Morrison the Court stated that it had previously upheld Commerce Clause regulation of intrastate activity "only where the activity is economic in nature," 120 S. Ct. at 1751; it rejected the argument "that Congress may regulate non-economic violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce," id. at 1754; and it endeavored to preserve the principle that the "regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States," id. In Jones, the Court stated that the government's interpretation of the federal arson statute would cover nearly every building in the land, even though "arson is a paradigmatic state law crime." 120 S. Ct. at 1910 & 1912.

21

App 544

injunctive relief in federal court against anyone who committed a state or federal crime of violence against the person, where that crime was motivated at least in part by the person's gender. There was no jurisdictional element in the statute. 120 S. Ct. at 1746.

The Court, in invalidating the civil remedy, referred back to the "[s]everal significant considerations" that "contributed to our decision" in Lopez. 120 S. Ct. at 1749. First, the Gun-Free School Zones Act "was a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." Id. at 1750 (quoting Lopez). Second, "the statute contained 'no express jurisdictional element which might limit its reach to a discrete set of firearms possessions that additionally have an explicit connection with or effect on interstate commerce.' Such a jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce." Id. at 1751 (quoting Lopez; citation omitted). Third, neither the statute nor its legislative history contains "express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." Id. "Finally, our decision in Lopez rested in part on the fact that the link between gun possession and a substantial effect on interstate commerce was attenuated." Id.

Applying these same considerations, the Morrison opinion noted that gender-motivated crimes of violence – the subject-matter of the statute – "are not, in any sense of the phrase, economic activity"; that there is "no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; and that Congress' findings about the effects on commerce "are substantially weakened by the fact that they rely so heavily on a method of reasoning that we have already rejected as unworkable if we are to maintain the Constitution's enumeration of powers." Id. at 1751-52. As for the final concern expressed in Lopez, the Court noted that petitioners' argument sought to follow a but-for causal chain from the initial occurrence

22

App 545

of violent crime – a matter traditionally left to State police power – to every attenuated effect on interstate commerce. That line of reasoning, the Court concluded, would allow Congress to regulate any crime if "the nationwide aggregated impact of that crime has substantial effects on employment, production, transit or consumption." Id. at 1752-53.

Morrison therefore held that a statute regulating an entire category of conduct – gender-based violence – was unconstitutional where the sole nexus to interstate commerce was that the aggregated conduct had indirect effects on the national economy. Unlike the defendants in Morrison, defendants here do not seem to suggest that the statute in question is facially invalid; instead they make an "as applied" challenge.[12] Thus, they raise an issue different from the one in Morrison: where Congress validly invokes its Commerce Clause powers to regulate a general category of conduct, and where a nexus to commerce must be proved in each case, what connection to interstate commerce is sufficient in a particular case? The closest Morrison came to addressing this question was its observation that statutes with jurisdictional elements are on a stronger footing. "Lopez makes clear that such a jurisdictional element would lend support to the argument that [the statute] is sufficiently tied to interstate commerce[.]" 120 S. Ct. at 1751-52.

Morrison was limited, by its own terms, to efforts to "regulate noneconomic, violent criminal conduct based *solely* on that conduct's aggregate effect on interstate commerce." 120 S. Ct. at 1753 (emphasis added). Application of the RICO statute to a criminal organization that sold thousands of pounds of marijuana and other illegal drugs to residents of neighboring states and whose members traveled between the District of Columbia and its neighboring states to rob, kidnap and kill perceived

---

[12] The RICO statute would easily survive a facial challenge. It was enacted to deal with the unique problems created by organized criminal activity, a type of crime that – due to its nature and its impact – requires a national response. See, e.g., Congressional Statement and Findings of Purpose, Organized Crime Control Act, Pub. L. No. 91-452, 84 Stat. 922, 922-23 (1970).

23

adversaries and inviting targets does not obliterate the distinction between "what is truly national and what is truly local." See Morrison, 120 S. Ct. at 1754. The defendants' affairs were conducted through a pattern of racketeering acts with the direct effect of altering the flow of commerce between the District of Columbia and both Maryland and Virginia. Thus, Congress' power to enact a RICO statute that criminalizes defendant's conduct does not rest on the repudiated justification that purely local violent crimes, in the aggregate, have a substantial effect on the economy. Similarly, because the nexus to commerce is not attenuated, application of the RICO statute to these facts does not open the door to federal regulation of "all violent crime." See 120 S. Ct. at 1752-53. Morrison does not in any way call into question the validity of the RICO or VCAR statutes.

Although Morrison did not deal with an "as applied" challenge to a statute with a jurisdictional element, two Sixth Circuit cases decided since Lopez have. Both would support the Court's denial of defendants' instant motion to dismiss. In United States v. Taylor, 176 F.3d 331 (6th Cir. 1999), the defendant argued that the Hobbs Act was unconstitutional as applied to robbery of a private citizen or burglary of a private residence. The Court rejected the challenge because "the Hobbs Act involves activity which courts have repeatedly found has a substantial effect on interstate commerce"; the Act "contains a specific jurisdictional requirement"; the element was satisfied by proof of an effect on commerce; and the constitutionality of the Act has been upheld before and after Lopez. 176 F.3d at 339. In rejecting the challenge, the Court did not make any additional inquiry into whether the particular facts of that case met some separate constitutional threshold for effects on commerce. Id. In United States v. Ables, 167 F.3d 1021 (6th Cir.), cert. denied, 527 U.S. 1027 (1999), the defendant also advanced an "as applied" challenge – this time to prosecution under the federal gambling statute. After noting that overlap between federal and state regulation was permissible, the Court rejected the challenge. "Ables cites no authority in support of the proposition

24

that a criminal statute constituting a valid exercise of congressional authority under the Commerce Clause may nevertheless be unconstitutional as applied to a particular defendant when the statute's jurisdictional requirements have been met." 167 F.3d at 1028.

The Jones opinion is also beside the point. In that case, the Court framed the question presented as whether, in light of Lopez, "and the interpretive rule that constitutionally doubtful constructions should be avoided," the federal arson statute "applies to the arson of a private residence; and if so, whether its application to the private residence in the present case is constitutional." 120 S. Ct. at 1909. The Court decided the case on statutory interpretation grounds. Of particular significance to the instant case is the distinction the Court drew between the arson statute – which requires proof that the building was "used in" a commerce-affecting activity – and the category of federal statutes (of which RICO is one) that use the broader and unqualified term "affecting . . . commerce."

> [T]he government relies principally on the breadth of the statutory term "affecting . . . commerce," words that when unqualified, signal Congress' intent to invoke its full authority under the Commerce Clause. But § 844(i) contains the qualifying words "used in" a commerce-affecting activity. The key word is "used."

Id. at 1909 (citations omitted).

The Court in Jones therefore did not have occasion to decide whether section 844(i) would have been constitutional if it applied to the arson of a private residence. The Court's observation that difficult constitutional questions should be avoided is not the same, of course, as holding that a particular application of the statute would be unconstitutional, especially where the observation comes only after setting forth several independent grounds for adopting the narrower interpretation of the statute.

To the extent anything meaningful can be derived from Jones's discussion of the constitutional

25

App 548

doubt principle, it favors sustaining the RICO counts. The Jones opinion stated that given the concerns expressed in Lopez, "it is appropriate to avoid the constitutional question that would arise were we to read § 844(i) to render the 'traditionally local criminal conduct' in which petitioner engaged a 'matter for federal enforcement.' United States v. Bass, 404 U.S. 336, 350 (1971)." Bass involved an interpretation of the "in commerce or affecting commerce" element of the predecessor version of the felon in possession of firearms statute. The Court read that statute narrowly in Bass to avoid the constitutional issue, but that narrow interpretation would support a denial of defendants' motion to dismiss.

The statute at issue in Bass, 18 U.S.C. App. § 1202, prohibited a convicted felon from receiving, possessing, or transporting "in commerce or affecting commerce" any firearm. Holding that this commerce requirement applies to receipt and possession violations (rather than just transportation), the Court added: "we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350. The Court explained that "consistent with our regard for the sensitive relation between federal and state criminal jurisdiction, our reading preserves as an element of all the offenses a requirement suited to federal court jurisdiction alone." Id. at 351; see also Scarborough v. United States, 431 U.S. 563, 575 (1977) (holding that the same "minimal nexus" requirement applies to possessions as well as receipts).

The Supreme Court has neither overruled Bass nor called it into question since the Lopez decision. In fact, in Lopez the Court used Bass to distinguish the Gun-Free School Zones Act from valid exercises of Congress' Commerce Clause powers. "Unlike the statute in Bass, § 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on commerce." 514 U.S. at 562; see also

26

Chesney, 86 F.3d at 570-71 ("Lopez did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers").

The nexus to commerce in the instant case is at least as great as that sufficient to sustain prosecutions under the felon in possession statute. The evidence in this case will show that the defendants conducted, and participated in the conduct of, the affairs of the enterprise through a pattern of racketeering activity, and that this activity included drug-dealing, and not just the possession, but the use, of one or more firearms that had traveled in interstate commerce. Because the commission of violence with firearms was such an important part of this enterprise's reason for being, the use of the RICO statute to reach such conduct is constitutional.

The Rico Statute Is Not Unconstitutionally Vague

Defendants next contend that the RICO statute is unconstitutionally vague, at least as applied to this case. Noting that a statute is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," the defendants claim that he and his codefendants lacked fair notice that their commission of numerous drug offenses, attempted robberies, kidnappings, shootings and murders and conspiracy to murder witnesses might expose them to punishment under the RICO statute. This argument is meritless on several levels.

First, the defendant cites no case law in support of his vagueness claim. Courts have uniformly rejected vagueness challenges to the statute, both before and after the H.J. Inc. decision. See United States v. Blinder, 10 F.3d 1468 (9th Cir. 1993); United States v. Angiulo, 897 F.2d 1169, 1179 (1st Cir.), cert. denied, 498 U.S. 845 (1990); United States v. Pungitore, 910 F.2d 1084, 1102-05 (3rd Cir. 1990), cert. denied, 500 U.S. 915 (1991).

27

App 550

Moreover, there is no basis for finding that the RICO statute is vague on the facts of this case; that persons of ordinary intelligence would not know that the defendants' conduct was forbidden by that statute. The statute very clearly proscribes this type of activity. Not only is it obvious that the defendants' conduct from on or about 1988 until their incarceration qualified as "racketeering activity," as these crimes are so enumerated in the first few lines of the statutory definition of that term. It is also obvious to the person or ordinary intelligence that he might violate that statute's proscription against participation in a racketeering enterprise if he joins two others in an enterprise that which embarks on a consistent string of drug-dealing and murderous mayhem. See United States v. Bennett, 984 F.2d 597 (4th Cir.) ("While it may be contended that RICO is unconstitutionally vague in some contexts . . . in this case the statute provided the appellants adequate notice that acts of arson, fraud, attempted murder (and other acts or threats of violence), perjury, and obstruction of justice committed with the similar purpose--to allow the associated-in-fact enterprise to continue to defraud insurance companies--fell within those acts contemplated by [the RICO statutes]"), cert. denied, 508 U.S. 945 (1993); see also United States v. Ruggiero, 726 F.2d 913, 923 (2d Cir.), cert. denied, 469 U.S. 831 (1984).

Even assuming, arguendo, that a person of ordinary intelligence could be unaware that such activity fell under RICO coverage, he would still effectively be on notice that it is illegal by dint of the statutes--and age-old societal commandments--which prohibit the crimes of kidnapping and murder. "Provided the statutes criminalizing the predicate acts are not unconstitutionally vague . . . the defendants are on adequate notice that they are committing crimes, and the fact that they may not be aware of the extent of their criminality and consequent exposure to punishment is a detail." Masters, 924 F.2d at 1367. See also Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 57-48 (1989) (rejecting defendant's argument that RICO charge based on pattern of obscenity violations is

28

unconstitutionally vague on ground that the obscenity law underlying the predicate acts is not vague; "Given that the RICO statute totally encompasses the obscenity law, if the latter is not unconstitutionally vague, the former cannot be vague either"); Bennett, 984 F.2d at 606-07 (in section quoted infra, the court employs same logic to conclude that statute adequately gave notice that it applied to situation where group committed various crimes with the purpose of promoting interests of the enterprise). Under this simple reasoning, it is difficult to envision how the defendants in any way misunderstood the criminality of their actions as they committed numerous violent crimes, including murders, for almost one solid decade.

    E.    **Defendant Sweeney's Motion To Dismiss Counts Forty-Eight, Forty-Nine, Fifty And To Strike Overt Acts And Racketeering Act 70 (A)-(G) Of Count Two Of The Indictment And To Strike All References To The Triple Murder In Temple Hills, Maryland[13]**

Defendant Sweeney asks this Court to dismiss all counts in this indictment that pertain to the triple homicide in Temple Hills, Maryland. Defendant Sweeney claims that the government has failed to provide to him requested "proof" "of an organizational structure to this purported enterprise . . . [or] when the enterprise began, who the members were, what were the roles of the individual members and the nature and extent of the organizational structure." Defendant Sweeney's Motion to Dismiss Counts at 5-6. Because the government has failed to provide him with this pretrial "proof," Defendant Sweeney argues that he is entitled to dismissal of these counts because "[i]n the absence of the essential 'connective tissue' establishing a legal and factual foundation for characterizing the Maryland triple murders as part of a pattern of racketeering activity, the continued inclusion of these crimes creates the very real prospect of establishing a fatal flaw in the indictment no matter what the jury ultimately concludes." Defendant Sweeney's Motion to Dismiss Counts at

_____

[13] Hereinafter referred to as "Defendant Sweeney's Motion to Dismiss Counts."

29

6.

Defendant Sweeney's motion is based on basic misunderstandings of both facts[14] and the law. In this motion, defendant Sweeney simply rehashes the arguments he has made previously. Specifically, defendant Sweeney once again alleges that the government has failed to describe how the triple murder affected interstate commerce[15]; that the government has produced no evidence to suggest that the triple murder was a product of an organized crime enterprise[16]; that the government cannot establish that an "enterprise" existed[17]; and that the triple homicide was not "related" to any of the other acts of racketeering alleged in the indictment.

This last argument was made in defendant's previously filed Motion to Sever Counts and Defendants. In that motion, defendant made the identical argument that he raises here: that the triple homicide

> shares] no connection with the drug and RICO conspiracy counts which form the linchpin of the indictment against these defendants. The government's evidence is that this event occurred in Prince George's County, Maryland and is alleged to have been an attempted armed robbery of an known gambling house. There is nothing to suggest a nexus with criminal conduct alleged to have occurred in the District of Columbia.

Defendants Joint Motion to Sever Counts and Defendants, at p. 38.

As this motion was fully litigated, argued and ultimately denied by an order of this Court, the

---

[14] Defendant Sweeney is incorrect when he states that his visage does not appear on a single surveillance photograph. In fact, he does appear in a surveillance photo along with his codefendants. In any event, this fact is hardly crucial; the government will be introducing extensive testimony from witnesses who have detailed knowledge about defendant Sweeney's drug-dealing activities during the course of this conspiracy.

[15]This argument is addressed by the government at pp. 13-16.

[16]This argument is addressed by the government at pp. 17-21.

[17]This argument is addressed by the government, at pp.8-16.

30

App 553

government feels no need to address this particular argument any further.[18]

## III. DEFENDANTS' MOTIONS TO DISMISS

**A.  Defendant Martin's Motion to Dismiss The Indictment for Prejudicial Pre-Accusatory Delay, Violations of Statutes of Limitations and Speedy Trial Provisions**

Defendant Martin seeks dismissal of the instant indictment[19] on the grounds that the indictment constitutes impermissible pre-trial delay which has prejudiced defendant Martin. Specifically, defendant Martin complains that in regards to the murder of Tony Fortune on August 6, 1991 (OA 8; RA 33; Count 9) and the assault with intent to kill four police officers at 60th and East Capitol Streets (the "APO" case) on September 10, 1991 (OA 9; RA 34; Counts 10-19) that the government deliberately delayed prosecution of these counts in order gain a tactical advantage over defendant and, in so doing, prejudiced defendant. In addition, defendant seeks dismissal of the counts relating to the 60th and East Capitol shootings because, he claims, that these counts are barred by the statute of limitations. Finally, defendant seeks a dismissal of the counts due to a claimed violation of the Speedy Trial Act. Defendant's motion is without merit. First, as will be demonstrated below, defendant has waived any complaint about his pre-indictment delay and incarceration for the APO case because the defendant requested a continuance of his trial date when

---

[18]Obviously, if defendant's motion to *sever* the counts in question should be denied, there can be no question that his motion to *dismiss* the same counts – for essentially the identical reasons – should likewise be denied.

[19]While defendant Martin's motion requests dismissal of the Indictment (Defendant's Motion to Dismiss the Indictment for Prejudicial Pre-Accusatory Delay, Violations of Statute of Limitations and Speedy Trial Provisions at 5 )(hereinafter "Defendant Martin's Motion to Dismiss for Delay")), elsewhere in the motion defendant complains that the government's improper delay in bringing this case affects only "most" of the charges. Defendant Martin does not specify in his motion which charges he contends were improperly brought and which were not. For purposes of this response, the government will assume that defendant is seeking the dismissal of all counts.

31

the government was ready for trial in Superior Court. Second, the operable statute of limitations is six years, not five years as defendant claims, and was effectively tolled for 18 months while defendant was charged with this offense in Superior Court. Finally, this Court has previously ruled that defendant's speedy trial claim was groundless.

<u>The Shooting at 60th and East Capitol Streets, S.E.</u>

On September 10, 1991, four uniformed Metropolitan police officers were on foot patrol in the vicinity of 60th and East Capitol Streets, S.E. They observed occupants of a white van and a motorcycle engage in a gun battle with unknown subjects. As the officers ran to the area of the shooting, one of the gunman, armed with a machine gun, fired at the officers. The officers returned the gunfire. Amazingly, no one was struck by any bullets. The gunmen returned to their van and motorcycle and fled together in the same direction.

Later that same evening, a white van matching the description of the van involved in the shoot-out was located abandoned in the 1300 block of 45th Street, S.E. The officers involved in the shoot-out identified the van as being the one they has seen flee from the scene. After obtaining a search warrant for the van, the van was searched. Identification belonging to defendant Martin was found in the van, which was also registered to defendant Martin. In addition, fingerprints belonging to defendant Martin were found in the van. Within several weeks, a witness was identified that stated it observed the shoot-out and told police that one of the perpetrators was defendant Martin.

On December 4, 1991, based on this single-witness identification, a warrant was obtained for defendant Martin and, on January 23, 1992, defendant was arrested and charged with this offense. On June 22, 1992, the case was dismissed by the government.

Subsequent to the dismissal of this charge, defendant Martin and his close associates became subjects of a large-scale investigation into drug-dealing and violence in the Greenleaf Gardens area

32

App 555

of Southwest, D.C. In August, 1997, investigators spoke with an individual with told them that he was a participant, along with defendant Martin, in the 1991 shoot-out with police. This witness corroborated all of the details regarding the shoot-out that the police had previously obtained and gave the police a detailed description of the shoot-out. Armed with this new evidence, the government indicted defendant Martin for this offense on September 9, 1997 and arrested him on September 16, 1997. After his arraignment in the Superior Court of the District of Columbia, defendant Martin was held without bond and a trial date of January 13, 1998 was set. On January 13, after a hearing on defendant's evidentiary motions, the case was continued until the following day for trial. On the 14th of January, the government announced ready for trial. Defendant Martin's counsel, Mark Rochon, moved for a continuance. The motion for a continuance was made with the full understanding that defendant would remain detained pending trial:

> I've discussed [Martin's detention status] with my client, we have been operating under the clear impression that we still operate under that, the Court made I think fairly clear, that the party [who] moves [for a continuance] gets an adverse detention decision. I'm not saying that you announced that as a ruling, but suffice to say Mr. Martin understands that by my so moving, uhm, he will be held until [his] new trial date.

Transcript from January 14, 1998, pp. 2-3.[20] The case was then continued until April 15, 1998 for status, with a trial date scheduled for April 16.

On April 15, 1998 the court held a lengthy evidentiary hearing concerning Jencks issues. On April 16, counsel for defendant Martin once again requested a continuance:

> Your Honor, I see so many problems that what I would propose that you do is set this matter for a status hearing before this Court on or after May 4th. We will get a little slippage that way but

---

[20]The transcripts from the hearings held on January 14, 1998, April 16, 1998, May 12, 1998 and June 23, 1998 are at Appendix "A."

33

there may be some – I think that some of what happened yesterday could allow the United States to reasonably reevaluate their case. I urge them to reevaluate their case.

I think that it would be fair to this record to say that perhaps even some of what was developed may have even been information that the United States can reconsider, even if it was known to the United States previously. And it is – it continues to be my hope that the United States will reevaluate its decision to go forward in this case.

Transcript from April 16, 1998, pp. 74-75.

It is clear from this exchange that defense counsel was actively seeking a dismissal of this case by the government. At the time this not-so-veiled request for a dismissal was being made, defendant Martin was being detained by another case in Superior Court (F 2653-98).[21] Defense counsel made direct reference to the new case as he was asking for a continuance:

Mr. Martin has another case. . . It has been set for a preliminary hearing on April 29th, but not before this Court. Which is probably an error. I think this is a Rule 105 that suggests – It's another preventive detention case against Mr. Martin brought by the United States.

Transcript from April 16, 1998, p. 77. The court continued defendant Martin's case until May 12, 1998. At the status hearing on May 12, a new trial date of July 7, 1998 was agreed upon by the parties. Also during that status hearing, government counsel made it clear on the record that 1991 shoot-out case was going to be part of a RICO indictment in Federal Court:

Mr. WAINSTEIN: I just don't want to – Your Honor to be out of the loop and for us to have an agenda here that Your Honor is not aware of. We have eluded (sic) in past appearances to the fact there's an ongoing federal Grand Jury investigation into Mr. Martin involving these acts and number of others. And I made that clear to Mr.

---

[21]This offense, which has been included in the instant indictment as OA 47; RA 65; Counts 37, 38, 58 & 76, occurred on May 30, 1995. It, too, only became viable to prosecute when multiple witnesses came forward in 1997 and agreed to cooperate with the government.

34

Rochon.

And one of the concerns – and if I may speak for counsel, one of the concerns is possibility of trying these cases in Superior Court and then turning around and trying them again as part of a conspiracy or a Ricco (sic) indictment over in federal court. And the tactical decisions as to whether that would be good for the defense or not.

We've been open with counsel about our timetable on this federal indictment and – and we have told Mr. Rochon that we will have made – that whole process will have been completed by the middle of September which might well – which will moot out these cases in many ways, one way or the other.

We have along the way said we're ready to go to trial in the [19]97 case because we did bring it as a federal indictment – I mean, as a Superior Court indictment and we're ready to go forward on it. However, I have made Mr. Rochon aware that if we had a date at the end of September, by that time we will have been – we will be prepared to know whether those cases will be, you know, subsumed in the federal indictment or not.

And so that a consideration while we'd be ready to go forwarding the cases here, and have been, it's – I just want the Court to understand that there – these tactical considerations have been laid out.

THE COURT:   And I will stay completely within my job description and what the future holds, it will hold, and these are matters about which you people know a great deal more than I in this Superior Court trial.

MR. ROCHON:   Right. I think – I appreciate the court's position, Mr. Wainstein's, and I'll have to consult with my client but I think it would be wise for purposes of your calendaring to set this matter do[wn] – both cases down for a status towards the end of June at least a week before the scheduled trial date because Mr. Martin's position may be that it's simply not in his interest – he doesn't win if he wins[,] is his problem.

*   *   *   *

MR. ROCHON:   And so it may be that there's no win for [Mr. Martin] until he resolves the federal matter and so it may be our eventual position to not seek to go to trial in these matters and to kind

35

App 558

of – . . . And Mr. Martin will then – he may – depending on our position, he may at that point say – recognize – we may not seek to go to trial on the 7th [of June] at that point.

Transcript of May 12, 1998, pp. 6 - 9.

After a discussion about the scheduling a further status hearing for June 23, 1998, the

Court asked:

> THE COURT: Is there a likelihood that by that date [June 23] the District Court side developments will be sufficiently known for intelligent final decisions on these fronts, within a month there will be sufficient knowledge for both to exercise judgment about trial of these cases in Superior Court?
>
> MR. WAINSTEIN: We'll have more information that we can give to defense counsel. I will say, though, that I do not believe that the process will be finalized by then.

Transcript of May 12, 1998, p. 10.

On June 23, 1998, the parties once again reconvened to discuss their readiness for the new

scheduled trial date of July 7. After both parties indicated that they would be ready for the trial,

defendant Martin's counsel addressed the court:

> MR. ROCHON: One thing I want to be clear about here is that I've – though I've often times raised the thinly veiled effort to hold Mr. Martin's (sic) argument, it is also the case that I think that new matters have arisen in the course of the litigation of this old '91 case that I've asked Mr. Wainstein to look at and consider whether or not the case merits going forward.
>
> And I make that point because I don't want everyone to think that if he dismisses this case, that I'm going to jump and scream that it was an outrage all along.
>
> I may have disagreed with the initial bringing of the case against Mr. Martin, but I certainly think that there's been a lot of new material developed since it's been brought that would warrant any prosecutor in reevaluating the case and – and including its prosecutorial merit.

36

\* \* \* \*

> I await – I put what I did on the record because I want to make sure that the end result in this case is what I think is a correct one, which I think from the standpoint of the merits of the case a dismissal at this juncture of [this] case is appropriate.

Transcript of June 23,1998, pp. 7-9.

On July 7, 1998, defendant Martin got the result he had been seeking. The government dismissed

the case, without objection from defendant. Transcript of July 7, 1998, p. 2.

<u>There was no prejudicial pre-indictment delay</u>

The leading case on the subject of pre-indictment delay arose out of the District of Columbia Circuit. In <u>United States v. Marion</u>, 404 U.S. 307 (1971), there had been a delay of 38 months between the end of the scheme charged in the indictment and the date when the defendants were indicted. The Supreme Court held that the Sixth Amendment right to a speedy trial is not implicated by a pre-indictment, pre-arrest delay, since during the pre-arrest stage the defendant is not "accused" and has suffered no restraints on his liberty. <u>Id</u>. at 320-21.

The <u>Marion</u> Court acknowledged that "passage of time ... may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself." <u>Id</u>. at 321. The Court noted, however, that such delay "may also weaken the Government's case", and can be safeguarded by application of the statute of limitations, which "provide [s] predictability of specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." <u>Id</u>. at 321-22. The Supreme Court also noted that the statute of limitations provides "the primary guarantee" against bringing overly stale criminal

37

App 560

charges. Id. at 322.[22]

The Supreme Court noted, however, that the Due Process Clause of the Fifth Amendment would require dismissal if a pre-indictment delay caused "substantial prejudice" to the defendant's rights to a fair trial and if it were shown that the delay was an intentional device used by the Government to gain a tactical advantage. Id. at 324. The Court declined to determine when actual prejudice from pre-indictment delay would require dismissal, but noted that "no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." Id. The Court held that the defendants in Marion relied only on the possibility of prejudice inherent in a

---

[22]Defendant cites no authority – and the government is aware of none – for the proposition that the five year federal statute of limitations applies to D.C. Code violations tried in federal court. While it goes without saying that the federal statute of limitations applies to all federal offenses, it seems equally clear that the D.C. Statute of limitations applies to D.C. Code violations, even those that are prosecuted in Federal Court. Thus, the statute of limitations applicable to the offenses charged in the present case requires that prosecution be commenced within six years after the offense has been committed. D.C. Code, § 23-113, provides, in pertinent part:

(a) *Time limitations.* – (1) A prosecution for murder in the first or second degree may be commenced at any time.

(2) Except as provided in paragraph (4), a prosecution for a felony other than murder in first or second degree is barred if not commenced within six (6) years after it is committed.

(b) *Commencement of prosecution.* – A prosecution is commenced when:

(1) an indictment is entered;

(2) an information is filed; or

(3) a complaint is filed before a judicial officer empowered to issue an arrest warrant;

(d) *Suspension of period of limitation.* – The period of limitation for an offense, and any necessarily included offense, does not run during any time when a prosecution against the defendant for that offense is pending in the courts of the District of Columbia.

As noted above, this particular offense occurred on September 10, 1991. Defendant was indicted in federal court on September 18, 1998, just over seven years after the offense. However, because this offense was pending against defendant in Superior Court from January 23, 1992 until June 22, 1992 – a total of six months – and from September 10, 1997 until July 7, 1998 – a total of just under 10 months – 16 months is excluded from the 7 year period. Thus, this prosecution is brought well within the six year statute of limitation.

38

App 561

lengthy delay: "that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment." Id. at 325-26.

Six years later, in United States v. Lovasco, 431 U.S. 783, 789 (1977), a case involving an 18 month pre-indictment delay, the Supreme Court rejected the argument that the Due Process Clause "bars prosecution whenever a defendant suffers prejudice as a result of pre-indictment delay." Rather, the Court held, "proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." Id. at 789. The Court summarized its earlier holding: "Thus Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Id. at 790.

The law in our Circuit is also clear that where the period of delay is well within the statute of limitations, the defendant "bear[s] a substantial burden to demonstrate that [he was] prejudiced or that the government acted with impropriety." United States v. Pollack, 534 F.2d. 964, 969 (D.C. Cir.), cert. denied, 429 U.S. 924 (1976).

The courts that have applied Marion and Lovasco have reiterated time and again that the defendant must demonstrate actual prejudice caused by the delay. In United States v. Rippy, 606 F.2d 1150 (D.C. Cir. 1979), there had been a five month delay between a narcotics sale and the defendant's arrest. On the issue of possible prejudice, the Court noted that the case law in this Circuit has identified two general types of prejudice:

The first is damage to the accused's ability to present a defense because of, inter alia, his own or his witnesses' lack of memory concerning his actions, his inability to establish an alibi, or

39

unavailability of witnesses who, but for the delay, otherwise might have been able to contradict the Government's case. A second, similar category of prejudice relates to the reliability of the evidence used to identify the accused. Id. at 1153. In Rippy, the defendant made a general claim of inability to remember dates, but cited no "special circumstances" connoting prejudice. Id. at 1153. The Court therefore rejected the defendant's claim of unconstitutional prejudice, holding that "any inference of injury resulting from the delay is far too attenuated to achieve decisional significance." Id.

Similarly, in United States v. Ballard, 779 F.2d 287 (5th Cir.), cert. denied, 475 U.S. 1109 (1986), there had been a four-year delay between the commission of the crime and the indictment. The court rejected the defendant's due process argument, however, holding that the defendant had shown no actual prejudice as a result of the delay. The defendant in Ballard alleged as prejudice "the possibility that the memory of witnesses had dimmed and evidence had been lost. Ballard has not alleged any specific untoward tactical maneuvers on the prosecutor's part, nor has he pointed to any lost evidence or witnesses with faded memories." Id. at 293-94. The court rejected the claim, holding vague assertions of faded memory are insufficient, and that "[a]ctual prejudice with respect to a material fact must be shown." Id. at 294.

In United States v. Royals, 777 F.2d 1089, 1090 (5th Cir. 1985), the Fifth Circuit, applying Marion and Lovasco, again held that the "defendant's threshold burden is to prove that he suffered actual and substantial prejudice to his right to a fair trial." The court stated again that general allegations of loss of witnesses and faded memories are insufficient to satisfy the burden of establishing actual and substantial prejudice. Id. See also United States v. King, 593 F.2d 269, 271 (7th Cir. 1979).

Here, the defendant has alleged that he has been prejudiced by the delay, stating that the status of several material witnesses has changed. He states that the government does not have two of the

40

three statements from the police officer/complainants; that a detective that interviewed the officers cannot recall if he took notes, and one of the officers disputes the accuracy of the detective's report; the radio run has been lost; and the detective that interviewed the original eye-witness lost his notes of the identification. In addition, defendant claims that "two of the persons who the government's witnesses say were participants in the shoot-out are now deceased." Finally, defendant claims that since the 1991 shooting, "numerous potential defense witnesses have moved out of the area, forgotten the incident, lost contact with the defendant or, in some instances, died. Defendant Martin's Motion to Dismiss for Delay at 4. None of these claims establish any prejudice whatsoever, much less the substantial prejudice that need be shown.

As for the lost statements by the police officers, the lost radio run, and the lost notes of the detectives, it is hard to see how these losses necessarily prejudice the defendant. Indeed, as a prosecutor, it is always a difficult hurdle to explain deficiencies such as these to a jury. Defendant Martin has made no suggestion – nor can he – that this missing evidence would have been exculpatory. It is the government's contention that this missing evidence would have greatly strengthened and corroborated our case against defendant Martin. While the government can still go forward without this evidence, it is clear that the defense will be able to argue to the jury that the government's case is inherently suspect because of the missing evidence.

As for the witnesses who have died, again there has been no showing that their absences in any way would prejudice the defendant. It is the defendant's substantial burden to demonstrate prejudice; thus, he must show how the now-dead witnesses could have helped his defense. He has made no such showing. And as for the witness who have moved out of the area, it is unclear whether the defendant is alleging that he no longer knows of that witness's whereabouts, or merely that it would be time consuming to have to subpoena him and bring him back to the District. In any event,

41

it would be necessary for the defendant to show that these witnesses would have had relevant information and would have been willing to testify at trial, especially in light of the witnesses' Fifth Amendment rights.

Similarly, defendant Martin's claim that "recollections are going to be lost, muddy or unreliable" in no way leads inexorably to the conclusion that this fact, even if true, would necessarily prejudice the defendant. It will be the government's burden in this case, as in every criminal case, to prove each and every element of the offense beyond a reasonable doubt. It is certainly far from intuitive to believe that that task will be made any easier when the government must rely on testimony regarding an offense that occurred nine years ago. Several important government witnesses have moved away or become unavailable in the interim. No doubt defense counsel will be able to effectively cross-examine the witnesses that are available and emphasize to the jury that the recollections, now so old, must necessarily be unreliable. There simply is no reason to assume that this delay has necessarily prejudiced the defendant. Indeed, the government would argue that defendant is in a far better position going forward at present than he would have been had the government been able to prosecute this case soon after the shooting occurred.

Even if the defendant is able to satisfy his burden and proves actual prejudice, that alone would not require dismissal of the counts relating to this offense. As previously discussed, Lovasco held that even a demonstration of actual prejudice caused by the delay "makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." 431 U.S. at 789. Even where prejudice has been proven, therefore, the Court would still have to consider whether the delay was caused by an improper attempt by the Government to prejudice the defendant and to gain some sort of tactical advantage.

In the Lovasco decision, Justice Marshall's majority opinion firmly established that not all

42

prosecutorial delay is improper delay, and indeed that the reason behind many pre-indictment delays is legitimate and appropriate:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." Our task is more circumscribed. We are to determine only whether the action complained of here, compelling respondent to stand trial after the Government delayed indictment to investigate further violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency."

Id. at 790 (citations omitted). The Court went on to note that it is appropriate for prosecutors "to defer seeking indictments until they have probable cause to believe an accused is guilty .... It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." Id. The Court also flatly rejected any argument that "once the Government has assembled sufficient evidence to prove guilt beyond a reasonable doubt, it should be constitutionally required to file charges promptly, even if its investigation of the entire criminal transaction is not complete." Id. at 792.

In this case, the government's case against the defendant in 1992 -- while supported by probable cause -- was far from strong. It was based upon a single eye-witness identification. Although defendant's fingerprints and identification were found in the white van, at trial defendant would undoubtedly have explained their presence by the fact that the van had been registered to him. The government could reasonably have expected the defendant to claim that his van had been stolen and that someone had mis-identified him, perhaps even because they recognized the van as belonging

43

to defendant Martin.[23] Given the state of the evidence, it was entirely reasonable for the government to decide not to proceed to trial at that time. In <u>Lovasco</u>, the Court addressed this very point:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed." This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

431 U.S. at 795-96 (citations and footnote omitted).

The state of the evidence changed dramatically in 1997, however, when a participant in this shoot-out came forward and agreed to cooperate with the police. Once the cooperation of this witness was secured, the government immediately proceeded to indict defendant and prepare for trial. This was not a ploy or tactic simply to detain defendant. It was the government's intention to try defendant Martin for this offense in Superior Court. As demonstrated by the transcripts quoted above, the government was ready to try defendant on January 13, 1998. The defense, with defendant Martin's acquiescence, requested a continuance despite the fact that he was being detained. At that point forward, a reading of the transcripts reveals the fact that it was the defense that made a tactical – and not unreasonable – decision that it would be wiser to avoid a trial in Superior Court given that a federal indictment was about to be returned.

---

[23]Indeed, the government has since learned -- and will prove at trial -- that defendant Martin took steps to do exactly that; it was defendant Martin's plan to claim that he had been car-jacked by a member of the 58th Street crew and claim therefor it must have been the car-jacker that was involved in the shoot-out with the police.

44

The government stated on the record that it anticipated naming defendant Martin in a RICO conspiracy in federal court and that the 1991 shoot-out case would be made part of that case, regardless of the outcome of any trial on the matter in Superior Court. Given these facts, and the fact that defendant Martin was also being detained in another Assault with Intent to Kill case in Superior Court, defendant's experienced trial counsel sought to convince the government not to proceed to trial with the 1991 APO case. This position was eminently logical from the defendant's perspective: even if defendant were acquitted of this charge at trial in Superior Court, he would still be detained by his other Superior Court case. In addition, the conduct involved in the 1991 APO case would still be re-alleged in the RICO indictment as Racketeering Acts. On the other hand, if defendant were convicted in Superior Court, he not only would be facing the possibility of life sentences in Superior Court, he would still be facing the inevitable prospect of the RICO trial in federal court. Given these difficult prospects, defendant Martin made the choice to avoid trial in Superior Court by seeking a continuance and, ultimately, a dismissal. Nevertheless, the fact remains that the government was ready and willing to try defendant in Superior Court for this particular offense. The fact that defendant made a tactical choice to avoid that fate does not transform this prosecution into a "deliberate ploy designed to gain a tactical advantage."

### The Tony Fortune Murder

Defendant also seeks dismissal of the counts in the indictment relating to the murder of Tony Fortune. While defendant acknowledges that there is no statute of limitations for first-degree murder, defendant claims that he has suffered unfair prejudice by delay between the murder, which occurred in 1991, and the instant prosecution. This argument is apparently premised on the fact that since the police questioned defendant Martin on the night of the murder and obtained a statement from him, they must have known he was actually involved in the murder and had sufficient evidence to

45

prosecute him. According to defendant's argument, the fact that the government waited seven years before initiating the prosecution of the Tony Fortune murder was merely a ploy to gain a tactical advantage.

<u>There Was No Prejudicial Preindictment Delay</u>

Defendant Martin's argument is based on a faulty premise: at the time of the Tony Fortune murder, the police had no more than a suspicion that defendant Martin was a participant in the Fortune murder. Defendant Martin, in his statement to the police, admitted he was present at the scene but denied any involvement in the murder. There were no eyewitnesses who came forward in the aftermath of the murder and agreed to tell the police what they saw. It was only in 1997, when the investigation uncovered numerous witnesses with knowledge concerning this murder, that the government had enough evidence to proceed with an indictment. To have proceeded with a prosecution prior to the accumulation of the evidence necessary to secure a conviction at trial would have been reckless and improper. "Plainly the indictment of an accused . . . for [a] heinous and brutal murder . . . is not a matter to be hastily arrived at either by the prosecution authorities or by a grand jury. The devastating consequences to an accused person from the very fact of such an indictment is a matter which responsible prosecutors must weigh carefully." <u>United States v. MacDonald</u>, 456 U.S. 1, 10, n. 12 (1982).

In conclusion, defendant Martin has not satisfied his burden of proving any demonstrable actual prejudice caused by the pre-indictment delay. Such a failure to establish actual prejudice is fatal to his motion. Even if there were some prejudice that he could prove, a balancing of any such prejudice against the legitimate reasons for the delay should lead to the conclusion that the pre-indictment delay does not rise to a constitutional violation of the Due Process Clause. Accordingly, the defendant's motion should be denied.

<center>46</center>

App 569

<u>There was no violation of the Speedy Trial Act</u>

Defendant Martin also seeks dismissal of this indictment because of an alleged violation of the Speedy Trial Act. Defendant Martin's motion, previously responded to in greater detail in Government's Response to Defendant Martin's Motion for Release from Incarceration Due to Violations of the Speedy Trial Act,[24] is without any basis. Defendant is properly joined in a case that this Court has deemed to be a "complex case" as defined by Title 18, United States Code, Section 3161(h)(8)(A) and 3161(h)(B)(ii)(iv). Thus, there has been no Speedy Trial violation, and defendant is entitled to no relief.

**B.      Defendant Martin's Motion to Dismiss Counts One and Two for Vagueness**

Defendant Martin has argued that counts one and two of the indictment must be dismissed on vagueness grounds. Defendant Martin states that with respect to count one of the indictment, which charges the defendant as a member of a narcotics conspiracy, that since he is only named in nineteen of the ninety-five overt acts which are listed as part of the narcotics conspiracy, the charge against him is vague and "gives insufficient notice of charges against [him]." Defendant Jerome Martin's Motion to Dismiss Counts One and Two of the Indictment Herein on Fifth and Sixth Amendment Grounds (hereinafter Martin's Motion to Dismiss for Vagueness"). In addition, defendant Martin claims that with respect to the RICO conspiracy charge, since he is named in some, but not all of the racketeering acts which comprise the RICO conspiracy, count two must be dismissed. The defendant argues that the counts "lack sufficient detail to allow a plea of former jeopardy in the event of a later prosecution" and that "these counts are so vague and ambiguous that it is impossible to determine if they violate Defendant Martin's right to be tried only specific charges

---

[24]Defendant Martin's Motion for release on Speedy Trial grounds was denied by this Court on December 14, 1999.

App 570

found by a grand jury." Martin's Motion to Dismiss for Vagueness at 2. These arguments are meritless.

First, the law is clear that a defendant in a conspiracy need not be charged with participating in all aspects of the conspiratorial endeavor. In Salinas v. United States, 522 U.S. 52, 63 (1997), the Supreme Court made clear that "a conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objection and may divide up the work, yet each is responsible for the acts of each other." Thus, it is clear that in a conspiracy setting, the government does not have to prove that each defendant who was a member of the conspiracy agreed to or committed each and every overt act in furtherance of the conspiracy or each and every racketeering act which is part of the RICO conspiracy. Insofar as defendant Martin insists that for him to be found liable for the narcotics conspiracy or the RICO conspiracy, the government must provide information as to how defendant Martin was involved with the sale or possession of cocaine or phencyclidine, or how he was involved in narcotics trafficking in any way from 1988 through 1994, there is absolutely no legal basis for this argument.[25]

Simply stated, defendant Martin has completely misstated the requirements for proof of a conspiracy. As the government's factual proffer in this and previously filed pleadings show, Martin was an integral part of the conspiracy. He furthered both the objectives of the narcotics conspiracy and the RICO conspiracy by engaging in drug distributions, as well as crimes of violence intended to eliminate rival drug dealers and also to ensure that the "K Street" crew maintained their positions of

---

[25] Defendant Martin is charged with his co-conspirators in a conspiracy to possession with intent to distribute and distribute marijuana, crack cocaine, and phencyclidine, which existed from 1988 until 1999.

48

power within the drug community. As the government has indicated in its indictment, the murder of

Tony Fortune was the result of a drug war between 37th Place, S.E. and 58th Street, N.E. As the

government has also pled in its indictment, Martin's move to 37th Place simply extended the realm

in which the K Street crew operated. As stated in the factual proffer, Martin became the largest crack

cocaine dealer in the area of 37th Place and Ridge Road, S.E. Under well-settled case law, Martin's

role in the conspiratorial acts which comprise the narcotics conspiracy and the RICO conspiracy allow

for him to be named as a defendant in both of these counts.

The RICO conspiracy provision, 18 U.S.C. 1962(d), states that "[i]t shall be unlawful for any

person to conspire to violate any of the [substantive RICO provisions]." 18 U.S.C. 1962(d).

Traditional conspiracy doctrine provides that the conspirators need only agree and intend that a

substantive provision be violated, not that each conspirator commit the violation. See United States

v. Neapolitan, 791 F.2d 489, 497-498 (7th Cir.), cert. denied, 479 U.S. 939 (1986). Nothing in the

language of the RICO statute or its legislative history suggests that Congress intended to depart from

that longstanding doctrine, or to add any special element of proof that was not required by application

of general conspiracy principles. A RICO conspiracy offense therefore occurs if there is an agreement

among the conspirators to conduct the affairs of an enterprise through a pattern of racketeering

activity, which includes the agreement that the conspirators, as a group, will commit two or more

racketeering acts constituting such a pattern. There does not need to be an agreement that each and

every conspirator will commit two or more crimes comprising a pattern of racketeering activity. "All

that is needed to be shown is that the defendant agreed to commit substantive racketeering offense

through agreeing to participate in two predicate acts, and that he knew of the general nature of the

conspiracy and that the conspiracy extended beyond his individual role." United States v. Rastelli,

870 F.2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982 (1989). Here, of course, we allege that

49

defendant Martin not only agreed to participate in 14 predicate acts, but rather that he did in fact commit those acts. This conduct in and of itself is proof that defendant Martin was aware of the general nature of the conspiracy, and given the plethora of conduct in which his co-conspirators engaged, certainly the conspiracy extended beyond his individual role.

With respect to the narcotics conspiracy, the defendant cannot show that a dismissal of count one is warranted. In essence, the defendant makes a sufficiency of the evidence argument in which he claims that the count does not provide "specific information" about Martin's role in distributing or possessing cocaine or phencyclidine or how he was involved in narcotics trafficking from 1988 until 1994. Again, this level of specificity is not necessary in order to sustain a conviction on count one. In United States v. Rhynes, 206 F.3d 349, 361 (4th Cir. 1999), cert. denied, 120 S.Ct. 2234 (2000), the defendants were convicted of conspiracy to possess with intent to distribute cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846. Defendant Gormley argued that there was no evidence that he trafficked in marijuana and crack cocaine, and therefore, could not be held liable as a member of the conspiracy. Id. at 366. The Court rejected this argument, stating that the evidence was sufficient to establish that Gormley and the other defendants were part of the overall narcotics conspiracy. In so doing, the court stated, "circumstantial evidence, including a defendant's 'relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy,' may be used to prove the existence of and the participation in a conspiracy. In addition, 'to sustain [a] conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation.'" Id. (citations omitted). In Rhynes, the government used these relationships among the co-conspirators in order to show the conspiratorial relationship which existed, even though each defendant did not participate in each aspect of the conspiracy.

50

Furthermore, whether the defendant joined the conspiracy at its inception is of no consequence. In United States v. Bridgeman, 523 F.2d 1099, 1108 (D.C. Cir. 1975), cert. denied, 425 U.S. 961 (1976), the United States Court of Appeals for the District of Columbia Circuit stated that "where the evidence shows that a defendant knew of the conspiracy, associated himself with it, and knowingly contributed his efforts during its life to further its design, he may be convicted of the conspiracy.". This liability exists even where a defendant joined the conspiracy after its inception, even where the defendant did not participate in all acts of the conspiracy, and even where acts taken in furtherance of the conspiracy occurred prior to and subsequent to the defendant's joined into the conspiracy. Id. at 1108. In the instant case, this means that Martin again can be held responsible as a member of the narcotics conspiracy even if the overt acts do not allege that Martin possessed or distributed marijuana on any particular date or that Martin engaged in any specific drug sales from 1988 until 1994. Since the evidence will show that defendant Martin knew of the conspiracy, associated himself with it, and contributed to its goals, he is liable for the acts with which he is charged.

Defendant Martin cites three cases for the proposition that a dismissal is warranted in the instant case. Upon a close reading of each of these cases, it is clear that defendant Martin's reliance upon them is misplaced. In United States v. Cecil, 608 F.2d 1294 (9th Cir. 1979), a conspiracy indictment was found to be vague and was dismissed where the indictment

> aside from tracking the language of the pertinent statutes in setting out the elements of the offenses with which defendants were charged . . . makes only two specific allegations concerning the conspiracies. It states that the conspiracies occurred in Arizona, Mexico, and elsewhere and offers the names of some of the alleged co-conspirators. The indictment fails to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof. More importantly, the indictment fails to place the conspiracies within any time frame. The language 'beginning on

51

App 574

or before July, 1975, and continuing thereafter until on or after
October, 1975,' is open-ended in both directions.

Id. at 1296. Here, of course, none of these problems exist. The indictment sets out in great detail

the goals of the conspiracy; the ways, manners, and means to accomplish the conspiracy; and the

overt acts taken in furtherance of the narcotics conspiracy. As to the RICO conspiracy, the

indictment sets forth the parameters of the enterprise, the role of each identified member of the

enterprise, and the racketeering acts which comprise the pattern of racketeering activity. Unlike the

indictment in the Cecil case which "clearly lacked a statement of the facts and circumstances that

would inform the accused of the specific offenses with which they were charged," the indictment in

the present case, at great length provides defendant Martin with adequate notice of the charges

against him.

Similarly, defendant Martin's reliance upon the case of Russell v. United States, 369 U.S. 749

(1962) is entirely misplaced. In that case, the defendants were charged and convicted of refusing to

answer questions when summoned before a congressional subcommittee. The Supreme Court

reversed the convictions because the indictment did not state the subject under inquiry at the time of

the defendants' refusal to answer. The Court stated the indictment was faulty insofar as criminality

could not be found for this conduct if the question which the witness refused to answer did not

pertain to a subject under investigation. In other words, if the question was not pertinent to the

matter under inquiry, the witness/defendant would have a right not to answer the question. Thus,

without knowing what the subject matter of the investigation was, the defendant could not exercise

his constitutional rights. Id. at 755. The Court indicated that there are two protections

> which an indictment is intended to guarantee, reflected by two of the
> criterial by which the sufficiency of an indictment is to be measured.
> These criteria are first, whether the indictment 'contains the elements
> of the offense intended to be charged,' and 'sufficiently apprizes the

52

> defendant of what he must be prepared to meet,' and secondly, 'in a case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extend he may plead a former acquittal or conviction.'

Id. at 763-64. In Russell, the deficiency in the indictment was that the defendant could not prepare himself to the meet the allegations set forth in the indictment because he did not know what questions were pertinent to the subject then under investigation by the congressional body which summoned him. Thus, the defendant could not mount a defense or be prepared to address the proof against him. Defendant Martin has been given specific overt acts and racketeering acts which in great detail set forth the criminal conduct which is the crux of the two conspiracies. Defendant Martin has knowledge of the specific time frames of the criminal conduct, and in most instances, the names of the other individuals who engaged in the overt acts and racketeering acts with him. Moreover, defendant Martin has been told which of the crimes of violence can be grouped as part of particular "beefs" that defendant Martin and his co-conspirators had with other individuals across the Washington, D.C. area.

In United States v. Nance, 533 F.2d 699 (D.C. Cir. 1976), an indictment was properly dismissed where the indictment alleged that the defendants committed ten counts of obtaining something of value by false pretenses but failed to indicate what the false pretenses were. Without knowing any of the factual particulars of the false representations which defrauded the victim, the defendant in the Nance case was completely unable to prepare a defense in connection with the criminal allegations. Given that defendant Martin has a detailed indictment, which gives him not only specific conduct in which he directly participated, but also provides him with specific conduct which his co-conspirators directly participated, he clearly has the means by which to address the allegations raised in counts one and two of the indictment. There is nothing which prevents defendant Martin

53

from knowing what allegations are raised against him, the specific criminal conduct in which he engaged, the specific criminal conduct in which his co-conspirators engaged, and the scope of the conspiracies in which he is charged. For those reasons, defendant Martin's motion to dismiss should be denied.

**C.     Defendant Carson's Motion for Dismissal for Alleged <u>Brady</u> Violations**

Defendant Carson seeks (1) the dismissal of Counts 5-8, as well as an order from the Court that would (2) preclude the government from introducing any evidence relating to those charges at trial, (3) require the disclosure of other material and witnesses requested by the defense, and (4) establish a mechanism for an independent review of the files of the U.S. Attorney's and the law enforcement agencies involved in this investigation. Defendant claims he is entitled to this extraordinary relief because of what he claims are <u>Brady</u> violations committed by the government. Defendant's claim of a <u>Brady</u> violation is baseless. Therefore, he is entitled to no relief.

<u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny hold that "the **suppression** by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id</u>. at 87 (emphasis supplied). There are "three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence **must have been suppressed** by the [government], either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 282-3 (1999) (emphasis supplied).

In his motion, defendant Carson discusses the offenses with which he is charged and the exculpatory evidence that the government has provided. The alleged <u>Brady</u> violation involves

54

App 577

material disclosed to the defense at least five months prior to the trial date.[26] Thus, by definition, there can be no Brady violation where the information has been disclosed prior to trial. By the time of trial, the defense will have had the information at issue for nearly half a year. Given this fact, it is understandable that the defense does not request a continuance of the trial date, which would normally be the only appropriate remedy where the defense contends it has had inadequate time to investigate new information.

Given that there has been no suppression by the government of exculpatory evidence, there has been no Brady violation, and defendant is entitled to no relief from the Court.

**D.** **Defendants Carson's and Martin's Motion to Strike All Aliases From the Indictment**

Defendants Carson and Martin moves this Court to strike the government's use of all aliases in the indictment. According to the defendants, use of an alias serves is unfairly prejudicial and serves no legitimate purpose. Defendant's motion is baseless because the use of defendant Carson's alias – "Chin" – and Martin's alias -- "Pimp"-- will serve to identify them at trial.

"If the Government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion

---

[26]Indeed, most of the material discussed was turned over on April 21, 2000, nearly seven months prior to trial; a following batch of material was turned over May 30, 2000, almost six months prior to the scheduled trial date. A more precise list of what was disclosed when follows:

The following reports were turned over April 21, 2000: Officer Daniel Whalen's report of December 29, 1989 (bate-stamped 902303-04); FBI report dated January 21, 1992 (bate-stamped 902306); Detective Munsey's report of April 24, 1995 (bate-stamped 902309); two-page resume (bate-stamped 902310-11, Detective Parson and Queen's resume of April 4, 1991 (bate-stamped 902312). The following reports were turned over on May 30, 2000: one-page resume by Detective Bob Vacin resume of December 25, 1989 (bate-stamped 902436); Officer Whalen and Detective Wagner's resume of January 4, 1990 (bate-stamped 902435); one-age resume by Detectives Parson and Queen of June 11, 1991 (bate-stamped 902433). The following documents were disclosed June 16, 2000: grand jury testimony of Anna B. Davis; resume of Detectives Pearson and Queen from April 15, 1991; one-page resume (bate-stamped 902481).

55

App 578

of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted." United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1975) (citations omitted). The authority cited by defendant is inapplicable to the instant situation. In those cases, the use of an alias was not necessary to "prove up" the acts charged. In this case, many government witnesses will identify both defendant Carson and Martin solely by his their street names "Chin" and "Pimp." Thus, the inclusion of the alias in the indictment causes no unfair prejudice to the defendants.

## IV. DEFENDANTS' MOTIONS FOR DISCOVERY

### A. Defendants' Motion Requesting Identification Of Witnesses With Juvenile Adjudications Or Cases

Defendants ask that the Court order the government to disclose the identities of all witnesses who either have juvenile adjudications on their records or who have pending juvenile proceedings in order to assess whether the juvenile files contain impeachment information that the defense can use on cross-examination. The defendants argue that their right to such impeachment material supersedes the witness' right to privacy in his juvenile files. In making that argument, the defendants describe a procedure by which courts have reviewed such files in camera and made that assessment without the participation or knowledge of defense counsel.

The government subscribes to the procedure described in the defendants' motion, and will ensure that the Court has the information necessary to obtain and review any juvenile files for that purpose. Since there is no role for the defense in that procedure, the government has declined the invitation to identify those potential witnesses who have juvenile matters on their records. In the absence of authority compelling disclosure, the government chooses to respect the confidentiality of those records. Pennsylvania v. Ritchie, 480 U.S. 39, 58-60 (1987) (trial court should perform in camera review to determine whether file contains "material" evidence that would justify overriding

56

the confidentiality that juvenile files are typically accorded); United States v. Trevino, 89 F.3d 187, 190 (4th Cir. 1996) (same); Hammon v. United States, 695 A.2d 97, 105-106 (D.C. 1997) (same); McKinzy v. Wainright, 719 F.2d 1525, 1529 n.10 (11th Cir. 1983) (to protect juvenile's privacy interests court may perform in camera review of any juvenile adjudications to determine if such information would be relevant for impeachment).

**B.      Defendants' Motion Requesting Disclosure Of Confidential Informants**

The defendants[27] seek the disclosure of confidential informants who participated in, or were witnesses to, the crimes charged in the indictment, regardless of whether they will be called at trial. The defendants are not entitled to such disclosure at this time.

In making the determination of whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the informant's identity against the defendant's right to prepare a defense. Roviaro v. United States, 353 U.S. 53, 62 (1957).[28] In Roviaro, the Supreme Court recognized "the Government's privilege to withhold from

---

[27]Defendant Hill, while not "joining" in this motion, filed a virtually identical motion on his own seeking this same information. The government's response, therefore, applies with equal force to defendant Hill's request.

[28]Defendant bears a "heavy burden in establishing that disclosure is warranted." United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir. 1996). In his motion, defendant speculates that if the government provides the informant's names, he will be able to seek "useful and relevant information" from those informants. "Mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden." Id. For this reason alone, disclosure is not required) (quoting United States v. Skeens, 449 F.2d 1066, 1070 (D.C. Cir. 1971)). "If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informer had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more." Skeens, 449 F.2d at 1070-71 (quoting Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959)).

57

App 580

disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law." Id. at 59 (citing, inter alia, Vogel v. Gruaz, 110 U.S. 311, 316 (1884) and In re Quarles, 58 U.S. 532 (1895)). It explained:   The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. Id. The Court also held, for the first time in its history, that a trial court had erred by refusing to order disclosure of an informant's identity. The defendant in Roviaro was charged with the illegal transportation and sale of narcotics to one "John Doe," a confidential police informant. Id. at 55. During the trial the informant's part in the charged transaction and his conversation with the defendant were described in detail by government witnesses. Id. at 55- 57. The evidence revealed that the informant was the sole participant, other than the defendant, in the crimes charged; that he had been present with the defendant throughout the commission of the alleged crimes; and that he "was the only witness in a position to amplify or contradict the testimony of government witnesses." Id. at 55, 64. Under these circumstances, the Court reasoned, the informant's "identity and testimony" were so "highly material" and "vital" to the defense, id. at 63, that disclosure was mandated by "the fundamental requirements of fairness," id. at 60. As a general matter, the Court held, motions seeking disclosure of an informant's identity must be resolved by "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62.

The instant case can be easily distinguished from the facts present in Roviaro. Here, we have a number of individuals who may be characterized as "informants." However, there is no overt act or racketeering act or substantive count in which the sole witness against the defendants will be an undisclosed "informant." In this case, the government intends to call several witnesses who can be

58

called "informant," but these witnesses will be supplemented by law enforcement and other civilians who were not participants in the charged conduct.[29]   Accordingly, the defendants in this case will not be put in the position set forth in Roviaro where the only other participant in the crime was an undisclosed government informant.  For this reason alone, the defendants' motion lacks merit.

In his motion for disclosure the defendant also requests information pertaining to benefits that the informants have received from the government.  To the extent that the defendant is entitled to this information for impeachment purposes, the government thoroughly intends to disclose all such information as required by Brady, and Giglio v. United States, 405 U.S. 150 (1972), at the same time it discloses Jencks material, so that such information may be used during cross-examination.  See also, United States v. Phillips, 854 F.2d 273, 276 (7th Cir. 1988).

### C.    Defendants' Motion For Early Production Of Jencks Material

The defendants have moved this Court to order the government "to release all Jencks materials prior to the commencement of trial."  The defendants claim that this Court should not require counsel to evaluate Jencks material for the first time during trial.[30]

The defendant's request for Jencks material prior to trial is plainly at odds with the statute itself, which does not obligate the United States to produce such materials until after the direct examination.  See 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on

---

[29]Nor are defendants entitled to pretrial identification of so-called "jailhouse informants." The D.C. Circuit has "long adhered to the rule that Rovario does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged." Warren, 42 F.3d at 654.  Since "jailhouse informants" fit squarely in this category, the government has no obligation to provide the defense the identities of any such witnesses.

[30]Defendant also claims that early disclosure will allow defendant "the opportunity to investigate potentially exculpating information that is guaranteed to be within the so-called Jencks material." To the extent defendant is seeking Brady material, the government has complied and will continue to comply with its Brady obligations.

59

direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness which relates to the subject matter as to which the witness has testified."); United States v. Tarantino, 846 F.2d 1384, 1414 (D.C. Cir.) (per curiam) ("The Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case."), cert. denied, 488 U.S. 867 (1988). Defendant's request is also at odds with the Rules of Criminal Procedure. See Fed. R. Crim. P. 26.2(a) (disclosure not required until after the witness has testified on direct examination).

The fact that early disclosure of Jencks material may assist the defendants in preparing for trial is no reason to disregard the statute. See generally Tarantino, 846 F.2d at 1414-1415 (defendant not entitled to early disclosure of Jencks Act statements even when the statements may have assisted in cross-examining other witnesses called by the government earlier in the trial). The Jencks Act and the Rules authorize the government's disclosure of Jencks material at the time of trial. See Tarantino, 846 F.2d at 1414 ("This congressional determination is not to be disregarded by the courts."); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) (Jencks Act controls statements by witnesses and district court has "no inherent power to modify or amend the provisions of that Act"). While the government recognizes the need to schedule its Jencks disclosures so as not to delay the trial, its legitimate concerns for witness security counsel against early disclosure in this case.

**D.     Defendants' Motion for Pretrial Production of Statements of Persons Who Will Not Be Called As Witnesses at Trial**

The defendants also claim that they are entitled to the statements of witnesses who will not be called at trial. This is an incorrect statement of the law. The defendants are only entitled to statements of non-testifying witnesses or coconspirators if those statements qualify as Brady material.

60

United States v. Williams-Davis, 90 F.3d 490, 512-14 (D.C. Cir. 1996), cert. denied, 519 U.S. 1128 (1997). In Williams-Davis, one of the defendant's coconspirators was not available to testify. Id. at 512. Therefore, the government called another witness to introduce the unavailable coconspirator's statements. Id. Defendant sought discovery of all remaining statements by the coconspirator. Id. The D.C. Circuit held that the Jencks Act did not entitle defendant to these statements. Id. at 512-14. If the defendant is not entitled to the statements of non-testifying witnesses at trial, a fortiori, he is not entitled to them before trial.

Moreover, the disclosure of witness statements prior to trial would be a violation of law. See United States v. Tarantino, 846 F.2d 1384, 1414 (D.C. Cir. 1988), cert. denied, 488 U.S. 867 (1989) ("Federal Rule of Criminal Procedure 16(a)(2) prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jenks Act, 18 U.S.C. § 3500(a). Given that the law prohibits the early disclosure of witness statements, it should go without saying that the disclosure of individuals whom the government will not be calling as witnesses is similarly prohibited.

Consequently, defendant's claim that he is entitled to the statements of witnesses that the government does not intend to call at trial is unfounded. To the extent any such statements would amount to Brady material, the government fully intends to comply with its Brady obligations. Otherwise, defendant simply is not entitled to these statements, and his claims to the contrary should be rejected.

### E.     Defendants' Motion For Discovery Of Statements Of Co-Defendants and Co-Conspirators

Defendant Carson also claims that he is entitled to the "relevant written or recorded statements made by any codefendant or claimed coconspirator, indicted or unindicted . . . or [t]he

61

substance of any oral statement that the government intends to offer in evidence . . . made by any codefendant or claimed coconspirator . . . in response to interrogation by . . . a government agent." Defendant Carson's Motion for Discovery of Codefendants and Co-conspirators at 1. Defendant's motion, made without reference to any legal support, is baseless.

Defendants' argument was rejected by this circuit in United States v. Davis, 90 F.3d 490 (D.C. Cir. 1996) cert. denied 519 U.S. 1128 (1997). The Davis court, citing its rationale employed in United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir. 1988), held that Rule 16(a)(1)(A) could not be read to permit such discovery, implicitly because it would violate the balance chosen by Congress between the defendant's interest in use of non-witness materials and the government's interest in their non-disclosure." Davis 90 F.2d at 513 (citations omitted). According to Davis,

> merely because one set of rules (internally consistent, one hopes) makes two distinct items equivalent for some specific purpose, it does not follow that they are equivalent for all related purposes. That a declarant's statement becomes a statement of the defendant under F.R.E. 801(d)(2)(E) does not mean it becomes the defendant's statement for purposes of F.R.Crim. Pro. 16(a)(1)(A), Tarantino; that a declarant is treated as a witness for purposes of Rule 801(d)(2)(E) or Rule 806 does not mean he becomes one for purposes of the Jencks Act.[31]

Id. In any event, all of the defendants in this case have previously been provided with copies of all statements made by these defendants to law enforcement. This was more discovery than that which they were legally entitled to.

**F.     Defendants' Motion Requesting Notice Of Government's Intention To Introduce "Other Crimes Evidence" At Trial**

Defendants seek a court order requiring the government to disclose any "other crimes

---

[31]The Court did note that in the event a declarant contradicted himself on a material point, the government would be obligated under Brady v. Maryland, 373 U.S. 83, 87 (1963) to provide disclosure. Davis, 90 F.3d at 513.

App 585

evidence" regardless of whether the government intends to introduce such evidence under 404(b) or as uncharged acts in furtherance of the conspiracy.

Federal Rule of Evidence 404(b) provides the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The proof which the government intends to introduce at trial does not fall under the definition of Rule 404(b). In order to prove the charged RICO enterprise and conspiracy, the government will present substantial evidence of criminal wrongdoing that does not relate to specific dates and/or incidents charged in the indictment. This evidence -- which can be characterized as "uncharged criminal conduct"-- will not be offered under the authority of Rule 404(b). Rather, it is independently admissible as direct proof of the charged offenses of the conspiracies with which the defendants are charged.

Evidence of acts which are part of, or "inextricably intertwined" with, a charged crime is direct proof of that crime and is not subject to Rule 404(b) analysis. United States v. Badru, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996), cert. denied, 520 U.S. 1213 (1997); United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir.), cert. denied, 506 U.S. 881 (1992); United States v. Diaz, 878 F.2d 608, 614-16 & n.2 & 3 (2d Cir.), cert. denied, 493 U.S. 993 (1989). This rule applies with even greater force where the crime charged is a conspiracy and the so-called "other crimes" are, in fact, direct evidence of the existence of the conspiracy. See Badru, 97 F.3d at 1475 ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b)

63

App 586

because it is not an 'other' crime. The evidence is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused."); United States v. Thai, 29 F.3d 785, 812-13 (2d Cir.) (evidence of uncharged crimes admitted in RICO trial was not 404(b) evidence; these crimes were independently admissible since they were in furtherance of the RICO conspiracy), cert. denied, 513 U.S. 977 (1994); see United States v. Escobar-De Jesus, 187 F.3d 148, 168 n.17 (1st Cir. 1999) ("Because we conclude that the Lajas incident was not 404(b) evidence, but rather was direct evidence of the conspiracy charged, we have no occasion to decide whether [the witness's] testimony went beyond matters included in the notice required by Rule 404(b)."); see also United States v. Green, 175 F.3d 822, 831 (10th Cir.), cert. denied, 120 S. Ct.132 (1999); United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir.), cert. denied, 525 U.S. 878 (1998); United States v. Miller, 116 F.3d 641 (2d Cir. 1997), cert. denied, 524 U.S. 905 (1998); United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996); United States v. Maceo, 947 F.2d 1191, 1198-99 (5th Cir. 1991), cert. denied, 503 U.S. 949 (1992); United States v. Coiro, 922 F.2d 1008 (2d Cir.), cert. denied, 501 U.S. 1217 (1991); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Angelilli, 660 F.2d 23, 39 (2d Cir. 1981), cert. denied, 455 U.S. 910 (1982); United States v. Salazar, 485 F.2d 1272, 1276 (2d Cir. 1973), cert. denied, 415 U.S. 985 (1974); McCormick on Evidence § 190 at 800 & n.17.[32]

---

[32]Where evidence of the defendants' acts are either inextricably intertwined with a charged conspiracy, or is evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis, regardless of whether those acts fall outside the period during which the indictment alleges the conspiracy existed. United States v. Diaz 878 F.2d at 614-616 & n.2 (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); United States v. Bates, 600 F.2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior); United States v. Bermudez, 526 F.2d 89, 95 (2d Cir.),

App 587

Should the government believe that any of the evidence which it intends to elicit falls outside the parameters of evidence of the conspiracy, it will raise the matter preliminarily at trial.[33]

G.  Defendants' Motion Requesting Notice Of Government's Intention To Introduce Statements At Trial Under The Residual Hearsay Rule

Federal Rule of Evidence 807[34] requires that the government notify the defendant in a timely manner if it intends to introduce "residual hearsay." See United States v. Bachsian, 4 F.3d 796, 799 (9th Cir. 1993) (proponent should provide pretrial notice if it intends to rely upon residual hearsay rule for admission), cert. denied, 510 U.S. 1080 (1994). According to Rule 807, the proponent of residual hearsay must make the statement "known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant." Fed. R. Evid. 807. The rule only requires that the proponent provide notice so the opposing party has a fair opportunity to "meet it." If the government determines that it intends to introduce residual hearsay, it will comply with the requirements of the rule.

H.  Defendants' Motion For A Pretrial Hearing To Determine Admissibility Of Each Proposed Expert

Defendant requests a pretrial hearing "to assess the bases and qualities of each respective

---

cert. denied, 425 U.S. 970 (1975) (upholding admission of traces of narcotics and narcotics-related equipment seized in home six weeks after conspiracy to distribute cocaine ended).

[33] The government has informed defense counsel that it intends to introduce evidence pertaining to the murders of Vincent Willis, Keith "Whitey" Johnson, and Robert Smith at trial, notwithstanding the fact that there murders have not been charged in the indictment.

[34] In 1997, Rules 803(24) and 804(b)(5) were combined into one rule and added to the Federal Rules of Evidence as Rule 807. "The new rule was created solely to facilitate additions to Rules 803 and 804 [and] no change in meaning was intended." See Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence, R. 807 (1998) (citing Fed. R. Evid. 807 Advisory Committee Note (1997)). Therefore, the government responds to defendant's motion as if it was filed under Rule 807.

expert opinion [and] the reliability and admissibility of the testimony to be offered by each expert." In support of this motion, defendant cites Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Supreme Court held that a trial court must assess whether an expert's testimony "rests upon a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. When determining whether expert testimony is admissible, courts must make a preliminary assessment of: (1) "whether the reasoning or methodology underlying the testimony is scientifically valid," id. at 592-93; and (2) "whether the reasoning or methodology properly can be applied to the facts in issue," id. at 593.

The Daubert Court never held, however, that the required preliminary assessment had to be conducted prior to trial. Nor did the Court indicate that such assessments had to be conducted in relation to routine scientific procedures. Cf. id. at 593 n.11 (some scientific theories are "so firmly established as to have attained the status of scientific law"). In United States v. Nichols, 169 F.3d 1255, 1263 (10th Cir.), cert. denied, 120 S. Ct. 336 (1999), for example, the defendant requested a similar pretrial hearing to determine the admissibility of expert testimony. The district court declined to hold a hearing because "the challenged evidence does not involve any new scientific theory and the testing methodologies are neither new nor novel." Id. The court further explained that any challenge to the protocol followed by the particular expert witness--as opposed to the underlying scientific basis for the testimony--can be considered and ruled upon after the expert testifies at trial. Id.

In this case, the government intends to call medical examiners and experts on fingerprint identification, ballistics testing and, perhaps, a narcotics expert. None of these areas of expertise involves new or novel scientific theories that would require a Daubert hearing. Any defense need to challenge the reliability of the specific expert testimony can be satisfied when the parties conduct voir

66

App 589

dire prior to the admission of any expert opinions.[35]

I.  **Defendants' Motion for Pretrial Determination of Existence of the RICO Enterprise and Conspiracy**

Defendants argue for a pretrial determination by this Court as to the sufficiency of the government's evidence that demonstrates the existence of a racketeering enterprise and conspiracy. One of those motions, styled Defendant Sweeney's Motion for In Camera Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise, requests the Court to review grand jury transcripts to determine whether the government can establish the existence of such an enterprise. The other motion, styled Defendant Sweeney's Motion for Pretrial Hearing to Determine the Existence of a Conspiracy and to Determine the Admissibility of Co-Conspirators Statements,[36] asks for essentially the same showing to be made in an open hearing.[37]

---

[35]Defendant also requests "a detailed written proffer of the testimony to be offered by each expert." Consistent with Rule 16, the government has provided defendant with its expert reports. Moreover, in accordance with Rule 16(a)(1)(E), the parties will exchange written summaries that describe the expert opinions, "the bases and reasons for those opinions, and the witnesses' qualifications." The rules require nothing more.

[36]Federal Rule of Evidence 801(d)(2)(E) provides that statements of co-conspirators made in furtherance of the conspiracy are not hearsay. A statement made by a co-conspirator in furtherance of the conspiracy is admissible against all co-conspirators. United States v. (Joseph) Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980). To admit such statements, the government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy. United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir 1992) (citing Bourjaily v. United States, 438 U.S. 171, 175 (1987)).

[37]The two motions effectively demand the same showing. The same evidence that establishes the existence of the racketeering enterprise also demonstrates the existence of a racketeering conspiracy. In order to prove a RICO conspiracy, the government must make the following showing:

> (1)   That the conspiracy to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity was willfully formed and was in existence on or about the time alleged; and

App 590

In essence, the defendants are seeking a mini-trial of the whole indictment in this case. A demonstration of the existence of this RICO conspiracy and enterprise would require a rendition of the whole case, as every piece of evidence in this case relates to this enterprise. With 101 separate racketeering acts and substantial background evidence relating to the enterprise, such a hearing would be a lengthy and time-consuming undertaking.

The case law in this and other jurisdictions counsels that such a suggestion be rejected. Appellate courts have routinely upheld the practice of deferring the determination of a defense motion until the trial if that motion requires "deciding issues of fact that are inevitably bound up with evidence about the alleged offense itself." United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994), cert. denied, 514 U.S. 1051 (1995). See also United States v. Gantt, 617 F.2d 831, 845 (D.C. Cir. 1980) (in upholding trial court's refusal to hold pretrial hearing into the existence of a conspiracy so as to determine admissibility of statements under coconspirators' exception to hearsay rule, D.C. Circuit explained that "[a]s a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators 'subject to connection'"); see also Joseph Jackson, 627 F.2d at 1218 (trial courts are not required to hold "mini-trials" on the conspiracy issue before the conditional admission of a co-conspirator's statements). This is particularly true when the defense motion is nothing more than an attack on the sufficiency of the evidence--a motion for judgment of acquittal in limine. In that case, the presumption accorded

---

    (2)    That the defendant agreed to participate directly
            or indirectly in the affairs of the enterprise.

See Elliott, 571 F.2d 880. The government easily demonstrates the conspiracy in this case with the evidence that the defendants and their associates repeatedly teamed up to commit robberies, sell drugs, and engage in other acts of violence. Id. at 882 (fact of the conspiratorial agreement can be proved by inference drawn from the conduct of the alleged conspirators).

68

App 591

a facially valid indictment overrides the defendant's interest in having a preliminary review of the evidence and compels him to await the conclusion of the government's case before seeking relief based upon an argument of insufficient evidence.

### J. Defendants' Motion Requesting Itemization Of Evidence That Is Arguably Subject To Suppression

Under the guise of Federal Rule of Criminal Procedure 12(d)(2), defendant seeks a "pretrial written itemization of evidence arguably subject to suppression." Rule 12(d)(2) provides in pertinent part that "defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this rule, request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16."

Defendant's motion should be rejected because the government has already complied with Rule 12(d)(2). The government has provided itemized lists to the defendant of the evidence it seized from defendant, defendant's house and defendant's jail cell, and has informed defendant that it may use this evidence at trial. Should any additional information come to light that would fall under the obligations of Rule 12(d)(2), the government will notify defendant of same.

### K. Defendant's Carson's Motion For A Bill Of Particulars

Defendant Carson has moved for a bill of particulars about the indictment which requests a scope of information ranging from specifics about defendant Carson's alleged involvement in both the narcotics conspiracy and the RICO conspiracy, including the information pertaining tot e organizational role he allegedly played in the RICO conspiracy. This motion should be denied.

The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a

App 592

defense, and perhaps also to be protected against retrial on the same charges." United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987); United States v. Esquivel, 755 F. Supp. 434, 436 (D.D.C. 1990). "It is not the function of a bill of particulars to provide a detailed disclosure of the government's evidence in advance of trial." Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968); see also United States v. Torres, 901 F.2d 205, 234 (2d Cir.) ("[a]cquisition of evidentiary detail is not a function of a bill of particulars"), cert. denied, 498 U.S. 906 (1990); United States v. Armocida, 515 F.2d 49, 54 (3rd Cir.) (bill of particulars is not intended as a vehicle for "whole sale discovery of the Government's evidence"), cert. denied, 423 U.S. 858 (1975). Nor is it designed to force the government to reveal a theory of its case that the defendant could then use to limit the government's presentation of its case at trial. Torres, 901 F.2d at 234; United States v. Burgin, 621 F.2d 1352 (5th Cir.), cert. denied, 449 U.S. 1015 (1980). The defendant's constitutional right underlying a bill of particulars is to know the offense with which he is charged, not to know the details of how it will be proved. United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982).

This objective has been more than met by the voluminous discovery provided to date to defense counsel and by the detailed factual proffer included in this submission and in previous submissions.[38] The defense has received exceptionally thorough discovery in this case. They have attended several viewing sessions of the physical evidence in the case. They have received numerous boxes full of documentary discovery--including police reports, witness statements and the like--which

---

[38]The government's previously filed Opposition to Defendants' Joint Motion To Sever Counts and Defendants as well as its pleading to admit Out of Court Statements Made by Murdered Witnesses both included lengthy and detailed factual proffers.

70

was not required discovery under Rule 16.[39] They have been provided xerox copies of literally thousands of documents and photographs. They have also received several lengthy documents that detail much of the evidence in the case and thoroughly describe the investigation that led to this indictment.

The government would suggest that its compliance with its Rule 16 obligations and its voluntary disclosures of additional information have placed defense counsel in a better position than even the most detailed bill of particulars might afford. As such, there is no basis for the additional disclosures sought by this motion. See, e.g., Butler 822 F.2d at 1193 (where the indictment is sufficiently specific or if the requested information is available in some other form, a bill of particulars is not required); United States v. Glecier, 923 F.2d 496, 502 (7th Cir.) (demand for a bill of particulars was denied where indictment and government's pretrial disclosures provided defendants with sufficient information concerning the charges against them), cert. denied, 502 U.S. 810 (1991); United States v. Marrero, 904 F.2d 251, 258 (5th Cir.) ("when the information requested is provided in some other form, no bill of particulars is required"), cert. denied, 498 U.S. 1000 (1990).

In light of the strict limitations placed on the proper scope of bills of particulars and the information already provided to defense counsel in this case, the government should not be required to provide a bill of particulars.

**L.     Defendant Carson's Request for Impeachment Evidence Prior to Trial**

Defendant Carson now makes the identical request previously made by defendant Sweeney for impeachment evidence of its witnesses. The government previously filed a response to this

---

[39]Given the voluminous amount of discovery involved in this case, the government has not attached each of the discovery letters sent to defense counsel in this matter. Should the Court want to review the letters provided to defense counsel, the government will supplement its response expeditiously.

App 594

request and this Court, by its order dated July 13, 2000, denied defendant Sweeney's discovery motion. No different decision should occur in this instance.[40]

### M. Defendant Carson's other Brady demands.

Defendant Carson seeks the name and address of any witnesses to the murder of Anthony Fortune that heard co-defendant Jerome Martin claim sole responsibility for the murder. The evidence at trial will show that both defendant Carson and defendant Martin participated in this murder. Defendant Carson is alleged to have been the trigger-man. Defendant Martin told numerous people that either "he" (Martin) or "they" (he and Carson) killed Fortune. All of these witnesses will be called at trial and will be available to be cross-examined. It is the government's contention that to the extent that co-defendant Martin's bragging that he killed Tony Fortune exculpates defendant Carson (a dubious proposition since Martin's claimed culpability does not necessarily exculpate defendant Carson) those witnesses will be made available at trial. None of these "ear-witnesses" to co-defendant Martin's statements witnessed the murder. Therefore, the government does not believe they need be identified for the defense.[41]

### N. Defendant Sweeney's Third Motion to Compel Discovery

Defendant Sweeney has filed a motion to compel discovery, claiming that he is entitled to

---

[40]In his motion, defendant Carson differentiates between evidence which is merely impeaching and that which is impeaching *but also may lead to other exculpatory* evidence. The government agrees that this is an important and valid distinction and will disclose evidence which falls into this latter category.

[41]Defendant Carson also seeks the statement made by James Montgomery to Prince George's County investigators regarding the triple homicide because, according to this argument, Montgomery failed to identify Carson in this initial statement. In fact, Montgomery's initial statement to investigators in Prince George's County did implicate defendant Carson. (The government has informed counsel for Carson that the government had previously misinformed counsel about this detail of Montgomery's statement and apologized for the confusion.)

App 595

information which he claims is needed to (1) "investigate this complex case"; and (2) "to establish that persons other than William Sweeney had the motive, means and opportunity to commit the crimes alleged" in the indictment. Third Motion to Compel Discovery at 1 (hereinafter "Defendant Sweeney's Motion to Compel"). The government will respond to the requests in the order made by defendant Sweeney:

### Information Pertaining to Robert Smith

For reasons more fully discussed in the Government's Motion to Admit Statements of Murdered Witnesses, the government submits that the defendant has failed to show how he is entitled to the information requested regarding Robert "Butchie" Smith. Specifically, as to statements made by Robert Smith to law enforcement, the government has provided defendant Sweeney with F.B.I. 302 forms completed in connection with interviews with Mr. Smith. The government has not provided to defense counsel any rough notes taken during interviews of Smith by prosecutors or law enforcement. The information contained in any rough notes were provided in narrative form to defense counsel in the government's motion.

Defendant Sweeney now argues that he is entitled to all statements made by Robert Smith to law enforcement in order to "effectively assess his credibility and reliability." Defendant Sweeney's Motion to Compel at 2. Defendant Sweeney incorrectly believes that he is entitled to a pre-trial preview of Smith's testimony and the circumstances under which they were made. If the government meets its burden in showing, by a preponderance of the evidence, that defendant Sweeney procured the unavailability of Robert Smith at trial, the statements made by Smith are admissible. As to whether the jury should credit the statements or not, this is an issue to be aired out before the jury. In the Antone White case, the Honorable Harold H. Greene stated that "objections as to relevance, unfair prejudice under Fed. R. Evid. 403, and any other valid evidentiary objections, should be made

73

at the time the statement is actually to be introduced at trial." <u>United States v. White</u>, 838 F. Supp. 618, 625 (D.D.C. 1993). The defendant should not be put in a "better" position to have a full preview of Smith's statements in all written form given that Smith was murdered. As Judge Greene stated, "[t]he purpose of finding a waiver is limited to allowing the adverse party to present statements made by the unavailable witness as if the witness were actually able to take the stand." <u>Id</u>. If Robert Smith were alive to testify – as the government hoped – defendant Sweeney would not be entitled to a pretrial review of any and all notes taken by prosecutors and law enforcement regarding Smith's statements before the trial commenced. Accordingly, they should not be given that benefit in Smith's absence. Therefore, the government declines to supplement the reports already provided to counsel regarding Robert Smith at this time.

Defendant Sweeney also argues that he is entitled to the names and addresses of each individual who was the subject of information provided to law enforcement by Robert Smith. Defendant Sweeney's Motion to Compel at 2. Without any caselaw to support the position taken by defendant Sweeney, he simply asserts that he should be entitled to engage in what amounts to a "fishing expedition" to see (1) if Smith provided information about individuals other than the charged defendants; (2) if he did, who Smith discussed with law enforcement; (3) whether any of the hypothetical people Smith discussed were aware that Smith spoke about them to law enforcement; and (4) whether any such hypothetical person acted on such information. In essence, defendant Sweeney is making a demand under <u>Brady</u>, for any information which would show that a third party committed the crimes attributed to defendant Sweeney. The government recognizes and will continue to notify defendant Sweeney of all <u>Brady</u> material. However, the <u>Brady</u> doctrine does not extend to information which is based purely upon speculation by the defense. There is no information in the possession of the United States that anyone other than William Sweeney and his co-defendants

74

App 597

believed that Robert Smith was cooperating with law enforcement. Without some reason to believe that anyone other than Sweeney was aware of this cooperation, the government believes that the request merits no response. See United States v. Wilson, 160 F.3d 732, 743 (D.C. Cir. 1998) (testimony as to specific names of defendants in other cases against whom murdered witness was to testify was inadmissible in trial arising out of murder, given absence of proffer that one of those individuals had opportunity to kill witness), cert. denied, 120 S.Ct. 81 (1999); Spivey v. Rocha, 194 F.3d 971, 978 (9th Cir. 1999) (in habeas petition, the Court rejected defendant's argument that evidence of decedent's gang membership was sufficient to raise an inference that he was killed by a rival gang for gang related reasons since general "motive or opportunity" is not enough to raise a third-party perpetrator defense where there was no "'direct or circumstantial evidence linking the third person to the actual perpetration of the crime.'") (citation omitted).

The defendant has also requested all information pertaining to a prior shooting of Robert Smith. Defendant Sweeney's Motion to Compel at 2. According to the defense, they have information that Smith was shot multiple times in the early 1990s. Defendant Sweeney denies having participated in the earlier shooting, and he claims that he should receive information about the earlier shooting to establish the motives of others to harm Smith. Again, the government submits that defendant Sweeney is reaching blindly for information which is not material. There is no information in the government's possession that the person or persons responsible for the earlier shooting of Smith had any connection to the circumstances which led to the 1997 murder of Smith. If defendant Sweeney's argument was valid, the government would be required to unearth the names and addresses of anyone who ever disagreed with a decedent in case there were investigative leads which could be created to show that someone else had a motive to harm the decedent. This type of broad brush approach to seeking information is without any legal foundation. In Johnson v. Gibson, 169

75

F.3d 1239 (10th Cir.), cert. denied, 120 S.Ct. 415 (1999), the defendant was convicted of raping and murdering an elderly woman. The defendant subsequently sought habeas corpus relief, claiming inter alia, that he should have been provided with the names of other rape defendants and suspects in unsolved rape cases in order to rebut the evidence or prior, uncharged rapes brought against him during the sentencing phase of his trial. Id. at 1254. The Court rejected the argument, stating that it was "simply to speculative to establish a reasonable probability of a different outcome. Petitioner fails to show how the information regarding unsolved rapes would have been material to his case." Id. Similarly, defendant Sweeney fails to show how an unrelated shooting in which Smith was wounded, and which occurred several years prior to Smith's murder, is material to the defense. Accordingly, the government declines to provide the information requested.

Finally, as to Robert Smith, defendant Sweeney has requested all benefits received or promised to Smith in return for information provided to law enforcement. Defendant Sweeney's Motion to Compel at 3. As stated above, the government recognizes its Brady obligations. Any and all benefits which may have been provided to Robert Smith will be disclosed in sufficient time to allow for appropriate cross-examination of the law enforcement officers who met with Smith. We decline to provide any such information pre-trial.

### Information Pertaining to James Montgomery

In accordance with an order of this Court, the government has provided the Court with a copy of its "investigative files" pertaining to James Montgomery. The Court has since ruled as to whether any pretrial disclosure of the information provided is warranted. Notwithstanding this procedure and the Court's order, defendant Sweeney has again requested additional information at this time, including (1) notes of Special Agent Yow concerning conversations with James Montgomery; and (2) medical records of James Montgomery.

76

App 599

With respect to the first request, the government has provided defendant Sweeney with a F.B.I. form 302 regarding the single conversation that Agent Yow had with James Montgomery. The information provided within the 302 clearly informs the defendant that Montgomery told law enforcement that Wayne Perry was responsible for the 1991 double-murder of Teresa Thomas and Terita Lucas. This was a false allegation by Montgomery which the government believed warranted disclosure. Any notes made in connection with the single conversation need not be disclosed.[42] There is no further information on Agent Yow's notes pertaining to this false allegation. The government is not aware of any other law enforcement officer who spoke with Montgomery in connection with this false allegation.

As to any medical records pertaining to James Montgomery, again, the government submits that any records in its possession have been provided to the Court. However, as to whether defendant Sweeney should be permitted to receive all medical records of Montgomery, the government submits that the proper manner in which the information should be requested is not in the instant motion to compel, but rather a motion to receive medical records and an accompanying subpoena. In its motion, defendant Sweeney should put forth a basis upon which he believes that Montgomery has had a "history of mental difficulties." Unlike the circumstances in the case cited by defendant Sweeney where Judge Rufus King of the District of Columbia Superior Court ordered that psychiatric records be disclosed where the sole witness in a criminal case was a resident of the District of Columbia's institution for the mentally retarded, defendant Sweeney has alleged no specific facts which suggest that James Montgomery's competency is compromised in any way. Thus, without a further showing in the appropriate manner – a motion requesting the issuance of a subpoena

_____

[42] The government previously provided to the Court in its ex parte submission the notes of Agent Yow.

App 600

– the government submits that the request should be denied.

<u>Information Pertaining to Reginald Switzer</u>

In compliance with its <u>Brady</u> obligations, the government has notified defendant Sweeney that Reginald Switzer (a former co-defendant in this case) was shot by Donnell "Robocop" Whitfield in the late 1980s and that Switzer harbored animosity towards Whitfield as a result of the shooting. Defendant Sweeney is charged with the first-degree murder while armed of Donnell Whitfield, which occurred in September 1994. Defendant Sweeney has requested that the government provide the names and addresses of each person who had knowledge about the animosity which existed between Whitfield and Switzer. Certainly Reginald Switzer was aware of the animosity between himself and Whitfield.[43] In fact, Switzer told defendant Sweeney about his anger towards Whitfield. The government hereby informs the defense that an individual named Troy Manny Simmons[44] heard Switzer state "we popped Robo's ass." The government does not believe it must disclose to whom Whitfield may have voiced his animosity towards Switzer. Thus, the government submits that it has fulfilled its <u>Brady</u> obligations on this issue.

**O.     Defendants' Motion For Pretrial Determination Of Admissibility Of Audio Tapes**

Defendants have moved for a pretrial hearing to determine the admissibility of audio and videotapes that the government will seek to introduce at trial. These audio and videotapes consist of surveillance videos conducted of drug activity in the 200 block of K Street, S.W., as well as video and audio recordings of drug transactions that were conducted by undercover police officers. It is the defendant's position that the Court must have a pretrial hearing to ascertain whether the

---

[43] Switzer is presently represented by attorney Patrick Donahue.

[44] Simmons is presently represented by Gregory Spencer.

App 601

government can establish an evidentiary foundation for these tapes. The foundational elements to be explored at such a hearing include:

(1)     That the recording device was capable of making the conversation to be offered into evidence;

(2)     That the operator of the device was competent to operate it;

(3)     That the recording is authentic and correct;

(4)     That changes, additions or deletions have not been made in the recording;

(5)     That the recording has been preserved in a manner that is shown to the court;

(6)     That the speakers on the tape are identified; and

(7)     That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

A pretrial examination of these issues as to each audiotape to be introduced in the government's case-in-chief is necessary, the defendant argues, "to protect against the admission of inappropriate evidence." Motion for a Pretrial Hearing to Determine Admissibility of Video and Audio Tapes at 3.

While the government agrees that the proper foundational elements need to be established before these tapes can be properly admitted into evidence, it is not clear why the defense believes that such a showing must be made in a pretrial hearing. Unless the defense can present some basis for challenging the authenticity of these tapes, there is no reason for the Court to require a pretrial hearing for an issue that will be fully litigated during the trial.

The government understands the foundational requirements and fully intends to satisfy them when it presents its case at trial. The D.C. Circuit Court has explained that "[t]apes may be authenticated by testimony describing the process or system that created the tape . . . or by testimony from parties to the conversation affirming that the tape contained an accurate record of what was

79

said." United States v. Dale, 991 F.2d 819, 843 (D.C. Cir.), cert. denied, 510 U.S. 906 (1993). In this case, the government will present both types of testimony to demonstrate the authenticity of the recordings. Investigators will discuss the process by which the video and audiotapes were made. Participants will also testify that the tape recordings accurately reflect their conversations. It is perfectly sufficient--and standard practice--to establish the foundational elements for these recordings before both the judge who will determine their admissibility and the jurors who will weigh their probative value. See Dale, 991 F.2d at 842 (affirming trial court's admission of audiotapes without making an explicit threshold determination of their accuracy because that foundation was sufficiently established by trial testimony from a party to the conversations that the tapes were accurate and from the investigator responsible for production of the tapes).

## V. DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE, IDENTIFICATION, AND STATEMENTS

### A. Defendant Martin's Motion to Suppress Evidence Seized From Minivan

On September 10, 1991, uniformed officers from MPD were in the area of 60th and East Capitol Streets, N.E. At approximately 10:00 p.m., the officers saw a white Mazda minivan turn from 60th Street onto East Capitol Street, N.E. Gunshots were heard coming from the minivan, and the officers attention was turned towards the shooting. As the minivan attempted to turn onto Southern Avenue, officers observed the sliding door of the van open and an individual from the front passenger seat in possession of a weapon. The gunfire continued, with several police officers discharging their service weapons, as well. Additional units were called to the area, and a search was undertaken to locate the suspects in the minivan. The minivan itself was located within a short distance of the shooting scene, in the 1300 block of 45th Street, S.E. The minivan was full of bullets holes and broken glass. Inside the van were shell casings, as well as a pager which was on the front

80

driver's seat of the minivan. Police did not search the minivan immediately, but rather impounded the vehicle as evidence and took it to police headquarters, 300 Indiana Avenue, N.W., Washington, D.C. Within two days of impounding the vehicle, the four officers involved in the shooting on September 10, 1991 identified the impounded white Mazda minivan as the vehicle involved in the shooting. Thereafter, a search warrant was requested and secured for the search of the automobile.

Defendant Martin has moved to suppress all evidence seized and/or information discovered in connection with the seizure of a white Mazda minivan on September 10, 1991, by members of the District of Columbia MPD. Defendant Martin asserts that there are two bases upon which the Court should suppress the evidence seized: (1) there was no legal justification for the seizure of the van insofar as "a warrant, a valid automobile exception, and probable cause with exigent circumstances were absent when MPD seized the van;" and/or (2) the warrant used in connection with the search of the automobile was an illegal general warrant. Defendant Martin's Motion to Suppress Evidence and Points and Authorities in Support Thereof at 1-2 (hereinafter "Defendant Martin's Motion to Suppress - Mazda Minivan"). Defendant's arguments are without merit.[45]

The validity of the seizure and search may be sustained on at least three independent grounds.

---

[45] For purposes of this pleading, the Government is assuming that defendant Martin is prepared to come forward with some evidence establishing that he had a legitimate expectation of privacy that was violated by the police, and thus has standing to challenge the search warrant executions. It is well- settled law that Fourth Amendment rights are "emphatically 'personal rights which, like some other constitutional rights, may not be vicariously asserted.'" United States v. Caicedo-Llanos, 960 F.2d 158, 162 (D.C. Cir. 1992) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)). The police violated the defendant's constitutional rights in this case only if "the challenged conduct invaded his legitimate expectation of privacy." Id. (internal quotations omitted). Moreover, the defendant carries the burden of proving the extent of his Fourth Amendment rights from the outset. Rakas v. Illinois, 439 U.S. 128 (1978), made this clear: "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." 439 U.S. at 131, n.1. Id.; see United States v. Salvucci, 448 U.S. 83 (1980) (repudiating "automatic standing" rule).

81

App 604

First, the officers had probably cause to believe that the vehicle both was evidence of a crime, and contained evidence of a crime, and therefore, they could properly seize and search the vehicle even without obtaining a search warrant. See California v. Carney, 471 U.S. 386 (1985); Chambers v. Maroney, 399 U.S. 42 (1970). Second, exigent circumstances arising from the nature of the shooting and law enforcement officers' fear for public safety justified a seizure of the automobile without a warrant. See Warden v. Hayden, 387 U.S. 294, 298-299 (1967); United States v. Freiwald, 661 F. Supp. 559, 562 (C.D. Cal. 1987). Third, even if the agents erred in initially seizing the automobile without a warrant, they validly searched the minivan after it was towed to MPD headquarters pursuant to a search warrant signed by the Honorable Joan Zeldon of the District of Columbia Superior Court. (See Affidavit in Support of Search Warrant, at Appendix "B.")

"[A]utomobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." Chambers v. Maroney, 399 U.S. at 48; United States v. Wider, 951 F.2d 1283, 1286 & n.1 (D.C. Cir. 1991) ("a warrantless search of a motor vehicle parked in a public place is permissible, with or without exigent circumstances, provided the searching authorities have probable cause to believe the vehicle contains contraband"). Courts recognize this automobile exception to the warrant requirement due to the potential mobility of a vehicle and the reduced expectations of privacy arising from "the pervasive regulation of vehicles capable of traveling on the public highways." California v. Carney 471 U.S. at 390-394, United States v. Wider, 951 F.2d at 1286 n.1. In this case, the automobile exception permitted the officers to seize the automobile from its location in order to secure a search warrant.

"Probable cause for a search exists where 'there is a fair probability that contraband or

82

evidence of a crime will be found in a particular place.'" United States v. Caroline, 791 F.2d 197, 201 (D.C. Cir. 1986) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Only the probability, and not a prima facie showing of criminal activity is the standard." Id. (citation omitted). Furthermore, "it is well established that direct evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [] property." United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (citing United States v. (Kevin) Jackson, 756 F.2d 703, 705 (9th Cir. 1985)). In making these determinations, courts look at the totality of the circumstances. Illinois v. Gates, 462 U.S. at 230; United States v. Rodney, 956 F.2d 295, 298 (D.C. Cir. 1992) (citations omitted). Courts evaluate the totality of circumstances "not only from the perspective of a 'prudent man,' but also from the particular viewpoint of the officer involved in the search or seizure" in recognition of the fact that "[l]aw enforcement officers naturally reach conclusions based on their training and experience." United States v. Prandy-Binett, 995 F.2d 1069, 1071 (D.C. Cir. 1993) (citations omitted), cert. denied, 510 U.S. 1167 (1994). Upon reviewing the totality of circumstances and in light of the training and experience of the officers in this case, there was certainly more than a fair probability that a seizure of the minivan in order to subsequently search it would yield evidence of criminal activity.

Aside from the facts that the minivan matched the description of the vehicle involved in the shooting and its apparent abandonment in close proximity to the scene of the crime, additional evidence supported the officers' belief that the minivan facilitated the suspects' shooting spree. The van itself was shot up. Broken glass, shell casings, and a pager were in plain view inside the van. Thus, not only were the contents of the minivan likely to contain contraband, but the van itself was evidence of the crime. Whenever officers have reason to believe that an automobile played a role in

the commission of a crime, there is probable cause to search it for additional evidence. See, e.g., United States v. Garrett, 959 F.2d 1005, 1007 (D.C. Cir. 1992) (fact that officers observed the defendant remove an object from his car earlier in the evening and exchange it for money was sufficient grounds to search the car); Caroline 791 F.2d at 201 (fact that defendants used the car for travel during their crime spree was a sufficient basis for search). Certainly, if the case law allows for a warrantless search under the circumstances set forth above, the seizure of the minivan in this case in order to allow for a warrant to be secured in order to search was justified. Defendant Martin simply asserts that a warrant was needed even before a seizure occurred. In short, there was ample probable cause upon which to believe that the vehicle would contain evidence of a crime. Although the officers here did not enter the minivan or seize any evidence from the vehicle until they had obtained a valid search warrant, they could have immediately removed the evidence from the minivan during a search pursuant to the automobile exception. A fortiori, then, this Court can easily uphold the officers' decision to seize the vehicle under the automobile exception.

It should be noted that while the police had the authority to search the minivan upon locating it, the police first presented the facts of the underlying offense to a neutral judicial officer prior to executing the search. The real question then becomes whether, under the so-called "automobile exception," a vehicle can be "seized and held without a warrant for whatever period is necessary to obtain a warrant for the search" if an officer has probable cause to believe that the vehicle contains contraband. Chambers v. Maroney 399 U.S. at 51. The answer to this question is yes. Here, the officers had the requisite probable cause to believe that the minivan itself was evidence of a crime and possible contained contraband within. In similar circumstances, courts have uniformly upheld searches or seizures. See, e.g., United States v. Kimberlin, 805 F.2d 210, 229 (7th Cir. 1986) ("We think it clear that when an officer has probable cause to search a vehicle, it is reasonable under the

84

App 607

Fourth Amendment to prevent removal while obtaining a warrant."), cert. denied, 483 U.S. 1023 (1987); United States v. Giacalone, 588 F.2d 1158, 1161 (6th Cir. 1978) ("The temporary detention of Giacalone's car at the time of his arrest, while awaiting the issuance of a search warrant, was certainly not unreasonable"), cert. denied, 441 U.S. 944 (1979); See also, United States v. Markling, 7 F.3d 1309, 1319 (7th Cir.) (car found in public parking lot, where one of defendant's friends or associates could have moved it at any time; under automobile exception, police justified in searching car without warrant), cert. denied, 514 U.S. 1010 (1993); United States v. Forker, 928 F.2d 365, 369 (11th Cir. 1991) ("The officers were not certain how many sets of keys to the Cadillac existed; they were not certain if the car would remain in the parking lot if they left to obtain a warrant"; warrantless search of vehicle upheld).

Although the search of the vehicle survives Fourth Amendment scrutiny due to the automobile exception to the warrant requirement, this Court could independently sustain the seizure of the minivan pursuant to the exigent circumstances exception. Officers immediately secured the minivan in an effort to ascertain whether it contained any weapons or would otherwise constitute a threat to the public. Exigent circumstances justify a warrantless search where "the police had 'an urgent need' or 'an immediate major crisis in the performance of duty affording neither time nor opportunity to apply to a magistrate.'" United State v Johnson, 802 F.2d 1459, 1461 (D.C. Cir. 1986) (citing Dorman v. United States, 435 F.2d 385, 391 (D.C. Cir. 1970)). Here, the evidence amply demonstrates that the investigating officers faced an urgent need for immediate action and that they reasonably responded without obtaining prior judicial approval. United States v. Halliman, 923 F.2d 823, 878-880 (D.C. Cir. 1991).

Among the factors which courts consider of special relevance in evaluating the searches and seizures based upon the exigent circumstances exception are: (1) whether a "grave offense" was

85

App 608

involved; (2) the potential danger to the community or the officers involved; (3) whether there has a clear showing of probable cause to believe the subject of the search related to the crime; and (4) whether the circumstances surrounding the entry suggest "the reasonableness of police attitude and conduct." Dorman, 435 F.2d at 392-393. A consideration of these factors in the context of this case reveals that exigent circumstances justified the warrantless seizure of the minivan.

The offense was undoubtedly grave. The defendant had fired numerous shots in the direction of citizens on the street, as well as in the direction of uniformed police officers. Certainly, the officers suspected that the vehicle itself posed a potential threat to the public insofar as it may have contained the firearms used in connection with the shooting. "Exigent circumstances are frequently found where explosives are involved." United States v. Lindsey, 877 F.2d 777, 781 (9th Cir. 1989) (and cases cited therein).

Under the facts in the instant case, the police had more than probable cause to believe the van was involved in the shooting. The fact that the officers did not immediately seek a warrant is not controlling. Halliman, 923 F.2d at 879 ("the failure promptly to seek a warrant does not automatically disqualify the police from relying upon exigent circumstances"). For all of the foregoing reasons, this Court may independently sustain the validity of the seizure of the vehicle on the basis of the exigent circumstances exception to the warrant requirement. The officers reasonably believed that the circumstances were exigent and acted reasonably in seizing the vehicle before a search warrant could be obtained.

Defendant Martin's second basis upon which he seeks suppression of the evidence seized from the minivan is the warrant itself. Defendant Martin asserts that the warrant issued for the vehicle did not have the required specificity as to what was to be seized. The Fourth Amendment prohibition against general warrants requires the government to provide a particular description of the items to

86

be seized. See United States v. Maxwell, 920 F.2d 1028, 1031 (D.C.Cir.1990). In assessing particularity, courts " 'are concerned with realities of administration of criminal justice. It is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant.' "United States v. Vaughn, 830 F.2d 1185, 1186 (D.C.Cir.1987) (quoting Moore v. United States, 461 F.2d 1236, 1238 (D.C.Cir.1972)). In this regard, it is important to keep in mind the rationale for this Court's decision in United States v. Warren, 42 F.3d 647 (D.C. Cir. 1994), an analogous case affirming the denial of a motion to suppress evidence seized pursuant to a search warrant. This Court noted that affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." 42 F.3d at 653 (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)).

Moreover, while "[g]eneral warrants, of course, are prohibited by the Fourth Amendment," Andresen v. Maryland, 427 U.S. 463, 480 (1976), "[g]eneral descriptions have been accepted when the surrounding circumstances render it reasonable." Morris, 977 F.2d at 681, n.5. Thus, in Andresen, the Supreme Court rejected an argument that the phrase "together with other fruits, instrumentalities and evidence of crime at this (time) unknown" permitted the seizure of any evidence of any crime. It is well established that "the phrases in a search warrant must be read in context and not in isolation." United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993), cert. denied, 510 U.S. 1177 (1994). See, e.g., Byrd v. United States, 388 A.2d 1225 (D.C. 1978) (in the context of the circumstances surrounding the crime, a general reference in the search warrant to "other evidence and instrumentalities" was not unreasonable). The affidavit in support of the search warrant at issue described the events that officers witnessed on the night of the shooting. The affidavit

87

described individuals as having been armed with handguns and as having used firearms.

By its terms, and in the context of the attached affidavit, the search warrant in this case limited the discretion of the seizing officers to items having an evidentiary link to that shooting and to any items which may assist law enforcement in identifying the individuals involved in the shooting. The inability of the affiant to further narrow the scope of the search did not render it defective. Indeed, "no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." Conley, 4 F.3d at 1208 (citation omitted). Viewed in the context of the facts of this case, the defendant's challenges to the warrant on grounds that it lacked particularity and was over broad lack merit.

We note that this circuit has held, along with most others, that in some circumstances a search warrant may be construed with reference to the affidavit supporting it for purposes of satisfying the particularity requirement. The affidavit may serve this function, however, only if " '(1) the affidavit accompanies the warrant, and in addition (2) the warrant uses "suitable words of reference" which incorporate the affidavit by reference.' " Vaughn, 830 F.2d at 1186 (quoting Moore v. United States, 461 F.2d at 1238). See also, e.g., United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir.1982); United States v. Curry, 911 F.2d 72, 76-77 (8th Cir.1990), cert. denied, 498 U.S. 1094 (1991); United States v. Roche, 614 F.2d 6, 8 (1st Cir.1980). Defendant Martin states that there were no "suitable words of reference" which incorporated the warrant. This plainly is not true. The warrant stated that the affidavit was attached to the warrant. Thus, this was not the case presented in Maxwell where there were no explicit words on the warrant indicating that the magistrate intended to incorporate the contents of the affidavit into the warrant and thereby limit its scope by reference to the affidavit, and where neither of the two attachments that were explicitly incorporated into the warrant make reference to the affidavit. Maxwell, 920 F.2d at 1031.

88

App 611

Finally, although defendant Martin's motion understandably seeks to minimize the Supreme Court's decision in United States v. Leon, 468 U.S. 897 (1984), in fact, Leon renders essentially moot the allegations of defendant Martin's motion. Leon recognizes a "good faith" exception to the Exclusionary Rule. See generally LaFave, W.R., Search and Seizure, vol. 1, S 1.3(f) (West 3d ed. 1996). At its core, Leon directs that evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate is admissible in the Government's case-in-chief despite the fact that the search warrant is ultimately found to be unsupported by probable cause. Leon, 468 at 923. This is so, unless the Officer lacks "reasonable grounds for believing that the warrant was properly issued." Id. at 922.

In this case, the affidavit was drafted by an investigator with MPD. Moreover, the affidavit was reviewed, approved, and counter-signed by an assistant United States attorney. The search warrant was approved by an experienced Superior Court Judge. Hence, the executing officers had every reason to believe that the warrant was properly issued. As to the warrant, defendant Martin's motion does not claim the existence of any patent technical defect. Nor does defendant Martin claim that the issuing Judicial Officer was not "detached and neutral," nor could it. Because the officers had "reasonable grounds for believing that the warrant was properly issued," and because the officers acted in reasonable reliance that the search warrant was issued by a neutral and detached Superior Court Judge, the evidence seized in the execution of the search warrant is admissible in the Government's case-in-chief. In sum, because there was probable cause to believe that the van itself was evidence of criminal activity and that its contents would contain contraband it was properly seized, defendant Martin's motion to suppress is without merit and should be denied. Independently, because there is substantial evidence to support Judge Zeldon's issuance of the search warrant, defendant Martin's motion should be denied. Finally, because the officers reasonably relied upon the

89

App 612

apparent propriety of the search warrant, the "good faith" exception to the Exclusionary Rule "saves" the evidence, in any event. For this reason, as well, defendant Martin's motion is without merit and should be denied.

### B.    Defendant Sweeney's Motion to Suppress Physical Evidence

Defendant Sweeney moves this Court to suppress the evidence seized pursuant to a search warrant executed at defendant Sweeney's residence on November 1, 1994.  Because defendant Sweeney alleges no facts[46] which, if true, would warrant the suppression of this evidence, the government is at a loss to respond in an informed fashion to this motion.  Nevertheless, the government will provide the Court with the facts and law necessary to decide this motion.

On November 1, 1994, Metropolitan Police Detective Neil Trugman sought and obtained a search warrant for narcotics for the entire premises of 211 I Street, S.E., the residence of defendant Sweeney.  The search warrant, signed by a judge of the Superior Court of the District of Columbia, was based on the first-hand information of a reliable informant who had previously provided true and accurate information to the police.  The informant told the affiant that it had seen narcotics inside of defendant Sweeney's residence within the past 72 hours.  (See Affidavit in Support of Search Warrant at Appendix "C.")

On November 1, 1994, at approximately 6:00 p.m., Detective Trugman and FBI agents executed the warrant.  Defendant Sweeney was located in the upstairs rear bedroom.  Located under the mattress in the room was a 9 mm semi-automatic handgun loaded with 8 rounds of ammunition.  Recovered in the living room behind the sofa was a 9 mm semi-automatic handgun loaded with 9

---

[46]Defendant's sole basis for the suppression of this evidence is that "[u]pon information and belief, the factual basis for obtaining the search warrant was erroneous and unreliable information."  Defendant's Sweeney's Motion to Suppress Evidence at 1.

rounds of ammunition. Also recovered in the living room was a 9 mm Beretta semi-automatic loaded with 20 rounds of ammunition. This weapon was located inside the rear of the television set.[47] A ballistics comparison of the Beretta confirms that it is the weapon that fired the bullet that killed Donnell Whitfield on September 24, 1994. Defendant Sweeney and Erik Jones were subsequently charged with this murder.[48]

There can be no question that the affidavit established probable cause. The confidential source was both reliable and had first-hand knowledge regarding the contraband in the I Street home. This information was also fresh, having been obtained within 72 hours of the warrant being signed. See United States v. Parker, 709 F. Supp. 27, 30 (D.D.C. 1992) ("a single purchase by a confidential informant within 72 hours of the issuance of the warrant does furnish the judge with a sufficient basis for a probable cause determination").

> Even assuming arguendo lack of probable cause, the good faith exception to the exclusionary rule certainly applies and the evidence was properly not suppressed

Even if this Court concludes that either the affidavit supporting issuance of the warrant lacked probable cause, there is no doubt that the officers' good faith reliance on the invalid warrant was "objectively reasonable." Leon, 468 U.S. at 922.

In general, "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" Leon 468 U.S. at 922 (citation

---

[47]Defendant asserts in his motion that the 9 mm Beretta found in the television set is the only contraband recovered in this warrant that the government intends to introduce at trial. The government is unaware of where defendant got this impression; it is the government's intention to introduce all three handguns at trial, as well as the drug paraphernalia that was also seized from the house.

[48]Erik Jones, defendant Sweeney's former co-defendant, was present inside the I Street address, along with defendant Sweeney, when this warrant was executed. Both Sweeney and Jones were placed under arrest.

91

omitted). The only exceptions to this presumption are three-fold: (a) there is the suggestion that the "magistrate abandoned his neutral and detached role"; (b) the magistrate was misled by information in the affidavit that the "affiant knew was false or would have known was false except for his reckless disregard of the truth"; or (c) the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923.

Once the warrant had been issued, Detective Trugman was justified in believing that he had probable cause to search the address in question. Further, there is no reason advanced to suggest that this belief was not a reasonable one.

## C.     Defendant Sweeney's Motion to Suppress Identification Testimony

Defendant Sweeney also moves to suppress the identification evidence resulting from the use of a photographic array from which witnesses identified the defendant. As grounds for this motion, defendant claims that the photographic array that was shown to the witness in question was impermissibly suggestive. Defendant's motion is without basis and should be denied.

During the evening hours of October 22, 1993, defendant Sweeney and co-defendants Hill, Carson, Coates and Proctor kidnapped a man named Anthony Pryor from his home in Oxon Hill, Md. at gunpoint and forced him into the trunk of defendant Coates's car. Amazingly, Mr. Pryor was able to kick open the trunk and jump from the speeding car. He was then shot in the back by one of the defendants and nearly run over. The defendants then fled to the District of Columbia where they attempted to destroy the evidence of their crime. A witness to these events later notified the police. This witness identified defendant Sweeney by name[49] and described to the police what it observed defendant Sweeney do. The witness indicated that it had known "Draper" for several years. The

_____

[49]The witness used defendant Sweeney's street name, "Draper."

92

App 615

police showed the witness a photographic array containing 6 black and white photographs and asked the witness if it could identify the individual it knew as "Draper." The witness easily identified the photograph of defendant Sweeney as the man it knew as "Draper."

In Stovall v. Denno, 388 U.S. 293 (1967), the Supreme Court recognized that a defendant's due process rights could be violated by the admission at trial of suggestive identification testimony. Such evidence should be suppressed, the Court held, if it resulted from procedures that were unnecessarily suggestive and if those procedures might lead to an "irreparabl[y] mistaken identification." Id. at 301-302. A defendant challenging the constitutionality of an out-of-court identification will prevail, however, only if the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968).

A constitutional challenge to the admission of identification testimony triggers a two-stage inquiry: (1) was the identification procedure "unnecessarily suggestive" and conducive to irreparable misidentification, and (2) if so, given the "totality of circumstances," was the resulting identification nonetheless reliable. Stovall, 388 U.S. at 302; Manson v. Brathwaite, 432 U.S. 98, 104 (1977); United States v. Washington, 12 F.3d 1128, 1134 (D.C. Cir.), cert. denied, 513 U.S. 828 (1994).

Reliability is the "linchpin in determining the admissibility of identification." Manson, 431 U.S. at 114. In evaluating the reliability of a challenged identification, the court must balance the effect of any "suggestive identification" against the five factors used to evaluate the reliability of a witness' identification:

(1)  the witness' opportunity to view the defendant at the time of the crime;

(2)  the witness' degree of attention;

(3)  the accuracy of the witness' prior description of the suspect;

93

(4)   the witness' certainty at the time of the identification; and

(5)   the time between the crime and the identification.

Id. at 114-16.  Additionally, when assessing reliability, courts may also consider the weight of other

evidence of the defendant's guilt.  E.g., United States v. Lau, 828 F.2d 871, 875 (1st Cir. 1987), cert.

denied, 486 U.S. 1005 (1988); United States v. DiTommaso, 817 F.2d 201, 214 n.17 (2d Cir. 1987);

United States v. Bell, 812 F.2d 188, 193 (5th Cir. 1987).  As discussed above, a court is only required

to perform a reliability inquiry if it finds that the identification procedure was  "unduly suggestive."

And, if reliability is demonstrated under the totality of the circumstances, the identification testimony

is admissible at trial, regardless of the suggestive pretrial identification procedures.

<u>The Photo Identification Procedure Was Not Suggestive</u>

At present, the government expects to introduce evidence of at least one photo spread

identification procedure that was conducted during the investigation of this case.  As the Court will

see at a hearing, there is nothing unduly suggestive about the composition of the challenged spread.

In determining whether a photo array is unduly suggestive, courts consider three factors: (1)

its contents; (2) its size; and (3) the manner of its presentation.  See Gantt, 617 F.2d at 840; see also

Thai, 29 F.3d at 808.  In considering the contents of photo arrays, one court aptly has reasoned: "the

principal question is whether the picture of the accused, matching descriptions given by the witness,

so stood out from all of the other photographs as to suggest to an identifying witness that [that

person] was more likely to be the culprit." Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986) (citation

and internal quotation marks omitted).

In this case, the photo array did not impermissibly "suggest" defendant Sweeney.  The

photographs were not arranged in a manner so as to cause Sweeney to stand out.  They were all the

same size, e.g., United States v. Love, 746 F.2d 477, 479 (9th Cir. 1984); they were all black and

<div align="center">94</div>

App 617

white photographs, e.g., O'Brien v. Wainwright, 738 F.2d 1139, 1140-41 (11th Cir. 1984) (only defendant's photo in color); State v. Watson, 318 S.E.2d 603, 612-13 (W. Va. 1984) (only defendant's photo black and white); none appeared substantially more recently taken than others, e.g., Henderson v. United States, 527 A.2d 1262, 1268 (D.C. 1987), and all of the pictures included only a full face view, e.g., United States v. Sherry, 318 A.2d 903, 904-05 (D.C. 1974) (photographic array not suggestive even though defendant's photograph depicted full face view, while others depicted both face and profile view).

Nor did the physical characteristics of the other men depicted in the photo array cause Sweeney to stand out. Each was a black male. See Stewart v. United States, 490 A.2d 619, 623 (D.C. 1985) (array not suggestive when defendant appeared with other black males of similar physical characteristics and age). All had similar facial characteristics. See, e.g., United States v. Hines, 455 F.2d 1317, 1329-1330 (D.C. Cir. 1971) (no suggestivity where three of four lineup "fillers" wore mustaches, but defendant did not). All of the men appeared approximately the same size. See, e.g., id. at 1329 (divergences of between 20 and 30 pounds between defendant and police lineup participants does not render lineup impermissibly suggestive). And, all are either bald or nearly bald.

Nor, critically, was there any evidence of external suggestion by the officials conducting the identification procedure. Thus, while there are the expected, natural differences between subjects, there is nothing that drew the attention to the defendant's photo or "suggested" that he was the individual a witness should select. As such, the photo array easily passes constitutional muster.

### Reliability of the Identifications Will Be Established at Trial

Defendant requests a pretrial hearing on the suggestivity and reliability of the identification evidence that the government seeks to introduce at trial. While it is conceded that a pretrial hearing

95

App 618

into the suggestivity of the challenged identifications is allowed, there has been no showing that would justify a full-blown inquiry into the reliability of these identifications.

As the courts have indicated, a reliability analysis is required <u>only</u> upon the finding of suggestivity in the challenged identification procedure. Absent such a showing, the identification evidence raises no due process concerns and reliability remains within the jury's province. <u>See</u> <u>Manson</u>, 432 U.S. 98 (establishing two-step process in which the five-factor <u>Biggers</u> test is applied only upon the showing of suggestivity); <u>United States v. Concepcion</u>, 983 F.2d 369 (2d Cir. 1992) (if pretrial procedures were not unduly suggestive, any question as to reliability of proposed in-court identification will affect only identification's weight, rather than its admissibility), <u>cert. denied</u>, 510 U.S. 956 (1993). Thus, if the Court determines at a pretrial hearing that the procedure was not unduly suggestive, the hearing should proceed no further, and the Court should deny the defendant's motion to preclude identification evidence.[50]

### D. Defendant Sweeney's Motion to Suppress Statements

Defendant Sweeney has moved this Court to suppress his statements to the police. As grounds therefore, defendant claims that the statements he made were both involuntary and obtained after he had requested a lawyer. Evidence at a hearing on this issue will show that this simply is not the case. Defendant Sweeney never invoked his right to counsel; rather, he waived those rights and agreed to speak with police investigators. Moreover, his statements to police were completely voluntary.

On November 17, 1996, Alonzo Gaskins, Darnell Mack and Melody Anderson were murdered

---

[50]In the unlikely event that this Court determines that the photo array utilized in this case was unduly suggestive, the totality of the circumstances will demonstrate that any identification of the defendant was sufficiently reliable to preclude a substantial likelihood of misidentification. <u>Manson</u>, 432 U.S. at 113-16; <u>Washington</u>, 12 F.3d at 1134.

96

App 619

in a house in Temple Hills, Md. This triple homicide was investigated by both the Prince George's County Police Department, as well as a joint task force comprised of Metropolitan Police Department officers and FBI agents. Defendant Sweeney, along with co-defendants Coates, Carson, and an unindicted coconspirator, were eventually identified as the perpetrators. In addition, defendant Sweeney was identified as being one of the individuals responsible for the kidnapping and shooting of Anthony Pryor, which also occurred in Prince George's County, on October 22, 1993.

On April 20, 1997, at approximately 1:00 p.m., defendant Sweeney entered the Montgomery County Detention Center in Rockville, Maryland, using the alias "Kirk I. Newton." Defendant's purpose in coming to the detention center was to visit his mother, who was a detainee at the facility. The FBI had previously alerted the staff at the detention center to be on the look-out for defendant Sweeney and to page FBI Special Agent Tim Stranahan in the event that defendant Sweeney appeared. The staff was given a physical description of Sweeney and told that it was likely that he would be asking to visit Beverly Minor and using the name of "Kirk Newton." After identifying Sweeney, a correctional officer paged Special Agent Stranahan and also notified Montgomery County police.

Corporal Ronald Wilson and other officers from the Montgomery County Police Department responded to the detention facility and handcuffed defendant Sweeney. They then transported defendant to the Rockville Station. At no time was he questioned by any of these officers. Defendant Sweeney was held in the cell block until he was turned over to the FBI and Prince George's County police at approximately 2:00 p.m. While he was in the custody of the Montgomery County Police, defendant Sweeney was neither advised of his rights nor was he questioned in any way.

Special Agent Stranahan received the page from the detention center that defendant Sweeney was in custody. Agent Stranahan had been attempting to serve an arrest warrant on defendant

97

App 620

Sweeney in connection with the kidnapping of Anthony Pryor. In addition, Agent Stranahan was aware that the P.G. County intended to charge Sweeney for his role in the triple homicide in Temple Hills, Md.

Agent Stranahan took custody of defendant Sweeney at approximately 3:00 p.m. Agent Stranahan identified himself to Sweeney and explained that he was under arrest for the attempted murder and kidnapping of Anthony Pryor. Agent Stranahan then advised defendant Sweeney of his Miranda warnings by reading from FBI form FD-395. After reading each line, defendant Sweeney was asked if he understood that individual right, to which defendant Sweeney replied, "yes." Defendant orally responded in the affirmative to all of the questions asked on the rights form, including the last question, which asked whether or not the subject is willing to answer questions without having an attorney present. Agent Stranahan then gave defendant Sweeney the rights form and asked if he would sign the rights form. Defendant said that he did not want to sign the form. Agent Stranahan noted on the form that defendant refused to sign. The time was 3:08 p.m. At no time did Agent Stranahan question defendant.

Sergeant Charles Fobbs of the Prince George's County Police Department also had responded to the Rockville Police Department after being notified of the arrest of defendant Sweeney. Sergeant Fobbs spoke with Agent Stranahan and was advised by Stranahan that defendant Sweeney had been advised of his rights and had waived his rights. Sergeant Fobbs made arrangements to have defendant Sweeney released into his custody so that Sweeney could be brought to Prince George's County. At approximately 5:00 p.m., Sergeant Fobbs transported defendant to Criminal Investigations Division in Prince George's County, Md. There was no conversation whatsoever between Sweeney and Sergeant Fobbs while en route to Prince George's County.

Upon arriving at CID, defendant Sweeney was placed in an interview room. Sergeant Fobbs

App 621

questioned defendant Sweeney for a short period of time. Sergeant Fobbs asked defendant if he was familiar with the address of triple homicide, which was located on 25th Avenue in Hillcrest Heights. Defendant claimed that he was not. Defendant claimed that he was from D.C. and did not come to Maryland at all.

A short time later, Prince George's County Detective Dwight DeLoatch arrived. Detective DeLoatch and Sergeant Fobbs reentered the interview room and again spoke with defendant. After identifying himself, Detective DeLoatch asked defendant if he was familiar with one of the victims in the triple homicide, Alonzo Gaskins. Defendant said that he was not. Defendant stated that he had heard the name "Darnell Mack." Detective DeLoatch then pulled out a flyer that had pictures of the decedents from the triple homicide. Defendant stated that he recognized Alonzo Gaskins. Defendant stated that he had met Gaskins in Las Vegas during the Mike Tyson - Evander Holyfield fight and that he believed he was on the same flight to Vegas with Gaskins. Defendant again denied to Detective DeLoatch that he had ever been to 3919 25th Avenue, the scene of the triple homicide. Detective DeLoatch asked defendant if he would give a written statement to that effect, and defendant stated that he did not want to write anything down without speaking to his attorney. At that time, all questioning ceased and defendant was formally charged.

Defendant Sweeney at no time appeared to be under the influence of alcohol or drugs. There were no promises or threats made to him at any point while he was in custody. He was permitted to use the bathroom and offered both food and drink.

### Defendant Waived his Miranda Rights

As demonstrated by the foregoing proffer, defendant Sweeney knowingly and intelligently waived his rights to silence and to the assistance of counsel prior to being questioned by the police. After being advised of his rights by Special Agent Stranahan, defendant indicated that he both

99

App 622

understood his rights and that he was willing to waive his rights and speak without an attorney being present. The fact that defendant refused to sign his rights card in no way alters the fact that there was a knowing and intelligent waiver.

The Supreme Court's "fundamental aim in designing the <u>Miranda</u> warnings was to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." <u>Colorado v. Spring</u>, 479 U.S. 564, 572 (1987). "Consistent with this purpose, a suspect may waive his Fifth Amendment privilege, provided the waiver is made voluntarily, knowingly and intelligently." <u>Id</u>. To determine whether these waivers were "voluntary, knowing and intelligent," <u>see</u> <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (relinquishment of right must have been voluntary and have been made with full awareness of right being abandoned),[51] the Court must look at the totality of the circumstances surrounding the case, "including the background, experience and conduct of the accused." <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1046 (1983) (citations and internal quotation marks omitted); <u>United States v. Yunis</u>, 859 F.2d 953, 965 (D.C. Cir. 1988). It is clear from the foregoing proffer that his waivers were made voluntarily, knowingly and intelligently and "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran</u>, 475 U.S at 421. The evidence at hearing will demonstrate (1) that the defendant's decision to waive his <u>Miranda</u> rights was voluntary and free from coercion and (2) that he understood exactly what he was doing when he executed the waiver.

The fact that defendant indicated that he did not want to sign his Miranda rights card in no way constitutes an invocation of his Fifth Amendment rights. It is well-settled that a defendant must

---

[51]The government need only show by a preponderance of the evidence that a defendant voluntarily, knowingly and intelligently waived his Miranda rights. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986); <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972).

App 623

unambiguously request counsel in order to properly invoke his rights. See Davis v. United States, 512 U.S. 452, 457 (1994) (Edwards rule does not require officers to stop questioning a suspect in light of equivocal or ambiguous reference to counsel: "suspect must unambiguously request counsel"); McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) (invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney"). Defendant has advanced no authority – and the government is aware of none – that suggests that a suspects mere refusal to sign a rights card constitutes an invocation of the suspects Fifth Amendment rights.

### The Miranda Waivers Were Voluntary

In considering a claim that a defendant's statements were involuntarily elicited, courts look to the totality of the circumstances to determine whether the will of the defendant was overborne in such a way as to render his confession the product of coercion. United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991) The Supreme Court has explained that "coercive police activity is a necessary predicate to the finding that a confession is not voluntary," Connelly, 479 U.S. at 167, and that due process is not violated unless the coercion is "causally related to the confession." Id. at 163-64; see Rice v. Sweeney, 148 F.3d 747, 750 (7th Cir. 1998) ("The relevant constitutional principles are aimed not at protecting people from themselves, but at curbing abusive practices by public officers.").

Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; whether the police or the accused initiated the dialogue; and the use of physical punishment, such as the deprivation of food or sleep. See Schnekloth v. Bustamonte, 412 U.S. 218, 226 (1973); United

101

States v. Hatten, 68 F.3d 257, 262 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996).

In this case, the totality of the circumstances leave little doubt that Sweeney's statements were totally voluntary and were not the product of police coercion. The following facts contribute to this conclusion:

### Defendant's Statements Were Not The Product of Coercion

There is no evidence that Sweeney was ever subjected to the slightest coercion by the investigators. There were absolutely no threats or promises made to defendant Sweeney in order to induce his statements. He was afforded the use of the bathroom and was offered both food and drink. And his questioning was brief, lasting no more than a few hours.

In this case, there is simply no evidence that Sweeney's "will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct." Spring, 479 U.S. at 574 (citation and internal quotation marks omitted). The atmosphere in which they spoke was not hostile. Sweeney was not handcuffed; he was provided food, drink and bathroom breaks; and the officers did not force him to talk, coerce him or promise him anything in exchange for his statements. There was no sign of intoxication by either drugs or alcohol. Throughout his interaction with the police, both Sweeney and the officers were calm and polite. Perhaps most telling is the fact that Sweeney never confessed his involvement in the triple murder. Sweeney maintained that he had never been to the crime scene. This statement is demonstrably false.[52] The most he would offer is that he believed he had been on the same plane as one of the decedents while on a recent trip to Las Vegas. It is difficult to imagine how the police coerced defendant Sweeney into giving a statement in which he admits no criminal wrongdoing.

---

[52]Defendant Sweeney's fingerprint was found at the crime scene.

102

App 625

## The Miranda Waivers Were Knowing and Intelligent

The evidence clearly demonstrates that defendant Sweeney waived his Miranda rights knowingly and intelligently. The sole focus of this analysis is whether the suspect understood that any statements he made could be used against him, which understanding is presumed upon the giving of Miranda warnings to the suspect. Spring, 479 U.S. at 574-76 ("Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled."). That understanding is evident from this defendant's background and from his conduct during the interviews in Maryland. A brief review of the defendant's background demonstrates that he did not enter those interviews as a young ingenue who was susceptible to a misunderstanding of his rights and his legal predicament. At the time of his arrest, Sweeney was three months shy of his 22nd birthday. Importantly, defendant Sweeney's background also reflects considerable experience with the criminal justice system. Mr. Sweeney has been arrested on a number of occasions. On November 1, 1994, Sweeney was arrested for assault with a dangerous weapon. On February 9, 1993 Sweeney was arrested for armed robbery. And on December 8, 1995, defendant Sweeney was arrested on a bench warrant where the underlying charge was for first-degree murder while armed. On all three of these occasions defendant Sweeney was advised of his Miranda Warnings. These previous interactions with the justice system demonstrate that Sweeney was familiar with the Miranda rights and clearly understood the import of waiving those rights. See Fare v. Michael C., 442 U.S. 707, 726 (1979) (waiver knowing and intelligent when 16-year-old suspect had previous experience with justice system and there was no indication that he was unable to comprehend his rights).[53]

---

[53]The courts routinely consider a suspect's experience with the criminal justice system in determining whether the suspect had the capacity to make a "knowing and intelligent" waiver.

103

App 626

Equally strong evidence that Sweeney's waivers were voluntary, knowing and intelligent can be found in his conduct during the interviews with the police and FBI. North Carolina v. Butler, 441 U.S. 369, 373 (1979) (the police may infer a knowledgeable and intelligent waiver "from the actions and words of the person interrogated"). Sweeney presented as alert and intelligent. It appeared to the officers who were questioning him that Sweeney was attempting to engage them to learn facts

---

See United States v. Burrous, 147 F.3d 111, 116 (2d Cir.) (valid waiver when 16 year-old defendant, who was not well educated, was arrested one month previously on same charges, and was read rights twice and signed written waiver); Henderson v. DeTella, 97 F.3d 942, 948 (7th Cir. 1996) (valid waiver by defendant with low IQ and limited reading and comprehension ability when defendant appreciated seriousness of charges and understood his rights), cert. denied, 520 U.S. 1187 (1997); Correll v. Thompson, 63 F.3d 1279, 1288-89 (4th Cir. 1995) (valid waiver by defendant with IQ of 68 since defendant was 24 years old and had many experiences with law enforcement and Miranda warnings), cert. denied, 482 U.S. 931 (1996); Derrick v. Peterson, 924 F.2d 813, 819, 821 (9th Cir. 1990) (valid waiver when suspect had past experience with criminal justice system even though only 16-year-old with IQ of 62-74); Moore v. Dugger, 856 F.2d 129, 134-35 (11th Cir. 1988) (valid waiver by mentally handicapped defendant with IQ of 62 and functional intellectual capacity of 11-year-old when defendant appeared calm, responsive, and able to understand questions and acknowledged at trial that informed of right to counsel); Stawicki v. Israel, 778 F.2d 380, 382-84 (7th Cir. 1985) (valid waiver despite no express waiver when defendant had five prior arrests, high school equivalent education, and average intelligence); Stumes v. Solem, 752 F.2d 317, 320 (8th Cir. 1985) (valid waiver by intelligent defendant familiar with criminal justice system); Hebron v. United States, 625 A.2d 884, 885 (D.C. 1993) (fact that suspect signed waiver of rights card and had previous experience with justice system indicated knowing and voluntary waiver); Ledbetter v. Edwards, 35 F.3d 1062, 1069 (6th Cir. 1994) (confession voluntary despite late hour and absence of attorney when defendant, experienced in criminal justice system, given Miranda rights three times), cert. denied, 515 U.S. 1145 (1995); Lord v. Duckworth, 29 F.3d 1216, 1222 (7th Cir. 1994) (confession voluntary when defendant had two prior felony convictions); Houston v. Lockhart, 866 F.2d 264, 267-68 (8th Cir. 1989) (per curiam) (confession voluntary when defendant had prior arrest and conviction); McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir. 1987) (confession voluntary in part because defendant police officer familiar with Miranda warnings); United States v. Chalan, 812 F.2d 1302, 1305-08 (10th Cir. 1987) (confession voluntary when defendant arrested twice before and was a law enforcement officer at one time); Martin v. Wainwright, 770 F.2d 918, 925-26 (11th Cir. 1985) (confession voluntary despite promise of psychiatric help, false legal advice from prosecuting attorney, interrogation for five hours, confrontation with false evidence, discussion of death penalty and subjection to "good guy/bad guy" tactic by police when defendant had prior experience with criminal justice system, not denied food, drink, or sleep, and did not refuse to answer questions).

104

concerning their investigation. Sweeney appeared calm and unruffled in his dealings with the police. He never expressed or exhibited any inability to understand the meaning of the Miranda warnings he was given.

Besides understanding these rights, Sweeney clearly appreciated the consequences of waiving them. His ability to appreciate the consequences of waiving those rights was underscored when he later invoked his right not to be interviewed without the presence of counsel when he was asked by Detective DeLoach to provide a written statement.

The abundant evidence that Sweeney had a clear understanding of his rights and his legal options during his post-arrest interviews with law enforcement indicates that his waiver of Miranda rights was legally valid and sufficient to permit custodial interrogation by the Maryland authorities. See Moran, 475 U.S. at 422-23 ("Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.").[54]

_____

[54]The government is aware that defendant Sweeney apparently suffers from Tourette's syndrome. There is no evidence how this disorder interfered with his ability to comprehend his rights. Cf. United States v. Lincoln, 992 F.2d 356, 359 (D.C. Cir. 1993) (per curiam) (valid waiver despite defendant's intoxication when defendant's actions not impaired); United States v. Cox, 509 F.2d 390, 392 (D.C. Cir. 1974) (valid waiver despite defendant's fifth grade education when he demonstrated that he could read and discuss warnings); United States v. Male Juvenile, 121 F.3d 34, 40 (2d Cir. 1997) (valid waiver by defendant with attention and learning disabilities because evidence of defendant's disabilities did not show that defendant was "so incompetent that he was not aware both of nature of right being abandoned and consequences of decision to abandon it") (citation and internal quotation marks omitted). Testimony will show that Sweeney neither appeared to be suffering from a disease nor complained that he was in any way affected by a malady or disorder at the time he was meeting with the detectives. As the above discussion explains, he was completely alert and responsive throughout the series of interviews.

In any event, this malady would have no bearing on the determination whether those confessions were voluntary. The Supreme Court has explained that the defendant's mental state

105

App 628

### E.   Defendant Martin's Motion to Suppress Statements

Defendant Martin's August 7, 1991 Statement and January 24, 1992 Statements to Police Were Voluntary[55]

On August 6, 1991, Tony Fortune was murdered at a craps game at 58th and Blaine Streets, S.E. The following day, homicide detectives determined that defendant Martin was present at the time of the homicide and went to speak with him. After locating defendant Martin in the neighborhood of 37th Place, S.E., he was transported to the homicide office for questioning.

Defendant Martin was questioned about the Tony Fortune homicide by Detective Lorren Leadmon. Defendant Martin, in a signed statement to the police, stated that he was present at the scene of the Tony Fortune homicide but did not witness the shooting and did not know who was involved. Defendant Martin went on to say that even if he knew who had committed the shooting he would not tell the police. There were no threats made to defendant, nor was he promised anything in exchange for his statement.

On January 23, 1992, Metropolitan Police officers executed a search warrant at 41 37th Place, S.E., apartment 21. As officers entered the apartment, defendant was seen throwing a gun to the floor. Another officer, stationed outside the apartment window, observed a bullet-proof come flying outside the window. Defendant Martin was placed under arrest. As defendant was escorted from the scene, one of the officers asked defendant if had ever been shot. Defendant replied that he

_____

is irrelevant to the voluntariness analysis. Absent evidence that the government coerced his confession, there is no need to determine why a defendant confessed. Accordingly, the Court should resist defendant's invitation to perform "sweeping inquiries into [his] state of mind . . . divorced from any coercion brought to bear on the defendant by the State." Connelly, 479 U.S. at 167.

[55]Because the government will not seek to introduce this statement in its case-in-chief, the only issue is whether or not it was voluntarily given, in which case it may be used for impeachment purposes.

App 629

had never been shot, but that he had shot a lot of people.

There can be no question that the statements in question were voluntarily given. In the first instance, the statement was entirely exculpatory. Defendant Martin not only denied any involvement in the homicide of Tony Fortune, he denied even witnessing it.[56] Moreover, defendant indicated in his statement that even if he knew who killed the decedent, he would not tell the police. Defendant was not under arrest when he was speaking to the police, and he was released after he gave the statement.

In the second instance, while the government does not contest that the statement was made in contravention of the defendant's Miranda rights, there are no facts to suggest that the statement was involuntary. On the contrary, the statement made by defendant was entirely a surprise to the police. There were no threats, coercion or promises made to elicit the statement. In short, defendant has alleged no facts, which, if true, would give rise even to a suggestion that the statement was involuntary.

Under these facts, the claim that defendant's will was overborne and that these statements were not voluntary is frivolous.

### Defendant Martin's Statement of September 16, 1997 Was Not Given in Violation of Miranda

At approximately 5:00 p.m. on September 16, 1997, Metropolitan Police Detective Anthony Brigidini and FBI S/A Daniel Reilly, armed with an arrest warrant for defendant Martin, went to the area of 37th Street, S.E., to look for defendant. Defendant was located on Ridge Road, S.E., gambling with a group of men. When the officers spotted defendant, they approached him and immediately patted him down and placed him under arrest. They then escorted defendant back to

---

[56]Evidence at trial will demonstrate that this exculpatory statement was entirely false.

107

their unmarked police cruiser. Defendant was handcuffed and placed in the backseat of the cruiser. Detective Brigidini sat in the backseat with defendant, while Agent Reilly drove. Once defendant Martin was inside the vehicle, Agent Reilly began driving back to the Washington Field Office of the FBI.

While en route, defendant Martin continued to ask what he was being arrested for. Defendant Martin was told that they would discuss the situation with the defendant once they got back to the field office. There was no further conversation in the vehicle. Once back at the field office, prior to being advised of his Miranda rights, defendant Martin was fingerprinted and booked. Defendant Martin again asked Detective Brigidini what he was being charged with. Detective Brigidini responded that defendant was being charged with Assault on a Police Officer While Armed, from 1991. Defendant Martin then responded, "you must have Draper snitching." Detective Brigidini made no response. After a few moments, defendant stated he did not even know Draper back then, that the police must have James Montgomery snitching. Again, Detective Brigidini made no response.

Later in the booking process, defendant Martin then asked Agent Reilly why the FBI spent so much time on petty marijuana cases. Reilly responded that in the context of a federal investigation of a single marijuana case may be a predicate act in a far more significant federal organized crime prosecution. Defendant asked if that is what the FBI was up to in this case. Agent Reilly replied in the affirmative. Defendant then asked what type of penalty a federal prosecution of that type could carry. Agent Reilly replied that if the case involved crimes of violence and murder, the potential penalty could be a life sentence. Defendant then suggested that he did not consider himself that significant of a marijuana dealer. Agent Reilly agreed with that assessment, but added that being a significant marijuana dealer was only part of what that kind of case was concerned with. Defendant

108

then stated that the FBI must think of him as some kind of "hitman."

Agent Reilly then cautioned defendant Martin that he should be careful about what he says, until he has been read his rights and is being formally interviewed. Defendant Martin stated that he did not believe he was incriminating himself, and continued to talk about how the FBI seemed to be so concerned about putting him in jail. After the booking procedure was completed, defendant Martin was read his Miranda rights and indicated that he both understood his rights and that he wished to waive them. Defendant Martin stated that he could not bring himself to "snitch" on others to the FBI and the police would have to be prepared to go to trial on any case they bring against him. He said that he had mistakenly pled guilty in Virginia on a gun case, and he was not even aware that he was going to have to do 18 months because the serial number was obliterated. Defendant Martin stated that that was the last time he was ever going to plead guilty. Defendant Martin complained that the government was still trying to charge him with the Tony Fortune murder even if the government could not put him on the scene of that crime. He said that the FBI uses weak persons who tell on their friends to build their big cases.

Agent Reilly reminded Martin that his associates in criminal activity might choose to tell on him, but they were just as likely to cause him serious bodily harm. Defendant Martin agreed with this, saying that he often thought he needed to carry a gun, but was concerned that the FBI would arrest him again. Agent Reilly told defendant that he could not and should not trust his associates like Draper, James Montgomery, Sam Carson, Vito and PooPoo. Defendant stated that he was not really that close to Draper whom he believed was "hot." He said that Sam Carson was a name he did not expect to hear, but it was a very interesting name to consider in this discussion. Defendant also stated that he should not be considered connected to Draper or anything that he did. Defendant went on to say that he could never "tell" on his associates, and that he would have to go to trial.

109

App 632

Finally, defendant was asked about his reported residence of 209 Randolph Place, N.E. Defendant stated that that was his mother's address and that he had no fixed address; he stated that he stays with different women every night.

### The Pre-Miranda Statements to Detective Brigidini and Agent Reilly were not in Violation of Miranda

It is certainly well settled that, absent special circumstances, a suspect cannot be interrogated after he has exercised his right to counsel pursuant to the Miranda warnings. Brewer v. Williams, 430 U.S. 387, 397-401 (1977); Miranda v. Arizona, 384 U.S. 436, 478-479 (1966). Nevertheless, Miranda applies only where the police engage in custodial interrogation. If a suspect is in custody, but volunteers a statement in the absence of interrogation, the holdings of Miranda and its progeny are not violated. See, e.g., Miranda 384 U.S. at 478 ("[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"); Rhode Island v. Innis, 446 U.S. 291, 300 (1980). For there to be "custodial interrogation," the "questioning must be initiated by law enforcement officers." See Miranda 384 U.S. at 444; Hairston v. United States, 500 A.2d 994, 996 (D.C. 1985). In Innis, the Supreme Court stated that interrogation occurs:

> whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" ... refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Innis 446 U.S. at 300-301. Thus, it is clear that for a statement to be excluded from evidence not only must questioning occur, but there must be questioning that the police should know is reasonably likely to illicit an incriminating response from the suspect. Questioning in the form of incidental conversation that frequently occurs when a suspect is processed after arrest, does not necessarily fall

110

within the <u>Miranda</u> prohibition.

For example, in <u>United States v. LaPierre</u>, 998 F.2d 1460, 1467 (9th Cir. 1993), the questioning by the police officer was even more extensive than the situation before the Court here, yet the court found that there was no "interrogation" even though the police officer asked questions of the defendant, because the officer's questions necessarily followed appellant's own questions to the officer. The court described one particular exchange as follows:

> LaPierre[, the defendant,] told Gooch[, the arresting officer,] that the officers had not gotten everything they were looking for and offered to split the remaining money with him. According to Officer Gooch, "I was standing guard over [LaPierre] and he started smiling toward me, and he said, 'Gooch, you know they never got all the stuff.'" Gooch responded, "What?", to which LaPierre repeated, "they never got all the stuff." Gooch then asked, "What do you mean?" LaPierre said, "If you give me half, I'll give you the other half, no one has to know anything." Gooch told LaPierre, "No, the detectives, they got all the stuff." LaPierre then said, "No, check. Check under the mattress." Gooch did check under the mattress, and he found a roll of U.S. currency which was subsequently traced to one of the banks that had been robbed.

<u>Id</u>. at 1467. The Ninth Circuit found that because LaPierre, not Officer Gooch, initiated the dialogue, the district court's determination that this did not constitute interrogation was correct. This questioning is obviously more direct than anything that is on the record of appellant's conversation with Officer Campbell, and as in LaPierre, any questioning that may have occurred was initiated by appellant.

<u>Innis</u> is also very instructive in this case. In <u>Innis</u>, the defendant was arrested for a murder that was committed with a sawed-off shot gun. <u>Id</u>. at 293. The defendant was transported in a police car by three officers who discussed the fact that the scene of the murder was near a school for handicapped children. One of the officers stated that "God forbid one of [the handicapped children] might find a weapon with shells and they might hurt themselves." <u>Id</u>. at 294-295. The defendant,

111

eavesdropping on the conversation as the officers clearly intended, told the officers to turn the car around so he could show them where the murder weapon was located. Id. at 295. The Court held that there was no interrogation because the officers should not necessarily have known that their contrived conversation was "reasonably likely to elicit an incriminating response." Id. at 302.

The facts on the record of this case do not even approach the Innis situation where the Court held that a police interrogation did not occur. As for the statements made to Detective Brigidini, there was literally no questioning of any kind. Detective Brigidini did nothing more than respond to defendant's inquiry as to what defendant was going to be charged with. The detective's truthful response was in no way intended to elicit the response that "you guys must have Draper snitching." Nor could it be deemed to have elicited the follow-up comment that the "snitch" must be James Montgomery.

As for the pre-Miranda statements to Agent Reilly, they too were not designed elicit any incriminating response from defendant. Agent Reilly was merely responding truthfully to questions posed by the defendant. It is clear from this dialogue that defendant Martin was seeking information from Agent Reilly in order to make an assessment about his own predicament. It was defendant Martin, not Agent Reilly, that continued to pose questions and seek additional information. Indeed, Agent Reilly explicitly warned defendant that he should not be saying anything until he was advised of his rights. The defendant indicated that he did not believe anything that he was saying incriminated himself. Given these facts, defendant cannot demonstrate that there was any interrogation under the definition of Innis

### Defendant Martin's Post-Miranda Statements to Agent Reilly Are Admissible

As a hearing on this issue will demonstrate, defendant Martin, once advised of his Miranda rights by Agent Reilly, knowingly and intelligently waived those rights. The ensuing conversation is

112

therefore admissible against defendant Martin at trial.[57]

<div align="center">

**CONCLUSION**

</div>

In light of the foregoing, the government respectfully submits that the defendants' pretrial motions should be denied.

<div align="right" style="text-align:right">

Respectfully submitted,

WILMA A. LEWIS.
United States Attorney

Peter R. Zeidenberg
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
Bar No. Number 440-803
(202) 353-8831

Anjali Chaturvedi
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
Bar No. 446-177
(202)353-8827

</div>

<div align="center">

CERTIFICATE OF SERVICE

</div>

I HEREBY CERTIFY that a copy of the foregoing was served by mail upon the attorneys for the defendants as set forth below, this 18th day of August, 2000.

Steven R. Kiersh, Esq.
717 D Street, N.W.

---

[57]Defendant Martin also seeks to suppress statement allegedly made by defendant to an FBI agent and an assistant United States attorney on June 9, 1994. Defendant does not indicate what statements he now seeks this Court to suppress. In any event, the government will not be seeking to introduce at trial any of the statements allegedly made on June 9, 1994 for any purpose.

<div align="center">

113

</div>

App 636

Suite 400
Washington, D.C. 20004

Paul DeWolfe, Esq.
20 Courthouse Square
Suite 214
Rockville, MD 20850

Christopher M. Davis, Esq.
601 Indiana Avenue, N.W. #910
Washington, D.C. 20004

Joanne Hepworth, Esq.
305 H Street, N.W., 2nd Floor
Washington, D.C. 20001

Joseph Beshouri, Esq.
419 7th Street, N.W.
Suite 201
Washington, D.C. 20004

Gerald Fisher, Esq.
419 7th Street, N.W.
Suite 201
Washington, D.C. 20004

Howard Bramson, Esq.
717 D Street, N.W.
Third Floor
Washington, D.C.  20004

Frederick Jones, Esq.
901 6th Street, S.W., #409
Washington, D.C. 20024

Jonathan Zucker, Esq.
601 Indiana Avenue, N.W., # 910
Washington, D.C.  20004

Peter R. Zeidenberg
Assistant United States Attorney

Anjali Chaturvedi
Assistant United States Attorney

114

App 637

A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

98CR329

- - - - - - - - - - - - x
                 :
UNITED STATES OF AMERICA  :
                 :
     versus        :    Criminal Action Number
                 :
JEROME MARTIN,       :    F-7319-97
                 :
    Defendant.     :
                 :
- - - - - - - - - - - - x

FILED

AUG 1 8 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Washington, D.C.
Wednesday, January 14, 1998

     The above-entitled action came on for a Trial before the Honorable STEPHEN G. MILLIKEN, Associate Judge, in Courtroom Number 311, commencing at approximately 10:04 a.m.

     THIS TRANSCRIPT REPRESENTS THE PRODUCT
OF AN OFFICIAL REPORTER, ENGAGED BY THE
COURT, WHO HAS PERSONALLY CERTIFIED THAT
IT REPRESENTS THE TESTIMONY AND PROCEEDINGS
OF THE CASE AS RECORDED.

     APPEARANCES:

     On behalf of the Government:

     LYNN LIEBOVITZ, Esquire
     JOHN CRABBE, Esquire
     Assistant United States Attorneys

     On behalf of the Defendant:

     MARK J. ROCHON, Esquire
     Washington, D.C.

COURT/REPORTERS/DIV.
DISTRICT/OF/COLUMBIA
COURTS

RECEIVED
APR 14 8 10 AM '98

MISS LORETTA E. KACZOROWSKI     (202) 879-1058
Official Court Reporter

## P R O C E E D I N G S

THE DEPUTY CLERK:  United States versus Jerome Martin, case number F-7319-97.

Parties please step forward and identify yourselves for the record.

MR. ROCHON:  Good morning, Your Honor.  Mark Rochon on behalf of Jerome Martin.

MS. LIEBOVITZ:  Good morning, Your Honor.  Lynn Leibovitz for the United States, and John Crabbe.

MR. CRABBE:  Good morning, Your Honor.

THE COURT:  Good morning.

(Defendant present).

MR. ROCHON:  Mr. Martin is before the Court.

I have a preliminary matter.

THE COURT:  Yes, sir.

MR. ROCHON:  The Government has given us additional discovery and some which I'll detail for you in a moment. The short, though, to get to the heart of my preliminary matters I will be seeking to continue the trial.  I've discussed that with my client, we have been operating under the clear impression that we still operate under that, the Court made I think fairly clear, that the party moves gets an adverse detention decision.  I'm not saying that you announced that as a ruling, but suffice to say Mr. Martin understands that by my so moving, uhm, he will be held until

2

new trial date.

THE COURT: It's not that automatic and you do have a pending motion before Judge Bayly and you can press for resolution of that. I don't know that the Government has responded in opposition to the motion.

MS. LIEBOVITZ: We certainly --

THE COURT: Before Judge Bayly.

MS. LIEBOVITZ: I don't know, Your Honor.

MR. ROCHON: The Government has not, the problem has been that nobody wants to decide that motion till the transcript of the hearing is prepared, and we've had a devil of a time getting the court reporter to prepare it. So that the reason that it hasn't been pushed harder has been that.

THE COURT: In the delicate relationship between a trial judge and the court reporter's division, I would be glad to endorse an order that really is couched in terms of a recommendation to Miss Shirley Shepard-Curley that they get that transcript made available to John Bayly so that that opposition can be heard.

MR. ROCHON: And the reason it was necessary, Judge Kramer made clear that if for some reason Judge Bayly wished to just refer it back to her she would be more than happy to do that but she had told me don't even bother until you have a transcript that you can show me and I can read, because my ruling is going to depend on what was said at that hearing.

And so that's the limbo we're in. I would not be surprised if Judge Bayly did not -- I would not be surprised if he did refer it to you, but I can't even intimate that that's an option until you would have something to read just as well.

THE COURT: I understand completely.

MR. ROCHON: I see you have a phone call, Your Honor, maybe I'll stop.

THE COURT: Judge Burgess so I'll take that now.

MR. ROCHON: I see why you might.

(Thereupon, the Court engaged in a telephone conversation; off the record).

MR. ROCHON: Your Honor, having said that I just want to let you know kind of the background of my -- I'm sorry, I didn't mean to leap.

THE COURT: No difficulty, keep going.

MR. ROCHON: The background of the request for the continuance, we've learned through the grace of the United States's efforts that the palm print of the informant was indeed in the van in question which is helpful, the 251 in the case, 251s in the case have now been provided.

I'd had the wrong crime scene search report in regards to the items that were transmitted to the FBI, and so when I was comparing that crime scene search report to the ballistics report I was at sixes and sevens in terms of relating the items seized with the items tested. The

correct, uhm, crime scene search report has been forwarded to me.

In addition two pieces of **Brady** information, potential **Brady** information were disclosed by the United States today. The owner of the motorcycle on which my client was allegedly riding, I think, on the United States' version, has been interviewed by the United States and the United States has disclosed that that person says that he had never in life loaned that motorcycle to my client, and that as far as he knew my client would not have, therefore, been on the motorcycle, combined with the fingerprint of another on the helmet found on the scene that is potential exculpatory information that I'll pursue. The United States indicated to me they were going to make efforts to writ that person here.

Another piece of potential **Brady** information was revealed in which there was a conversation with -- in which an individual known as, Southwest James, the same James Montgomery you heard reference to in the motion's hearing yesterday was in fact a person shooting at the police, not the person known as Pimp or Jerome Martin.

MS. LIEBOVITZ: I think that's not entirely accurate.

MR. ROCHON: Our conversation --

THE COURT: And these remarks to spare you further

5

App 643

elucidation today may be written in a supplemental memorandum in aid of a request for either reopened hearing or release pending further trial proceedings.

MR. ROCHON: Yes.

THE COURT: Because the guts of the argument before Judge Bayly as I understand it is that His Honor did not allow you to inquire, present evidence that went to the weight of Government's case as His Honor was required to consider that fact as bond determination.

MR. ROCHON: Right. Having said that I won't argue it further here and I understand Miss Leibovitz may not agree with my characterization of it.

THE COURT: And have an opportunity to oppose in writing.

MR. ROCHON: Right. So if we could select a new date if the Court is inclined to permit a continuance.

MS. LIEBOVITZ: Your Honor, before we do that I'd like to put a few matters on the record if I may. I have two original pleadings I intended to file with the Court this morning, I can take them to the clerk's office, or give them to your clerk, I don't know what Your Honor's practice is.

One is a motion in limine that would be handled on trial date to preclude the defense of self-defense or that another person committed the offense. And the second was a

6

detailed notice to the Court and counsel regarding the pretrial matters that I thought we would address this morning. Included in that are the two disclosures that Mr. Rochon has made reference to, somewhat differently than I would characterize them but I won't go into that now. And with respect to those individuals we are in the process of make arrangements to bring those people here and would have made those persons available for trial, and for that reason we're ready for trial despite those disclosures, and that those people would have been available here for Mr. Rochon to call should he have chosen to do so, but I will put a halt to that since we're not going to trial.

In addition, there is a recitation of some of the potentially sticky **Jencks** issues that may arise, details in particular involving our understanding of the state of the existence and nonexistence of reports of the police shooting -- police discharge of firearms. We've done some very detailed checking in the last couple of days and that's recited in here. And status of the fingerprints and firearms examination.

So I -- I wanted the Court to be aware of those, and I'm sure the lay of the land will be much different in a couple of months, but some of these issues will still be alive.

THE COURT: I understand completely. My job has

been to just stay and roll and try this case as scheduled. I'm not going to overrule the combined wisdom of counsel, I went to the lengths of questioning whether the detention order came as a surprise to the Government and put the Government at a complete flurry of activity trying to prepare for this date.

MS. LIEBOVITZ:  Just don't know.

THE COURT:  I don't hear the Government to be strenuously objecting or indeed objecting at all to the request for a continuance.

MS. LIEBOVITZ:  We don't object to that, we do in fact object to any modification of bond status.

THE COURT:  I understand that, and that's not at issue presently and it's subject to any further litigation that may be pressed on Judge Bayly or me.

We talked about a further trial date, I said the first date for me would be the 31st of March, Mr. Rochon is not available --

MR. ROCHON:  Let me check, Your Honor.

THE COURT:  -- up to the week prior, and so I'm going to suggest that we turn to April.  And you can have the third, tenth or 13th as my first three dates.

MS. LIEBOVITZ:  Your Honor, the Government is completely free on any of those dates.  The third, tenth or 13th?

8

App 646

THE COURT: Or any day thereafter in 1998.

MS. LIEBOVITZ: I would suggest the 13th because that's a Monday. We hate to pick juries on Fridays.

MR. ROCHON: Just to show how we get along so great. I would prefer the third which is the Friday.

THE COURT: Friday is excellent day. The jurors we're going to pick for this case are going to have to be available for a week, and they're going to know it, we're going to eliminate those who have a hardship that would prevent them from serving.

My experience is few judges call for jurors on Friday, that you get an untainted panel and it's a marvelous day to pick a jury.

MS. LIEBOVITZ: Well, what about handling pretrial matters the second?

THE COURT: Yes, ma'am. In fact, I need to know if there's any issue which is going to delay the call of a panel on that Friday morning.

MS. LIEBOVITZ: I think we have a lot of matters to discuss frankly. I think that there are going to be **Jencks** matters.

THE COURT: I need that 72 hours in advance of trial, I will have a clean up day, a status call of the day on Thursday the second, and we pick the jury on the third, and there's a tremendous amount at stake. Nobody has

broached the subject of any resolution of this matter short of trial, that's also a topic for discussion between counsel, it may have been on-going, none of my business till a resolution is announced but do reflect on it.

I give you a copy of just patterned, printed elements instruction, you need to add a while-armed element to the assault with intent to kill, and craft, in light of 13 counts and the pattern of preliminary instruction by the Government taking a first cut and then a defense reviewing it, crafty, precise preliminary instruction you want me to give the jury on Friday.

MR. ROCHON: Your Honor, if I -- in regards to the date that we've selected, I take it the Court has none before March 31st, I know you said that.

THE COURT: True.

MR. ROCHON: I just wanted to explore it if I may. You're jammed -- I have dates well before --

THE COURT: I took you at your word. I'm on leave the week of the 23rd of March, and I took you at your word when you described your schedule yesterday.

MR. ROCHON: I think I said my first date was February -- I had dates in February. But you do not.

THE COURT: I do not.

MR. ROCHON: I see.

MS. LIEBOVITZ: For what it's worth there are other

10

App 648

matters that are sort of outside the perimeters of this case but relating to this defendant which may make a trial of this case at any time superfluous and perhaps we wait till April --

MR. ROCHON: Right.

THE COURT: We have the third.

MS. LIEBOVITZ: And are we now scheduled to come in on best to handle pretrial matters?

THE COURT: Yes.

MS. LIEBOVITZ: What time of day, Your Honor?

THE COURT: 9:30. And that's 72-hour rule.

MS. LIEBOVITZ: And 72 hours beforehand Your Honor would like a memorandum indicating what matters would be covered at that hearing? Is that it or --

THE COURT: You would have called Mr. Rochon and then you called chambers and say we need an emergency hearing and I will see you within 24 hours of your call to address any issue that potentially threatens the timely commencement of trial.

MS. LIEBOVITZ: I understand.

MR. ROCHON: Your Honor, at the risk of driving everyone and this Court crazy, my calendar makes the tenth less likely I'll be carried over in another trial. I know you've already put it on your calendar and you don't have a lot of cross-outs on your calendar.

THE COURT:  Pencil, marvelous invention.

MR. ROCHON:  I don't have one but I'm afraid that I'll be carried over and would prefer the tenth so that I don't violate your 72-hour rule showup on the second and tell you I'm in trial.

MS. LIEBOVITZ:  Your Honor, that's actually not a good day for me, that's first day of Passover.  And Monday would be fine.

MR. ROCHON:  The 13th.

MS. LIEBOVITZ:  The 13th would be fine and any other day that week would be fine.

MR. ROCHON:  The week of the 13th.

MS. LIEBOVITZ:  Or the preceding week, it's just that one day.

MR. ROCHON:  The 15th, 16th or 17th available to the Court?  Of April.

THE COURT:  Fifteenth is wide open.

MR. ROCHON:  Great.

MS. LIEBOVITZ:  Any one of those is fine.

MR. ROCHON:  Fifteenth for status, 16th for trial, Your Honor?

THE COURT:  Fine by me.

MS. LIEBOVITZ:  Fifteenth for status, 16th for trial.

MR. ROCHON:  Right.  Thank you, Your Honor.

MS. LIEBOVITZ: And may I request that if Mr. Rochon, who we all know is very popular in this town, thinks that it's likely this case isn't going to go or be bumped or he will be in trial beforehand that he let the Government know and chamber.

THE COURT: It's within the 72-hour rule.

MR. ROCHON: I'll do that.

MS. LIEBOVITZ: Or I mean two-weeks advance notice.

MR. ROCHON: I'll give as much notice as I can.

THE COURT: You can always pick up a phone and ask him. Thank you.

MR. ROCHON: Thank you very much, Your Honor. May we be excused?

THE COURT: Yes. And continuance he'll be held without bond.

MS. LIEBOVITZ: May I tender my motion to the Court or take them to felony clerks?

THE COURT: Certainly you may.

(Thereupon, the proceedings were adjourned at 10:18 a.m.)

* * * * *

## CERTIFICATE OF REPORTER

I, Loretta E. Kaczorowski, an Official Court Reporter for the Superior Court of the District of Columbia, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the hearing in the case of the **UNITED STATES OF AMERICA versus JEROME MARTIN,** Criminal Action Number F-7319-97, in said court on the 14th day of January, 1998.

I further certify that the foregoing 13 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, together with the backup tape of said proceedings.

In witness whereof, I have hereto subscribed my name, this the 13th day of April, 1998.

Official Court Reporter

APR 14 8 10 AM '98
COURT/REPORTERS DIV.
DISTRICT/OF/COLUMBIA
COURTS
RECEIVED

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

------------------------------x
                      :

UNITED STATES OF AMERICA :

                      :

      v.          : Criminal Action No. F-7319-97

                      :

JEROME J. MARTIN,      :

                      :

      Defendant   :

                      :

------------------------------x

                    Washington, D. C.

                    Thursday, April 16, 1998

The motions hearing in the above-entitled action was resumed before the Honorable STEPHEN G. MILLIKEN, Associate Judge, in Courtroom Number 311, commencing at approximately 9:44 a.m.

               THIS TRANSCRIPT REPRESENTS THE PRODUCT
               OF AN OFFICIAL REPORTER, ENGAGED BY
               THE COURT, WHO HAS PERSONALLY CERTIFIED
               THAT IT REPRESENTS RECORDS OF TESTIMONY
               AND PROCEEDINGS OF THE CASE AS RECORDED.

               APPEARANCES:

                 On behalf of the Government:

                 JOHN D. CRABB, Esquire
                 KENNETH L. WAINSTEIN, Esquire
                 Assistant United States Attorneys

                 On behalf of the Defendant:

                 MARK J. ROCHON, Esquire
                 Washington, D. C.

Darlene B. Swaringer
Official Court Reporter         Telephone:  (202) 879-1034

                                       72

App 653

P R O C E D I N G S

* * *

THE DEPUTY CLERK:    United States versus Jerome Martin, F-7319-97.

MR. ROCHON:  Good morning, Your Honor.  Mark Rochon on behalf of Jerome Martin, who was inadvertently not brought up from the jail.  He waived his presence for the purpose of these scheduling matters.

THE COURT:  I've thought about that.  It seems to me his presence is required constitutionally except to the extent we're having a purely legal discussion or addressing schedule.

MR. ROCHON:  I'm glad you added the latter.  Mr. Martin certainly doesn't want to be brought up on a forthwith just to find out when he's next coming to court.

THE COURT:  But he may want to be present to talk to you if there's a disclosure by the government of the persons, the object of any shooting.

MR. ROCHON:  Yeah, if we get into substance.  Actually, Your Honor, Mr. Martin, and I know him very well, would not want to be forthwithed simply for that.  His mother is here and his sister is here.  And I can guarantee you I'll be speaking to him before the sun sets.

THE COURT:  All right.  Under those circumstances I accept the waiver.

73

MR. ROCHON: Thank you.

MR. WAINSTEIN: Good morning, Your Honor. Ken Wainstein on behalf of the United States.

MR. CRABB: Good morning, Your Honor. John Crabb for the United States.

THE COURT: We litigate the availability of unnamed objects of the shooting so that we don't run smack into a missing witness issue at trial.

MR. WAINSTEIN: I guess I'll answer that two ways. First, Your Honor, I think -- I discussed with Mr. Rochon what the scheduling matters were today and it looks like we're not going to be going forward into the substance of this case. So I am not sure.

THE COURT: I'm doing everything I can to try this case and the three of you are frustrating the plan.

MR. ROCHON: Today, I think, and I hate to admit this, but I might have to say just one of us is frustrating the plan and that would be me, I guess.

I agree with -- Let me say this. I agree with the Court.

THE COURT: You see this looming missing witness problem, obviously?

MR. WAINSTEIN: I see it, Your Honor.

MR. ROCHON: Your Honor, I see so many problems that what I would propose that you do is set this matter for

74

a status hearing before this Court on or after May 4th. We will get a little slippage that way but there may be some -- I think that some of what happened yesterday could allow the United States to reasonably reevaluate their case. I urge them to reevaluate their case.

I think that it would be fair to this record to say that perhaps even some of what was developed may have even been information that the United States can reconsider, even if it was known to the United States previously. And it is -- it continues to be my hope that the United States will reevaluate its decision to go forward in this case.

I think that inquiry would be furthered by setting this matter down for a status on May the 4th or May the 5th. Okay. And I don't believe the United States would object to that request.

THE COURT: All right. The -- Let me -- If there's no objection and that's what you propose to do, you know the position I have taken. Unless for some reason Judge Bayly certifies the bond issue to me.

MR. ROCHON: Have you asked --

THE COURT: My job is to just try this case.

MR. ROCHON: Have you communicated -- I mean, have you referred the matters to him as they have come to you?

THE COURT: I haven't spoken a word to or with Judge Bayly about this matter.

75

App 656

MR. ROCHON: In exchange a post-it note on a pleading, this just came in a case. I defer it.

THE COURT: Nothing.

MR. ROCHON: See, I would urge the Court to consider forwarding -- Since that is your position, I can't just file things willy-nilly I think with Judge Bayly. If you don't --

THE COURT: Is he even in the Division anymore?

MR. ROCHON: No. He is not in the Criminal Division. Nor is Judge Kramer. And I dare say, if the Court would send a post-it note to Judges Baylor and/or Kramer saying this motion has come in. I will deal with it only if you don't. I would be expecting one of two things. Either they will deal with the motions or they will tell you to. I'm in an awkward position compelling Judge Bayly to deal with motions that are, you know, I would -- I think that's something I would ask be worked out.

THE COURT: I will in just those terms. I will deal with the pending bond review motion only if you don't. I will address it to Judges Bayly and Kramer and that gives them the first opportunity to certify the matter to me. That's fine.

I mean, I have had judges certify matters to me. I mean, the judge will take a preventive detention hearing, order detention. And then a bond review motion comes in and

76

the premises have nothing to do with the facts aired at the hearing. And that judge has said, look, you now know more about the case than I do, keep it. And so I don't have any difficulty with that, but I do think I owe it to them to.

MR. ROCHON: I might tell you I think the legal issue I was trying to raise at one time before Judge Bayly is moot. Because so much has been learned about this case at this point that you know of, that he wasn't privy to, that you're probably the best factfinder. Otherwise, I've got to then apprise him of even the things that have happened this week. Because I think it's a continuing flow of information that compels the Court to reevaluate my client's detention.

THE COURT: May I have the file? Did I give you the government's proposed --

MR. ROCHON: I want to be sure we are going to meet on May 4th.

MR. WAINSTEIN: Your Honor, may I request the end of that week or the beginning of the next week for status?

MR. ROCHON: Mr. Martin has another case. And Ms. Rose from the Public Defender Service is counsel on the case. It has been set for a preliminary hearing on April 29th, but not before this Court. Which is probably an error. I think this is a Rule 105 that suggests -- It's another preventive detention case against Mr. Martin brought by the United States. I would think it would come here.

77

THE COURT: Where is it presently set?

MR. ROCHON: I think Judge Rankin -- Judge Burgess or Rankin. I don't know. Ms. Rose -- I talked to Ms. Rose and in passing she said she had a preliminary hearing before Judge -- I don't know.

MR. WAINSTEIN: I believe it's Burgess, I'm not sure.

MR. ROCHON: I just know it was a judge not named Milliken.

THE COURT: Gentlemen, this matter is your prosecution as well?

MR. WAINSTEIN: Actually, I'm not handling it. I'm aware of it, though. And I believe it is Judge Burgess and that's on April 29th, I believe.

THE COURT: Certainly, co-defendant or joint matters would come. I'll make a motion to certify it and file it with the clerk.

MR. ROCHON: I'll leave it to Ms. Rose to do anything.

THE COURT: Fair enough. On Counts One and Two, the assault with specific intent to kill is charged as against victims whose identities were unknown to the grand jury at the time of their indicting Mr. Martin. Certainly if you fire multiple shots into a passing train, you have no idea who the passengers are. That could be an assault with

78

App 659

intent to kill and if you don't learn about those folks, that's that.

I believe I said yesterday, I need to know from the government why, you know, this is any different analytically than sitting in a voir dire and having the government introduce its witnesses, six of whom the defendant and the lawyer have never seen before. And why, if you are not in the same kind of ambush position, why individuals later named by a witness are any more than potential witnesses analytically. And I need to know if there is case law that suggests that there are notice issues.

Now, I can see an argument, not to make one for the defense. But it's pretty hard, especially for someone whom the defense claims the government assiduously pursues, it's pretty hard for Mr. Martin to plead a bar of double jeopardy to assault with intent to kill additional named people after having faced this charge with unknown victims.

So that if, for example, Mr. Martin is acquitted of these charges, then he gets indicted -- it may be a statute of limitations issue -- for assault with intent to kill these people whose identities the government now knows. And maybe the statute of limitations moots the double jeopardy issue.

But, it seems to me that those are the two areas, the notice and the ability to plead this trial and a bar against subsequent prosecution. And the potential problems

79

of missing witness instruction, which is so disfavored by the Court of Appeals.

And potentially if there's something as a matter of fairness that requires a mid-trial continuance to allow for an investigation, if something of a Brady nature surfaces in this evidence. Especially where it seems like to some extent both sides are learning as we go that there are reasons to reflect on sharing the identity of those two individuals. And if not, just openly sharing them under some proposed protective order that allows the defense to get ready.

And then third, if there's just resistance, for you to tell me before we meet again the law on notice, fairness and missing evidence. And I really think if you -- if there is not to be the disclosure we're going to have to litigate the availability issue. I'm going to have to know whether these are individuals who are available to the government. Because if they are and they don't testify, then there's a missing witness instruction coming -- something.

MR. WAINSTEIN: If they are uniquely available to the government and not to the defense.

THE COURT: Correct. So the availability issue is a critical issue then. Not -- You haven't told me, for example, whether those two people will be witnesses.

MR. WAINSTEIN: They are not going to be.

MR. ROCHON: Your Honor, in other words --

80

THE COURT: Are they dead or alive?

MR. WAINSTEIN: They are alive.

THE COURT: All right.

MR. ROCHON: The government I think plans on having them identified during the trial.

THE COURT: I mean, you're going to cross-examine, you're going to --

MR. ROCHON: Witness A. will, I presume, testify and be asked questions that, according to Detective Rodgers, he would answer by saying who the victims were.

THE COURT: Witness A. who you speculate is an individual facing some complications in Prince George's County?

MR. ROCHON: No.

THE COURT: Different person?

MR. ROCHON: I don't think that's Witness A. In fact, it's fairly clear that's not Witness A., that's a later witness with a different problem. He may have problems or she may have problems. I know nothing about Witness A. Witness A. was the '91 witness who popped up that we know -- therefore we know the least about because Rose and I started investigating this case in 1997.

MR. WAINSTEIN: Your Honor, I will certainly reflect on all those issues and if --

THE COURT: Among other issues that apparently you

81

are already discussing that I know nothing about.

MR. WAINSTEIN: And I will disclose it to the defense if it's appropriate. And if not, I will state my reasons and pleading as to why not.

THE COURT: Final point. You mentioned that gentleman's name in a public pleading. Is there any secret about my mentioning the name of the individual's initials are J. M.?

MR. ROCHON: At least now we know who you are talking about. I used his name in a public pleading and I don't think --

THE COURT: Any secrecy around that? If you want to come to the bench, come to the bench.

MR. WAINSTEIN: I would prefer that.

THE COURT: Fine.

(Thereupon, counsel for both parties approached the bench and conferred with the Court, as follows:)

THE COURT: James Montgomery is not an unusual name. And I have no idea whether this is true. But when I read the name last night it occurred to me. James Montgomery is a person whose name came to mind and I -- The first thing that came to my mind was that when I was in practice, the firm I was with may have represented him. I don't think I ever represented him. But it may be that Greta Van Sustern represented him in a case in D. C.

82

MR. ROCHON: What's the date.

THE COURT: During the 80's. And it would have been a D. C. case and possibly a homicide?

MR. ROCHON: No. I wish. He didn't have -- I mean, I've run his record. He didn't have a homicide case in the 80's.

THE COURT: Maybe it was another case. I don't know. In any event, it seemed to me --

MR. ROCHON: We better make sure there's not a conflict.

THE COURT: I mean, it's remote.

MR. ROCHON: Uh-huh.

THE COURT: But if there is a recusal issue you need to be aware of it. But it seems to me, given the state of knowledge I have, it's remote, I am unsure, and it wouldn't affect my consideration of the case. And there is no reason for me to recuse. But the worse thing for me to do would be to go searching files to determine if there is an issue for me. And I thought I should lay it in your laps.

MR. WAINSTEIN: We'll take care of that. I think we could ascertain that he was not represented by your firm. I think that's the case.

THE COURT: And you know the state of my present knowledge.

MR. ROCHON: Right. I think I can tell you, I've

83

got his -- We did a pretty thorough workup on him and I am confident that he was not represented by your firm.

THE COURT: Almost a hundred percent of the issues that arise for judges who are not the factfinder are solved by disclosure. And I that's the end of it.

(Thereupon, the proceedings had at the bench were concluded; counsel returned to their seats at counsel table; and the hearing resumed, as follows:)

THE COURT: So you've just basically come to tease me with the prospect of trial and interesting ancillary issues. And I'll see you on the, is it now the 8th of May?

MR. ROCHON: It is.

THE COURT: For status with no further date scheduled. And Mr. Martin held preventively. And my obligation now is to write to Judges Kramer and Bayly.

MR. ROCHON: Thank you. I appreciate that.

THE COURT: Have a good day.

MR. WAINSTEIN: Thank you, Your Honor.

THE COURT: I'll give you a copy, of course, of my writing to those judges.

(Thereupon, the Court recessed at approximately 10:00 a.m.)

84

CERTIFICATE OF REPORTER

I, Darlene B. Swaringer, an Official Court Reporter for the Superior Court of the District of Columbia, do hereby certify that I reported by machine shorthand and tape recording, in my official capacity, the proceedings had and testimony adduced upon the trial in the case of UNITED STATES OF AMERICA v. JEROME J. MARTIN, Criminal Action No. F-7319-97, in said court, on the 15th and 16th days of April, 1998.

I further certify that the foregoing 84 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes and tape recording.

In witness whereof, I have hereto subscribed my name, this the 11th day of May, 1998.

*Darlene Swaringer*

OFFICIAL COURT REPORTER

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

------------------------------x
                              :
UNITED STATES OF AMERICA       :
                              :
          versus              :     Criminal Action Numbers
                              :
JEROME MARTIN,                 :     F-7319-97 and
                              :     F-2653-98
          Defendant.          :
------------------------------x

Washington, D.C.
Tuesday, May 12, 1998

          The above-entitled action came on for a hearing before the Honorable STEPHEN MILLIKEN, Associate Judge, in courtroom number 311.

          THIS TRANSCRIPT REPRESENTS THE PRODUCT OF AN OFFICIAL REPORTER, ENGAGED BY THE COURT, WHO HAS PERSONALLY CERTIFIED THAT IT REPRESENTS TESTIMONY AND PROCEEDINGS OF THE CASE AS RECORDED.

          APPEARANCES:

          On behalf of the Government:

          KENNETH WAINSTEIN, Esquire
          Assistant United States Attorney

          On behalf of the Defendant:

          MARK ROCHON, Esquire
          Washington, D.C.

Elizabeth Graybill                    (202) 879-1082
Official Court Reporter

1

App 667

# P R O C E E D I N G S

THE DEPUTY CLERK:  And turning to Your Honor's calendar once again, United States versus Jerome Martin, case number F-2653-98 and also F-73 -- 7319-97.

MR. ROCHON:  Good morning, Your Honor.  Mark Rochon on behalf of Jerome Martin in both cases.

MR. WAINSTEIN:  Good morning, Your Honor.  Ken Wainstein for the United States.

THE COURT:  Good morning.

MR. ROCHON:  And Mr. Martin is before the Court.

THE COURT:  What happened with Judge Weisberg?

MR. ROCHON:  Judge Weisberg held a 13-25(A) hearing and ordered Mr. Martin held without bond in the new matter.  No date was set except for today's status date since we knew we were before you in the other matter today anyway and figured it might make sense for you to be the person to set dates in the new matter.  That has not yet been indicted, the new case.

THE COURT:  So, shall I set trial dates one after another promptly so these matters can be resolved?

MR. ROCHON:  Well, the one case hasn't been indicted so I don't know -- I don't mind you setting a trial date in that case but we also need to set an interim status date.

THE COURT:  Which could be an arraignment.  How

2

App 668

long will the matter take in the Grand Jury?

MR. WAINSTEIN:  Your Honor, the -- I've discussed this with counsel this morning as to best choice of dates and my recommendation was just to do a date for both cases to go to trial at the end of September.  And if we wish to have an arraignment date in between now and then for this case, we could, but I would suggest go ahead and set a status slash trial date at the end of September.

MR. ROCHON:  The new case is a 13-25 matter.

THE COURT:  What does that make of the bond review motion, which I'm sure Judge Bayly and Judge Kramer want me to address?

MR. ROCHON:  I know the Court had asked for a response from them.  I didn't know whether or not you'd received one.  I guess.

THE COURT:  I had an --

MR. ROCHON:  If they didn't --

THE COURT:  -- offhand approval and no complaint and the matter is mine.

MR. ROCHON:  Okay.  I don't want to say it makes it moot but it puts -- makes it a lot less significant what you do in that matter because he's now held without bond in the new case.

THE COURT:  It all but makes it moot.  And it seems to me that he needs credit for whatever days he's in

3

App 669

jail on whatever case he may ultimately be sentenced, if Mr. Martin's going to be held regardless.

MR. ROCHON: Right.

THE COURT: So I should set a trial date in 7319-97 --

MR. ROCHON: Yes.

THE COURT: -- because we don't have one.

MR. ROCHON: We do not have a trial date.

MR. WAINSTEIN: We don't.

THE COURT: What's the time frame when you're available?

MR. ROCHON: I have dates --

THE COURT: I forever felt that prompt resolution of this matter is the answer and it may affect any bond review motion in the 13-25 matter. I mean, it seems to me we need to resolve this case and it has been lingering and bouncing and it needs to get resolved and that's the relief that's appropriate under the circumstances. And we didn't hold any date, did we?

MR. WAINSTEIN: I'm sorry, Your Honor?

THE COURT: We didn't hold any trial date?

MR. WAINSTEIN: No. We just scheduled today, actually, about a week ago and then this was continued to today just as a status date.

THE COURT: Do you want it in a six-week time

4

App 670

frame?

MR. ROCHON:  I could do -- I could set this matter down for trial --

THE COURT:  I have the 25th and 29th of June, those are two dates that are presently open.

MR. ROCHON:  I can't set it on the 29th.  I've got a -- I have to be available on the 29th and 30th for a rather complicated hearing before Judge Canan that he specially set because of his civil calendar.  It's a two-day hearing.  I can start setting this -- given my trial calendar, I would have to go into July and would ask the Court to look at any --

THE COURT:  The 3rd, the 7th.  If there are motions the 3rd would be a lovely day, the 2nd or the 3rd.  Then we start fresh with a jury on the 7th.

MR. WAINSTEIN:  The third I believe is a holiday, Your Honor.

THE COURT:  Not the 6th?  Isn't that national holiday we celebrate on the Friday rather than Monday?

MR. WAINSTEIN:  That's what my calendar says.

MR. ROCHON:  I know I have matters scheduled on the 6th in the courthouse so I -- some judges at least think that it's -- I would prefer the 7th to the 3rd in any event.

THE COURT:  The 7th it is.

5

MR. ROCHON:  Which case?

THE COURT:  7319-97.  Now, as to the matter heard by Judge Weisberg yesterday, would you like to set it for status on that date or shall I just set a trial date early, early in September with arraignment in late July?

MR. WAINSTEIN:  If I may approach with counsel to discuss a Grand Jury matter, Your Honor?

THE COURT:  Certainly you may.

(Bench Conference.)

MR. WAINSTEIN:  I just don't want to -- Your Honor to be out of the loop and for us to have an agenda here that Your Honor is not aware of.  We have eluded in past appearances to the fact there's an ongoing federal Grand Jury investigation into Mr. Martin involving these acts and number of others.  And I made that clear to Mr. Rochon.

And one of the concerns -- and if I may speak for counsel, one of the concerns is possibility of trying these cases in Superior Court and then turning around and trying them again as part of a conspiracy or a Ricco indictment over in federal court.  And the tactical decisions as to whether that would be good for the defense or not.

We've been open with counsel about our timetable

6

on this federal indictment and -- and we have told Mr. Rochon that we will have made -- that whole process will have been completed by the middle of September which might well -- which will moot out these cases in many ways, one way or the other.

We have along the way said we're ready to go to trial in the '97 case because we did bring it as a federal indictment -- I mean, as a Superior Court indictment and we're ready to go forward on it. However, I have made Mr. Rochon aware that if we had a date at the end of September, by that time we will have been -- we will be prepared to know whether those cases will be, you know, subsumed in the federal indictment or not.

And so that's a consideration while we'd be ready to go forward in the cases here, and have been, it's -- I just want the Court to understand that there -- these tactical considerations have been laid out.

THE COURT: And I will stay completely within my job description and what the future holds, it will hold, and these are matters about which you people know a great deal more than I in this Superior Court trial.

MR. ROCHON: Right. I think -- I appreciate the Court's position, Mr. Wainstein's, and I'll have to consult with my client but I think it would be wise for purposes of your calendaring to set this matter done --

7

App 673

both cases down for a status towards the end of June at least a week before the scheduled trial date because Mr. Martin's position may be that it's simply not in his interest -- he doesn't win if he wins is his problem.  If he wins.

THE COURT:  Aren't there separate sovereign issues?

MR. ROCHON:  No.  The problem is that they'll become --

THE COURT:  I understand.

MR. ROCHON:  -- they'll become Ricco counts and Mr. Martin's view of winning is when he leaves the jail and goes to the street.

THE COURT:  No surprise.

MR. ROCHON:  And so it may be that there's no win for him until he resolves the federal matter and so it may be our eventual position to not seek to go to trial in these matters and to kind of  --

THE COURT:  How far in advance of the presently scheduled July 7th date do you want status so you don't waste witness time or preparation time?

MR. ROCHON:  If we could have one week, I'm on vacation up until about the 29th of June anyway.

THE COURT:  The 29th a fine day for me.  That's a week and a day.

8

MR. ROCHON: That's good. The 29th and 30th.

MR. WAINSTEIN: Okay. And that would --

MR. ROCHON: For status in both.

MR. WAINSTEIN: Status in both cases.

MR. ROCHON: And Mr. Martin will then -- he may -- depending on our position, he may at that point say -- recognize -- we may not seek to go to trial on the 7th at that point. I'll discuss it with him, if that gives the United States enough time.

MR. WAINSTEIN: I guess I would ask this. That arrangement is fine with me. I might ask though for a trial date, the next week, if I could have two weeks.

MR. ROCHON: If we could return to open court to discuss those matters, is that agreeable?

THE COURT: Uh-huh.

(Open court.)

MR. ROCHON: Given the representation at the bench, Your Honor, and to give the United States enough time to figure out our status --

THE COURT: 16th, 17th of July? The next one would be the 21st.

MR. ROCHON: Actually, Your Honor, if we could set this for 7th, I could set this down for status on the 23rd of June. I am actually back on the 23rd. That gives the United States two weeks notice of what our position

9

App 675

will be.  Is that agreeable to the Court?

THE COURT:  Perfectly fine.

MR. ROCHON:  Thank you.

MR. WAINSTEIN:  That's fine, Your Honor.

MR. ROCHON:  So we have a status.

THE COURT:  23rd, we have a status embracing F-7319-97.  And the case number in the matter that was heard by Judge Weisberg yesterday is?

THE DEPUTY CLERK:  F-2653-98.

THE COURT:  Is there a likelihood that by that date the District Court side developments will be sufficiently known for intelligent final decisions on these fronts, within a month there will be sufficient knowledge for both to exercise judgment about trial of these cases here in Superior Court?

MR. WAINSTEIN:  We'll have more information that we can give to defense counsel.  I will say, though, that I do not believe that the process will be finalized by then.

THE COURT:  Thank you each kindly.

MR. ROCHON:  Thank you very much, Your Honor.

MR. WAINSTEIN:  Thank you, Your Honor.

MR. ROCHON:  We'll see you on June 23rd.

THE COURT:  Month by month.  All right.

MR. ROCHON:  Thank you.

10

App 676

(Proceedings were concluded.)

\* \* \* \* \* \* \* \* \* \*

**CERTIFICATION OF REPORTER**

I, Elizabeth Graybill, an Official Court Reporter for the Superior Court of the District of Columbia, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the hearing in the case of the UNITED STATES OF AMERICA versus JEROME MARTIN, Criminal Action Numbers F-7319-97 and F-2653-98, in said court on the 12th day of May, 1998.

I further certify that the foregoing 10 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, together with the backup tape of said proceedings.

In witness whereof, I have hereto subscribed my name, this the _____4th_____ day of _____Feb_____, 1998 2000

Elizabeth Graybill
Official Court Reporter

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

```
------------------------ x
                         :
THE UNITED STATES        :
                         :
        VS.              :   CRIMINAL ACTION NUMBER:
                         :   F-7319-97, F-2653-98
JEROME MARTIN,           :
                         :
        Defendant.       :
                         :
------------------------ x
```

Washington, D. C.
Thursday, June 23rd, 1998.

The above-entitled action came on for a Hearing before the Honorable STEPHEN MILLIKEN, Associate Judge, in Courtroom Number 311 at or about 10:00 a.m.

THIS TRANSCRIPT REPRESENTS THE PRODUCT OF AN OFFICIAL REPORTER, ENGAGED BY THE COURT, WHO HAS PERSONALLY CERTIFIED THAT IT REPRESENTS HIS ORIGINAL NOTES AND RECORDS OF TESTIMONY AND PROCEEDINGS OF THE CASE AS RECORDED.

APPEARANCES:

FOR THE GOVERNMENT:
NANCY JACKSON, Esquire
KENNETH WAINSTEIN, Esquire
Assistant United States Attorney

FOR THE DEFENDANT:
MARK ROCHON, Esquire.
Washington, D. C.

DERRICK CONEY
OFFICIAL COURT REPORTER          Telephone: 879-1053

1

App 678

P-R-O-C-E-E-D-I-N-G-S

-oOo-

THE DEPUTY CLERK: Returning to Your Honor's status calendar, the United States versus Jerome Martin, Case Number F-7319-97 and F-2653-98.

MR. ROCHON: Good morning, Your Honor. Mark Rochon on behalf of Mr. Martin in both cases.

MR. WAINSTEIN: Good morning, Your Honor. Ken Wainstein for the United States.

MS. JACKSON: And Nancy Jackson for the United States.

THE COURT: Good morning.

MS. JACKSON: Good morning, Your Honor.

(Whereupon the defendant enters the courtroom from Lockup)

THE COURT: And Mr. Martin is before the Court.

Mr. Rochon was here earlier and I inquired of him that this hearing to be a none event, or words to that effect. And he suggested it might, indeed, be an event -- a trial event within a couple of weeks. And that case, I would attend.

There was a question I raised earlier about whether I was going to be called upon to preside over a dismissal this morning. And he said not -- not unless the

2

Court knows something that I don't know.

What is the posture of the case?

And I made all those remarks because I was curious about the tension needed today in light of the panel's imminent arrival.

MR. WAINSTEIN: Your Honor, I don't -- under any circumstances, I don't think it's going to be a lengthy proceeding today for your scheduling purposes.

There are two cases, as you know. There's an APO case with some related AWIK's, which is a 1991 case. And that's the case that I'm handling.

Ms. Jackson has a different case, which is an AWIK case from 1994, 1995. That latter case was not indicted.

The former case -- the first case is the one that's indicted. It's been up for trial, I guess, twice previously.

The last time we appeared in court, we set this date for Mr. -- as I recall, a status -- the main purpose of which was for Mr. Rochon to explain to the Court whether or not he and his client wished to maintain the July 7th trial date, or to seek a continuance.

And as I announced, I have told Mr. Rochon the last few months, and as we both advised the Court, this has the -- this case has the added wrinkle of the fact

3

that there is an impending indictment in federal court which will include this case.

As Your Honor pointed out last time, that is not something --

THE COURT: I was, potentially, quoting Mr. Rochon who says this is a thinly veiled attempt to hold his client until the federal indictment.

MR. WAINSTEIN: That is been his allegation right, though we have been up for trial --

THE COURT: Is this matter going to trial on the 7th of July --

MR. WAINSTEIN: The --

THE COURT: From the Government's perspective? You ready to go to trial?

MR. WAINSTEIN: We're ready to go to trial, Your Honor.

THE COURT: All right. Defense will be ready on the 7th?

MR. ROCHON: Yeah.

THE COURT: Any issues that are not resolved that I need to rule upon?

MR. ROCHON: Yes, many.

MR. WAINSTEIN: There are a number of issues, Your Honor, that we need to resolve.

There are several issues that Mr. Rochon raised

4

and put on the record the last time we were in court about aspects of the case that we need to deal with Mr. Rochon about in terms of evidentiary issues. There are several motions.

THE COURT: Are these discovery issues?

MR. ROCHON: There are some discovery issues.

THE COURT: Are there any pure matters of law?

MR. ROCHON: Yes. As you may recall that the last time we were here, I was in the midst of being certified out for trial. And we began, but did not complete, a Jencks inquiry with an officer -- a retired officer, I believe. But, anyway, Officer Rodgers, I think his name was.

MR. WAINSTEIN: Yes.

MR. ROCHON: Or former Officer Rodgers. One or the other.

And there's also the -- What arose at that hearing is the issue of the identity of the AWIK victims in this case, and the fact that though it was indicted as victims unknown to the Grand Jury.

In fact, during the course of the examination of the officer it became clear that the officer, at least, knew the identities of those victims.

And that became a discovery issue that we were beginning to gel before the Court when we received a phone

5

App 682

call that I was to be sent to Judge Burgess to begin that trial.

So that matter was interrupted. And I think we need to resume it. I'm not suggesting today because I think we'll get swept away either by your panel arriving, or by -- there are Judges hoping to start a trial with me today in this courthouse.

But I -- I think it would behove us to either recognize that on the 7th we're going to have substantial preliminary matters.

THE COURT: That's fine.

MR. ROCHON: That might be the best way to deal with it or to pick a day in the interim that you think would be good to deal with it.

THE COURT: I don't have any days in the interim.

MR. ROCHON: That takes care of that suggestion.

THE COURT: That's a difficulty.

MR. WAINSTEIN: Your Honor, I would ask for it -- to maintain the July 7th date.

In fact, there were a numbers of issues raised by Mr. Rochon that he actually pointedly asked on the record that we --

THE COURT: We're going to run smack into this

6

App 683

question of transferred intent, and folks who are named in the indictment process. All that stuff that gets spun out in the -- What was the case I had occasion to read recently? Joseph.

Is that on your mind, those kinds of issues?

MR. ROCHON: There's a lot of issues on my mind.

But I want -- if I could sidestep the Court's point -- one thing I want to be clear about here is that I've -- though I've often times raised the thinly veiled effort to hold Mr. Martin argument, it is also the case that I think that new matters have arisen in the course of the litigation of this old '91 case that I've asked Mr. Wainstein to look at and consider whether or not the case merits going forward.

And I make that point because I don't want everyone to think that if he dismisses this case, then I'm going to jump up and scream that it was an outrage all along.

I may have disagreed with the initial bringing of the case against Mr. Martin, but I certainly think that there's been a lot of new material developed since it's been brought that would warrant any prosecutor in reevaluating the case. And -- and -- including it's prosecutorial merit.

7

THE COURT: The listing wouldn't have any confusion.

You also have the outstanding fact that I have not dismissed the case nor released your client.

MR. ROCHON: Right. There's a bond motion that's been extant.

THE COURT: And unresolved.

MR. ROCHON: And unresolved.

You had said you were going to take that from the other two other Judges, and I'd left it at that.

Frankly, he was held without bond by Judge Weisberg's Order. Although the case was on your calendar, Judge Weisberg conducted the 1325 Hearing in the newer case, the more recent docket number as well as the more recent case.

THE COURT: I don't know why the ruling of Judge Bailey wouldn't be mine, but I don't -- I don't see how it touched Judge Weisberg, do I?

MR. ROCHON: I think you would have that call to whether -- Again, that's what I hate about having cases certified out for these detention hearings because you can leave a defendant in limbo, but I'm sure Judge Weisberg would give it prompt attention.

Frankly, I'm not going to do anything on that at this juncture. You know, my client's being held in two

8

cases.

I await -- I put what I did on the record because I want to make sure that the end result in this case is what I think is a correct one, in which I think from the standpoint of -- of the merits of the case, a dismissal at this juncture of an older case is appropriate.

And for reasons that are not simply because it's an old case it shouldn't have been brought, but because all sorts of things have turned up since in the litigation of it.

And I -- Fingerprints of others. I mean, there's a whole lot of new information that's come up since the case was brought into the system.

MR. WAINSTEIN: If I may, Your Honor.

MR. ROCHON: I'm sorry.

MR. WAINSTEIN: That's fine.

Mr. Rochon made a number of those points on the record and then followed them up in a phone call with me. And I must admit that since the last hearing at which we decided we would put off his decision about the timing of the -- the scheduling of the trial until today, since that point those issues have been shelved.

We have not gone back to look at them and we don't need to interrupt them between now and July 7th.

9

MR. ROCHON: My suggestion to the Court, having said all of that, is that we come back before you on July 7th with the understanding that that day may involve preliminary matters. If not -- I'd like to resolve them before jury selection. Some of them, in our opinion, go right to the heart of the case.

THE COURT: Do you have any objection to that because when I start putting Jencks issues ahead of the completion of direct examination -- and I'm stepping a little out of line -- and -- but I think it's healthy under the circumstances of this case that we go ahead and litigate all the preliminary issues so that when this matter goes to trial by jury, it is fairly positioned for both sides.

MR. WAINSTEIN: No, I have no objection to that at all, Your Honor.

THE COURT: It makes sense.

And I think, while you can do a lot more to acquaint me with the trees, that my forest view -- that my principle job is to be here and put the case in trial as rapidly as it can be ready to go to trial. It still remains the central point in my job description.

MR. ROCHON: I think the Court's got a real good grasp of its job description in that regard. I mean that's --

10

THE COURT: So the 7th is it for me. I'm not going to move that.

If I'm in trial, you're on a trailing basis. I will try not to be in trial.

MR. ROCHON: Just so we're clear -- and I'm -- the United States is asked me this -- I've cleared my calendar. I have no trials set the week before.

I had a trial set on the 6th. It's pled out. I'm wide open. So I won't inconvenience us. I won't be in trial on the 7th.

THE COURT: I expect to start a trial now and it will go through that holiday.

MR. ROCHON: Right. I realize your calendar is harder to predict because things -- does break down and things can get sent here and so on. But we'll just have to deal with that.

THE COURT: I'm a real good volunteer. And -- so I can refuse, if need be, to get the day cleared for this.

MR. WAINSTEIN: Just so I'm clear, the 7th is preliminary matters to go straight into trial?

THE COURT: Exactly.

MR. ROCHON: Thank you, sir.

MR. WAINSTEIN: As then far as Ms. Jackson's case --

11

MS. JACKSON: Your Honor, I have the other Jerome Martin Case, which is F-2653-98. And in that case I think we need to set, probably, an arraignment date unless you just want to set a status.

MR. ROCHON: One has not been set.

THE COURT: How long do you need for arraignment?

MS. JACKSON: Your Honor, I'm going to need, probably, 'til the end of July.

THE COURT: How's the 30th?

MS. JACKSON: July 30th sounds great.

THE COURT: Agreeable, Mr. Rochon, or that Friday?

MR. ROCHON: Either day is fine. Since the 30th was first selected, I'll take it.

THE COURT: And, again, ongoing discovery and other matters that will help the case for a healthy trial.

MR. ROCHON: Yes, sir.

THE COURT: Do you want to pick a trial date for that matter now?

MR. ROCHON: Sure.

MS. JACKSON: We can, Your Honor. That's going to be a little tricky.

THE COURT: Any day in September after the

12

14th?

I don't have the 24th. But other than that, all those days are free. And, virtually, any day in October.

MR. ROCHON: If the 24th or 25th of September are available?

THE COURT: 25th?

MS. JACKSON: I'm looking, Your Honor.

Your Honor, on September the 24th, we're going to start a trial -- another trial in this courtroom.

THE COURT: Carson case.

MS. JACKSON: Yes.

What about the week after?

THE COURT: The 28th?

MR. ROCHON: For a detained client, I could set this on the 28th or the 29th.

MS. JACKSON: I can do it the 29th, Your Honor.

THE COURT: The 29th is fine.

MR. ROCHON: Thank you, Your Honor.

THE COURT: What I need to know is 72 hours in advance of any trial date whether this matter is to be resolved, or there's anything that's going to derail the trial.

MR. ROCHON: Yes, sir.

THE COURT: Other than that, I'll be ready.

13

MR. ROCHON:   Thank you, Your Honor.

THE COURT:   Thank you.

MR. WAINSTEIN:   Thank you, Your Honor.   Good day.

(Proceedings Concluded)

-OOO-

14

App 691

## CERTIFICATE OF COURT REPORTER

I, Derrick Coney, an Official Court Reporter for the Superior Court of the District of Columbia, do hereby certify that I reported, by machine shorthand, the proceedings had and testimony adduced in the case THE UNITED STATES vs. JEROME MARTIN, Criminal Action Number F-2653-98 and F-7319-97, in said Court on the 23rd day of June, 1998.

I further certify that the foregoing 14 pages constitute the official transcript of said proceedings as transcribed from my machine shorthand notes, and reviewed with my backup tapes to the best of my ability.

In witness whereof, I have hereto subscribed by name, this the 7th day of January, 1999.

DERRICK CONEY

OFFICIAL COURT REPORTER

RECEIVED JAN 7  11 53 AM '99 COURT/REPORTER DISTRICT/OF/COLUMBIA COURTS

15

B

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA    98 CR 329

## SEARCH WARRANT

TO: __Chief of Police - or any authorized agent thereof__    **FILED**

(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by __INVESTIGATIVE Typ_____ ___AUG 18 2000___
__OF THE SIXTH DISTRICT_____ that he has probable cause to beli

that on the (person)(premises) (vehicle) (object) known as __White Mazda Mini-Van, Maryland__    NANCY MAYER WHITTINGTON, CLERK
__Temporary tags 82708W_____    U.S. DISTRICT COURT

in the District of Columbia, there is now being concealed certain property, namely __Fingerprints, photos__
__any all physical evidence which may constitue a criminal offense__

which is __directly related to a criminal offense_____ and as I am satisf

(alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated (person) (premises) (vehicle) (object) and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time the day or night, the designated (person) (premises) (vehicle) (object) for the property specified, and if the property be found there

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE in an inventory of the property seized, to leave a copy this warrant and return, to file a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this __13th__ day of __September__, 19__91__    _____
Judge, Superior Court of the District of Columbia

## RETURN

I received the above detailed warrant on _____ 9-13__, 19_91_ and have executed it as follo

On __9-14__, 19_91_, at _____ 3:30 P M., I searched

(person) (premises) (vehicle) (object) described in the warrant and I left a copy of the warrant and return with_____

_____properly post

(name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

__4 SLUGS, 2 CARTRIDGE CASINGS, MATAROLA PAGER, SER #032093X, D.C. OPERA__
__PERMIT 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, PLASTIC CARD KEY #026681, BLACK CAP, N.O.I. # 717X5887 0, C__
__BUTT, BROKEN GLASS, KEY FROM ASHTRAY, PAPER BAG & GREETING CARD__

This inventory was made in the presence of_____

I swear that this is a true and detailed account of all property taken by me under this warrant.

_____
Executing Officer

Subscribed and sworn to before me this _____ day of _____, 19____

_____
Judge, Superior Court of the District of Columbia

PD 274  4/89

## Metropolitan Police Department
## Washington, D.C.

# Affidavit in Support of an Application for
# Search Warrant

☐ **United States
District Court**

☑ **Superior Court of the District
of Columbia**

On Tuesday, September 10, 1991, at approximately 9:40 PM Metropolitan Officers Edward McDonald, Adrian Tredwell, Mark Little and Alvin Ray observed two individuals involved in an exchange of gun fire in the 5900 block of East Capitol Street. One individual was standing on the street corner. The other subject(s) was firing from the inside of a white mini-van.

As the four officers approached the individuals, who were shooting at each other, an individual(s) fired at the officers. Three of the police officers returned fire and the van was last seen fleeing the area.

A short time later, that evening, a white van matching the description of the van that fled the scene of the assault, was located abandoned at 1300 45th Street, Southeast. The vehicle was impounded as evidence and taken to Police Headquarters, 300 Indiana Avenue, Northwest.

On Thursday, September 12, 1991, the four officers involved in this assault identified the impounded van as the vehicle that fled the scene of the shooting.

The affiant is requesting that a search warrant be issued for the below listed vehicle:

White Mazda Mini-Van
Maryland Registration 82708W

The vehicle is currently in the basement of 300 Indiana Avenue, Northwest.

_____
**Affiant**

_____
**United States Attorney**

_____
**Element**

**Subscribed and sworn to before me this** ____ **day of** _____, 19__ .

_____
**Magistrate**
**United States District Court**

_____
**Judge**
**Superior Court of the District of Columbia**

900113

App 695

App 696

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT FOR THE ENTIRE PREMISES KNOWN AS 211 I STREET, SE, WASHINGTON, D.C. DESCRIBED AS A TWO STORY RED BRICK ROW HOUSE WITH THE NUMBERS "211" ON A SIGN TO THE LEFT OF THE FRONT DOOR.**

Your affiant in this matter is Detective Neil Trugman of the Metropolitan Police Department, Washington, D.C., and has so been employed for over twenty years. Your affiant is currently assigned to a narcotics and violent gang intelligence gathering squad which is responsible for identifying such gang activity in the D.C. area.

Your affiant has identified William Kyle Sweeney, Jr. as a narcotics trafficker in the Washington, D.C. area, principally an area in Southwest, D.C. that stretches along the 900 and 1000 blocks of Delaware Avenue and the 200 blocks of K and L Streets, Southwest. This area is known throughout the Washington Metropolitan area for it's high volume of marijuana sales, and this high volume has been the cause for violent clashes over control of the area. Through your affiant's investigation, Sweeney has been identified as a wholesale supplier of marijuana to the aforementioned area in Southwest, D.C. and had used 211 I Street, SE as a stash house for his narcotics. In fact, a confidential source who has provided reliable information which has led to the recovery of large amounts of various types of narcotics, weapons and proceeds from the distribution of narcotics, and whose information has led to the forfeiture of over $300,000.00 in assets as well as the conviction of numerous individuals for narcotics related offenses, advised it has personal first hand knowledge that Sweeney is using 211 I Street, SE as a stash house and that Sweeney has placed in excess of ten pounds of marijuana in that address within the past seventy-two hours. */

Based on the above, your affiant respectfully requests a D.C. Superior Court search warrant for 211 I Street, SE for marijuana which is in violation of 33 D.C. Code, Section 541.

------------------------------------
Detective Neil Trugman, MPDC

Subscribed to and sworn before me, this _____ day of November, 1994.

------------------------------------
Judge, D.C. Superior Court

*/ This source has advised the affiant that in the last 72 hours it overheard a conversation in which Sweeney stated that he currently had large stash, excess ten pounds, of marijuana in the above mentioned. The source further states that in the past it has seen Sweeney sell marijuana in the area surrounding the above-mentioned residence.

*98 CR 329*

FILED

AUG 1 8 2000

NANCY MAYER WHITTINGTON, CLE
U.S. DISTRICT COURT

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 AUG 18  PM 3: 30

NANCY M.
MAYER-WHITTINGTON
CLERK

App 698